Nos. 24-50627, 24-40533, 24-10855,

# United States Court of Appeals for the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

AUNT BERTHA, doing business as FINDHELP,

> *Plaintiff-Appellee*,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

> *Defendants-Appellants*.

---

## On Appeal from the United States District Courts
## for the Northern, Southern, and Western Districts of Texas

---

## APPENDIX OF EXHIBITS TO APPELLANT'S BREIF

---

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General
  Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Attorney*
DAVID P. BOEHM
GRACE L. PEZZELLA
  *Trial Attorneys*

  NATIONAL LABOR RELATIONS BOARD
  1015 Half Street, S.E., 4th Floor
  Washington, D.C. 20570
  (202) 273-4202

# TABLE OF CONTENTS

Orders, *H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir. Sept. 13, 2024; Oct. 15, 2024) ....................................................................................Exh. A

Order, *Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, (W.D. Mich. Oct. 25, 2024) ..............................................................Exh. B

Order, *Ares Collective Group, LLC v. NLRB*, No.CV-24-00517-TUC-SHR, (D. Ariz. Oct. 25, 2024) ..........................................................Exh. C

Order, *Ascension Seton d/b/a Ascension Seton Med. Ctr. Austin v. NLRB*, No. 1-24-CV-01176-ADA (W.D. Tex. Oct. 18, 2024) ........... Exh. D

Tab A
Exhibit A

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 24-2626

H&R Block, Inc., et al.

Appellants

v.

Jay L. Himes, In His Official Capacity as Federal Trade Commission Administrative Law Judge, et al.

Appellees

---

Appeal from U.S. District Court for the Western District of Missouri - Kansas City
(4:24-cv-00198-BP)

---

## ORDER

The motion for preliminary injunction pending appeal is denied.

September 13, 2024

Order Entered at the Direction of the Court:
Acting Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

/s/ Maureen W. Gornik

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 24-2626

H&R Block, Inc., et al.

Appellants

v.

Jay L. Himes, In His Official Capacity as Federal Trade Commission Administrative Law Judge, et al.

Appellees

---

Appeal from U.S. District Court for the Western District of Missouri - Kansas City
(4:24-cv-00198-BP)

---

## ORDER

The petition for en banc reconsideration of the September 13, 2024 judge order is denied.

October 15, 2024

Order Entered at the Direction of the Court:
Acting Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

/s/ Maureen W. Gornik

Tab B
Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH KERWIN, Regional Director,
Seventh Region of the National Labor
Relations Board, for an on behalf of the
NATIONAL LABOR RELATIONS BOARD,

   Petitioner,

              CASE NO. 1:24-cv-445

v.

              HON. ROBERT J. JONKER

TRINITY HEALTH GRAND HAVEN HOSPITAL,

   Respondent.

_____/

## OPINION AND ORDER

### INTRODUCTION

  Trinity Health Grand Haven Hospital is the Respondent in this Section 10(j) Preliminary Injunction action brought by Petitioner Elizabeth Kerwin on behalf of the National Labor Relations Board ("NLRB" or "Board"). The matter before the Court is on Respondent's Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c). (ECF No. 35). In the motion, Respondent contends that the underlying unfair labor practice proceedings before the Board are unconstitutional under Article II of the United States Constitution. In particular, Respondent contends the NLRB Administrative Law Judges—and members of the NLRB Board itself—are impermissibly insulated from removal by the President of the United States rendering the instant proceedings invalid. After careful review of all matters of record, the Court denies Respondent's motion.

## BACKGROUND

*1.  The Four Step Process for Considering Unfair Labor Practice Complaints*

"The National Labor Relations Act (NLRA) prohibits employers and unions from engaging in certain 'unfair labor practice[s].'"  *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1574 (2024) (citing 29 U.S.C. §§ 158(a), (b)).  "The National Labor Relations Board enforces that prohibition."  *Id.*  Indeed, Congress created the NLRB in 1935 as an independent agency with the express purpose of "encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of employment or other mutual aid or protection."  29 U.S.C. § 151.  The Board "is vested with primary jurisdiction to determine what is or is not an unfair labor practice" and "only the Board may provide affirmative remedies for unfair labor practices[.]"  *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 86 (1982).

"To evaluate and remedy unfair labor practices, the Board follows a four-step process."  *Starbucks Corp*, 144 S. Ct. at 1582 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment).  "First, a charge is filed and investigated[.]"  *Id.*  At this step "any aggrieved party may file a charge with the NLRB alleging any of the unfair labor practices outlined in Section 8" of the NLRA.  *YAPP USA Automotive Sys. Inc.*, ___ F. Supp. 3d ___, 2024 WL 4119058 at *2 (E.D. Mich. Sept. 9, 2024); *see also Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 775 (2023) (Board "authority kicks in when a person files a charge with the agency alleging that an unfair labor practice is afoot.").  "Charges are filed with the NLRB Regional Director for the region in which the alleged violation occurred, and that official is responsible for determining if there is sufficient evidence to substantiate a charge."  *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *3 (internal citation omitted).  At the second

step, "[i]f the Regional Director finds that a charge has merit, he or she initiates formal action by issuing a complaint." *Id.* At the third step, "[c]omplaints are adjudicated in a hearing before an ALJ, whose decision may be appealed to the Board." *Id.* (internal citations omitted).[1] "Finally, if the unfair labor practices alleged in the complaint are sustained, the Board can seek enforcement of the order, and any aggrieved party can seek review, in a federal court of appeals." *Starbucks Corp.*, 144 S. Ct. at 1582 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment).[2]

