Nos. 24-50627, 24-40533, 24-10855

# United States Court of Appeals
# For the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency,  JENNIFER ABRUZZO, in her official capacity as the General Counsel of the  National Labor Relations Board, LAUREN M. MCFERRAN, in her official  capacity as the Chairman of the National Labor Relations Board,  MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their  official capacities as Board Members of the National Labor Relations  Board, and JOHN DOE in his official capacity as an Administrative Law  Judge of the National Labor Relations Board,

*Defendants-Appellants,*

*consolidated with*

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their  official capacities as Board Members of the National Labor Relations  Board, and JOHN DOE in his official capacity as an Administrative Law  Judge of the National Labor Relations Board,

*Defendants-Appellants,*

*consolidated with*

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants.*

**On Appeal from the United States District Courts
for the Northern, Southern, and Western Districts of Texas**

**BRIEF OF AMICI CURIAE AMERICAN FEDERATION OF LABOR &
CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO) AND OFFICE
AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION (OPEIU) IN
SUPPORT OF DEFENDANTS-APPELLANTS**

Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza NW
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
Tel. (212) 652-3828
jbarker@pittalaw.com

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES.....................................................................ii

STATEMENT OF INTERESTED PERSONS ........................................ v

CORPORATE DISCLOSURE STATEMENT.......................................vii

INTEREST OF AMICI CURIAE.......................................................1

SUMMARY OF ARGUMENT ................................................................ 2

ARGUMENT .......................................................................................6

I.   The District Courts Erred by Issuing Preliminary
     Injunctions Restraining Board Action Based on the
     Unconstitutionality of Removal Protections Alone ........................6

     A.   Courts May Not Restrain Lawfully-Appointed Agency
          Officers from Exercising Executive Power In the
          Absence of a Presidential Desire to Remove Them...............6

     B.   *Cochran* and *Axon Enterprise* Did Not Modify
          This Court's Remedial Requirements..................................13

II.  Vacating the Injunctions Will Not Prevent
     Plaintiffs from Seeking Appropriate Remedies
     for Their Separation-of-Powers Claims .......................................16

III. Concerns of "Severability" Have No Role in This Analysis..........23

IV.  NLRB Members' Removal Protections are
     Plainly Constitutional...................................................................26

V.   The Balance of Equities Weighs Strongly in
     Favor of Vacating the District Court's Preliminary
     Injunction in Case No. 24-10855.......................................... 29

CONCLUSION ...................................................................................29

i

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Abbott Laboratories v. Gardner,*
  387 U.S. 136 (1967) ............................................................ 21

*Aunt Bertha v. NLRB,*
  No 4:24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024).. 9, 18, 24

*Axon Enterprise, Inc. v. FTC,*
  598 U.S. 175 (2023) ...................................................... *passim*

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  591 U.S. 610 (2020) ...................................................... 25, 26

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022)........................................... 8, 10

*CFPB v. All Am. Check Cashing, Inc.,*
  33 F.4th 218 (5th Cir. 2022)............................................. 12

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022)........................................ *passim*

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) ......................................... 13, 16

*Collins v. Mnuchin,*
  938 F.3d 553 (5th Cir. 2019)........................................... 3, 4

*Collins v. Dep't of Treasury,*
  83 F.4th 970 (5th Cir. 2023).............................................. 8

*Collins v. Yellen,*
  594 U.S. 220 (2021) ...................................................... *passim*

*Consumers' Rsch. v. CPSC,*
  91 F.4th 342 (5th Cir. 2024)........................................ *passim*

*Consumers' Rsch. v. CPSC,*
  No. 23-1323, 2024 WL 4529808 (U.S. Oct. 21, 2024).......................... 29

*Energy Transfer, LP v. NLRB,*
  No. 3:24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024)..... *passim*

*Exela Enters. Sols., Inc. v. NLRB,*
  32 F.4th 436 (5th Cir. 2022)............................................ 28

*Free Enter. Fund v. PCAOB,*
  561 U.S. 477 (2010) ...................................................... 3, 17

*Gill v. Whitford,*
  585 U.S. 48 (2018) ............................................................... 21
*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ............................................................ 27
*Jarkesy v. SEC,*
  34 F.4th 446 (5th Cir. 2022) .................................................. 6
*FTC v. Klesner,*
  25 F.2d 524 (D.C. Cir. 1928) ................................................ 28
*L. Offs. of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023) ................................................. 10
*Leachco, Inc v. CPSC,*
  103 F.4th 748 (10th Cir. 2024) ........................................ 10, 15
*McKinney ex rel. NLRB v. Creative Vision Resources L.L.C.,*
  783 F.3d 293 (5th Cir. 2015)......,,,,,,,,.................................. 30
*Missouri v. Biden,*
  83 F.4th 350 (5th Cir. 2023) ................................................ 12
*Overstreet v. El Paso Disposal, L.P.,*
  625 F.3d 844, 856 (5th Cir. 2010)....................................... 30, 31
*Scott v. Schedler,*
  826 F.3d 207 (5th Cir. 2016) ................................................ 21
*Seila Law LLC v. CFPB,*
  591 U.S. 197 (2020) ......................................................... 2, 25
*Space Exploration Techs. Corp. v. NLRB,*
  No. 24-cv-203 (ADA), 2024 WL 3512082 (W.D. Tex. July 23, 2024)
  ......................................................................... *passim*
*Westrock Servs.,*
  366 NLRB No. 157 (2018) ..................................................... 3
*YAPP USA Auto. Sys., Inc. v. NLRB,*
  No. 24A348, 2024 WL 4508993 (U.S. Oct. 15, 2024) ........................ 11
*YAPP USA Auto. Sys., Inc. v. NLRB,*
  No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) .............. 11
*YAPP USA Automotive Systems, Inc. v. NLRB,*
  No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024)......... 10, 15, 26

