Nos. 24-50627, 24-40533, 24-10855,

# United States Court of Appeals for the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee*,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*.

---

## On Appeal from the United States District Courts for the Northern, Southern, and Western Districts of Texas

---

## APPELLANTS' BRIEF

---

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
PAUL A. THOMAS
*Supervisory Attorney*
DAVID P. BOEHM
GRACE L. PEZZELLA
*Trial Attorneys*

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(202) 273-4202

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as Defendant-Appellants are a government agency and government officials. Fifth Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The Court has ordered expedited oral argument in these consolidated appeals. *See* ECF 41-1, Unpublished Order dated Oct. 11, 2024.

# TABLE OF CONTENTS

Statement of Jurisdiction ................................................................. 1

Statement of Issues ........................................................................ 2

Statement of the Case .................................................................... 2

  I.  Legal Background ................................................................... 2

    A.  Protection of labor rights under federal law. ................... 2

    B.  The structure of the NLRB and the roles of its administrative law judges and Board members. ....................................... 3

  II.  Procedural History—SpaceX ............................................... 7

    A.  Administrative Proceedings ............................................. 7

    B.  District Court Proceedings ............................................... 8

  III. Procedural History—Energy Transfer ............................... 10

    A.  Administrative Proceedings ........................................... 10

    B.  District Court Proceedings ............................................. 11

  IV. Procedural History—FindHelp ........................................... 13

    A.  Administrative Proceedings ........................................... 13

    B.  District Court Proceedings ............................................. 14

Summary of the Argument .......................................................... 15

Standard of review ...................................................................... 17

Argument ..................................................................................... 18

  I.  Congress has jurisdictionally barred injunctive relief in cases involving or growing out of labor disputes. ........................... 18

  II.  The district courts abused their discretion by granting Employers' preliminary injunction requests ........................................... 25

    A.  The district courts erred in finding that Employers are likely to succeed on their removability claims. ............................... 26

    B.  The district court erred in finding that Employers met their burden to show irreparable harm arising from the alleged constitutional infirmities. ............................................... 49

C. The district courts erroneously weighed the balance of equities and the public interest factors in granting the preliminary injunction.............................................................................59

CONCLUSION ..........................................................................66

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agostini v. Felton*,
   521 U.S. 203 (1997) ................................................................ 64

*Ahearn v. Jackson Hosp. Corp.*,
   351 F.3d 226 (6th Cir. 2003) ................................................. 88

*Alivio Med. Ctr. v. Abruzzo*,
   No. 24-cv-7217, 2024 WL 4188068
   (N.D. Ill. Sept. 13, 2024) ............................... 65, 71, 73, 91

*All American Check Cashing, Inc.*,
   33 F.4th 218 (5th Cir. 2022) ................................................. 78

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
   309 U.S. 261 (1940) ................................................................. 5

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ................................................................. 2

*Ares Collective Group, LLC v. NLRB*,
   No.CV-24-00517-TUC-SHR, (D. Ariz. Oct. 25, 2024) .......... 26

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ............................................................... 30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................... 61

*AT&T Broadband v. IBEW Loc. 21*,
   317 F.3d 758 (7th Cir. 2003) ................................................. 37

*Axon Enterprise, Inc. v. FTC*,
   598 U.S. 175 (2023) ............................................ 1, 2, 17, 63

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   591 U.S. 610 (2020) ............................................................... 80

*Benisek v. Lamone*,
   585 U.S. 155 (2018) ............................................................... 85

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................... 65

*Bhatti v. Fed. Hous. Fin. Agency*,
   97 F.4th 556 (8th Cir. 2024) ................................................. 46

*Bhd. of R.R. Trainmen, Enter. Lodge, No. 27, v. Toledo, P.&W.R.R.*,
   321 U.S. 50 (1944) ........................................................ 35, 36

v

*BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp.*
  *Workers—Transp. Div.,*
  973 F.3d 326 (5th Cir. 2020) ................................................................. 36
*Boys Markets, Inc. v. Retail Clerks Union,*
  398 U.S. 235 (1970) ............................................................................. 26
*BST Holdings, L.L.C. v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) ............................................................... 76
*Buffalo Forge Co. v. United Steelworkers of Am.,*
  428 U.S. 397 (1976) ............................................................................. 31
*Byrum v. Landreth,*
  566 F.3d 442 (5th Cir. 2009) ............................................................... 24
*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) ............................................. 47, 51, 54, 65
*Camping Constr. Co. v. Iron Workers,*
  915 F.2d 1333 (9th Cir. 1990) ............................................................. 38
*Carson v. USAA Casualty Ins. Co.,*
  110 F.4th 791 (5th Cir. 2024) ............................................................. 25
*CFPB v. Cmty. Fin. Servs. Ass'n of Am.,*
  601 U.S. 416 (2024) ............................................................................. 46
*Chambless Enters., LLC v. Redfield,*
  508 F. Supp. 3d 101 (W.D. La. 2020) ................................................. 76
*Cmty. Fin. Servs. Ass'n of Am. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ........................................................ passim
*Cmty. Fin. Servs. Ass'n of Am. v. CFPB,*
  104 F.4th 930 (5th Cir. 2024) ............................................................. 46
*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) ................................................... 57, 58, 59
*Collins v. Dep't of Treasury,*
  83 F.4th 970 (5th Cir. 2023) ......................................................... 49, 50
*Collins v. Yellen,*
  594 U.S. 220 (2021) ...................................................................... passim
*Columbia River Packers Assn., Inc. v. Hinton,*
  315 U.S. 143 (1942) ............................................................................. 28
*Consumers' Research v. Consumer Product Safety Commission,*
  91 F.4th 342 (5th Cir. 2024) ........................................................ passim
*Cortes v. NLRB,*
  No. 23-2954, 2024 WL 1555877 (D.D.C. Apr. 10, 2024) ................... 62

*Decker Coal Co. v. Pehringer*,
  8 F.4th 1123 (9th Cir. 2021) ........................................................ 47, 65
*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981) ................................................................ 76
*Dish Network Corp. v. NLRB*,
  953 F.3d 370 (5th Cir. 2020) ................................................... 67, 69, 70
*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) .............................................................................. 82
*Eisenberg v. Wellington Hall Nursing Home, Inc.*,
  651 F.2d 902 (3d Cir. 1981) ................................................................. 88
*Elrod v. Burns*,
  427 U.S. 347 (1976) .............................................................................. 76
*Exela Enter. Sols., Inc. v. NLRB*,
  32 F.4th 436, 445 (5th Cir. 2022) ........................................................ 72
*Free Enter. Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010) ................................................................. 62, 80, 81
*Hammontree v. NLRB*,
  925 F.2d 1486 (D.C. Cir. 1991) ........................................................... 87
*HHS v. Jarboe*,
  2023 M.S.P.B. 22 (2023) ...................................................................... 10
*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ...................................................................... passim
*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) .............................................................. 69
*In re Chocallo*,
  1 MSPR 605 (1980) ................................................................................ 9
*In re Marine Eng'rs Beneficial Ass'n*,
  723 F.2d 70 (D.C. Cir. 1983) ............................................................... 38
*In re S. Recycling, LLC*,
  982 F.3d 374 (5th Cir. 2020) ............................................................... 26
*In re Sac Fox Tribe of the Mississippi in Iowa/Meskawaki Casino Litig.*,
  340 F.3d 749 (8th Cir. 2003) ............................................................... 86
*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
  457 U.S. 702 (1982) ......................................................................... 28, 29
*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .......................................................... 16, 64
*John Doe Co. v. CFPB*,
  849 F.3d 1129 (D.C. Cir. 2017) ........................................................... 76

*K&R Contractors, LLC v. Keene,*
  86 F.4th 135 (4th Cir. 2023) .................................................. 47

*Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445 (W.D.
  Mich. Oct. 25, 2024) .............................................. 35, 39, 47

*L. Offs. of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023) ............................................. 47, 54

*Lambert* v. *Bd. of Comm'rs of Orleans Levy Dist.,*
  Civ. No. 5-5931, 2006 WL 8456316 (E.D. La. Mar. 22, 2006) ............. 77

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
  103 F.4th 748 (10th Cir. 2024) ..................................... passim

*League of United Latin Am. Citizens v. Abbott,*
  601 F. Supp. 3d 147 (W.D. Tex. 2022) .................................... 85

*Lodge No. 1424 v. NLRB,*
  362 U.S. 411 (1960) ..................................................... 87

*Lucia v. SEC,*
  585 U.S. 237, 248 (2018) ................................................ 64

*Lukens Steel Co. v. United Steelworkers of Am.,*
  989 F.2d 668 (3d Cir. 1993) .......................................... 30, 37

*Marine Cooks & Stewards v. Panama S.S. Co.,*
  362 U.S. 365 (1960) ..................................................... 29

*Munaf v. Geren,*
  553 U.S. 674 (2008) ..................................................... 41

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.,*
  760 F.2d 618 (5th Cir. 1985) ............................................ 83

*Nathanson v. NLRB,*
  344 U.S. 25 (1953) ...................................................... 86

*Nat'l Collegiate Master Student Loan Tr.,*
  96 F.4th 599 (3d Cir. 2024)............................................. 47

*Nat'l Licorice Co. v. NLRB,*
  309 U.S. 350 (1940) ..................................................... 86

*Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of
  Jacksonville,*
  896 F.2d 1283 (11th Cir. 1990)......................................... 75

*New Negro All. v. Sanitary Grocery Co.,*
  303 U.S. 552 (1938)..................................................... 28

*Nexstar Media, Inc. Grp. v. NLRB,*
  --- F. Supp. 3d ---, No. 4:24-cv-01415-BYP, 2024 WL 4127090 (N.D.
  Ohio Aug. 26, 2024) ..................................................... 33

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................. 39
*NLRB v. FLRA*,
  613 F.3d 275 (D.C. Cir. 2010) .............................................. 71
*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937) ............................................................ 3, 4, 70
*NLRB v. Scrivener*,
  405 U.S. 117 (1972) ................................................................ 89
*Pascarell v. Vibra Screw Inc.*,
  904 F.2d 874 (3d Cir. 1990) ................................................ 88
*Paulsson Geophysical Servs., Inc. v. Sigmar*,
  529 F.3d 303 (5th Cir. 2008) ............................................... 23
*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) ............................................... 86
*Richmond Hosiery Mills v. Camp*,
  74 F.2d 200 (5th Cir. 1934) ................................................. 75
*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................ 75
*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ............................................................... 81
*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020) ..................................................... passim
*Sheffield v. Bush*,
  604 F. Supp. 3d 586 (S.D. Tex. 2022) ................................. 76
*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) ........................................... 75
*Space Exploration Technologies v. Bell*,
  701 F. Supp. 3d 626 (S.D. Tex. 2023) ...................... 59, 60, 84
*Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*,
  No. 24-09016, 2024 WL 4563789 (D.N.J. Oct. 24, 2024) ..... 78
*SSA v. Anyel*,
  58 MSPR 261 (1993) ........................................................ 9, 11
*SSA v. Levinson*,
  2023 M.S.P.B. 20  (2023) .................................................... 10
*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) ........................................ passim
*Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*,
  22 F.3d 8 (1st Cir. 1994) ...................................................... 37