### 2. Roles, Responsibilities, and Removal in the Four Step Process

As it currently stands, the NLRA divides responsibility over the handling of unfair labor disputes between the Board and the General Counsel of the Board. *See* 29 U.S.C. § 153(d). "The "General Counsel's and the Board's authority are separated 'along a prosecutorial versus adjudicatory line.'" *Rieth-Riley Construction Co., Inc. v. NLRB*, 114 F.4th 519, 530, 531 (6th Cir. 2024) (quoting *NLRB v. United Food & Commercial Workers Union, Local 23 (UFCW)*, 484 U.S. 112, 124 (1987)). Below the Court discusses the role of the General Counsel, the Board, and

---

[1] The Board may also preside over such proceedings directly themselves. *See* 29 C.F.R. 102.50.

[2] Accordingly, for the most part, labor disputes are resolved administratively and the courts, via the federal courts of appeals, become only involved to the extent a Board decision needs to be enforced. *See Kobell v. United Paperworkers Int'l Union, AFL-CIO, CLC*, 965 F.2d 1401, 1406 (6th Cir. 1992); *see also Starbucks Corp.*, 144 S. Ct. at 1574 (majority opinion). Because the administrative process at times unfolds slowly, "interim injunctive relief occasionally may be necessary to preserve the remedial power of the Board . . . pending the Board's substantive review of [alleged unfair labor practices]." *Kobell*, 955 F.2d at 1406. This case involves such a request for injunctive relief, which the Court is addressing in a separate decision. For present purposes, the Court notes Congress has given the Board the power and discretion to seek a Section 10(j) motion. Under the Board's standard operating procedure, the Regional Director submits a memorandum to the General Counsel explaining why temporary relief may be appropriate. The memorandum is reviewed by the General Counsel who makes a recommendation to the Board. The Board must then accept or reject the recommendation. Only if the Board approves the request, is a 10(j) injunction proceeding filed in a federal district court. *See generally* Starbucks Corp., 144 S. Ct. at 1584 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment) (discussing the framework).

NLRB ALJs in the four-step process as well as the requirements, if any, for removal.

### A. General Counsel

At the prosecutorial side sits the General Counsel.  Under the terms of the NLRA "[t]he General Counsel is 'appointed by the President, by and with the advice and consent of the Senate, for a term of four years.'"  *Alivio Medical Center*, No. 24-cv-7217, 2024 WL 4188067 at *2 (N.D. Ill. Sept. 13, 2024) (quoting *Rieth-Riley*, 114 F.4th at 530, 531).  The General Counsel "exercises extensive executive functions" including final authority to issue, and withdraw, complaints.  *Rieth-Riley*, 114 F.4th at 529-530 (citing 29 U.S.C. § 153(d)).  Accordingly, "the General Counsel determines what charges the Board will hear and thus what issues the Board will have an opportunity to decide and seek enforcement of."  *Id.* at 531.  The NLRA "contains no provision restricting the President's removal power" of the General Counsel.  *Id.* at 530.  As a result, the General Counsel is "removable at will."  *Alivio Medical Center*, 2024 WL 4188068 at *2 (citing *Collins v. Yellen*, 594 U.S. 220, 248 (2021)).  In addition to investigating and prosecuting unfair labor practices, the General Counsel oversees "Regional Offices that carry out much of the day-to-day work of enforcing labor law and policy." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1582 (2024) (Jackson, J., concurring in part, dissenting in part, and concurring in the judgment).  Thus, Regional Directors, including the petitioner in this case, "act under the purview of the General Counsel." *Yapp USA Automotive*, 2024 WL 4119058 at *2.

### B. Board Members

On the adjudicatory side of the line sits the Board.  Under the NLRA, the Board is made up of five members "appointed by the President by and with the advice and consent of the Senate." 29 U.S.C. § 153(a).  The Board's primary duty "is to enforce the [NLRA], a task that it carries out (almost) exclusively by adjudicating labor disputes." *Alivio Medical Center*, 2024 WL 4188068

at *2 (citing *Cortes v. NLRB,* No. 23-2954, 2024 WL 1555877, at *1 (D.D.C. Apr. 10, 2024)). Unlike the General Counsel, the NLRA restricts the President's removal power of Board members by providing they are removable by the President, "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.* Although not statutorily required "'there has been a 'tradition' since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party.'" *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *2 (quoting Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance With Bite*, 118 Colum. L. Rev. 9, 54 (2018)).