<u>Statutes and Constitutional Provisions</u>

U.S. Const. art. II, § 2, cl. 2................................................... 3
U.S. Const. art. II, § 3............................................................ 2
5 U.S.C. § 7521(a) .......................................................... 22, 24

15 U.S.C. § 45(l) ................................................................................ 28

15 U.S.C. § 2053(a) ........................................................................... 27

15 U.S.C. § 2071(a) ........................................................................... 28

29 U.S.C. § 153(a) ............................................................................. 27

29 U.S.C. § 166 .................................................................................. 25

## STATEMENT OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of this Court's Rule 28.2.1 have an interest in the outcome of this case. These disclosures are made pursuant to this Court's Rules 28.2.1 and 29.2 in order that the judges of this Court may evaluate possible disqualification or recusal.

1. National Labor Relations Board (NLRB)

2. Jennifer Abruzzo, General Counsel, NLRB

3. Lauren M. McFerran, Chairman, NLRB

4. Marvin E. Kaplan, Member, NLRB

5. Gwynne A. Wilcox, Member, NLRB

6. David M. Prouty, Member, NLRB

7. Space Exploration Technologies Corporation

8. Aunt Bertha, d/b/a Findhelp

9. Energy Transfer L.P.

10. La Grange Acquisition, L.P.

11. Talley Ray Parker, Counsel for Plaintiff-Appellee Aunt Bertha

12. Michael E. Kenneally, Counsel for Plaintiff-Appellee Space Exploration Technologies Corporation

13. Catherine Lynn Eschbach, Counsel for Plaintiff-Appellee Space Exploration Technologies Corporation

14. Harry Isaac Johnson III, Counsel for Plaintiff-Appellee Space Exploration Technologies Corporation

15. Amber Michelle Rogers, Counsel for Plaintiffs-Appellees Energy Transfer L.P. and La Grange Acquisition, L.P.

16. David Paul Boehm, Counsel for Defendants-Appellants

17. Christine Flack, Counsel for Defendants-Appellants

18. Maxie Elena Gallardo Miller, Counsel for Defendants-Appellants

19. Grace L. Pezzella, Counsel for Defendants-Appellants

20. American Federation of Labor & Congress of Industrial Organizations (AFL-CIO), *Amicus Curiae*

21. Office and Professional Employees International Union (OPEIU), *Amicus Curiae*

22. Jane Lauer Barker, Counsel for *Amici Curiae* AFL-CIO and OPEIU

23. Andrew Lyubarsky, Counsel for *Amici Curiae* AFL-CIO and OPEIU

Dated: November 4, 2024

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amici Curiae AFL-CIO and OPEIU*

## CORPORATE DISCLOSURE STATEMENT

The American Federation of Labor & Congress of Industrial Organizations (AFL-CIO) and the Office and Professional Employees International Union (OPEIU), both not-for-profit labor organizations, state that they have no parent companies, subsidiaries, or affiliates that have issued shares to the public, and no publicly held company has 10% or greater ownership in them.

Dated: November 4, 2024

> */s/ Andrew Lyubarsky*
> Andrew Lyubarsky
> AFL-CIO
> 815 Black Lives Matter Plaza N.W.
> Washington, DC 20006
> Tel. (202) 227-8969
> alyubarsky@aflcio.org
>
> *Counsel for Amici Curiae*

## INTEREST OF AMICI CURIAE

The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 60 national and international labor organizations with a total membership of over 12.5 million working men and women. The Office and Professional Employees International Union ("OPEIU"), an AFL-CIO affiliate, currently represents more than 100,000 workers throughout the United States and Canada in a variety of fields, including technology, credit unions, hospitals, insurance agencies, colleges and universities, hotels, administrative offices, and more.[1]  OPEIU is the certified bargaining representative of the employees of Aunt Bertha d/b/a Findhelp ("Findhelp"), and the charging party in the unfair labor practice proceeding that Findhelp seeks to enjoin in Case No. 24-10855.

For almost 90 years, AFL-CIO-affiliated unions have relied on the National Labor Relations Board ("NLRB" or "Board") to preserve their

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amici* contributed money to fund the preparation or submission of this brief.

All parties to these consolidated appeals have consented to the filing of this *amicus curiae* brief.

members' right to engage in protected concerted activity, remedy unfair labor practices, and resolve questions concerning representation. The AFL-CIO and the OPEIU have a strong interest in ensuring that the Board is able to continue to carry out its vital function, to ensure that neither employers nor unions can evade accountability for violations of workers' labor rights. The AFL-CIO and OPEIU were granted leave to participate as *amici curiae* in the U.S. District Court for the Northern District of Texas. *See* ECF No. 20, 4:24-cv-00798 (N.D. Tex. Sept. 6, 2024).

## SUMMARY OF ARGUMENT

The Constitution "vest[s] in a President" the "executive power" and charges the President with the duty to "take Care that the Laws be faithfully executed." *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (*quoting* U.S. CONST. art. II, § 3). But "no single person could fulfill that responsibility alone," and so the President must appoint subordinates to assist him in faithfully executing the laws. *Id.* at 204. Where those subordinates are "properly appointed[,]" they possess "the authority to carry out the functions of the[ir] office." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021) (emphasis omitted).

No party contests that the administrative law judges ("ALJs") and Board Members whose authority was challenged in the actions below are lawfully-appointed inferior officers. *See* U.S. CONST. art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the . . . Heads of Departments"); *Westrock Servs.*, 366 NLRB No. 157 (2018) (explaining that NLRB ALJs are appointed by the full Board which, collectively, is a "Head of Department").