*Tex. Alliance for Ret. Ams. v. Hughs*,
    976 F.3d 564 (5th Cir. 2020)............................................................86
*Texas v. Biden*,
    10 F.4th 538 (5th Cir. 2021) ..........................................................18
*United Steelworkers v. Bishop*,
    598 F.2d 408 (5th Cir. 1979)......................................31, 32, 33, 34
*United Transp. Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000).....................................................23, 24
*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020)............................................................86
*Wenner v. Tex. Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997)............................................................83
*Wheeler v. Wexford Health Sources, Inc.*,
    689 F.3d 680 (7th Cir. 2012)............................................................76
*White v. Carlucci*,
    862 F.2d 1209 (5th Cir. 1989)...........................................24, 41, 75
*Wilson v. Off. of Violent Sex Offender Mgmt.*,
    584 F. App'x 210 (5th Cir. 2014) ...................................................40
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..............................................21, 39, 41, 90
*Wooten v. Ohler*,
    303 F.2d 759 (5th Cir. 1962)............................................................33
*YAPP USA Auto. Sys., Inc. v. NLRB*,
    --- F. Supp. 3d ---, No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept.
    9, 2024) ...........................................................................65, 73
*YAPP USA Auto. Sys., Inc. v. NLRB*,
    No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ............. passim

Statutes

5 U.S.C. § 1202(d) .......................................................................6
5 U.S.C. § 3105 ...........................................................................5
5 U.S.C. § 7521 ..........................................................................14
5 U.S.C. § 7521(a) .......................................................................6
15 U.S.C. § 2053(a) .....................................................................41
15 U.S.C. § 2064(g) .....................................................................48
15 U.S.C. § 53(b) ........................................................................48
28 U.S.C. § 1292(a)(1)...................................................................2
28 U.S.C. § 1331..........................................................................1, 36

29 U.S.C. § 101 ................................................................. 1, 2, 18,
29 U.S.C. § 104 ..................................................................... 1, 22
29 U.S.C. § 107 ............................................................. 1, 3, 18, 21
29 U.S.C. § 108 ..................................................................... 3, 24
29 U.S.C. § 110 ............................................................................ 2
29 U.S.C. § 113(a) ..................................................................... 18
29 U.S.C. § 113(c) ..................................................................... 19
29 U.S.C. § 153(a) ......................................................... 7, 41, 46
29 U.S.C. § 153(d) ................................................................. 4, 45
29 U.S.C. § 154(a) ....................................................................... 5
29 U.S.C. § 157 ...................................................................... 2, 3
29 U.S.C. § 158(a)(3) ................................................................ 60
29 U.S.C. § 160(a) ..................................................................... 42
29 U.S.C. § 160(c) ..................................................... 5, 38, 42, 60
29 U.S.C. § 160(h) ..................................................................... 20
29 U.S.C. § 160(j) ...................................................................... 47
29 U.S.C. § 160(m) .................................................................... 60
29 U.S.C. § 166 .......................................................................... 54
U.S. Constitution, Art. II, § 2, cl. 2 ........................................... 5

Rules

Fed. R. App. P. 28(d) ................................................................. 1

Regulations

29 C.F.R. § 102.177(b) .............................................................. 65
29 C.F.R. § 102.35(a) .............................................................. 7, 8
29 C.F.R. § 102.97 ..................................................................... 88

Other Authorities

H.R. Rep. 74-1371 ..................................................................... 66
H.R. Rep. No. 80-245 ................................................................ 87
*The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence,*
    121 Colum. L. Rev. 1 (2021) .............................................. 73

## STATEMENT OF JURISDICTION

The district courts below have subject-matter jurisdiction over the removal-restrictions claims upon which they granted preliminary-injunctive relief to each respective Employer under 28 U.S.C. § 1331.[1] These involve the tenure protections of National Labor Relations Board ("NLRB")[2] administrative law judges and Board members. But there is no subject-matter jurisdiction over other claims raised by various Employers; those claims did not form the basis of the injunctions granted in these cases.[3]

Whether or not the district courts below had subject-matter jurisdiction over any claim, they were jurisdictionally barred by statute from issuing injunctive relief because these cases involve and grow out of labor disputes under the Norris-LaGuardia Act. 29 U.S.C. §§ 101, 104, 107.

---

[1] To avoid excessive use of the term "Appellees," Fed. R. App. P. 28(d), we henceforth refer to the Appellees collectively as "Employers."

[2] References to "the NLRB" indicate the agency as a whole. References to "the Board" are to the five-member adjudicative body.

[3] Under the Supreme Court's holding in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), those claims cannot be raised in a collateral suit because they do not raise structural challenges to the agency's power to act in "all or a broad swath of its work." *Id.* at 189.

1

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) and 29 U.S.C. § 110.

## STATEMENT OF ISSUES

1.     Has any Employer seeking to enjoin an NLRB unfair-labor-practice proceeding below demonstrated an exception to the jurisdictional prohibition of injunctions in cases involving and growing out of labor disputes?

2.     Has any Employer seeking to halt an NLRB proceeding in these appeals met the demanding burden required to warrant a preliminary injunction?

## STATEMENT OF THE CASE

### I. Legal Background

*A. Protection of labor rights under federal law.*

Employees have "a fundamental right" to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937); *see* 29 U.S.C. §§ 101, 151, 157. But there is no private right of action to vindicate these rights, which were "unknown to the common

2

law." *Jones & Laughlin*, 301 U.S. at 48. Instead, for most private-sector workers, federal law protects these rights in two ways relevant here.

First, in the Norris-LaGuardia Act, Congress protected most labor disputes from judicial interference by forbidding federal courts from issuing injunctions—historically wielded against collective employee action—in "any case involving or growing out of a labor dispute," broadly defined, unless certain strict requirements are met. 29 U.S.C. §§ 107, 108. Second, in the National Labor Relations Act ("NLRA" or "the Act"), it created a system of public rights and remedies to protect employees from certain unfair labor practices which impair the exercise of those fundamental rights and thereby burden commerce. Enforcement of those public rights is entrusted solely to the NLRB, subject to review by circuit courts. *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 268 (1940).

> B. *The structure of the NLRB and the roles of its administrative law judges and Board members.*

The NLRB is the exclusive federal agency protecting employees' Section 7 rights under the NLRA. 29 U.S.C. § 157. The NLRA creates a bifurcated structure that separates the powers of the General Counsel and her staff, which are investigatory and prosecutorial, from those of

3

the five-seat Board and its administrative law judges ("ALJs"), which are adjudicative.[4]

Under Section 10 of the NLRA, the Board has final authority to adjudicate allegations that an employer or union has committed an unfair labor practice. *Id.* § 160. Such allegations arise out of charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the charge and issues a complaint. *Id.* §§ 153(d), 160(b). Such complaints are usually accompanied by a notice of hearing before an ALJ. NLRB Casehandling Manual, Part One § 10268.1 (June 2024), available at https://www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides. Alternatively, a hearing may also be held "before the Board or a member thereof." *Id.* § 160(b). This administrative process is the exclusive mechanism provided by Congress to enforce most of the NLRA's proscriptions against unfair

---

[4] The General Counsel also exercises "general supervision over all attorneys employed by the [NLRB] (other than [ALJs] and legal assistants to Board members) and over the officers and employees in the regional offices." 29 U.S.C. § 153(d).

labor practices; employees, unions, and employers may not bring their own private actions to enjoin ULPs.

The NLRB's ALJs are appointed in accordance with the U.S. Constitution, Art. II, § 2, cl. 2, Civil Service Reform Act, 5 U.S.C. § 3105, and the NLRA, 29 U.S.C. § 154(a). In presiding over unfair-labor-practice trials, NLRB ALJs' main role is to oversee development of an administrative record and ultimately issue a recommended decision to the Board. *See generally* 29 C.F.R. § 102.35(a) (enumerating powers of NLRB ALJs). Once an ALJ issues this decision, parties may file "exceptions" on any contested issue, asking the Board itself to rule upon the matter. *Id.* § 102.46(a). In so deciding, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law. *Id.* Indeed, the Board has explicit statutory authorization to take additional evidence upon notice to the parties. 29 U.S.C. § 160(c).

The process for removing an ALJ employed by the NLRB—and, indeed, by any other federal agency—is defined by statute. With a handful of enumerated exceptions, "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection

Board on the record after opportunity for hearing before the [MSPB]." 5
U.S.C. § 7521(a). Accordingly, removal of an NLRB ALJ is a two-step
process: (1) the Board must bring an action to remove an ALJ; and (2)
the MSPB must determine that good cause for removal has been
established. The MSPB has applied "good cause" to uphold removals or
suspensions of ALJs for many reasons, including failure to follow
applicable law, lack of judicial temperament, and bias. *See, e.g.*, *SSA v.
Anyel*, 58 MSPR 261, 269 (1993) (suspending an ALJ for persistent
failure to follow applicable law); *In re Chocallo*, 1 MSPR 605, 609–10
(1980) (removing ALJ for acts of disobedience, lack of judicial
temperament, and bias). The MSPB does not make a policy judgment as
to whether an ALJ should be removed; rather, its statutory role is
limited to reviewing the agency's determination that good cause for
removal exists. *See HHS v. Jarboe*, 2023 M.S.P.B. 22, ¶ 6 (2023); *SSA v.
Levinson*, 2023 M.S.P.B. 20, ¶¶ 37–38 (2023).

MSPB members can be removed "only for inefficiency, neglect of
duty, or malfeasance in office." 5 U.S.C. § 1202(d).

The NLRB's Board consists of five members, appointed by the
President with the advice and consent of the Senate, who serve

6

staggered terms of up to five years. *Id.* § 153(a). They may only be

removed "for neglect of duty or malfeasance in office." *Id.* In addition to

issuing final decisions in unfair-labor-practice cases, the Board also

conducts and certifies representation elections, *id.* § 159, and

promulgates rules and regulations implementing the NLRA, *id.* § 156.