      *C. ALJs*

The NLRB ALJs come in at the third step of the four-step sequence. "The NLRB ALJs are appointed by the five-member Board in accordance with the Civil Service Reform Act and the NLRA." *Alivio Medical Center*, 2024 WL 4188068 at *3. The ALJs are tasked with "inquir[ing] fully into the facts as to whether [a defendant] has engaged in or is engaging in an unfair labor practice affecting commerce as set forth in the complaint." *Id.* (quoting 29 C.F.R. § 102.35(a)). To that end, NLRB ALJs have a wide range of power including to administer oaths and affirmations, grant and revoke subpoenas, and resolve motions. *See id.* (discussing 29 C.F.R. § 102.35(a)(1)-(13)). This authority culminates with the ability to issue a decision that "will contain findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and recommendations for the proper disposition of the case." 29 C.F.R. § 102.45. From there, exceptions may be taken to the Board at the fourth step.

"Removal of NLRB ALJs involves a two-step process prescribed by statute: (1) the Board must bring an action to remove an ALJ; and (2) the Merit Systems Protection Board ("MSPB"), an independent federal agency, must then determine that good cause for removal has been

established." *Alivio Medical Center*, <u>2024 WL 4188068</u> at *3 (citing <u>5 U.S.C. § 7521(a))</u>. "As

for the members of the MSPB," in turn "they may only be removed for 'inefficiency, neglect of

duty, or malfeasance in office.'" *Id.* (quoting <u>5 U.S.C. § 1202(d))</u>.

## PROCEDURAL HISTORY

The underlying NLRB proceedings against Respondent began on August 2, 2023, when

SEIU Healthcare Michigan filed an unfair labor practices charge over a decertification election it

won regarding union representation at the Respondent hospital. The union asserted the employer

refused to honor the election result and refused to bargain with the union. An additional charge

was filed by the union on September 28, 2023, and amended charges were filed in December 2023.

(Pet. ¶ 3, ECF No. 1, PageID.2).[3]  The Regional Director, Petitioner Elizabeth Kerwin,

subsequently determined that there was reasonable cause to believe that the charges had merit and

so on January 29, 2024, Petitioner issued a Consolidated Complaint and Notice of Hearing. (ECF

No. 1-3). Respondent filed an Answer and Affirmative Defense on February 12, 2024. (ECF No.

1-4). Included in the affirmative defenses was an assertion by Respondent that "[t]he Complaint

is improper and should be dismissed because the structure of the National Labor Relations Board,

and the manner in which it processes and adjudicates cases, violates the United States Constitution,

including the constitutional provisions on separation of powers, <u>U.S. CONST. art. II</u>, due process,

U.S. CONST. amend V & XIV, and trial by jury <u>U.S. CONST. amend. VII</u>." (ECF No. 1-4,

PageID.37).

An administrative hearing began on April 3, 2024, in Grand Rapids, Michigan before

Administrative Law Judge Michael A. Rosas. The case was tried over eight days between April

---

[3] Additional discussion regarding the specific allegations of the charges can be found in the Opinion and Order on the 10(j) petition that is being filed contemporaneously with this decision.

3, 2024, and May 15, 2024. On April 30, 2024, Petitioner filed a Petition for Preliminary Injunction under Section 10(j) of the NLRA in this Court. (ECF No. 1). Respondent filed an Answer along with a series of affirmative defenses that included the structural argument previously raised during the administrative proceedings. (ECF No. 16). On July 1, 2024, Respondent filed the instant motion and brief for judgment on the pleadings under Rule 12(c). (ECF Nos. 35 and 36). Petitioner has responded in opposition. (ECF No. 39) and Respondent has replied. (ECF No. 54).

On September 6, 2024, the ALJ issued his decision. (ECF No. 56-1). The ALJ determined that Respondent violated Section 8(a)(1), (a)(3) and (a)(5) of the NLRA in several enumerated respects and ordered affirmative relief. (ECF No. 56-1, PageID.3090-3091). Respondent has indicated it intends to file exceptions with the NLRB. (ECF No. 63, PageID.3133).

## LEGAL STANDARDS

FED. R. CIV. P. 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Courts analyze motions for judgment on the pleadings under the same standards as motions to dismiss under FED. R. CIV. P. 12(b)(6). *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). Consequently, to survive a motion for judgment on the pleadings, Petitioner must allege facts that—taken as true by the Court—are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement is satisfied if Petitioner's well-pleaded factual allegations "allow[] the court to draw the reasonable inference that [Respondent is] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# DISCUSSION

"In recent years, the Supreme Court has addressed several statutory schemes that shield executive officers from at-will removal by the President." *YAPP USA Automotive Sys. Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024) (citing *Collins v. Yellen*, 594 U.S. 220 (2021); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); and *Free Enter. Fund v. Public. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)). "Even more recently, some courts have found that the dual-layer removal protections for executive agency ALJs are unconstitutional." *Id.* (citing *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024); *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *2 (S.D. Tex. July 29, 2024); and *Space Expl. Technolo-Gies Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024)). Other courts have disagreed and have concluded that the structure of the NLRB survives constitutional scrutiny. *See, e.g.*, *YAPP USA Automotive Sys. Inc. v. NLRB*, ___ F. Supp. 3d___ 2024 WL 4119058 at *2 (E.D. Mich. Sept. 9, 2024); *Alivio Medical Center v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024).

"These separation of powers questions are both complicated and consequential[.]" *YAPP USA Automotive Sys. Inc. v. NLRB*, 2024 WL 4489598, at *2. But the questions are not unique. Indeed the issues raised in Petitioner's motion have been squarely addressed by several court decisions. The Court has carefully reviewed the arguments in the parties' briefing, and the discussion throughout the case law. The Court determines that Respondent's motion lacks merit.