Congress may nevertheless vest lawfully-appointed inferior officers with constitutionally problematic protections from removal by the President (or a "Head of Department"). For instance, Congress's imposition of an "unusually high standard" for removal for officers who exercise "substantial executive authority" can result in a situation where the President "is no longer the judge of the [inferior officers'] conduct" and his "ability to execute the laws . . . is impaired." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496, 503, 505 (2010).

Though both seek to vindicate the separation of powers prescribed by our Constitution, appointment and removal challenges are remedially distinct. When plaintiffs challenge "officers [who] were vested with authority that was never properly theirs to exercise," courts must rule

that the officers' actions are "void *ab initio.*" *Collins v. Mnuchin*, 938 F.3d 553, 593 (5th Cir. 2019) (en banc). The opposite is true, however, for removal-restrictions challenges, where "the officers are duly appointed by the appropriate officials and exercise authority that is properly theirs." *Id.* In such cases, "the unlawfulness of [a] removal provision does *not* strip [an inferior officer] of the power to undertake the . . . responsibilities of his office," *Collins*, 594 U.S. at 258 n.23 (emphasis added); *see also id.* at 267 (Thomas, J., concurring) ("The mere existence of an unconstitutional removal provision, too, generally does not automatically taint Government action by an official unlawfully insulated."). When removal restrictions are at issue, a plaintiff may only secure injunctive relief on a showing that such restrictions *make a difference* in their particular case and thereby inflict "compensable harm"—for instance, where "the President had attempted to remove [an officer] but was prevented from doing so" or "had made a public statement expressing displeasure" with the officer's actions. *Id.* at 259–60.

The three district courts below failed to honor this core distinction, issuing preliminary injunctions that divest the ALJs of the power to "undertake the . . . responsibilities of [their] office" without *any*

plausible showing of "compensable harm." One district court further erred in finding, contrary to nearly 90 years of binding precedent, that Board Members' removal protections are likely to be unconstitutional. These injunctions not only run afoul of precedent from the Supreme Court and this Court, they also upset the carefully-crafted separation of powers mandated by our Constitution. While purporting to protect the Executive's authority over his subordinates, they instead tie the President's hands. Because the President cannot possibly "Take Care" that the NLRA be faithfully executed all on his own, these injunctions—which prohibit him from ordering properly-appointed inferior officers to carry out their lawful duties—render the executive power a dead letter. They thus perpetrate a much graver constitutional harm than they claim to remedy.

This Court must vacate these injunctions.

# ARGUMENT

## I.    The District Courts Erred by Issuing Preliminary Injunctions Restraining Board Action Based on the Unconstitutionality of Removal Protections Alone

### A.    Courts May Not Restrain Lawfully-Appointed Agency Officers from Exercising Executive Power In the Absence of a Presidential Desire to Remove Them

While the three district court decisions employ slightly differing analysis, they all reached an identical conclusion—plaintiffs may secure a preliminary injunction restraining the Board's proceedings merely by demonstrating a likelihood of success on the merits of their claim that their ALJs' removal protections are unconstitutional.[2] And all three rest on the same erroneous assumption—that *Collins* allows for prospective injunctive relief on a bare assertion of injury derived from "having to participate in a constitutionally defective administrative process." *See,*

---

[2] On the merits question of whether the ALJ removal protections are, in fact, unconstitutional, we adopt the arguments of the Board in full. *See* Appellants' Brief 37–38. As the Board contends, there are material differences between the powers of the NLRB's ALJs that render them distinguishable from the Securities & Exchange Commission ALJs considered in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022).

We further agree with the Board that, if *Jarkesy* is held to control this question, that decision should be revisited because ALJs exercise purely adjudicatory authority. Appellants' Brief 39.

*e.g., Energy Transfer, LP v. NLRB*, No. 3:24-cv-198, 2024 WL 3571494, at *3 (S.D. Tex. July 29, 2024) ("For removal-restriction claims that seek relief *before* an insulated actor acts, it is not that *Collins*'s causal-harm requirement is altogether inapplicable, but rather that it is readily satisfied.").

The lower courts' apparent distinction between prospective and retrospective relief is untenable and foreclosed by this Court's precedent. In *Community Financial Services Association of America v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*")—a controlling decision ignored by all three district courts—this Court set forth a detailed test establishing "three requisites for proving [the] harm" necessary to secure relief on a removal-restrictions claim:

> (1)A substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor.

*Id.*[3]

---

[3] None of the plaintiffs in the cases below attempted to make a showing that they met any of the three requisites established by this Court in *CFSA*.

Much like the plaintiffs in the cases below, the appellants in
*CFSA* had contended "that *Collins* applies only to retrospective relief."
*Id.* at 631. This Court could not have been more emphatic in rejecting
that contention: "*Collins* did *not* rest on a distinction between
prospective and retrospective relief" and the remedial inquiry "as to
whether an unconstitutional removal protection 'inflicted harm' *remains
the same* whether the petitioner seeks retrospective or prospective
relief." *Id.* (emphasis added) (citing *Calcutt v. FDIC*, 37 F.4th 293, 316
(6th Cir. 2022)).[4]

The district courts' decisions are plainly inconsistent with *CFSA*.
They reject *CFSA*'s admonition that the remedial inquiry "remains the
same" in cases seeking prospective relief from agency action (and must
necessarily require a showing of a frustrated Presidential desire to
remove an unconstitutionally-insulated officer). Directly contradicting
*CFSA*'s holding, one decision asserts that *Collins* does not apply to