But, importantly, orders of the Board are not self-enforcing. Section

10(e) of the NLRA provides that the Board must seek enforcement of its

orders from an appropriate Court of Appeals. *Id.* § 160(e). Conversely,

any "aggrieved" person may seek to set aside a final Board order in a

Court of Appeals under Section 10(f) of the NLRA. *Id.* § 160(f). Upon

enforcement, the Board's order becomes fully effective against the

agency respondent, and violations of that order are punishable as

contempt of the enforcing court.

## II.        **Procedural History—*SpaceX***

### A. Administrative Proceedings

This case stems from an unfair labor practice charge filed on

December 20, 2022, by a former employee of SpaceX in Redmond,

Washington. ROA.24-50627.107.[5] Following an investigation, the

NLRB's Seattle, Washington regional office issued an unfair-labor-

practice complaint on March 20, 2024. That complaint alleges that

specific provisions of SpaceX's severance agreement and its "Employee

Arbitration and Dispute Resolution Agreement and Class Action

Waiver" violate the NLRA. On April 30, 2024, the hearing in the unfair

labor practice complaint, initially scheduled for October 29, 2024, was

postponed indefinitely due to the filing of a related charge.[6]

### B. District Court Proceedings

On April 19, SpaceX filed a complaint in the United States District

Court for the Western District of Texas, alleging that the NLRB's ALJs

and Board members are unconstitutionally insulated from removal.

ROA.24-60627.13–14, 18–19, 21–22. A hearing was held on July 10

---

[5] "ROA.24-50627," "ROA.24-40533," and "ROA.24-10855" refer, respectively, to the Electronic Record on Appeal prepared by the district court in *Space Exploration Technologies Corp. v. NLRB*, No. W-24-CV-00203-ADA (W.D. Tex. 2024) ("*SpaceX*"); *Energy Transfer, LP v. NLRB*, No. 3:24-cv-198 (S.D. Tex. 2024) ("*Energy Transfer*"), and *Aunt Bertha d/b/a FindHelp v. NLRB*, No. 4:24-CV-00798 (N.D. Tex. 2024) ("*FindHelp*"). "ECF" refers to the docket in the instant appeal.

[6] "RD's Order to Reschedule Hearing," Apr. 30, 2024, https://www.nlrb.gov/case/19-CA-309274.

8

before District Judge Albright, who granted SpaceX's motion for preliminary injunction from the bench. ROA.24-50627.375, 405.

The district court thereafter issued an order providing the bases for granting SpaceX's request. ROA.24-50627.319–33. The court found that SpaceX had demonstrated a substantial likelihood of success on its claims that "Congress had impermissibly protected both the NLRB Members and the NLRB ALJs from the President's Article II power of removal," ROA.24-50627.320–21. The court rejected the NLRB's argument that a preliminary injunction is inappropriate where severance of any unconstitutional provision would be the appropriate remedy, finding that "consideration of severance is premature" before a final determination on the merits of SpaceX's complaint. ROA.24-50627.327–28. The court further found that, even if it did need to reach the issue of severability at this stage, there "is no appropriate way to sever any of the removal protections to remedy the constitutional problems with the NLRB's structure." ROA.24-50627.329.

The court found, without any specific analysis of documented or likely adverse consequences, that SpaceX sufficiently demonstrated that it would suffer an irreparable injury in the absence of preliminary relief from the bare fact of "being subjected to the authority of the unaccountable"

Board members and ALJ. ROA.24-50627.330–31. Finally, in addressing the balance of harms and public interest, the court determined that the government and public "suffers no cognizable harm from stopping the perpetuation of unlawful agency action." ROA.24-50627.332 (citation omitted).

### III.     Procedural History—*Energy Transfer*

#### A. Administrative Proceedings

On November 1, 2022, an Energy Transfer employee filed an unfair-labor-practice charge with the NLRB's Region 16 office in Fort Worth, Texas. As amended, the employee alleges that Energy Transfer unlawfully transferred his position within the company in retaliation for raising health and safety concerns, and later unlawfully terminated him. ROA.24-40533.154, 157. The Regional Director of Region 16 issued an administrative complaint on March 7, 2024, alleging that Energy Transfer's actions retaliated against the charging employee for his protected activity under the NLRA and his filing of a ULP charge. ROA.24-40533.157. An administrative law judge was scheduled to begin hearing this matter on July 30, 2024. ROA.24-40533.160.

### B. District Court Proceedings

On June 27, 2024, Energy Transfer filed its Complaint in the United States District Court for the Southern District of Texas raising four constitutional claims: (1) that the NLRB's Board members are unconstitutionally insulated from removal; (2) that NLRB administrative law judges are also unconstitutionally protected from removal; (3) that the NLRB's adjudicative process violates the Seventh Amendment; and (4) that the Board's purported combination of functions violates constitutional separation of powers and due process principles. ROA.24-40533.14–24. On July 3, 2024, Energy Transfer moved for a preliminary injunction, and a hearing was held on July 16, 2024. ROA.24-40533.6, 7.

After the hearing, on July 29, 2024, the district court (per District Judge Brown) issued an order granting Energy Transfer's request for a preliminary injunction, finding that Energy Transfer had met all four preliminary injunction factors. ROA.24-40533.310. First, the court held that the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024), required it to hold that Energy Transfer was likely to succeed on the merits of its

constitutional challenge to removal protections for NLRB ALJs.

ROA.24-40533.313–15. The district court further found that Energy

Transfer had "readily satisfied" the Supreme Court's requirement from

*Collins v. Yellen*, 594 U.S. 220 (2021), mandating a showing of "harm"

for removal-protection claims to be viable. ROA.24-40533.318. And the

court rejected the NLRB's argument that the availability of severance

as a remedy foreclosed Energy Transfer from obtaining a preliminary

injunction. ROA.24-40533.319. The court reasoned that severance

"would not provide Energy Transfer any relief from the impending

harm it [was] set to experience" at the administrative hearing. ROA.24-

40533.319.

Next, the district court concluded that Energy Transfer would be

irreparably harmed if the court did not issue a preliminary injunction.

The court found that Energy Transfer had shown irreparable harm in

the form of being subjected to "a proceeding by an unaccountable ALJ."

ROA.24-40533.320 (quoting *Axon*, 598 U.S. at 191).

Finally, with respect to the balance of equities and the public

interest, the court held that those factors favored granting an injunction

because there was "no public interest in the perpetuation of unlawful

agency action." ROA.24-40533.321 (quoting *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)). The district court further opined that regardless of the practical effect a preliminary injunction could have on parties not before the court, that such an injunction "[would be] directed only at the parties to this action, and . . . only temporary." ROA.24-40533.321. The court found that the NLRB's concern that such a preliminary injunction would "render the [NLRA] effectively toothless" did not outweigh Energy Transfer's claimed need for equitable relief. ROA.24-40533.321–22.

The district court did not decide whether Energy Transfer was entitled to preliminary injunctive relief on any of its other constitutional claims.

## IV.    Procedural History—*FindHelp*

### A. Administrative Proceedings

Aunt Bertha, a public benefit corporation doing business as FindHelp ("FindHelp"), is a Delaware corporation with its principal place of business in Austin, Texas. ROA.24-10855.65. Based on charges filed by the Office and Professional Employees International Union, AFL-CIO and by an individual employee, the Regional Director for the

NLRB's Region 16 office issued a Consolidated Complaint and Notice of Hearing alleging that FindHelp violated the NLRA in numerous respects, including by firing two union organizers, blocking employees from discussing the Union, and surveilling union activities both by software and by the activity of supervisors. ROA.24-10855.66–68. The complaint issued on April 12, 2024, scheduling an administrative hearing for September 23. ROA.24-10855.72.

### B. District Court Proceedings

On August 20, FindHelp filed a three-count complaint in the United States District Court for the Northern District of Texas [ROA.24-10855.9–26] alleging that the NLRB's ALJs and Board members are unconstitutionally insulated from removal and the NLRB's adjudicative processes violate the Seventh Amendment. ROA.24-10855.16, 19, 21. That same day, FindHelp moved for preliminary injunctive relief. ROA.24-10855.32–52.

On September 16, the district court (per District Judge Pittman) issued an order granting FindHelp's request for a preliminary injunction. ROA.24-10855.460–66. Relying on *Jarkesy*, the court found the Civil Service Reform Act's tenure protections for administrative law

judges, 5 U.S.C. § 7521 (described above), to be unconstitutional. ROA.24-10855.462. The court then adopted the reasoning of *Energy Transfer* in determining that FindHelp had satisfied *Collins*'s causal-harm requirement. ROA.24-10855.463–64. And the court rejected the NLRB's argument that severance is the appropriate remedy for removal-protections challenges, finding support for this ruling in *SpaceX* and *Energy Transfer*. ROA.24-10855.464.

Next, the district court determined that FindHelp would be irreparably harmed by "being subjected to a proceeding by an unaccountable ALJ." ROA.24-10855.464 (citing *Axon*) (internal quotations omitted). Finally, regarding the balance of equities and public interest factors, the court found that "the government suffers no cognizable harm from stopping the perpetuation of an unlawful agency action." ROA.24-10855.465 (citation omitted).

The district court did not decide whether FindHelp was entitled to preliminary injunctive relief on any of its other constitutional claims.

## SUMMARY OF THE ARGUMENT

Each case below involves an employer that believes it is entitled to indefinitely block the sole path to justice for alleged violations of the

NLRA: a proceeding before the NLRB, with review in a circuit court of appeals. Each injunction request fails both because such injunctions are jurisdictionally barred by an act of Congress and, even if not, none of the required factors support relief.[7]

In each case, as three other circuit courts have determined, success on the merits is foreclosed by lack of causal harm needed to state a claim for any right to relief for officer removability claims—the Board Member and ALJ tenure protections challenged made no difference to any of the proceedings complained of. And those tenure protections are presumptively valid under Supreme Court caselaw.

Nor can any Employer establish irreparable harm. The constitutional claims presented are not of the type that can be conclusively presumed to cause irreparable harm absent any evidence, and no party offers material evidence to support a harm finding.

Finally, the equities and public interest here by themselves warrant reversal. The decrees obtained by each of these employers thwart effective enforcement of a duly enacted federal statute and upend a system of industrial peace through law which has protected our

---

[7] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

nation for nearly ninety years. If not corrected by this Court, these decrees threaten to subject virtually any NLRB proceeding with a connection to this Circuit to indefinite delays before charging parties may vindicate their statutory rights. The courts below explicitly gave these statutory rights zero weight—that alone constitutes reversible error, even without the other errors catalogued above.