*1. Harm*

As a threshold matter, the Court determines that Respondent cannot make the requisite showing of harm.[4]  "Under Supreme Court and Sixth Circuit precedent, a party challenging an agency's removal protection scheme 'is not entitled to relief unless that unconstitutional provision inflicts compensable harm.'" *YAPP USA Automotive Sys. Inc.*, 2024 WL 4489598 at *2 (6th Cir. Oct. 13, 2024) (quoting *Calcutt v. FDIC*, 37 F.4th 293, 310 (6th Cir. 2022)) (internal quotation marks and alterations omitted).  Respondent recognizes that under *Calcutt* it must show an injury and that an adverse administrative ruling itself does not constitute harm from the appointment process.  But it contends there are two bases from which this Court can find the requisite harm.  First, it says, it is asking the Court for prospective relief.  This constitutes an ongoing harm, it says, that distinguishes *Calcutt* and other cases cited by Petitioner.  Second, it says, the Section 10(j) proceedings in this Court provide the requisite harm.  These arguments are not persuasive.

A panel of the Sixth Circuit Court of Appeals recently addressed similar arguments in an appeal from the denial of an injunction to halt upcoming proceedings before the Board.  *YAPP USA Automotive Sys. Inc.*, 2024 WL 4489598 at *2 (6th Cir. Oct. 13, 2024).  Applying *Calcutt*, the Court of Appeals noted two points: "First, a party challenging the constitutionality of an agency's removal protection scheme cannot simply show that the agency's action caused—or will

---

[4] Petitioner also argues that Respondent's challenge to the ALJ's removal protections is not relevant to the Board's request for temporary injunctive relief under Section 10(j) because ALJs do not participate in the decision to seek 10(j) relief, and the Court—if there was any concern about the administrative proceedings—could create an independent evidentiary record.  (ECF No. 39, PageID.2713-2714).  It is not clear what heft, if any, Petitioner sees in this argument as Respondent is also challenging the constitutionality of the Board, and Petitioner readily admits the Board is typically involved in making decisions regarding 10(j) relief.  While the Board's authority over 10(j) petitions can sometimes be delegated to the General Counsel, Petitioner does not claim that is what happened in this case.  The Court need not wade into the issue any deeper, as there are independent bases for denying the motion here.

cause—harm.  Instead, 'the constitutional violation must have *caused* the harm.'"  *Id.* (quoting

*Calcutt*, 37 F.4th at 316).  "Second, a challenger cannot rely on 'vague, generalized allegations' of

harm; 'a more concrete showing [i]s needed.'"  *Id.* (quoting *Calcutt*, 37 F.4th at 317).  "In short, a

challenger 'would need to show that the removal restriction *specifically* impacted the agency

actions of which they complain.'"  *Id.* (quoting *Calcutt*, 37 F.4th at 315) (emphasis in original).

Respondent's arguments fail to demonstrate how the removal protections for the ALJs or

Board members "specifically impacted" the proceedings.  Here, a "bare claim" of illegitimacy is

not enough.  *Id.* Rather Respondent must making a showing along the lines that the alleged

unconstitutional protections "'prevent[ed] superior officers from removing Board members when

they attempted to do so' or 'alter[ed] the Board's behavior' prior to the proceeding" or that "'but

for the allegedly unconstitutional removal provisions the [NLRB Board members] or [the NLRB

ALJ] would have been removed, the [NLRB] proceedings against it would not be occurring, or the

proceedings would be different in any way.'"  *Id.* at *3 (quoting *Leachco, Inc. v. Consumer Prod.

Safety Com'n*, 103 F.4th 748, 757 (10th Cir. 2024) (alternations in *YAPP USA Automotive*).

Respondent does not come close to making this type of showing. Instead, it claims that

*Calcutt* is not applicable to prospective relief.  But that case "explicitly stated that the distinction

between prospective and retrospective relief 'does not matter.'"  *Id.* (quoting *Calcutt*, 37 F.4th at

316); *see also id.* (quoting *Calcutt*, 37 F.4th at 316 for the proposition that the question of harm

"remains the same whether the petitioner seeks retrospective or prospective relief.").  Respondent

essentially seeks to distinguish these statements as dicta, however the panel decision in *YAPP USA

Automotive* found them sufficient on which the reject an identical claim—albeit in a preliminary

injunction motion—that *Calcutt* was not applicable to prospective relief.  *Id.*  This Court does too.

Likewise, Respondent's attempt to distinguish this case based on the procedural posture of a 10(j)

petition is not persuasive, and does not make the type of showing that the court in court in *YAPP USA Automotive* found was required under *Leacho*.

That leaves Respondent with its claim that the Supreme Court recognized harm in "being subjected to unconstitutional agency authority" in *Axon Enters., Inc. v. FTC*, <u>598 U.S. 175</u> (2023). But as the panel discussed in *YAPP USA Automotive*, the case of *Axon Enterprises* is not as broad as Respondent reads it, and "did not overrule *Collins*—or, by extension, *Calcutt*." *YAPP USA Automotive Sys. Inc.*, <u>2024 WL 4489598</u> at *3. For these reasons, then, the Court concludes that Respondent has failed to demonstrate the requisite causal harm that is necessary for a successful challenge to an agency's removal protection scheme.