---

[4] *See also Collins v. Dep't of Treasury*, 83 F.4th 970, 982 (5th Cir. 2023)
(dismissing the claims of the petitioners in *Collins v. Yellen* on remand
and holding that "a party challenging agency action must show not only
that the removal restriction transgresses the Constitution's separation
of powers but also that the unconstitutional provision caused (*or would
cause*) them harm").

prospective relief at all. *Space Exploration Techs. Corp. v. NLRB*, No. 6:24-cv-203 (ADA), 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024) ("*SpaceX*") ("*Collins* at most stands for the proposition that when [an] officer with unconstitutional removal protections acts, appropriate retrospective relief does not include voiding said action."). The other two decisions propose that plaintiffs bringing "removal-restriction claims that seek relief *before* an insulated actor acts" are exempt from *CFSA*'s requirements, and that "simply having to appear before an unaccountable ALJ is injury enough" to secure an injunction. *Energy Transfer*, 2024 WL 3571494, at *3; *see also Aunt Bertha v. NLRB*, No 4:24-cv-798, 2024 WL 4202383, at *3 (N.D. Tex. Sept. 16, 2024) (adopting reasoning of *Energy Transfer* court). If this were the case, the inquiry into what constitutes actionable "harm" would not "remain[] the same," as *CFSA* teaches, but instead differ radically based on the nature of relief sought. *Contra CFSA*, 51 F.4th at 631 (*Collins* "focuse[d] on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy"). Rather than permit injunctive relief in the narrow sliver of cases where the President's power to remove inferior officers was effectively frustrated, the district

courts' rulings would "create[] an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Leachco, Inc v. CPSC*, 103 F.4th 748, 759 (10th Cir. 2024) (observing such an outcome "cannot be the law under current Supreme Court . . . precedent").

This Court's holding on prospective relief has been joined by three other circuits, including decisions denying preliminary relief, with no contrary circuit-level precedent to date.[5]  Particularly persuasive is the Sixth Circuit's recent order in *YAPP USA Automotive Systems, Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ("*YAPP*"), which denied a motion for injunction pending appeal based on identical claims.[6] The Sixth Circuit recognized that the challenges to

---

[5] *See Leachco*, 103 F.4th at 757 ("*Collins*' relief analysis applies to both retrospective and prospective relief," and therefore plaintiff "failed to establish that it would suffer future irreparable harm if the preliminary injunction is denied"); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023); *Calcutt*, 37 F.4th at 316 n.9.

[6] The district court had denied the plaintiff's motion for a preliminary injunction, reasoning, in relevant part, that the plaintiff had not met the harm requirement of *Collins* because it "has failed to make any showing that, but for the allegedly unconstitutional removal provisions, the Board members or ALJ would have been removed, the NLRB proceedings against it would not be occurring, or the proceedings would

ALJ and Board Member removal protections were "both complicated and consequential," but held that they "need not [be] address[ed] at the preliminary injunction stage" where the appellant had "not explained how the removal protections . . . would '*specifically* impact[ ]' the upcoming proceeding" and instead relied on a "bare claim that the NLRB proceeding would be 'illegitimate.'" *Id.* at *2–3. In the absence of such a showing, the appellant was neither likely to succeed on the merits *nor* show that it will suffer irreparable harm—"in any case, the outcome is the same: [it] is not entitled to a preliminary injunction." *Id.* at *3.[7]

This uniform analysis makes sense. Under a plain reading of *Collins*, a plaintiff could never be entitled to vacatur of a *past* Board decision based solely on the facial unconstitutionality of ALJ removal protections—the proceedings and the order would be wholly lawful

---

be different in any way." *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at *10 (E.D. Mich. Sept. 9, 2024).

[7] Following the denial of its motion for an injunction pending appeal, the plaintiff in *YAPP* filed an emergency application for a writ of injunction with the Supreme Court. That application was denied by Justice Kavanaugh without opinion, *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24A348, 2024 WL 4508993 (U.S. Oct. 15, 2024), and the challenged hearing has proceeded.

because they were conducted and issued by an officer validly appointed to exercise executive power. *See Collins*, 594 U.S. at 258 n.23 ("[T]he unlawfulness of [a] removal provision does not strip [an inferior officer] of the power to undertake the . . . responsibilities of his office") (majority opinion); *id.* at 261, 267 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract,"—when officers are properly appointed, "[t]here is . . . no barrier to them exercising power in the first instance"); *id.* at 274 (Kagan, J., concurring) ("As the majority explains, the officers heading the FHFA, unlike those with invalid appointments, possessed the 'authority to carry out the functions of the office.'"). Consequently, the same plaintiff cannot possibly be entitled to a preliminary injunction halting a *future* proceeding overseen by an inferior officer who will *also* be lawfully exercising executive power (as eight out of nine Supreme Court Justices decisively held in *Collins*).[8] *See Missouri v. Biden*, 83 F.4th 350, 395 (5th Cir. 2023) ("[I]t is axiomatic that an

---

[8] *See CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring) ("Except for Justice Gorsuch, the [*Collins*] Court unanimously agreed that a case involving only an improper removal restriction is, remedially speaking, unique.").

injunction is overbroad if it enjoins a defendant from engaging in legal conduct."), *rev'd on other grounds sub nom. Murthy v. Missouri*, 144 S. Ct. 1972 (2024).

Indeed, to hold otherwise amounts to judicial interference with the President's constitutional duty to "take Care that the Laws be faithfully executed"—the very duty that the district court decisions purport to safeguard—by *presuming*, counter-factually, that the President wishes to remove *all* officers ostensibly protected by unconstitutional removal protections even when he does not. Instead, "[w]hen an agency decision would not capture a President's attention [or when the President affirmatively desires the agency's existing officers to proceed] his removal authority could not make a difference—and so no injunction should issue." *Collins*, 594 U.S. at 275 (Kagan, J., concurring).