## STANDARD OF REVIEW

The question of subject-matter jurisdiction necessary to enter a preliminary injunction is reviewed de novo. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 306 (5th Cir. 2008). This Court "has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (cleaned up). The Court must do so even if the issue was not considered below. *See id.* While the ultimate decision to grant or deny a preliminary injunction is reviewed for abuse of discretion, *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989), questions of law, and determinative mixed questions of law and fact, are reviewed *de novo. Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). It is "necessarily" an abuse of discretion for a

17

district court to "base[] its ruling on an erroneous view of the law,"

*Carson v. USAA Casualty Ins. Co.*, 110 F.4th 791, 793 (5th Cir. 2024)

(citation omitted).

## ARGUMENT

### II. Congress has jurisdictionally barred injunctive relief in cases involving or growing out of labor disputes.

Absent a statutory exception, Congress has jurisdictionally

barred all "court[s] of the United States" from issuing injunctions "in

any case involving or growing out of a labor dispute." 29 U.S.C. § 107;

*see id.* § 101 *et seq.* (Norris-LaGuardia Act or NLGA); *Boys Markets,*

*Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970).[8] Each of these

---

[8] Owing to the abbreviated timeframe upon which these injunction requests were briefed and argued below, the limited briefing space provided by local rules, and the complexity of other issues presented, this issue was not raised in the district court cases. Because the Norris-LaGuardia Act's jurisdictional requirements go to the district court's power to grant a request for injunctive relief, its application "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). But if necessary, the NLRB urges that this question be remanded to the district courts to make particularized findings. As the parties asserting jurisdiction, plaintiffs have the burden of showing that relief sought is not subject to the Norris-LaGuardia Act's jurisdictional limitations. *See, e.g., In re S. Recycling, LLC*, 982 F.3d 374, 383 (5th Cir. 2020) (proponent bears burden of proving facts establishing federal subject-matter jurisdiction).

cases "involve[s]" and "grow[s] out of" a labor dispute.

29 U.S.C. § 113(a). As Congress explained:

> The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c).

Each of these cases plainly falls within the NLGA's capacious definition of "labor dispute." *SpaceX* involves the legality of proffered employment-related contracts—archetypal "conditions of employment." ROA.24-50627.108–110. Energy Transfer is alleged to have taken adverse employment actions in response to an employee's complaints about hazardous working conditions and filing a charge with the NLRB. ROA.24-40533.156–157. And FindHelp allegedly fired multiple employees and engaged in surveillance and other coercive acts to nip a union organizing drive in the bud. ROA.24-10855.66–68. In each case, "'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's*

*Ass'n*, 457 U.S. 702, 712–713 (1982) (quoting *Columbia River Packers Assn., Inc. v. Hinton*, 315 U.S. 143 (1942)).[9]

It is of no import that the employers' quarrel in the actions below is nominally with the government and its procedures rather than an employee or union. Norris-LaGuardia may not be construed so narrowly. "*Congress was intent upon taking the federal courts out of the labor injunction business* except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act." *Jacksonville Bulk Terminals*, 457 U.S at 712 (quoting *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960)).[10] And Congress understood that NLRA disputes were subject to Norris-LaGuardia's requirements; it included in Section 10 of the NLRA a limited exception

---

[9] Labor disputes do not require a union. *See, e.g., New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560 (1938).

[10] The Supreme Court has recognized two exceptions to the NLGA's strict requirements: "1) those to accommodate the strong federal policy in favor of [collectively bargained] arbitration; and 2) those to reconcile Norris-LaGuardia with other federal statutes." *Lukens Steel Co. v. United Steelworkers of Am.*, 989 F.2d 668, 678 (3d Cir. 1993). No Employer can point to a federal statute that would require reconciliation with Norris-LaGuardia because the injunctions sought here are "a judge-made remedy." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Such injunctive relief is "subject to express and implied statutory limitations." *Id.*

to Norris-LaGuardia allowing injunctions *only* in relation to enforcement or review of final orders of the Board or upon the Board's application for temporary relief. 29 U.S.C. § 160(h). To countenance an injunction against *non-final* Board action would enlarge this limited exception in contravention of its plain meaning. *See Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 407 (1976) (exceptions to Norris-LaGuardia's anti-injunction policy to accommodate other laws are to be construed narrowly).

And significantly, the relevant inquiry is not whether these lawsuits themselves constitute labor disputes, but whether they "involved" or "gr[e]w out" of such a dispute. 29 U.S.C. § 107; *see United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979). In *Bishop*, this Court held invalid an injunction preventing picketing from interfering with removal of customer-owned materials from a strike-bound steel fabricating plant in a replevin action brought by the customer. *Id.* at 410. In so doing, the Court found that "[t]he fact that the labor dispute was between the employer . . . and its employees'

Union, while the case *obtaining* before the district court involved the employer and its customer, cannot control." *Id.* at 414.[11]

The Court thus must consider the origin of the dispute and the practical effect of injunctive relief, rather than the plaintiff's cause of action or the identity of the parties. Otherwise, for example, "an employer could be relieved of much of the economic impact of a strike without actually enjoining the strike itself." *Bishop*, 598 F.2d at 414. Here, even if they are suing the NLRB and its officers, each employer is attempting to relieve itself of particular NLRA obligations: in the case of SpaceX, to conform its employment contracts to the law; with respect to Energy Transfer and FindHelp, to rehire and make whole employees discharged in alleged violation of the NLRA; and regarding FindHelp, to

---

[11] *See Nexstar Media, Inc. Grp. v. NLRB*, --- F. Supp. 3d ---, No. 4:24-cv-01415-BYP, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (court "unpersuaded" by similar arguments as suit was "intended to divert the NLRB's ability to administratively resolve the dispute initiated by [a union on behalf of employees]"). Nor does this case resemble *Wooten v. Ohler*, 303 F.2d 759 (5th Cir. 1962), where Norris-LaGuardia was found inapplicable to an injunction under civil-rights statutes against a "state peace officer" interfering with First Amendment-protected picketing of a labor union. *Id.* at 762. Notably, such picketing is itself protected by Norris-LaGuardia, 29 U.S.C. § 104. And, as this Court's later holding in *Bishop* makes clear, a lawsuit need not be between an employer and employee or union to involve or grow out of a labor dispute.

recognize and bargain with a union. In other words, these employers are demanding that courts wield injunctive powers to interfere in labor disputes. That cannot be done.

Independently, even where injunctive relief is permitted by the NLGA, the applicant must both [1] "comply with any obligation imposed by law" *and* [2] "make every reasonable effort to settle the dispute," including through government dispute resolution machinery. *Bhd. of R.R. Trainmen, Enter. Lodge, No. 27, v. Toledo, P.&W.R.R.,* 321 U.S. 50, 56-57 (1944). These requirements are conjunctive. *Id.* And they apply even if the asserted basis for the injunction arose after the labor dispute. *See id.* at 56 (finding that "[i]f [statutory procedures] had been used, it would have averted . . . the need for an injunction").[12]

Employers fail to meet this standard in this case. First, refusal to exhaust an "administrative avenue" to resolve a controversy—here, the NLRB's unfair labor practice proceedings—is a bar to injunctive relief. *See BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp.*

---

[12] This provision was added to ensure applicants for injunctive relief operated with "clean hands" and was intended to deny such relief to those who "deliberately and steadfastly" refused to utilize statutory procedures. *Trainmen,* 321 U.S. at 66.

*Workers—Transp. Div.*, 973 F.3d 326, 342 (5th Cir. 2020) (failure to pursue proceedings under Railway Labor Act precluded injunction).[13] And none of these employers have made "every reasonable effort" to resolve their differences with their employees—and in the case of FindHelp, their employees' union—before invoking the equitable powers of a federal court. 29 U.S.C. § 108. Indeed, their position appears to be that they are entitled to an injunction against the operation of the very "obligation[s] imposed by law" they are jurisdictionally obligated to exhaust prior to seeking injunctive relief. *Id.*

Because no Employer can meet its burden to demonstrate any exception to Norris-LaGuardia's limitations, each of the appealed injunctions is void for want of jurisdiction.

---

[13] Consistent with these limitations, courts may not issue injunctions preventing unions or employees from resolving differences with an employer in non-judicial forums. *See AT&T Broadband v. IBEW Loc. 21*, 317 F.3d 758, 759–62 (7th Cir. 2003); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 11–13 (1st Cir. 1994); *Lukens Steel Co.*, 989 F.2d at 676–79; *Camping Constr. Co. v. Iron Workers*, 915 F.2d 1333, 1342–46 (9th Cir. 1990); *In re Marine Eng'rs Beneficial Ass'n*, 723 F.2d 70, 74–76 (D.C. Cir. 1983) (each holding that Norris-LaGuardia applies to employer-filed complaints seeking to enjoin labor arbitrations).

### III. The district courts abused their discretion by granting Employers' preliminary injunction requests.

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The final two injunction factors— balance of harms and the public interest— "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). All requirements must be met. *See Wilson v. Off. of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.). Likelihood of success on the merits is "just one piece of the puzzle," and as Judge Bibas recently explained on behalf of the Third Circuit, finding an entitlement to a preliminary injunction on this factor alone would "collapse[] the four factors into one." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024), *petition for cert. filed*, No. 24-309 (Sept. 18, 2024).

Irreparable harm must "without question" be satisfied by "independent proof." *White*, 862 F.2d at 1211. And "[a] preliminary

injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).

    **B.**   *The district courts erred in finding that Employers are likely to succeed on their removability claims.*

For the reasons just explained, Employers' preliminary injunction requests are jurisdictionally foreclosed by the Norris-LaGuardia Act. But even on their own terms, Employers' arguments fail to satisfy *Winter*'s stringent requirements. 555 U.S. at 20.

1.  Employers fatally fail to show a causal link between either ALJ or Board member removal protections and any aspect of their actual cases.

   a.    *No injunction can issue against a proceeding based solely on removability grounds, in the absence of a showing that the challenged restrictions caused real-world harm.*

Employers cannot support an injunction with nothing more than the bare existence of statutes restricting the removal of administrative law judges and Board members. Supreme Court and Fifth Circuit precedent renders these challenges fatally flawed.

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court made clear that removal-restriction claims are materially distinct from officer-appointment claims. The Court explained that when an official is "properly *appointed*," there is no claim that he "exercise[d]…power that [he] did not lawfully possess," and thus, "there is no reason to regard any of the actions taken…as void." *Id.* at 257–58. The Court then held that a showing of an infirm removal provision, in the abstract, is not enough to sustain a cause of action; rather, a plaintiff challenging a removal restriction is entitled to relief only when the challenged

restriction "inflict[ed] compensable harm" on the plaintiff. *Id.* at 259.[14]

In other words, the "mere existence of an unconstitutional removal

provision . . . generally does not automatically taint Government action

by an official unlawfully insulated." *Id.* at 267 (Thomas, J., concurring).