*2.   Merits*

Even if Respondent could demonstrate the causal harm, however, the Court concludes that the motion fails on the merits. Article II of the United States Constitution provides that the President shall have the sole power and responsibility to "take Care that the Laws be faithfully executed." <u>U.S. Const. art. II, §§ 1</u>, <u>3</u>. Here, Respondent contends that the removal procedures for both members of the Board and NLRB ALJs run afoul of this provision. The Court disagrees.

The Court begins with the ALJs. "Generally speaking, it is constitutional for Congress to protect inferior officers with 'good cause' removal restrictions." *YAPP USA Automotive Sys. Inc.*, <u>2024 WL 4119058</u> at *7 (collecting cases). NLRB ALJs are inferior officers. *See id.* The Supreme Court has previously found an Article II violation when inferior officers with significant regulatory powers are given two layers of removal protections. *Id.* (citing *Free Enter. Fund*, <u>561 U.S. at 498</u>). But the Court distinguished ALJs from other inferior officers. *See id.*; *see also Alivio Medical Center*, <u>2024 WL 4188067</u> at *9 ("The Court [in *Free Enter. Fund.*] did not categorically deem unconstitutional all two-level tenure protection for inferior officers, and it expressly stated

that its holding 'does not address that subset of independent agency employees who serve as administrative law judges." *Alivio Medical Center*, 2024 WL 4188067, at *9 (citing *Free Enter. Fund*, 561 U.S. at 507 n.10)).

Subsequently, "[t]he circuits have split on the question of whether the *Free Enterprise* holding . . . applies to the two-level tenure protection schemes afforded to agency ALJs like those employed by the NLRB." *Id.* at *10. Those upholding the agency ALJs have generally determined that removal protections are constitutional, or at least likely so, when the ALJs perform a "purely adjudicatory function." *Id.* (collecting cases). For example, the Sixth Circuit in *Calcutt* "expressed serious 'doubt[s]' that those subject to agency enforcement proceedings 'could establish a constitutional violation from the ALJ removal restrictions' enacted by Congress." *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *7.

In the motion, and subsequent briefing, Respondent contends this Court should find *Calcutt* distinguishable, and instead apply the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, ___ U.S. ___, 144 S. Ct. 2117 (2024) and those of two Texas district courts bound by that decision that applied *Jarkesy* to determine the NLRB ALJs' removal protections was unconstitutional. But this Court is bound by *Calcutt*, and the Court finds Respondent's efforts to distinguish that case are without merit. In the main, Respondent says that NLRB ALJs have a greater level of decisional authority than the FDIC ALJs. Respondent does not explain why that should matter.[5]   an identical argument was recently rejected in *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *7. The Court agrees with the analysis of that case that

---

[5] To the extent that Respondent is arguing from this that NLRB ALJs enjoy significant executive power beyond an adjudicatory function, the Court agrees with the analysis in *Alivio Medical Center* that rejected a similar contention and determined the NLRB ALJs exercise adjudicatory, rather than executive functions. *See Alivio Medical Center*, 2024 WL 4188067, at *10-*11.

the argument is beside the point in any event. "*Calcutt* makes clear that the permissibility of ALJs' removal protections 'centers on their status as adjudicatory officials that issue non-final recommendations to an agency.'" *Id.* at *8 (citing *Calcutt*, 37 F.4th at 320). Likewise, as that case makes clear, under the statutory framework the NLRB is not required to assign a case to an ALJ, and even where ALJs are used, the Board may reverse a finding made by the ALJ, even if no party has filed an exception. *Id.* Accordingly, the Court agrees with the holding in *YAPP USA Automotive* that "NLRB ALJs perform purely adjudicatory functions, issue non-final recommendations to the NLRB, and enjoy good-cause protections that are a 'lesser impingement' than the removal standard at issue in *Free Enterprise Fund.*" *Id.* Thus the two-level removal protections for NLRB ALJs do not violate Article II of the Constitution.

And neither do the protections for NLRB Board members. Here, the inquiry begins by determining whether the removal protection falls within an established exception to the President's general removal authority. *See YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *4. Both sides' focus here is on the exception established in *Humphrey's Executor* that "'permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power.'" *Id.* (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020)). Respondent contends that NLRB Board members exercise significant executive power, and thus *Humphrey's Executor* does not save the NLRB Board from a constitutional challenge. This argument was also considered, and rejected, in *YAPP USA Automotive Sys.* As that decision persuasively explains, this argument reads *Humphrey's Executor* and its progeny too narrowly. The Court agrees with that decision that *Humprey's Executor* "remains binding and continues to apply to traditional independent agencies led by a multimember board, including the NLRB." *Id.* at *7.