## B. *Cochran* and *Axon Enterprise* Did Not Modify This Court's Remedial Requirements

Rather than applying *CFSA*'s three requisites for proving harm, the district courts relied on this Court's decision in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021), and the Supreme Court's affirmance of that decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) ("*Axon*"),

asserting that these decisions determined that merely "being subject to a constitutionally defective adjudication" was a "here-and-now injury" that is irreparable and sufficient to warrant injunctive relief. *See Energy Transfer*, 2024 WL 3571494, at * 4; *SpaceX*, 2024 WL 3512082, at *6.

*Cochran* and *Axon* dealt exclusively with a threshold question not at issue here—whether a plaintiff must raise its removal-protections claim via post-enforcement statutory review procedures. *Cochran*, 20 F.4th at 211 (deciding "only the issue of whether the Exchange Act divested district court jurisdiction over [removal-protection claims]; our holding extends no further."); *Axon*, 598 U.S. at 180 ("Our task today is not to resolve those challenges; rather, it is to decide where they may be heard."). *Cochran* and *Axon* determined *where* (district court) and *when* (pre-enforcement) a plaintiff can challenge removal protections.[9] But neither case discussed *what* a plaintiff needs to prove to ultimately obtain relief from agency proceedings. Before and after *Axon*, that showing is governed by *Collins* and *CFSA*.

---

[9] Here, no one contests that the district courts had subject matter jurisdiction over the removal-protection claims or that they needed to be raised first before the Board.

Once again, the Sixth Circuit's decision in *YAPP* is instructive in explaining that *Axon* was narrowly focused on jurisdiction and did not disturb the remedial analysis in *Collins*. *YAPP*, 2024 WL 4489598, at *5. So too is the decision of the Tenth Circuit in *Leachco*, which also rejected the erroneous reading of *Axon* adopted by the district courts here. There, as here, a plaintiff sought a preliminary injunction against agency proceedings on the grounds that both ALJs and agency commissioners were unlawfully insulated from Presidential removal, and relied on *Axon*'s "here-and-now injury" language to suggest a danger of irreparable harm sufficient to warrant injunctive relief. 103 F.4th at 758. In rejecting the plaintiff's argument, *Leachco* explained that the "'here-and-now injury' language in *Axon* originated from *Seila Law*," a case that "concerned standing, *not* entitlement to injunctive relief." *Id.* at 759. In *Collins*, the Tenth Circuit noted, the Supreme Court "clarified [that] its 'here-and-now-injury' language from *Seila Law* . . . should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* (citing *Collins*, 594 U.S. at 258 n.24). Therefore, the Tenth Circuit undertook to "follow the Supreme Court's words of caution when interpreting the same 'here-and-now

injury' language," declining to read *Axon*'s "limited jurisdictional holding" as a "broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Id.* Simply put, "[t]he Supreme Court's jurisdictional analysis in *Axon* did not change the relief analysis required under *Collins*." *Id.* at 765.

Accordingly, nothing in *Cochran* or *Axon* disturbs the remedial holdings in *Collins* or this Court's later decisions.[10] Because plaintiffs in all three cases made no effort to fulfill *CFSA*'s three requisites to show harm, the district court injunctions must be vacated.

## II. Vacating the Injunctions Will Not Prevent Plaintiffs from Seeking Appropriate Remedies for Their Separation-of-Powers Claims

We have demonstrated that the very separation-of-powers concerns that animate the Supreme Court's removal-restrictions jurisprudence

---

[10] Indeed, Justice Kagan, the author of the unanimous opinion in *Axon*, would be particularly astonished by the notion that *Axon* eliminated *Collins*'s requirement of proof of harm to obtain prospective relief. In her concurrence in *Collins*, she made clear her view that "plaintiffs alleging a removal violation are entitled to injunctive relief . . . only when the President's inability to fire an agency head affected the complained-of decision." 594 U.S. at 274 (Kagan, J., concurring).

foreclose the district courts' preliminary injunctions, because they improperly restrain properly-appointed ALJs and Board Members from carrying out their lawful functions. The injunctions must therefore be vacated because plaintiffs did not move for "declaratory relief sufficient to ensure that the [law] will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. They sought instead a get-out-of-agency-proceedings-free card—precisely the form of relief that *Collins* and *CFSA* hold they *cannot* receive.

That is not to say, however, that the plaintiffs are necessarily unentitled to *any* relief. Judges on this Court have emphasized the importance of keeping the courthouse doors open for plaintiffs bringing removal-restrictions claims, who "should at least be able to sue for declaratory relief requiring a constitutionally structured proceeding." *Cochran*, 20 F.4th at 233 (Oldham, J., concurring); *see also Consumers' Rsch. v. CPSC*, 91 F.4th 342, 351 (5th Cir. 2024) (noting that a plaintiff may be entitled to declaratory relief "[i]n a suit seeking to vindicate the President's removal power"). Vacating the injunctions here would not

limit plaintiffs from seeking—or courts from granting—declaratory relief.[11]

The district courts appeared to believe that preliminary injunctions restraining agency action were warranted because a declaratory judgment would come too late and a failure to act would "vitiate the Court's ability to render meaningful merits relief." *SpaceX*, 2024 WL 3512082, at *6; *see also Aunt Bertha*, 2024 WL 4202383, at *3 (any declaratory judgment severing unconstitutional removal restrictions would "not provide [plaintiff] any relief from having to appear before an unconstitutionally insulated ALJ at the [] hearing"); *Energy Transfer*, 2024 WL 3571494, at *4 (same). Beyond the fact that such preliminary relief is barred as a matter of law by *Collins* and *CFSA*, there are two additional reasons this position is wrong.