Accordingly, to obtain relief based on an allegedly invalid removal

restriction, the plaintiff must show that the provision actually

prejudiced the President's control of the administrative proceeding—for

example, by identifying a public statement in which the President

"express[es] displeasure with actions taken by" the unlawfully insulated

official and "assert[s] that he would remove" that official "if the statute

did not stand in the way." *Collins*, 594 U.S. at 259–60.

This Court, consistent with *Collins*, has held that there are "three

requisites for proving harm: (1) a substantiated desire by the President

to remove the unconstitutionally insulated actor, (2) a perceived

inability to remove the actor due to the infirm provision, and (3) a nexus

between the desire to remove and the challenged actions taken by the

insulated actor." *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616,

---

[14] We refer to this concept as "causal harm" to avoid the implication
that non-compensatory relief could be awarded.

631–33 (5th Cir. 2022) ("*CFSA*").[15] This sets a high bar, and every other circuit to have considered claims challenging allegedly unconstitutional tenure protections has joined this Court in demanding a showing of causal harm.[16]

The Tenth Circuit thus held that a plaintiff seeking a preliminary injunction on removability grounds must "make a showing that the challenged removal provisions actually impacted, or will impact, the actions taken by the [agency] against it." *Leachco*, 103 F.4th at 757 (10th Cir. 2024). And consistent with this clear rule, earlier this month, a unanimous Sixth Circuit motions panel denied a request for an injunction pending appeal based on challenges to NLRB Board member

---

[15] An unrelated holding from *CFSA* was subsequently reviewed and reversed by the Supreme Court. *See* 601 U.S. 416 (2024). The Fifth Circuit then formally reinstated the portion of its opinion addressing *Collins*. *See* 104 F.4th 930 (5th Cir. 2024).

[16] *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 765 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 13, 2024); *Bhatti v. Fed. Hous. Fin. Agency,* 97 F.4th 556, 561 (8th Cir. 2024); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 613–16 (3d Cir. 2024), *petition for cert. filed*, No. 24-185 (Aug. 16, 2024); *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 150 (4th Cir. 2023); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 179–81 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024); *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), *rev'd per curiam on other grounds,* 598 U.S. 623 (2023); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021).

and ALJ removal protections, holding that the causal-harm requirement applies where a party is seeking to enjoin an administrative proceeding. *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at 3–5 (6th Cir. Oct. 13, 2024).[17] Justice Kavanaugh then denied that same challenger's application for writ of injunction without referring the application to the whole Court or even calling for a response.[18] By the same token, following *Collins* and *CFSA*, this Court affirmed the dismissal of the *Collins* plaintiffs' complaint for failure to state a claim where the plaintiffs failed to allege facts sufficient to establish causal harm. *Collins v. Dep't of Treasury*, 83 F.4th 970, 982–84 (5th Cir. 2023).

---

[17] In September, the Eighth Circuit similarly denied a motion for an injunction pending appeal seeking to stop a proceeding before the Federal Trade Commission on ALJ-removability grounds. *H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir. Sept. 13, 2024). A subsequent request for en banc reconsideration was also denied. *H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir. Oct. 15, 2024). Neither order provided an explicit basis for the court's rulings. Both orders are appended as Exhibit A.

[18] No. 24A348 (U.S. Oct. 15, 2024) (Kavanaugh, J., in chambers) https://www.supremecourt.gov/docket/docketfiles/html/public/24a348.html.

The law is thus settled: "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Id.* at 982 (quoting *CFSA*, 51 F.4th at 632).

> b.   *Employers cannot show causal harm, and are not exempt from doing so merely because they have sued prior to hearing.*

Employers presented zero evidence in the proceedings below that the ALJs' and Board members' removal protections have caused, or would cause, any prejudice to them. ROA.24-5062718–23, 79–87; ROA.24-40533.14-19, 77–81, 86-87; ROA.24-10855.16–21, 39–43, 48–50. They have thus failed to satisfy any of the requirements to show causal harm under *CFSA* and are not entitled to injunctive relief. *YAPP,* 2024 WL 4489598, at *3 (noting challenger's failure to explain how removal protections for NLRB Board members or ALJs would "*specifically impact[]*" agency proceedings) (quoting *Calcutt*, 37 F.4th at 315)*; see also Leachco*, 103 F.4th at 757.

Rather than grappling with the requirement to show causal harm, the district courts below simply moved the goalposts. The district court

in *SpaceX* appears to have dispensed with the causal harm requirement altogether: with respect to both Board members and ALJs, it found a plaintiff may succeed on the merits if the officials in question "are unconstitutionally insulated from removal." ROA.24-50627.322. The courts in *Energy Transfer* and *FindHelp* acknowledged *Collins*' causal harm requirement but refused to fully apply it; because those plaintiffs were not seeking to invalidate past agency action, both courts reasoned that the mere existence of the removal provision, absent any showing of prejudice, established the required harm. ROA.24-40533.318; ROA.24-10855.463. But this Court could not have been clearer: the concrete injury required by *Collins*'s causal-harm holding "did not rest on a distinction between prospective and retrospective relief." *CFSA*, 51 F.4th at 631; *accord YAPP,* No. 24-1754, 2024 WL 4489598, at *5 (reaffirming *Calcutt*'s holding that the distinction between retrospective and prospective relief "does not matter"); *Leachco*, 103 F.4th at 757 (agreeing with the Second, Fifth, and Sixth Circuits). Causal harm is a required element of any officer-removability claim, not a question of remedy. *See Calcutt*, 37 F.4th at 316 ("The *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a

remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief."), *quoted in CFSA*, 51 F.4th at 631; *Crystal Moroney*, 63 F.4th at 180–81 (applying *Collins* where the plaintiff, the CFPB, requested prospective relief—enforcement of a civil investigative demand).

Thus, the Tenth Circuit recently affirmed the denial of a preliminary injunction sought on identical grounds. *See Leachco*, 103 F.4th at 765. The *Leachco* plaintiff could identify nothing about the proceeding that would be different if the challenged removal restrictions did not exist. *Id.* at 757; *accord YAPP*, No. 24-1754, 2024 WL 4489598, at *3. Nor can Employers.

The *Energy Transfer* court's attempt to reconcile its holding with *Collins* by stating that *Collins* is "readily satisfied" by a plaintiff simply pleading that it is appearing before an unconstitutionally protected actor is wholly unpersuasive. ROA.24-40533.318. This supposed standard—which, since every plaintiff in a case of this nature would definitionally meet it, is not a standard at all—does not even require

plaintiffs to satisfy *any* of the requirements of *Collins*, as interpreted by the Fifth Circuit in *CFSA*—i.e., a stated desire to remove the insulated actor by the President, an inability to do so based on the removal provision, and a causal nexus between the two. 51 F.4th at 632. Because it adopted *Energy Transfer*'s faulty reasoning, the district court's decision in *FindHelp* is equally flawed. ROA.24-10855.463–64.

Equally unavailing is *Energy Transfer*'s citation to this Court's *en banc* decision in *Cochran v. SEC*, 20 F.4th 194, 210 & n.16 (5th Cir. 2021). ROA.24-40533.317–18. The constitutionality of removal restrictions was not yet at issue in *Cochran*, much less the remedies available in the event that restrictions were found unconstitutional. Those cases had been dismissed for want of jurisdiction at the district-court level, so when they arrived in this Court, the sole "question presented [was] whether a provision of the Securities Exchange Act of 1934 . . . implicitly strips federal district courts of subject-matter jurisdiction to hear structural constitutional claims." *Cochran*, 20 F.4th at 197–98; *id.* at 199 ("The sole issue on appeal is whether the district court had subject-matter jurisdiction over Cochran's claims."); *id.* at 211 ("[T]his case presents only the issue of whether the Exchange Act

divested district court jurisdiction over claims that SEC ALJs are unconstitutionally insulated from the President's removal power; our holding extends no further . . . .").

In *Cochran*, this Court went no further than recognizing a plaintiff's right to bring a pre-enforcement collateral challenge. It did not, contrary to the district court's finding in *Energy Transfer*, create a right to relief. ROA.24-40533.317–18. As this Court subsequently determined in *CFSA*, the right to relief on removal challenges is predicated on plaintiffs' ability to establish causal harm. That decision, and its application of *Collins*, controls here.[19] Nor does a party's framing of their injury as merely having to "participate in an unconstitutional proceeding" circumvent the need to establish causal harm. *Contra*

---

[19] Contrary to the various opinions below, [ROA.24-50627.329–30; ROA.24-40533.320], *Space Exploration Technologies v. Bell* provides no support for the notion that any removability challenge automatically warrants an injunction. 701 F. Supp. 3d 626, 634–35 (S.D. Tex. 2023). *Bell* discussed *Axon*'s "here-and-now injury" language in addressing 1) standing to bring a removal claim, and 2) whether irreparable harm stemmed from appearing before an unconstitutionally *appointed* officer. *Id.* at 631, 634. It in fact expressly *rejected* a request for injunctive relief on removability grounds, *id.* at 634–35, and said nothing about *Axon*'s relation to establishing the necessary harm laid out in *CFSA* for a removal-protection claim. (For further discussion of the *Bell* decision, which relied on severance principles, see below at p. 57–58.)

ROA.24-40533.317 & n.4. The lesson of *Collins* is that even if such an injury is subject to a collateral challenge, it does not establish a right to relief without a showing of causation. 594 U.S. at 257 (considering relief "with respect to only the actions that confirmed Directors have taken to *implement* [policy] during their tenures); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the-defendant-unlawfully-harmed-me accusation" fails to state a claim).

Unsurprisingly, *Energy Transfer*'s analysis has been repeatedly rejected by other courts. *See, e.g., YAPP*, No. 24-1754, 2024 WL 4489598, at *2; *Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, slip op. at 11 (W.D. Mich. Oct. 25, 2024) (Exhibit B); *cf. Cortes v. NLRB*, No. 23-2954, 2024 WL 1555877, at *4 (D.D.C. Apr. 10, 2024), *appeal docketed*, No. 24-5152 (D.C. Cir. June 10, 2024).[20]

---

[20] Even if a remedy were available for a removability claim, it would not entail injunctive relief. *See Free Enter. Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 508–11 (2010) (rejecting prospective injunctive relief against agency component headed by officials with invalid removal protections). *Cf. Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 235 (2020) (severance of removal protection for single-director agency was proper remedy).

<blockquote>

c.    A "here-and-now" injury sufficient for
      jurisdictional purposes under Axon does not state
      a claim or confer a right to relief.