Respondent's remaining argument then is that it would be an unjustified expansion of *Humphrey's Executor* to find that the removal protections for NLRB Board members survives scrutiny because NLRB Board members are removable only for neglect of duty or malfeasance in office, whereas the *Humphrey's Executor* standard includes inefficiency. Respondent contends those courts that have upheld the removal restrictions for NLRB Board members have failed to appreciate the difference. At least one court, however, has expressly rejected this argument. *See Alivio Medical Center*, 2024 WL 4188068 at *8, and it appears some commentators have also viewed this contention with skepticism. *See id.* at n.5 ("Legal commentators have likewise cast doubt on the proposition that the removal of "inefficiency" from the grounds upon which board members or commissioners can be removed from office renders unconstitutional the removal protections of independent agencies."). Based on this record, the Court finds Respondent's contention that the removal protections for NLRB Board members would be a significant expansion of the *Humprey's Executor* standard unfounded.

The Court concludes, therefore, that Respondent has not met its burden under Rule 12 of demonstrating that the removal protections for NLRB Board members violates Article II of the Constitution.

*3. Seventh Amendment*

Finally, both sides spend a few sentences addressing whether monetary damages in the NLRB proceedings would be unconstitutional under the Seventh Amendment. This does not appear to be an issue that, at least currently, is properly before the Court as both sides frame the issue as a hypothetical and thus the requisite constitutional standing element is not met. The Court merely notes here authority that has found a Seventh Amendment challenge based on similar grounds would not succeed. *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *10-*13.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Respondent's Motion for Judgment on the

Pleadings (ECF No. 35) is **DENIED.**


Dated:   October 25, 2024                                     /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                      UNITED STATES DISTRICT JUDGE

Tab C
Exhibit C

**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ares Collective Group LLC, et al., | No. CV-24-00517-TUC-SHR |
| Plaintiffs, | **Order Denying TRO** |
| v. | |
| National Labor Relations Board, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' "Application for Temporary Restraining Order and Preliminary Injunction" ("TRO Motion") filed pursuant to Federal Rule of Civil Procedure 65. (Doc. 2.)  For the reasons stated below, the Court denies Plaintiffs' TRO Motion.

## I.    BACKGROUND

Plaintiffs are two Arizona limited liability companies and one organization that operate eateries and a grocery facility in Tucson. (Doc. 1 at 7.)  On September 2, 2021, one of Plaintiffs' former employees filed an unfair labor practice charge with the National Labor Relations Board (NLRB) against Plaintiff Flora's Market Run. (Doc. 1 at 7.)  On October 23, 2024, the Regional Director of Region 28 of the NLRB filed a Consolidated Complaint against Plaintiffs as well as a Notice of Hearing. (Doc. 1 at 8.)  On September 24, 2024, the Regional Director issued a Second Amended Consolidated Complaint with notice that a hearing on the former employee's claims would be held before an

Administrative Law Judge (ALJ) on October 28, 2024.  (Doc. 1-2 at 3, 24.)  The NLRB's amended complaint seeks "payment for consequential economic harm" Plaintiffs' former employee incurred as a result of Plaintiffs' alleged illegal conduct.  (Doc. 1-2 at 22.) Plaintiffs answered the second amended complaint, asserting, among other things, affirmative defenses challenging the constitutionality of the scheduled hearing and NLRB's structure.  (Doc. 1-2 at 30.)

On October 23, 2024, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief, asking this Court to enjoin Defendants from subjecting them to "unconstitutionally structured administrative proceedings pending the final resolution of this action" and to "[p]ermanently enjoin[] Defendants from implementing or carrying out the unconstitutional removal-protection provisions" insulating NLRB ALJs and Board Members.  (Doc. 1 at 17.)  Also on October 23, Plaintiffs filed the instant TRO Motion seeking an order "enjoin[ing] unconstitutional administrative proceedings" against them. (Doc. 2 at 2.)  Plaintiffs argue: (1) "the NLRB's quest for compensatory monetary damages in an administrative proceeding violates Plaintiffs' Seventh Amendment right to trial by jury"; 2) "the ALJ assigned to conduct the hearing will unconstitutionally exercise substantial executive power while being insulated from Presidential control through two layers of for-cause removal protection in violation of Article II of the United States Constitution"; and (3) "the NLRB Board Members are likewise unconstitutionally protected from the President's removal power and, more generally, Presidential control." (Doc. 2 at 2.)

## II.   LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (TROs are analyzed in substantially the same way as preliminary injunctions).  A plaintiff seeking a TRO must establish: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3)

the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the government is a party, the last two of the four factors— the balance of the equities and the public interest—merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The first factor, likelihood of success on the merits, is "the most important *Winter* factor." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("[I]f a movant fails to meet this threshold inquiry, the court need not consider the other factors."). However, in the Ninth Circuit, a temporary restraining order is warranted where "serious questions going to the merits" exist and a "hardship balance . . . tips sharply toward the plaintiff"—provided the other two elements of the *Winter* test are also met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (describing serious questions going to the merits as "a lesser showing than likelihood of success on the merits"). Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

## III.    DISCUSSION

Plaintiffs contend (1) the scheduled proceeding before an NLRB ALJ will violate their Seventh Amendment right to a jury trial (Doc. 2 at 6–8), and (2) the NLRB ALJs and Board Members are unconstitutionally insulated from removal by the President by two layers of "for cause" employment protection. (Doc. 2 at 3, 10.) Even assuming Plaintiffs are likely to succeed on the merits of these claims, the Court finds they fail to show irreparable harm and are therefore not entitled to a TRO enjoining the NLRB proceeding. *See Winter*, 555 U.S. at 20.