First, it is striking that, although all three cases present a pure question of law, no plaintiff chose to move for summary judgment on their claim for declaratory relief. Considering the broader panorama of similar

---

[11] Whether any of the plaintiffs here are, in fact, entitled to declaratory judgment on any of their claims is not before this Court, and should be addressed by the district courts in the first instance should plaintiffs properly move for such relief.

litigation against the NLRB nationwide, it is clear that this is no coincidence. *Amici* are aware of over a *dozen* district court actions across the country that have sought preliminary injunctions against Board unfair labor practice proceedings based on the alleged unconstitutionality of ALJ and/or Board Member removal restrictions and *not a single plaintiff* has moved for summary judgment requesting the one remedy that *Collins*, *Free Enterprise Fund*, and *Seila Law* permit—declaratory relief. The conclusion is unavoidable: while plaintiffs purport to seek relief from "subjection to an *illegitimate* proceeding, led by an *illegitimate* decisionmaker," *Axon*, 598 U.S. at 191 (emphasis added), a condition that could be remedied by a declaratory judgment making clear that the President could remove the decisionmaker *if* he wished to, their litigation conduct reveals a different motive—a desire to avoid (or, at least, significantly delay) being subjected to *any* proceeding at all.[12]

---

[12] This manner of proceeding stands in sharp contradiction to that of other plaintiffs who sought declaratory relief relating to removal protections in good faith. In the *Consumers' Research* litigation challenging the removal protections enjoyed by members of the Consumer Product Safety Commission, plaintiffs moved for partial final judgment less than a month after filing their complaint. *See Consumers' Rsch. v. CPSC*, No. 6:21-cv-256, ECF No. 14 at 25–26 (E.D. Tex. July

This curious reticence to seek a judgment on the merits cannot be explained by questions of timing. Here, two of the three plaintiffs filed suit after having been on notice of an impending ALJ hearing for *months*, providing no excuse or explanation for this delay.[13] Even if summary judgment briefing would have not been feasible prior to the hearing that these plaintiffs challenged, this is entirely ascribable to their *own* lack of diligence. Thus, even if the district courts had discretion to ignore the clearly-defined remedial limitations established by *Collins* and *CFSA*— which they do not—their decision to reward these plaintiffs for having sat on their rights for months stands any notion of equity on its head.

Nor would moving for summary judgment have been impractical in *SpaceX*. While the plaintiff arguably filed its complaint in a timely fashion, it moved for a preliminary injunction over *six months* before the

---

29, 2021) (seeking "only a [declaration] that the Commission's structure violates the separation of powers").

[13] *See* Compl. ¶ 38, ECF No. 1, *Aunt Bertha v. NLRB*, No. 4:24-cv-798 (N.D. Tex. Aug. 20, 2024) (plaintiff was on notice of hearing date as of April 12, 2024, yet delayed filing for over four months); Compl. ¶ 32, ECF No. 1, *Energy Transfer LP v. NLRB*, No. 3:24-cv-00198 (S.D. Tex. June 27, 2024) (plaintiff was on notice of hearing date as of March 7, 2024, yet delayed filing for three-and-a-half months).

anticipated hearing date—ample time for briefing and decision on a motion for summary judgment.[14] There was no reason for the district court to entertain—much less grant—a motion for a preliminary injunction, when no arguable harm was in any way impending and any harm could have been avoided via declaratory relief.

This pattern exhibits precisely the form of abuse of pre-enforcement review that the Supreme Court has held is grounds for denying equitable relief. See *Abbott Laboratories v. Gardner*, 387 U.S. 136, 155 (1967) (if suit is filed against the government "to delay enforcement [of the law], relief can be denied on this ground alone."

Second, the district courts failed to ensure that their injunctions were "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (citation omitted); *see also Gill v. Whitford*, 585 U.S. 48, 73 (2018) (any relief must be tailored to "redress the plaintiff's particular injury").

---

[14] *See* Compl. ¶ 30, ECF No. 1, *Space Exploration Techs. Corp.*, No. 6:24-cv-203 (W.D. Tex. Apr. 19, 2024) (noting hearing date scheduled for October 2024).

Recall the injury alleged by plaintiffs is appearing before an "*unaccountable* ALJ." *See, e.g., Energy Transfer*, 2024 WL 3571494, at *3 (citing *Axon*, 598 U.S. at 191)). Even assuming *arguendo* that *any* preliminary relief was merited despite plaintiffs' inexplicable failure to pursue a declaratory judgment, such an alleged injury would be fully redressed by an appropriately-tailored injunction that renders the specific ALJ in question *accountable* but nevertheless able to fulfill his or her functions—not a sweeping injunction that indefinitely restrains all agency action.

For instance, plaintiffs *could* have—but did not—request that the district courts enjoin any ALJ assigned to their case from relying on the removal protections in 5 U.S.C. § 7521(a) in the event of an attempt by the President or the Board to remove them. Such an appropriately-tailored injunction is the most obvious parallel to the purely declaratory relief that plaintiffs could receive at final judgment. And it would indisputably prevent plaintiffs from suffering their asserted injury—they would proceed to a hearing before an ALJ who was removable at-will by

the President—while allowing the President and his subordinates to "take Care that the Laws be faithfully executed" without hindrance.[15]

In short, the district court injunctions are remedial machetes applied to a situation where only a scalpel would do, and so must be vacated. Doing so will in no way impede plaintiffs from pursuing their separation-of-powers claims by promptly moving for summary judgment or, on remand, seeking appropriately-tailored preliminary equitable relief.