</blockquote>

The Supreme Court's finding in *Axon* that a proceeding before an unconstitutional tribunal "cannot be undone" did not dispense with *Collins*'s causal-harm requirement. 598 U.S. at. As this Court has recently explained, "*Axon* is a case about the original jurisdiction of federal courts under 28 U.S.C. § 1331." *FTC v. U.S. Anesthesia Partners, Inc.*, No. 24-20270, slip op. at 7 (5th Cir. Aug. 15, 2024) (order granting motion to dismiss appeal). Put differently, *Axon* addressed only whether a district court could consider a constitutional challenge to an agency's structure where the normal course would allow only for judicial review of final agency action; it opens the courthouse door, but it does not dispense with a plaintiff's burden to show irreparable harm when seeking an injunction, nor establish any right to relief.

In briefing below, Employers all appeared to argue that the Supreme Court's finding in *Axon*—that a proceeding before an unconstitutional tribunal "cannot be undone"—dispensed with *Collins*'s causal harm requirement. 598 U.S. 175, 191 (2023). ROA.24-50627.85–87; ROA.24-40533.87; ROA.24=10855.48–50. That theory requires the

37

unsupported and implausible finding that *Axon*'s holding impliedly overruled *Collins'*s explicitly articulated causal-harm requirement of just two years prior.[21] Even if that argument made any sense—and it doesn't—this Court would not be permitted to make such a leap. Where there is Supreme Court precedent directly on point, even if it "appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

### 2.    NLRB ALJ tenure protections are constitutional.

Although it is unnecessary to address this issue given the plethora of other flaws in the decisions below, those decisions are also wrong on the merits of whether there exists a constitutional flaw in NLRB ALJs' removal protections. *Jarkesy v. SEC*, in which a split panel of this Court found removal protections for SEC ALJs unconstitutional, does not

---

[21] Indeed, Justice Kagan, the author of *Axon*, made clear her view in *Collins* that "plaintiffs alleging a removal violation are entitled to injunctive relief . . . only when the President's inability to fire an agency head affected the complained-of decision," and that "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." 594 U.S. at 274–75 (Kagan, J., concurring).

directly control the case at bar. 34 F.4th 446, 463 (2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). NLRB ALJs' powers are materially more restricted in scope than those this Court found could be exercised by SEC ALJs. *See id.* at 464 (noting that SEC ALJs could "punish contemptuous conduct," and that "often their decisions are final and binding") (citing *Lucia v. SEC*, 585 U.S. 237, 248 (2018)).[22] Neither characteristic is true of NLRB ALJs. They cannot punish noncompliance generally; they may only exclude persons engaged in misconduct "at any hearing before" an ALJ. 29 C.F.R. § 102.177(b). And ALJs' decisions are definitionally nonfinal under the NLRA. 29 U.S.C. § 160(c) ("In case the evidence is presented . . . before an administrative law judge . . . such judge . . . shall issue . . . a recommended order, which shall be filed with the Board, and if no exceptions are filed . . . such recommended order shall become the order of the Board . . . ."); *see Bennett v. Spear*, 520 U.S. 154, 179 (1997) (finality requires that an action be "consummation of the agency's decision making process").

---

[22] In citing *Jarkesy*, Appellants assume *arguendo* that those statements were correct for purposes of panel decision. The NLRB preserves the right to challenge those conclusions, if necessary to do so, in *en banc* or *certiorari* proceedings.

If *Jarkesy* does apply, this Court's rule of orderliness precludes this panel from overruling it. But Appellants preserve the argument that it should be overruled or substantially limited. The scope of the President's constitutional powers is not infringed upon here, because ALJs exercise purely adjudicative authority. *See Leachco*, 103 F.4th at 764; *Calcutt*, 37 F.4th at 319–20; *Decker Coal*, 8 F.4th at 1133. Numerous district courts agree. *See YAPP USA Auto. Sys., Inc. v. NLRB*, --- F. Supp. 3d ---, No. 24-12173, 2024 WL 4119058, at *7–8 (E.D. Mich. Sept. 9, 2024); *Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024); *Trinity Health*, No. 1:24-cv-445, slip op. at 12 n.5.  The Supreme Court's holding in *Free Enterprise Fund* is therefore inapplicable to the removal–protection statute that applies to NLRB ALJs. *See Leachco*, 103 F.4th at 763–65.

> 3.    Board member removal protections are constitutional.

Employers' Article II challenges to Board member removability are foreclosed by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). In that decision, the Supreme Court held that members of the Federal Trade Commission (FTC), who were part of a multi-member, decisionmaking body of experts, could be constitutionally insulated from

removal by the President. *Id.* at 630–32. The Court reasoned that Congress's grant of tenure protections was constitutional and did not interfere with the President's authority because FTC commissioners performed "quasi-legislative and quasi-judicial" functions. *Id.* at 629. Relying on *Humphrey's Executor*, Congress created the NLRB less than two months after that decision and modeled it after the FTC. *See* H.R. Rep. 74-1371, at 4 (1935) (stating that the NLRB "is to have a similar status to that of the Federal Trade Commission" and describing express removal protections for Board members as "desirable in the light of" *Humphrey's Executor*), *reprinted in* 2 NLRB, Legislative History of the National Labor Relations Act, 1935, at 3255 (1949); *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) (noting that the NLRB and FTC share certain salient features).

Employers below, and the district court in *SpaceX*, contend that if an agency's principal officers wield "substantial executive power," *Humphrey's Executor* does not apply. ROA.24-50627.81–82, 325–26; ROA.24-40533.78; ROA.24-10855.41–42. This position hinges on the implicit assertion that *Seila Law LLC v. CFPB* radically upended decades of precedent and practice by supplanting *Humphrey's Executor*

with a new legal rule that allows principal officers serving on multi-member boards or commissions to receive removal protections only if they do not exercise "substantial executive power." The claim is particularly surprising given that *Seila Law* expressly disavowed that it was disturbing any of the Court's prior precedents. In striking down a removal protection in the "novel context" of an agency headed by a single individual, the Court was explicit that its decision did "not revisit . . . prior decisions allowing certain limitations on the President's removal power." 591 U.S. at 204.

Indeed, this Court recently rejected the central premise of this argument in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024), *cert. denied*, No. 23-1323, 2024 WL 4529808 (Oct. 21, 2024). In that decision, this Court addressed a challenge to the removal protections—identical to those of Board members—for commissioners on the Consumer Product Safety Commission (CPSC). *Id.* at 346–47. *Compare* 15 U.S.C. § 2053(a), *with* 29 U.S.C. § 153(a). This Court broadly held that *Humphrey's Executor* "still protects *any* 'traditional independent agency headed by a multimember board.'" 91 F.4th at 352 (quoting *Seila Law*, 591 U.S. at

42

207) (emphasis added). Notably, this Court found that the CPSC "exercises substantial executive power (in the modern sense)," *id.* at 353–54, and listed relevant examples of such power, *id.* at 346 (citing CPSC's "authority to promulgate safety standards and to ban hazardous products" as well as its "power to launch administrative proceedings, issue legal and equitable relief, and commence civil actions in federal courts," including actions seeking injunctive relief and even civil monetary penalties). Nonetheless, this Court found that these powers did not affect the validity of the CSPC commissioners' removal protections.[23] *See also Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) (rejecting attempt to limit *Humphrey's Executor* only to the FTC as it existed in 1935).

Further, in assessing the continuing vitality of *Humphrey's Executor* and rejecting arguments nearly identical to the ones Employers raised below, this Court identified three key characteristics

---

[23] In comparison, the Board's authority is significantly less robust. Although the Board also has rulemaking authority, it cannot initiate administrative proceedings, seek civil monetary penalties, or provide any other form of nonremedial relief. 29 U.S.C. § 160(a), (c). In addition, the Board's orders are not self-enforcing. *Dish Network*, 953 F.3d at 375 n.2. As such, the justification for upholding the removal protections at issue here is at least as strong as in *Consumers' Research*.

of the CPSC that make its removal restrictions distinguishable from those that the Supreme Court declared unconstitutional in *Seila Law*. As enumerated below, all three features apply with equal force to the NLRB.

First, this Court indicated that "the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." 91 F.4th at 354 (quoting *Seila Law*, 591 U.S. at 220). "In other words, historical pedigree matters," and unlike agencies where removal protections were found unconstitutional, this Court found that the CPSC "has history on its side." *Id*. If this is true for the CPSC—which was founded in 1972—it is undoubtedly so for the NLRB, which was founded in 1935, modeled after the FTC, and survived an immediate constitutional challenge after its enactment. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 49 (1937); *Dish Network*, 953 F.3d at 375 n.2.

Second, this Court noted that "the [CPSC] does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the [Consumer Financial Protection Bureau (CFPB)] unconstitutional"—that is, leadership by a single director, who was

44

shielded from removal by the President. 91 F.4th at 354. The NLRB, as "a prototypical traditional independent agency, run by a multimember board," falls equally within this reasoning. *Id.* (cleaned up).

Third, this Court found that "[CPSC] does not have any of the features that combined to make CFPB's structure even more problematic in *Seila Law*." *Id.* (cleaned up). As with the CPSC, the NLRB's "staggered appointment schedule means that each President *does* have an opportunity to shape [its] leadership and thereby influence its activities." *Id.* (cleaned up). Nor does the NLRB "receive funds outside the appropriations process," such that the President would be denied influence over the agency's activities "via the budgetary process." *Id.* at 355 (cleaned up). Thus, the Board lacks any of the features that could take it outside the scope of *Humphrey's Executor*. *See Alivio Med. Ctr.*, 2024 WL 4188068, at *7 ("The organizational features of the NLRB match the profile of an agency that fits within the parameters of the *Humphrey's Executor* removal exception.").

Ultimately, these claims fail on their own terms because Employers cannot show that Board members somehow exercise more "substantial" executive power than FTC or CPSC commissioners whose

removal protections are indisputably valid under precedent that binds this Court. In at least two ways, the Board is "unique" among its regulatory peers in the *limited* nature of the executive functions it carries out. *NLRB v. FLRA*, 613 F.3d 275, 281 n.* (D.C. Cir. 2010). First, the Board depends entirely on outside entities to file unfair-labor-practice charges or representation petitions before it can engage in adjudication. *See generally* 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.III.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017). Second, the NLRB's politically accountable General Counsel is independent of the Board and is ultimately responsible for all unfair-labor-practice investigations and prosecutions. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022) (President lawfully removed General Counsel without cause). These structural features contextualize the limited executive power the Board exercises in comparison to other multimember boards and commissions. Viewed in this light, there are simply no grounds for concluding that Board members somehow exercise more "substantial" executive power than FTC or CPSC

commissioners whose removal protections have been repeatedly upheld by the Supreme Court, this Court, and various other courts.