Plaintiffs claim they will suffer irreparable harm without the Court's intervention because they "will be forced to undergo an unconstitutional proceeding before an insufficiently accountable ALJ and NLRB, without the jury trial to which [they are] entitled." (Doc. 2 at 12.) Further, Plaintiffs argue, the "economic burdens" associated with preparing for and participating in the hearing "separately constitute irreparable harm." (*Id.*

at 13.)  These arguments fail to meet the standard that the Supreme Court has established and the Ninth Circuit has reiterated: "[t]he key . . . is demonstrating that the unconstitutional provision actually caused the plaintiff harm."  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021); *see Collins v. Yellen*, 594 U.S. 220, 260 (2021) (shareholders needed to show the unconstitutional removal restriction—not simply the agency's actions—"cause[d] harm" to be entitled to retrospective relief); *see also YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4489598, *2–3 (6th Cir. 2024) (plaintiff not entitled to preliminary injunction where it failed to show the removal protections for NLRB officials would cause harm).

Here, even assuming the alleged constitutional infirmities exist, Plaintiffs fail to show how this Court's failure to grant temporary relief will cause irreparable harm.  First, nothing about the NLRB proceedings will permanently deprive Plaintiffs of their Seventh Amendment right.  Rather, as detailed in the NLRA, Plaintiffs can seek review of the NLRB's decision in the court of appeals.  Second, merely highlighting the fact there is a two-layer removal system in place does not establish the causal link between the removal restrictions and their impact on the upcoming proceeding.  Even assuming the two-layer removal system could cause a per se harm to Plaintiffs, this harm can be completely extinguished by the court of appeals vacating an ALJ's decision.  Lastly, the timing of this TRO Motion undermines Plaintiffs' irreparable harm argument.  For nearly a year, Plaintiffs were on notice of the nature of the remedy sought and the fact that the NLRB ALJ would hold a hearing.  As Plaintiffs admitted at today's hearing, it was a strategic decision to wait until two business days before the NLRB's scheduled hearing to file this Motion.  The Court finds this delay weighs against granting the TRO Motion.

## IV.    CONCLUSION

**IT IS ORDERED** Plaintiffs' TRO Motion (Doc. 2) is **DENIED**.

Dated this 25th day of October, 2024.

Honorable Scott H. Rash
United States District Judge

- 4 -

Tab D
Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ASCENSION SETON D/B/A ASCENSION SETON MEDICAL CENTER AUSTIN, | § § § § | |
| Plaintiff, | § | CIVIL NO. 1-24-CV-01176-ADA |
| v. | § § § | |
| NATIONAL LABOR RELATIONS BOARD, JENNIFER ABRUZZO, LAUREN MCFERRAN, MARVIN E. KAPLAN, GWYNNE A. WILCOX, DAVID M. PROUTY, and ELEANOR LAWS, | § § § § § § § § | |
| Defendants. | § | |

## <u>ORDER</u>

Consistent with this Court's Order granting a preliminary injunction in *Space Exploration Technologies Corp. v. National Labor Relations Board*, No. W-24-CV-00203-ADA, <u>2024 WL 3512082</u> (W.D. Tex. July 23, 2024), and upon consideration of Plaintiff Ascension Seton's ("Ascension") Motion for Preliminary Injunction (ECF No. 2) and the National Labor Relations Board's ("NLRB") response in opposition (ECF No. 22), it is hereby ordered that the Motion for Preliminary Injunction is **GRANTED.**

The Court notes that the primary issue raised in Plaintiff's Motion—the constitutionality of removal protections for NLRB Members and administrative law judges (ALJs)—is currently on appeal at the Fifth Circuit. *See Amazon.com Services LLC v. NLRB*, No. 24-50761 (5th Cir. Sept. 30, 2024). This Court's decision in *Space Exploration* is also on appeal at the Fifth Circuit. *See Space Exploration Techs. Corp.*

*v. NLRB*, No. 24-50627 (5ᵗʰ Cir. 2024). Upon the Fifth Circuit's ruling in either case, this Court will reconsider the Preliminary Injunction in light of the Fifth Circuit's guidance. In the interim, for the purpose of preserving the status quo and avoiding irreparable harm, this Court grants Plaintiff's Motion for Preliminary Injunction (ECF No. 2).

## I.      BACKGROUND

Ascension's Motion seeks to enjoin the NLRB's administrative proceedings against it. Pressingly, Ascension seeks to enjoin the administrative hearing scheduled for October 8, 2024, in NLRB causes 16-CA-307709 and 16-CA-308153. ECF No. 2-2 at 10.

In November and December of 2022, charges were filed with the NLRB alleging that Ascension committed unfair labor practices. *Id.* at 5. On April 17, 2024, the NLRB issued an order consolidating the cases and setting an ALJ hearing on October 8, 2024. Ascension filed its Motion for Preliminary Injunction on September 19, 2024, to enjoin the NLRB proceedings. ECF No. 2. The NLRB filed a response in opposition to Ascension's motion on October 3, 2024. ECF No. 22. The Court held a hearing on October 7, 2024, to hear the arguments of both parties. ECF No. 31.