## III.  Concerns of "Severability" Have No Role in This Analysis

Before the district courts, the Board argued that, even if plaintiffs demonstrated that the challenged removal protections were unconstitutional, severance, rather than an injunction, was the

---

[15] In a separate discussion on severability, the *SpaceX* court suggested that because Board Members, MSPB Members, and ALJs all enjoyed some form of removal protections, challenging remedial questions would arise if it held any of them to be unconstitutional. *SpaceX*, 2024 WL 3512082, at *5.

Not so.

If an ALJ were enjoined from turning to the MSPB in the event of a Presidential bid to remove him or her, the fact that MSPB or Board Members themselves enjoy removal protection would be irrelevant. The only removal restrictions that matter here are the ALJ's and enjoining invocation of those protections would fully protect plaintiffs.

appropriate remedy. The district courts rejected this argument, finding principally that severance was a question of remedies at final judgment. *See SpaceX*, 2024 WL 3512082, at *5; *Energy Transfer*, 2024 WL 3571494, at *4; *Aunt Bertha*, 2024 WL 4202383, at *3.

Properly understood, severance is not at issue here—only the district courts' duty to properly tailor injunctive relief. Simply put, if *any* injunction is appropriate, it must be limited in scope and time to plaintiffs' alleged injury, and not run afoul of the remedial requirements set forth in *Collins* and *CFSA* to avoid frustrating the lawful functions of a coordinate branch of government. Any such injunction would do no more than restrain the specific ALJs in these cases from relying on the challenged provision in the highly-unlikely event of a Presidential attempt to remove them. And it would last only until a final judgment on the merits or the end of that officer's involvement in the enforcement proceedings against plaintiffs. Temporarily enjoining the invocation of a removal protection by *one* official presiding over *one* matter would not require a court to declare 5 U.S.C. § 7521(a) unconstitutional or to "sever" anything from the statute.

Moreover, while severance is not *itself* a remedy provided via a preliminary injunction, the virtual certainty that these removal protections *will* be found severable should these cases reach final judgment further emphasizes the need for any preliminary relief to be properly tailored. Neither the Supreme Court nor any Court of Appeals has *ever* found that an entire administrative regime must be demolished because of the presence of removal protections. "Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 627 (2020) (plurality opinion). This is especially the case for a venerable law like the NLRA, which has been on the books for almost 90 years and which contains an express severability provision.[16] Instead, unless the remaining provision in a law are not "capable of functioning independently" or remain "fully operative without the offending tenure restriction," *see Seila Law*, 591 U.S. at 235, courts must

---

[16] *See* 29 U.S.C. § 166 ("If any provision of this subchapter, or the application of such provision to any **person** or circumstances, shall be held invalid, the remainder of this subchapter, or the application of such provision to **persons** or circumstances other than those as to which it is held invalid, shall not be affected thereby.").

"sever[] unconstitutional provisions from the remainder of the law rather than razing whole statutes or Acts of Congress." *Barr*, 591 U.S. at 627. The overbroad preliminary injunctions at issue here are starkly inconsistent with that command.

## IV.  NLRB Members' Removal Protections are Plainly Constitutional

The remedial analysis mandated by *Collins* and *CFSA* means that this Court need not delve into the substantive constitutionality of the Board Members or ALJs' removal protections to vacate these injunctions. Indeed, this has been the approach of the Sixth Circuit, the only Court of Appeals to issue a decision on such claims. *See YAPP*, 2024 WL 4489598, at *2 (denying injunction pending appeal on identical claims without addressing the merits).

The *SpaceX* district court, however, did hold that the plaintiff was likely to succeed on the merits of its claim that Board Members—in addition to ALJs—were unconstitutionally insulated from removal. In so doing, the court sought to distinguish this Court's decision in *Consumers' Research*, which held that principal officers who are members of any "traditional independent agency headed by a multimember board" may

lawfully enjoy removal protections. 91 F.4th at 352 (citations omitted). The court suggested that the NLRB was distinguishable from other independent agencies because: (1) its Members may only be removed for "neglect of duty or malfeasance," while the FTC Commissioners discussed in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), could also be removed for "inefficiency"; and (2) its "distinctive structure divides prosecutorial authority between its Members (in the Section 10(j) context) and its politically accountable General Counsel." *SpaceX*, 2024 WL 3512082, at *4. This holding is clearly wrong.

The *SpaceX* district court's first reason for distinguishing *Consumers' Research* is nothing short of bizarre—because the good-cause provision affirmed in that case is *identical* to that which protects Board Members. *Compare Consumers' Rsch.*, 91 F.4th at 346 ("The President may remove a member of the Commission only for 'neglect of duty or malfeasance in office' (citing 15 U.S.C. § 2053(a)) *with* 29 U.S.C. § 153(a) (NLRB Members may be removed only for "neglect of duty or malfeasance in office"). Despite the immaterial differences in language that the *SpaceX* court emphasized, this Court held that the Consumer Product Safety Commission ("CPSC") and "the Federal Trade Commission (FTC),

an agency whose institutional design the Supreme Court considered in *Humphrey's Executor*" were "twins" because their removal provisions allowed for the removal of CPSC commissioners "only for *cause*." *Consumers' Rsch.*, 91 F.4th at 346. That holding controls here.

The *SpaceX* district court's second reason fares no better. Upon her request, Board Members can authorize the Board's General Counsel to seek preliminary injunctive relief in federal court—but the CPSC can also seek injunctions in court. *See, e.g.,* 15 U.S.C. § 2071(a). As can the FTC, both today, *see* 15 U.S.C. § 45(l), and when *Humphrey's Executor* was before the Supreme Court, *see FTC v. Klesner*, 25 F.2d 524, 524 (D.C. Cir. 1928) ("The Federal Trade Commission filed its petition in this court for an injunction to enforce an order of the Commission."). The fact that the Board's General Counsel, who must initiate the request to seek preliminary relief and actually litigate the cases, *is* removable-at-will, *see Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 443–44 (5th Cir. 2022), is a *non sequitur*. If anything, that fact only makes the NLRB *more* accountable to the President than those independent agencies whose structures this Court and the Supreme Court have already approved.