In sum, the NLRB's structure fits squarely into *Humphrey's Executor*'s permission of removal protections for multimember, fixed-term boards and commissions. Because *Humphrey's Executor* remains good law and applies not just to the FTC but to "dozens of other agencies" like the NLRB, *Consumers' Rsch*, 91 F.4th at 352, Board members' removal protections are constitutional. *Id.* at 356 ("*Humphrey's* does settle the question.").

The district court in *SpaceX* attempted to distinguish *Humphrey's Executor* by claiming that Board members' removal protections are "stricter" than those at issue in that case because Board members can be removed "for neglect of duty or malfeasance in office," 29 U.S.C. § 153(a), but not inefficiency. ROA.24-50627.326. While Congress could have added "inefficiency" as an additional ground for Board member removal, as it did to address the specific problem of patronage hires in other offices, this further ground goes beyond what is required by the Constitution's Take Care Clause. *See YAPP*, 2024 WL 4119058, at \*6 n.4 (citing Jane Manners & Lev Menand, *The Three Permissions:*

47

*Presidential Removal and the Statutory Limits of Agency Independence*,
121 Colum. L. Rev. 1, 68–69, n.383 (2021) (explaining that the absence
of inefficiency as a ground for removal does not unconstitutionally
interfere with the President's authority)); *accord Alivio*, 2024 WL
4188068, at *8 n.5; *Trinity Health*, No. 1:24-cv-445, slip op. at 14.
Neglect of duty and malfeasance in office are listed as the sole grounds
for removal of various other federal officers, *see* Manners & Menand,
*supra*, at 69, to whom *Humphrey's Executor* applies—including the very
CPSC commissioners whose removal protections this Court just upheld.
*See Consumers' Rsch.*, 91 F.4th at 346 (reviewing statutory language
and remarking that CPSC and FTC "are twins" because commissioners
of both agencies can be removed only for cause); *see also Leachco*, 103
F.4th at 762–63.

Because the NLRA's removal standard for Board members
appropriately accommodates the President's constitutional duty to
ensure that the law is faithfully executed, the *SpaceX* court erred by
granting a preliminary injunction on this basis.[24]

---

[24] To the extent the district court in *SpaceX* relied on the Board's
circumscribed role in exercising "prosecutorial" powers in authorizing

C.   *The district court erred in finding that Employers met their burden to show irreparable harm arising from the alleged constitutional infirmities.*

1.   The bare existence of removal protections for NLRB ALJs or Board members, without more, does not create irreparable harm.

The Supreme Court has repeatedly stated that the "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray,* 415 U.S. 61, 88 (1974). Put another way, "[a] showing of irreparable harm is the *sine qua non* of injunctive relief." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Employers failed below to offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur. *White*, 862 F.2d at 1211.

Irreparable harm does not automatically flow from constitutional claims. Parties are not entitled to injunctive relief "merely because an

---

the General Counsel to seek temporary injunctive relief in district court under Section 10(j) of the Act, 29 U.S.C. § 160(j), [ROA.24-50627.325], pointing to that rarely used power is unavailing. FTC commissioners and CPSC commissioners, whose removal protections are indisputably valid under binding Supreme Court and Fifth Circuit precedent, have the power to authorize similar injunction petitions. *See* 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g).

act is unconstitutional." *Richmond Hosiery Mills v. Camp*, 74 F.2d 200, 200 (5th Cir. 1934). Rather, "one seeking relief on that ground must further show that he is entitled to it on some clear ground of equity jurisdiction." *Id.* Accordingly, not every constitutional injury is per se irreparable without the need for evidence. "Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Del. State Sportsmen's Ass'n* 108 F.4th at 203 (cleaned up). This is because "[e]quity is contextual. It turns on facts." *Id.* at 205; *accord Siegel v. LePore*, 234 F.3d 1163, 1177–78 (11th Cir. 2000) (en banc) (per curiam).[25] Cases which say nothing about constitutional claims not involving First Amendment rights or personal privacy interests are inapposite. *See, e.g., Elrod v. Burns*, 427 U.S. 347 (1976); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981).

---

[25] *Accord, e.g., Leachco*, 103 F.4th at 753 (unconstitutionally structured proceeding is not irreparable harm); *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (rejecting proposition that "any alleged separation-of-powers injury is by its very nature irreparable"); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 682 (7th Cir. 2012) ("[E]quitable relief depends on irreparable harm, even when constitutional rights are at stake.").

While this Court has not specifically addressed this issue, lower courts within this circuit have found the distinction between individual rights and other constitutional issues to be dispositive. *Sheffield v. Bush,* 604 F. Supp. 3d 586, 609 (S.D. Tex. 2022) ("The court finds that the homeowners' allegation that their constitutional rights have been violated is not enough, taken alone, to establish irreparable injury."); *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 120 (W.D. La. 2020) ("[M]erely asserting a constitutional claim is insufficient to trigger a finding of irreparable harm, particularly where the alleged injury involves neither free speech nor invasion of privacy.") (cleaned up); *Lambert* v. *Bd. of Comm'rs of Orleans Levy Dist.*, Civ. No. 5-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006).

The district courts below determined that Employers would suffer irreparable harm because they deemed "being subjected to" a proceeding by an "unaccountable ALJ" to be an automatically irreparable injury under *Axon*. ROA.24-50627.330–32; ROA.24-40533.320; ROA.24-10855.464. As already alluded to above, Section II.A.1.c., they read *Axon* to assert a proposition that it does not stand for, and which would overrule numerous other recent Supreme Court

51

precedents. *Axon* observes that a constitutionally illegitimate proceeding produces a "here-and-now injury." But *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 212 (2020)—the origin of the "here-and-now injury" language—makes clear that just because such an injury suffices to confer standing does not mean it is sufficient to establish entitlement to injunctive relief.

Numerous courts have so recognized. *See Leachco*, 103 F.4th at 759; *see also id.* at 765 ("The Supreme Court's jurisdictional analysis in *Axon* did not change the relief analysis required under *Collins*."); *YAPP*, 2024 WL 4489598, at *3; *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-09016, 2024 WL 4563789, at *3–5 (D.N.J. Oct. 24, 2024) (finding plaintiff's "mere assertion of a constitutional challenge to the structure of a government agency" did not entitle it to preliminary injunction absent evidence of irreparable harm stemming from alleged constitutional injuries); *Ares Collective Group, LLC v. NLRB*, No.CV-24-00517-TUC-SHR, slip op. at 3–4 (D. Ariz. Oct. 25, 2024) ("merely highlighting" removal protections "does not establish causal link" between protections and administrative proceeding) (Exhibit C). In fact, the Court in *Collins* specifically disavowed Employers' theory here,

explaining that "[w]hat we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." 594 U.S. at 259 n.24. Nothing in *Axon* calls this directly applicable holding into question.

So even if Employers were able to allege facts that establish jurisdiction to issue injunctive relief here, *but see above* § I, they would not automatically be entitled to relief. An unconstitutional removal restriction is, "remedially speaking, unique[,]" *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring), because the infirm removal provision "does not strip [an inferior officer] of the power to undertake the other responsibilities of his office," i.e., does not render him or her an "illegitimate decisionmaker," unless the plaintiff makes a cognizable showing of harm, *Collins*, 594 U.S. at 258 n.23. No relief is warranted without that showing.

At bottom, then, *Axon* determined where and when a plaintiff can challenge removal protections. But it did not modify what a plaintiff needs to prove to demonstrate that the proceedings and decisionmaker it faces are, in fact, illegitimate. Because Employers have presented no

53

independent proof—or even significant evidence—of irreparable harm, the entered injunctions are legally unsupportable, and must be reversed.

> 2. Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator.

The district courts abused their discretion by failing to find that severing any statutory removal restrictions found unconstitutional would remedy the alleged violations. ROA.24-50627.327–30; ROA.24-40533.319; ROA.24-10855.464. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625, 627 (2020); *see also Free Enter. Fund*, 561 U.S. at 508; *Seila Law*, 591 U.S. at 234. Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 591 U.S. at 630. And "it is fairly unusual for the remainder of a law not to be operative." *Id.* at 628. Should this Court find either ALJ or Board

member removal protections to be unconstitutional, it could sever the relevant statutes' offending portions.

"When Congress has expressly provided a severability clause, [the Court's] task is simplified." *Seila Law*, 591 U.S. at 234. Here, Congress provided such a clause in the NLRA. 29 U.S.C. § 166. And severance is how the Supreme Court has repeatedly dealt with unlawful removal protections. *See Collins*, 594 U.S. at 257–60; *Seila Law*, 591 U.S. at 232–38; *Free Enter. Fund*, 561 U.S. at 508–10.[26] In *Free Enterprise Fund*, the Court found the Public Company Accounting Oversight Board's ("PCAOB") removal protections unconstitutional, but it rejected the plaintiffs' attempt to enjoin the PCAOB's operations and instead severed the offending statutory provisions, leaving the members of the PCAOB freely subject to removal by the Securities and Exchange Commission. 561 U.S. at 508, 513. Likewise, in *Seila Law*, the Court found the removal protections for the Director of the Consumer Financial Protection Bureau (CFPB) unconstitutional. 591 U.S. at 232. But it did not limit any of the CFPB's operations, either generally or as

---

[26] It is not necessary for this Court to decide now precisely how severance would operate at final judgment to reverse here.

55

exercised in that particular case. Instead, it severed the Director's removal protection, noting that "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id.* at 235.

Where severance would be the appropriate final remedy, a party is not entitled to an injunction (preliminary or otherwise) against administrative proceedings. *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 513; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury"). This outcome is commanded by law as well as logic—if the only ultimate remedy Employers can obtain is severance, then issuing an injunction now affords Employers a greater remedy than they would obtain at final judgment, incentivizing not only copycat lawsuits but also a plaintiff's avoidance of a final judgment that would cause the preliminary injunction to expire.

The district courts below erred in determining that Employers were entitled to preliminary injunctions despite the availability of severance. ROA.24-40533.319; ROA.24-50627.327; ROA.24-10855.464. The availability of severance establishes an adequate remedy at law precluding injunctive relief. Decisions relied upon or cited below that granted preliminary injunctions before awarding legal relief at final judgment are irrelevant to this consolidated appeal. In those cases, injunctions were necessary to address some significant concrete harm. *Contra* ROA.24-50627.89, 327; ROA.24-10855.334; ROA.24-40533.174.[27] By contrast, in the cases on appeal, there has been no showing of harm and enjoining the NLRB's administrative proceedings is not necessary

---

[27] Employers have not established that, absent preliminary relief, they are likely to "suffer a substantial loss of business and perhaps even bankruptcy" such that "a favorable final [declaratory] judgment might as well be useless." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975). Nor will they be forced into "shutdown to avoid the risk of criminal prosecution" unless this Court enjoins the unfair labor practice proceeding. *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997). The "serious administrative problems" at issue in *Mississippi Power & Light Co. v. United Gas Pipe Line Co.* are also not present here. 760 F.2d 618, 624 (5th Cir. 1985) (determining that "refunds in a utility rate dispute are not adequate to compensate" consumers, due to processing fees and significant risk of undeliverable checks).

to preserve the district courts' ability to grant effective final relief. *See Del. State Sportsmen's Ass'n*, 108 F.4th at 200–01.