## II.     LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

These elements are not examined in isolation but balanced in consideration of each other. *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).

## III.   DISCUSSION

### a. Plaintiff has shown a substantial likelihood of success on the Merits.

This Court finds that Ascension has shown a likelihood of success on the merits of one or more of its claims. This Court has previously determined that there was a substantial likelihood of success on the merits with regards to showing that NLRB ALJs and Members are unconstitutionally protected from removal. *Space Expl.*, 2024 WL 3512082, at *3–4. Counts one and two of Ascension's complaint allege that NLRB ALJs and Members, respectively, are unconstitutionally insulated from removal. ECF No. 1 at ¶¶ 45–82.  Ascension thereby presents the same issue the Court addressed in *Space Exploration*, and the Court sees no reason to depart from its prior determination or the reasoning set forth therein. *See Space Exploration*, 2024 WL 3512082, at *3.

The NLRB insists that even if the challenged removal restrictions are unconstitutional, *Collins v. Yellen*, 594 U.S. 220 (2021) compels Ascension to show something it has not shown: that the President has sought to remove the ALJ assigned to this case. This Court agrees with the NLRB to the extent that *Collins* requires a court to determine whether an unconstitutional removal provision has caused, or is set to cause, harm to the plaintiff. However, the Court disagrees that *Collins* requires a showing that the President has sought to remove the ALJ assigned to this case. This same issue has been addressed in *Energy Transfer, LP v. National*

3

*Labor Relations Board*, NO. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024).

The court in *Energy Transfer* ultimately found that *Collins* did not require a plaintiff

to show that the President has sought to remove the ALJ assigned to a case. *See*

*Energy Transfer*, 2024 WL 3571494, at *4. Instead, *Collins* only required a court to

determine whether an unconstitutional removal provision has caused, or is set to

cause, harm to the plaintiff. *Id.* The court would ultimately conclude that "[f]or

removal-restriction claims that seek relief *before* an insulated actor acts, it is not

that *Collins*'s causal-harm requirement is altogether inapplicable, but rather that it

is readily satisfied." *Id.* This Court adopts the *Energy Transfer* court's reasoning that

*Collins*'s causal-harm requirement is satisfied when a removal-restriction claim is

brought before the insulated actor acts.

Ascension's alleged harm is not the threat of being subjected to a particular

action, but rather, being forced to participate in a constitutionally defective

administrative process. And it is the removal provisions that protect the NLRB ALJ's

and Members that create the constitutional defect.

### b. Plaintiff has sufficiently demonstrated that not issuing a preliminary injunction will result in an irreparable injury.

This Court also finds a likelihood of irreparable harm in the absence of

preliminary injunctive relief. As the Supreme Court has stated, "being subjected to

unconstitutional agency authority—a proceeding by an unaccountable ALJ. . . . is a

here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon*

*Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (internal quotation marks omitted). In

*Axon*, "[t]he claim, again, is about subjection to an illegitimate proceeding, led by an

illegitimate decisionmaker." *Id*. Ascension has made the same claim. Even though the agency's order could be vacated after the proceeding, a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order" but about avoiding "an illegitimate proceeding." *Id*.

Ascension is currently scheduled for a hearing before an NLRB ALJ on October 8, 2024. ECF No. 2-2 at 2. This Court finds that subjecting Ascension to a hearing before a potentially unconstitutionally protected agency official satisfies the irreparable harm requirement.

The NLRB argues that *Axon* does not address injunctive relief and is narrowly tailored to jurisdiction over structural constitutional challenges. This Court acknowledges that *Axon* examined injury for jurisdictional purposes and not in the injunction context, but that does not change the Court's conclusion. This Court takes the *Axon* Court at its word when it stated that "being subjected to" "a proceeding by an unaccountable ALJ" is an injury that "cannot be undone." *Axon*, 598 U.S. at 191. A harm that "cannot be undone" is by definition irreparable.

### c. The balance of the harms and public interest weighs in favor of issuing a preliminary injunction.

Lastly, the Court finds that the balance of the harms and public interest weighs in favor of the injunction. Where the government is a defendant, the harm to the opposing party and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Nor would an injunction preventing unlawful agency

action "disserve the public interest." *Louisiana v. Biden*, <u>55 F.4th 1017, 1022</u> (5th Cir. 2022). It is not in the public interest to have an increasingly expansive Executive Branch that "slip[s] from the Executive's control, and thus from that of the people." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, <u>561 U.S. 477, 499</u> (2010). Here, the balance of the harms to the opposing party and the public interest weighs in favor of granting a preliminary injunction.

## IV. CONCLUSION

In conclusion, Ascension has met all the requirements for a preliminary injunction, and its Motion for Preliminary Injunction is hereby **GRANTED.**

**IT IS ORDERED** that all administrative proceedings in National Labor Relations Board Cases 16-CA-307709 and 16-CA-308153, including without limitation any hearing before an ALJ, are hereby stayed and enjoined in all respects pending further order of this Court.

**Signed** this 18th day of October 2024.

Alan D Albright
United States District Judge