In *Consumers' Research*, some Judges on this Court expressed concerns about *Humphrey's Executor*'s continuing vitality in light of evolving jurisprudence concerning the separation of powers. *See* 91 F.4th at 346 (expressing concern that "the logic of *Humphrey*'s may have been overtaken"). The Court nevertheless acknowledged that "[a]s middle-management circuit judges, we must follow binding precedent, even if that precedent strikes us as out of step with prevailing Supreme Court sentiment." *Id.* Especially after the Supreme Court's denial of certiorari, *see Consumers' Rsch. v. CPSC*, No. 23-1323, 2024 WL 4529808 (U.S. Oct. 21, 2024), it is clear that *Humphrey's Executor* remains good law and requires that NLRB Members' removal protections be sustained. Therefore, plaintiffs could not possibly have demonstrated a likelihood of success on the merits of this claim, and the *SpaceX* district court erred in so concluding.

## V.    The Balance of Equities Weighs Strongly in Favor of Vacating the District Court's Preliminary Injunction in Case No. 24-10855

Finally, the district courts' injunctions suffer from an additional flaw—their failure to adequately weigh the balance of harms and the public interest. Unlike enforcement proceedings under other statutory

regimes, where the Government seeks civil penalties to promote compliance, the NLRB awards make-whole remedies that benefit victims of unfair labor practices, and, under the NLRA, is the exclusive forum where workers and unions may find relief. In *Aunt Bertha*, No. 24-10855, the delay caused by the district court's injunction will make it difficult, if not impossible, to remedy Findhelp's unfair labor practices and will likely continue to cause an erosion of support for the Union. The OPEIU requests that the Court consider the substantial harm to the workers and the Union caused by the injunction in balancing the equities and, in so doing, find that the equities weigh in favor of vacating the injunction.

"[M]ost, if not all conduct, that is prohibited by the NLRB has the potential to, and often does, cause serious harm" to the workforce affected by such unlawful employer conduct. *McKinney ex rel. NLRB v. Creative Vision Resources L.L.C.,* 783 F.3d 293, 299 (5th Cir. 2015). Especially damaging are unlawful labor practices involving discharges and unilateral changes to the terms and conditions of employment, where swift remedial action is necessary "to prevent the destruction of employee interest in collective bargaining, irreparable injury to the union's bargaining power, and the undermining of the effectiveness of any

resolution through the Board's processes." *Overstreet v. El Paso Disposal, L.P.,* 625 F.3d 844, 856 (5th Cir. 2010) (affirming district court injunction requiring reinstatement of discharged workers). The potential for such unremedied unfair labor practices to cause irreparable harm to workers' rights under the NLRA is only magnified in the context of nascent union organizing and first contract campaigns.

Findhelp's employees sought to organize a union in order to better the terms and conditions of employment. The outcome of the resulting secret ballot election was clear—147 of the 170 workers in Findhelp's Austin-based bargaining unit participated in the election, and of those casting valid ballots, almost 65% voted in favor authorizing the OPEIU to represent them. OPEIU was therefore certified as these workers' exclusive bargaining representative in April 2023.

Both before and after the election and the certification, Findhelp engaged in a coordinated program to undermine members' support for the Union. According to the Consolidated Complaint issued by the Board's General Counsel, Findhelp committed numerous unfair labor practices marked by anti-union animus, including discharging three employees because of their union activities, surveilling the employees'

union and protected concerted activities, disparately enforcing its policies to prohibit union solicitation, enforcing unlawful and discriminatory work rules that prohibited conversations about union activity, and prohibiting employees from talking about the union during working time.

These still-unremedied hallmark unfair labor practices have had a serious effect on OPEIU. A year-and-a-half after it was certified as bargaining representative following a conclusive majority vote, the Union still has no contract with Findhelp. And now, deprived by the district court injunction of the only forum in which it can reverse the effect of Findhelp's unlawful conduct, OPEIU can no longer promise its members that they will be made whole if they exercise their rights. Despite OPEIU's demonstrated support among a strong majority of workers when they voted for representation, this state of affairs has caused a loss of support for the Union and disaffection which resulted in the filing of a decertification petition.  See, *Aunt Bertha, A Public Benefit Corporation d/b/a Findhelp,* (Case No. 16-RD-351569).

Accordingly, depriving the Union and its members at Findhelp of a remedy for the unfair labor practices by delaying the Board proceedings inflicts a cognizable harm on the workers' Section 7 rights and

undermines their support for the Union. This harm, which was not addressed by the district court, is separate and apart from any harm that is suffered to the public interest by delaying enforcement of the NLRA by the Board. When weighed against the interests of Findhelp, the balance of equities weighs strongly in favor of vacating the district court's injunction and thus allowing the unfair labor practice proceedings against Findhelp to continue.

## CONCLUSION

The district courts' orders granting preliminary injunctions should be vacated.

Date: November 4, 2024

Respectfully submitted,

/s/ Andrew Lyubarsky
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plz NW
Washington, D.C. 20006
Tel: (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
.                120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3828
jbarker@pittalaw.com

*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2024, I caused the foregoing *amici curiae* brief to be filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit. The Court's CM/ECF system was used to file the brief, and service will thus be accomplished by the CM/ECF system on all CM/ECF registered counsel.

Dated: November 4, 2024

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,496 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

Dated: November 4, 2024

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

*Counsel for Amici Curiae*