The court in *SpaceX* found that "consideration of severance is premature" before reaching the merits. ROA.24-50627.328. But *SpaceX* rests on circular logic—that because the harm sought to be prevented is the proceeding itself, an injunction was warranted. ROA.24-50627.327–30. Thus, according to that decision, the plaintiff was entitled to an injunction because it was entitled to an injunction and severance would not achieve that end. Such reasoning does not withstand scrutiny. The other district courts simply adopted *SpaceX's* faulty analysis wholesale. ROA.24-40533.319; ROA.24-10855.464.

In any event, the decisions below are contrary to precedent, giving scant (if any) consideration to *Barr's* "strong presumption of severability" and inadequately engaging with the most analogous Supreme Court precedent, *Seila Law* and *Free Enterprise*. *SpaceX* also expressly declined to follow the recent, on-point severability analysis in *Space Exploration Technologies Corp. v. Bell*, 701 F. Supp. 3d at 634–35, claiming that *Bell* "read *Collins [v. Yellen]* too broadly" by failing to differentiate between prospective and retrospective relief. ROA.24-

50627.330. But as discussed above, p. 27–28 & n.16, the Fifth Circuit—and virtually every other court to have reached the issue—has held that *Collins*'s causal-harm requirement applies to requests for prospective relief; the purported distinction *SpaceX* draws is one without a difference.

Because the challenged removal restrictions are readily severable, and it makes no sense to give a party that would not be entitled to a permanent injunction or a temporary one, injunctive relief is unavailable here.

> D.    *The district courts erroneously weighed the balance of equities and the public interest factors in granting the preliminary injunction.*

The merged balance of harms and public interest inquiry is not a mere formality; if a plaintiff's showing on that factor is weak, injunctive relief should be denied. *Benisek v. Lamone*, 585 U.S. 155, 158–59 (2018) (per curiam) (balance of equities and public interest may overcome other two factors even in constitutional cases). As the Third Circuit recently held, the four-factor test for injunctive relief is not a "mechanical algorithm." *Del. State Sportsmen's Assoc.*, 108 F.4th at 203. While a court "must weigh all the factors before *granting* relief,"

"any one factor may [be] reason enough to exercise its sound discretion by denying an injunction." *Id.*; *see also id.* at 202–03 (even assuming irreparable harm is established, balance of equities and public interest are "independent grounds" to deny relief without reaching the merits).

It is axiomatic that "the public has a powerful interest in the enforcement of duly enacted laws." *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (cleaned up). As this Court has repeatedly held, interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the public interest the NLRB represents. *See, e.g., Tex. Alliance for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020) (cleaned up); *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013). And "great weight" should be accorded to "the fact that Congress already declared the public's interest and created a regulatory and enforcement framework." *In re Sac Fox Tribe of the Mississippi in Iowa/Meskawaki Casino Litig.*, 340 F.3d 749, 760 (8th Cir. 2003) (cleaned up).

Frustration of Congress's intent to protect the Act's "public rights," *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 366 (1940), would be especially severe here, given that the Act's procedures are the sole mechanism for enforcing the NLRA, *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953). The district courts drastically underplayed each injunction's damage to the various charging parties' rights to utilize the NLRB's procedures in any meaningful way. Even a temporary delay in the agency proceedings raises the likelihood that, in the interim, "records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." *Int'l AM Ass'n of Machinists Loc. Lodge No. 1424 v. NLRB*, 362 U.S. 411, 419 (1960) (cleaned up) (quoting H.R. Rep. No. 80-245, at 40 (1947)).

What's more, two of the three cases at issue here are particularly in need of speedy resolution. FindHelp's unfair-labor-practice case is one with statutory priority under the NLRA, 29 U.S.C. § 160(m), because it involves an allegation that employees were terminated in violation of 29 U.S.C. § 158(a)(3), *see generally* ROA.24-10855.66–69. Those employees may be entitled to reinstatement under the express provisions of Section 10(c) of the NLRA. 29 U.S.C. § 160(c) (authorizing

the Board to issue an order, upon finding that a person has engaged in or is engaging in any unfair labor practice, requiring "such person to cease and desist from such unfair labor practice, and to take such affirmative action *including reinstatement of employees*") (emphasis added).

The passage of time plainly matters here—that is why Congress added Section 10(m) into the NLRA, "providing that the Board should give discriminatory unfair labor practice claims arising under § 8(a)(3) priority over all other cases except secondary boycotts." *Hammontree v. NLRB*, 925 F.2d 1486, 1511 (D.C. Cir. 1991) (en banc) (Mikva, J., dissenting) ("§ 10(m) was intended to redress the problem of the individual employee who loses his job or wages as a result of discriminatory behavior" and to deter "delays [in] hearing such cases"). The Board's regulations accord this same priority to discrimination cases, providing at 29 C.F.R. § 102.97, that any complaint in such a case "will be heard expeditiously and the case will be given priority in its successive steps following its issuance (until ultimate enforcement or dismissal by the appropriate circuit court of appeals) over all cases," except in rare circumstances.

62

When it comes to discharged employees (even the employee allegedly discharged by Energy Transfer in violation of Section 8(a)(1)), unduly delaying potential issuance of a Board remedial order poses real harm. If a final Board reinstatement order comes too late, the chill experienced by the employer's remaining workforce may not be successfully remedied, or the employer may profit from its own unfair labor practice if economic necessity forces discharged employees to take other jobs and decline reinstatement. *See Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 230–31, 239 (6th Cir. 2003); *Pascarell v. Vibra Screw Inc.*, 904 F.2d 874, 878, 881–82 (3d Cir. 1990); *Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902, 905–07 (3d Cir. 1981).

Similarly, among the allegations against Energy Transfer is that it fired the charging employee for filing an unfair-labor-practice charge with the NLRB. ROA.24-40533.157–58. "[I]t is unlawful for an employer to seek to restrain an employee in the exercise of his right to file charges." *NLRB v. Scrivener*, 405 U.S. 117, 121–22 (1972) (cleaned up). The relief Energy Transfer seeks would not only prevent its own compliance with legal obligations pertaining to a labor dispute, *see*

63

above Section I, but would preclude the Board from protecting access to its procedures and the integrity of its proceedings. *See id.* Preventing the agency from adjudicating such charges would effectively declare open season for retaliation against any witness who dared to come forward and speak to NLRB personnel during the pendency of this litigation, and ongoing investigations would be tainted in ways that would likely be impossible to ever undo.

Each Employer in this consolidated appeal stands to benefit from having the enforcement of the NLRA halted without regard to the ultimate merit of their positions, while others bear the hidden cost. The nation's workers, who will lose critical workplace protections if the NLRB is indefinitely enjoined from fulfilling its statutory mandate, cannot justly be treated as mere collateral damage to this proceeding.

This is precisely why *Winter* and its predecessors developed a four-factor test requiring balancing of the equities before granting preliminary injunctive relief. Every preliminary-injunction case reflects a predictive judgment by the courts that the harm of imposing a preliminary injunction, accounting for the probability that such relief turns out to ultimately be unwarranted, is less than the harm of

denying such an injunction, accounting for the probability that such relief turns out to be ultimately warranted. *See Del. St. Sportsman's Ass'n*, 108 F.4th at 200 ("Injunctions themselves can inflict harm."). *Winter* found that balance to weigh heavily in favor of the governmental defendants despite assuming the validity of the plaintiffs' claims. 555 U.S. at 26. And compared to *Winter* (itself a balance the Supreme Court called "not . . . a close question," *id.*), this case—which pits wholly abstract and hypothetical interests against immediate material harm to the rights of employees to speedy justice—is easy.

Finally, affirming the district courts' grant of injunctions here would portend that nearly every unfair-labor-practice case arguably connected to this Circuit can meet a similar fate.[28] As the Northern District of Illinois recently put it, the district courts' "position—if accepted—would neuter the National Labor Relations Act by blocking all proceedings before the National Labor Relations Board, the independent agency that has steadfastly and exclusively enforced the

---

[28] *See, e.g., Ascension Seton d/b/a Ascension Seton Med. Ctr. Austin v. NLRB*, No. 1-24-CV-01176-ADA (W.D. Tex. Oct. 18, 2024) (Albright, J.) (unpublished order granting preliminary injunction based on challenge to Board members' and NLRB ALJs' removal protections) (Exhibit D).

statute for the past eighty-nine years against entities accused of unfair labor practices. Quite extraordinary, indeed." *Alivio Med. Ctr. v. Abruzzo*, No. 1:24-cv-7217, 2024 WL 4188068 at *11 (N.D. Ill. Sept. 14, 2024). Extraordinary—and totally unjustified.

## CONCLUSION

This Court should reverse the district courts and remand these cases for appropriate proceedings.

Respectfully submitted,

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Trial Attorney*
GRACE L. PEZZELLA
  *Trial Attorney*

/s/ David P. Boehm
DAVID P. BOEHM
  *Trial Attorney*
National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20003
Tel: (202) 793-1017
Fax: (202) 273-4244
david.boehm@nlrb.gov

Dated: October 28, 2024
       Washington, D.C.

67

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellants' Brief,

Statutory Addendum, and Appendix of Exhibits were filed electronically

with this Court's CM/ECF system on this date, which will send an

electronic notice to all registered parties and counsel.


/s/ David P. Boehm
_____
DAVID P. BOEHM
   *Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (202) 793-1017
david.boehm@nlrb.gov

Dated: October 28, 2024
     Washington, D.C.

## CERTIFICATE OF COMPLIANCE

The National Labor Relations Board certifies that this document complies with the typeface, type-style, and length requirements in Fifth Circuit Rule 32.1 and Federal Rules of Appellate Procedure 32(a)(5)-(7), because it contains 12,932 words, excluding those exempted by Federal Rule of Appellate Procedure 32(f), which are proportionally-spaced, 14-point Century font, and the word-processing software used was Microsoft Word for Office 365.

/s/ David P. Boehm
DAVID P. BOEHM
   *Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (202) 793-1017
david.boehm@nlrb.gov

Dated: October 28, 2024
      Washington, D.C.