Nos. 24-50627, 24-40533, 24-10855,

# United States Court of Appeals for the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee*,

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*.

---

## On Appeal from the United States District Courts
## for the Northern, Southern, and Western Districts of Texas

---

## ADDENDUM TO APPELLANT'S BRIEF

---

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
*Deputy Associate General
Counsel*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*
PAUL A. THOMAS
*Supervisory Attorney*
DAVID P. BOEHM
GRACE L. PEZZELLA
*Trial Attorneys*

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(202) 273-4202

# TABLE OF CONTENTS

THE CIVIL SERVICE REFORM ACT OF 1978.................................SA-1

THE NORRIS-LaGUARDIA ACT.......................................................SA-2

THE NATIONAL LABOR RELATIONS ACT, AS AMENDED.........SA-7

Orders, *H&R Block, Inc. v. Himes*, No. 24-2626 (8th Cir. Sept. 13, 2024; Oct. 15, 2024) ...................................................................................Exh. A

Order, *Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, (W.D. Mich. Oct. 25, 2024) ...............................................................Exh. B

Order, *Ares Collective Group, LLC v. NLRB*, No.CV-24-00517-TUC-SHR, (D. Ariz. Oct. 25, 2024) .........................................................Exh. C

Order, *Ascension Seton d/b/a Ascension Seton Med. Ctr. Austin v. NLRB*, No. 1-24-CV-01176-ADA (W.D. Tex. Oct. 18, 2024) ........... Exh. D

# THE CIVIL SERVICE REFORM ACT OF 1978

## 5 U.S.C. § 7521 Actions against administrative law judges

(a) An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.

(b) The actions covered by this section are--
      (1) a removal;
      (2) a suspension;
      (3) a reduction in grade;
      (4) a reduction in pay; and
      (5) a furlough of 30 days or less;

      but do not include--
            (A) a suspension or removal under section 7532 of this title;
            (B) a reduction-in-force action under section 3502 of this title; or
            (C) any action initiated under section 1215 of this title.

## THE NORRIS-LaGUARDIA ACT

### Sec. 101 (29 U.S.C. §101). Issuance of restraining orders and injunctions; limitation; public policy

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

### Sec. § 104. (29 U.S.C. §104). Enumeration of specific acts not subject to restraining orders or injunctions

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is

prosecuting, any action or suit in any court of the United States or of any State;

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

### Sec. 107 (29 U.S.C. § 107). Issuance of injunctions in labor disputes; hearing; findings of court; notice to affected persons; temporary restraining order; undertakings

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the

threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: *Provided, however*, That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five days and shall become void at the expiration of said five days. No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any

injunctive relief sought in the same proceeding and subsequently denied by the court.

The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity.

## Sec. 108. (29 U.S.C. § 108). Noncompliance with obligations involved in labor disputes or failure to settle by negotiation or arbitration as preventing injunctive relief

No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

## Sec. 113 (29 U.S.C. § 113). Definitions of terms and words used in chapter

When used in this chapter, and for the purposes of this chapter--

(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2)

SA-5

between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

(d) The term "court of the United States" means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia.

# THE NATIONAL LABOR RELATIONS ACT, AS AMENDED

## Sec. 1 (29 U.S.C. § 151) Findings and declaration of policy

The denial by some employers of the right of employees to organize and the refusal by some employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing commerce by (a) impairing the efficiency, safety, or operation of the instrumentalities of commerce; (b) occurring in the current of commerce; (c) materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods from or into the channels of commerce, or the prices of such materials or goods in commerce; or (d) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing from or into the channels of commerce.

The inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association substantially burdens and affects the flow of commerce, and tends to aggravate recurrent business depressions, by depressing wage rates and the purchasing power of wage earners in industry and by preventing the stabilization of competitive wage rates and working conditions within and between industries.

Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards commerce from injury, impairment, or interruption, and promotes the flow of commerce by removing certain recognized sources of industrial strife and unrest, by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees.

Experience has further demonstrated that certain practices by some labor organizations, their officers, and members have the intent or

the necessary effect of burdening or obstructing commerce by preventing the free flow of goods in such commerce through strikes and other forms of industrial unrest or through concerted activities which impair the interest of the public in the free flow of such commerce. The elimination of such practices is a necessary condition to the assurance of the rights herein guaranteed.

It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

### Sec. 3 (29 U.S.C. § 153) National Labor Relations Board

(a) Creation, composition, appointment, and tenure; Chairman; removal of members

The National Labor Relations Board (hereinafter called the "Board") created by this subchapter prior to its amendment by the Labor Management Relations Act, 1947, is continued as an agency of the United States, except that the Board shall consist of five instead of three members, appointed by the President by and with the advice and consent of the Senate. Of the two additional members so provided for, one shall be appointed for a term of five years and the other for a term of two years. Their successors, and the successors of the other members, shall be appointed for terms of five years each, excepting that any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed. The President shall designate one member to serve as Chairman of the Board. Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.

(b) Delegation of powers to members and regional directors;
   review and stay of actions of regional directors; quorum; seal

The Board is authorized to delegate to any group of three or more
members any or all of the powers which it may itself exercise. The
Board is also authorized to delegate to its regional directors its powers
under section 159 of this title to determine the unit appropriate for the
purpose of collective bargaining, to investigate and provide for hearings,
and determine whether a question of representation exists, and to
direct an election or take a secret ballot under subsection (c) or (e) of
section 159 of this title and certify the results thereof, except that upon
the filing of a request therefor with the Board by any interested person,
the Board may review any action of a regional director delegated to him
under this paragraph, but such a review shall not, unless specifically
ordered by the Board, operate as a stay of any action taken by the
regional director. A vacancy in the Board shall not impair the right of
the remaining members to exercise all of the powers of the Board, and
three members of the Board shall, at all times, constitute a quorum of
the Board, except that two members shall constitute a quorum of any
group designated pursuant to the first sentence hereof. The Board shall
have an official seal which shall be judicially noticed.

   ***

(d) General Counsel; appointment and tenure; powers and duties;
   vacancy

There shall be a General Counsel of the Board who shall be
appointed by the President, by and with the advice and consent of the
Senate, for a term of four years. The General Counsel of the Board shall
exercise general supervision over all attorneys employed by the Board
(other than administrative law judges and legal assistants to Board
members) and over the officers and employees in the regional offices. He
shall have final authority, on behalf of the Board, in respect of the
investigation of charges and issuance of complaints under section 160 of
this title, and in respect of the prosecution of such complaints before the

Board, and shall have such other duties as the Board may prescribe or as may be provided by law. In case of a vacancy in the office of the General Counsel the President is authorized to designate the officer or employee who shall act as General Counsel during such vacancy, but no person or persons so designated shall so act (1) for more than forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted.

### Sec. 6 (29 U.S.C. § 156) Rules and Regulations

The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by subchapter II of chapter 5 of Title 5, such rules and regulations as may be necessary to carry out the provisions of this subchapter.

### Sec. 7 (29 U.S.C. § 157) Right of employees as to organization, collective bargaining, etc.

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

### Sec. 8 (29 U.S.C. § 158) Unfair Labor Practices

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7.

\* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

\* \* \*

## Sec. 9 (29 U.S.C. § 159) Representatives and elections

(a) Exclusive representatives; employees' adjustment of grievances directly with employer

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment.

(b) Determination of bargaining unit by Board

The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been

established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation or (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.

(b) Hearings on questions affecting commerce; rules and regulations

(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board--

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a), or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a); or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a);

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of

representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

(2) In determining whether or not a question of representation affecting commerce exists, the same regulations and rules of decision shall apply irrespective of the identity of the persons filing the petition or the kind of relief sought and in no case shall the Board deny a labor organization a place on the ballot by reason of an order with respect to such labor organization or its predecessor not issued in conformity with section 160(c) of this title.

(3) No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this subchapter in any election conducted within twelve months after the commencement of the strike. In any election where none of the choices on the ballot receives a majority, a run-off shall be conducted, the ballot providing for a selection between the two choices receiving the largest and second largest number of valid votes cast in the election.

(4) Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board.

(5) In determining whether a unit is appropriate for the purposes specified in subsection (b) the extent to which the employees have organized shall not be controlling.

(d) Petition for enforcement or review; transcript

Whenever an order of the Board made pursuant to section 160(c) of this title is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification

and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) of section 160 of this title, and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript.

(e) Secret ballot; limitation of elections

(1) Upon the filing with the Board, by 30 per centum or more of the employees in a bargaining unit covered by an agreement between their employer and a labor organization made pursuant to section 158(a)(3) of this title, of a petition alleging they desire that such authority be rescinded, the Board shall take a secret ballot of the employees in such unit and certify the results thereof to such labor organization and to the employer.

(2) No election shall be conducted pursuant to this subsection in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held.

## Section 10 (29 U.S.C. § 160) Prevention of unfair labor practices

(a) Powers of Board generally

The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such

cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.

(b) Complaint and notice of hearing; answer; court rules of evidence inapplicable

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28.

(c) Reduction of testimony to writing; findings and orders of Board

The testimony taken by such member, agent, or agency or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him: And provided further, That in determining whether a complaint shall issue alleging a violation of subsection (a)(1) or (a)(2) of section 158 of this title, and in deciding such cases, the same regulations and rules of decision shall apply irrespective of whether or not the labor organization affected is affiliated with a labor organization national or international in scope. Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause. In case the evidence is presented before a member of the Board, or before an administrative law judge or judges thereof, such member, or such judge or judges as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed.

SA-17

(d) Modification of findings or orders prior to filing record in court

Until the record in a case shall have been filed in a court, as hereinafter provided, the Board may at any time upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it.

(e) Petition to court for enforcement of order; proceedings; review of judgment

The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The

Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate United States court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in section 1254 of Title 28.

(f) Review of final order of Board on petition to court

Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

(g) Institution of court proceedings as stay of Board's order

The commencement of proceedings under subsection (e) or (f) of this section shall not, unless specifically ordered by the court, operate as a stay of the Board's order.

(h) Jurisdiction of courts unaffected by limitations prescribed in chapter 6 of this title

When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by chapter 6 of this title.

(i) (repealed).

(j) Injunctions

The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

(k) Hearings on jurisdictional strikes

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that

they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

(l) Boycotts and strikes to force recognition of uncertified labor organizations; injunctions; notice; service of process

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: Provided further, That no temporary restraining order shall be issued without notice unless a petition alleges that substantial and irreparable injury to the charging party will be unavoidable and such temporary restraining order shall be effective for no longer than five days and will become void at the expiration of such period: Provided further, That such officer or regional attorney shall not apply for any restraining order under section 158(b)(7) of this title if a charge against the employer under section 158(a)(2) of this title has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue. Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party,

shall be given an opportunity to appear by counsel and present any relevant testimony: Provided further, That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of legal process upon such officer or agent shall constitute service upon the labor organization and make such organization a party to the suit. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 158(b)(4)(D) of this title.

(m) Priority of cases

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of subsection (a)(3) or (b)(2) of section 158 of this title, such charge shall be given priority over all other cases except cases of like character in the office where it is filed or to which it is referred and cases given priority under subsection (l).***

### Section 16 (29 U.S.C. § 16) Separability

If any provision of this subchapter, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this subchapter, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

Tab A
Exhibit A

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

No: 24-2626

H&R Block, Inc., et al.

Appellants

v.

Jay L. Himes, In His Official Capacity as Federal Trade Commission Administrative Law Judge, et al.

Appellees

---

Appeal from U.S. District Court for the Western District of Missouri - Kansas City
(4:24-cv-00198-BP)

---

### ORDER

The motion for preliminary injunction pending appeal is denied.

September 13, 2024

Order Entered at the Direction of the Court:
Acting Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

/s/ Maureen W. Gornik

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 24-2626

H&R Block, Inc., et al.

Appellants

v.

Jay L. Himes, In His Official Capacity as Federal Trade Commission Administrative Law Judge, et al.

Appellees

---

Appeal from U.S. District Court for the Western District of Missouri - Kansas City
(4:24-cv-00198-BP)

---

## ORDER

The petition for en banc reconsideration of the September 13, 2024 judge order is denied.

October 15, 2024

Order Entered at the Direction of the Court:
Acting Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

/s/ Maureen W. Gornik

Tab B
Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH KERWIN, Regional Director,
Seventh Region of the National Labor
Relations Board, for an on behalf of the
NATIONAL LABOR RELATIONS BOARD,

        Petitioner,

v.

TRINITY HEALTH GRAND HAVEN HOSPITAL,

        Respondent.

_____/

CASE NO. 1:24-cv-445

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

Trinity Health Grand Haven Hospital is the Respondent in this Section 10(j) Preliminary Injunction action brought by Petitioner Elizabeth Kerwin on behalf of the National Labor Relations Board ("NLRB" or "Board"). The matter before the Court is on Respondent's Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c). (ECF No. 35). In the motion, Respondent contends that the underlying unfair labor practice proceedings before the Board are unconstitutional under Article II of the United States Constitution. In particular, Respondent contends the NLRB Administrative Law Judges—and members of the NLRB Board itself—are impermissibly insulated from removal by the President of the United States rendering the instant proceedings invalid. After careful review of all matters of record, the Court denies Respondent's motion.

# BACKGROUND

*1.   The Four Step Process for Considering Unfair Labor Practice Complaints*

"The National Labor Relations Act (NLRA) prohibits employers and unions from engaging in certain 'unfair labor practice[s].'" *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1574 (2024) (citing 29 U.S.C. §§ 158(a), (b)).  "The National Labor Relations Board enforces that prohibition." *Id.*  Indeed, Congress created the NLRB in 1935 as an independent agency with the express purpose of "encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of employment or other mutual aid or protection."  29 U.S.C. § 151.  The Board "is vested with primary jurisdiction to determine what is or is not an unfair labor practice" and "only the Board may provide affirmative remedies for unfair labor practices[.]"  *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 86 (1982).

"To evaluate and remedy unfair labor practices, the Board follows a four-step process." *Starbucks Corp*, 144 S. Ct. at 1582 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment).  "First, a charge is filed and investigated[.]"  *Id.*  At this step "any aggrieved party may file a charge with the NLRB alleging any of the unfair labor practices outlined in Section 8" of the NLRA.  *YAPP USA Automotive Sys. Inc.*, ___ F. Supp. 3d ___, 2024 WL 4119058 at *2 (E.D. Mich. Sept. 9, 2024); *see also Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 775 (2023) (Board "authority kicks in when a person files a charge with the agency alleging that an unfair labor practice is afoot.").  "Charges are filed with the NLRB Regional Director for the region in which the alleged violation occurred, and that official is responsible for determining if there is sufficient evidence to substantiate a charge." *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *3 (internal citation omitted).  At the second

2

step, "[i]f the Regional Director finds that a charge has merit, he or she initiates formal action by issuing a complaint." *Id.* At the third step, "[c]omplaints are adjudicated in a hearing before an ALJ, whose decision may be appealed to the Board." *Id.* (internal citations omitted).[1] "Finally, if the unfair labor practices alleged in the complaint are sustained, the Board can seek enforcement of the order, and any aggrieved party can seek review, in a federal court of appeals." *Starbucks Corp.*, 144 S. Ct. at 1582 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment).[2]

### 2. Roles, Responsibilities, and Removal in the Four Step Process

As it currently stands, the NLRA divides responsibility over the handling of unfair labor disputes between the Board and the General Counsel of the Board. *See* 29 U.S.C. § 153(d). "The "General Counsel's and the Board's authority are separated 'along a prosecutorial versus adjudicatory line.'" *Rieth-Riley Construction Co., Inc. v. NLRB*, 114 F.4th 519, 530, 531 (6th Cir. 2024) (quoting *NLRB v. United Food & Commercial Workers Union, Local 23 (UFCW)*, 484 U.S. 112, 124 (1987)). Below the Court discusses the role of the General Counsel, the Board, and

---

[1] The Board may also preside over such proceedings directly themselves. *See* 29 C.F.R. 102.50.

[2] Accordingly, for the most part, labor disputes are resolved administratively and the courts, via the federal courts of appeals, become only involved to the extent a Board decision needs to be enforced. *See Kobell v. United Paperworkers Int'l Union, AFL-CIO, CLC*, 965 F.2d 1401, 1406 (6th Cir. 1992); *see also Starbucks Corp.*, 144 S. Ct. at 1574 (majority opinion). Because the administrative process at times unfolds slowly, "interim injunctive relief occasionally may be necessary to preserve the remedial power of the Board . . . pending the Board's substantive review of [alleged unfair labor practices]." *Kobell*, 955 F.2d at 1406. This case involves such a request for injunctive relief, which the Court is addressing in a separate decision. For present purposes, the Court notes Congress has given the Board the power and discretion to seek a Section 10(j) motion. Under the Board's standard operating procedure, the Regional Director submits a memorandum to the General Counsel explaining why temporary relief may be appropriate. The memorandum is reviewed by the General Counsel who makes a recommendation to the Board. The Board must then accept or reject the recommendation. Only if the Board approves the request, is a 10(j) injunction proceeding filed in a federal district court. *See generally* Starbucks Corp., 144 S. Ct. at 1584 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment) (discussing the framework).

3

NLRB ALJs in the four-step process as well as the requirements, if any, for removal.

### A. General Counsel

At the prosecutorial side sits the General Counsel. Under the terms of the NLRA "[t]he General Counsel is 'appointed by the President, by and with the advice and consent of the Senate, for a term of four years.'" *Alivio Medical Center*, No. 24-cv-7217, 2024 WL 4188067 at *2 (N.D. Ill. Sept. 13, 2024) (quoting *Rieth-Riley*, 114 F.4th at 530, 531). The General Counsel "exercises extensive executive functions" including final authority to issue, and withdraw, complaints. *Rieth-Riley*, 114 F.4th at 529-530 (citing 29 U.S.C. § 153(d)). Accordingly, "the General Counsel determines what charges the Board will hear and thus what issues the Board will have an opportunity to decide and seek enforcement of." *Id.* at 531. The NLRA "contains no provision restricting the President's removal power" of the General Counsel. *Id.* at 530. As a result, the General Counsel is "removable at will." *Alivio Medical Center*, 2024 WL 4188068 at *2 (citing *Collins v. Yellen*, 594 U.S. 220, 248 (2021)). In addition to investigating and prosecuting unfair labor practices, the General Counsel oversees "Regional Offices that carry out much of the day-to-day work of enforcing labor law and policy." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1582 (2024) (Jackson, J., concurring in part, dissenting in part, and concurring in the judgment). Thus, Regional Directors, including the petitioner in this case, "act under the purview of the General Counsel." *Yapp USA Automotive*, 2024 WL 4119058 at *2.

### B. Board Members

On the adjudicatory side of the line sits the Board. Under the NLRA, the Board is made up of five members "appointed by the President by and with the advice and consent of the Senate." 29 U.S.C. § 153(a). The Board's primary duty "is to enforce the [NLRA], a task that it carries out (almost) exclusively by adjudicating labor disputes." *Alivio Medical Center*, 2024 WL 4188068

4

at *2 (citing *Cortes v. NLRB,* No. 23-2954, 2024 WL 1555877, at *1 (D.D.C. Apr. 10, 2024)). Unlike the General Counsel, the NLRA restricts the President's removal power of Board members by providing they are removable by the President, "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.* Although not statutorily required "'there has been a 'tradition' since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party.'" *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *2 (quoting Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance With Bite*, 118 Colum. L. Rev. 9, 54 (2018)).

     *C. ALJs*

The NLRB ALJs come in at the third step of the four-step sequence. "The NLRB ALJs are appointed by the five-member Board in accordance with the Civil Service Reform Act and the NLRA." *Alivio Medical Center*, 2024 WL 4188068 at *3. The ALJs are tasked with "inquir[ing] fully into the facts as to whether [a defendant] has engaged in or is engaging in an unfair labor practice affecting commerce as set forth in the complaint." *Id.* (quoting 29 C.F.R. § 102.35(a)). To that end, NLRB ALJs have a wide range of power including to administer oaths and affirmations, grant and revoke subpoenas, and resolve motions. *See id.* (discussing 29 C.F.R. § 102.35(a)(1)-(13)). This authority culminates with the ability to issue a decision that "will contain findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and recommendations for the proper disposition of the case." 29 C.F.R. § 102.45. From there, exceptions may be taken to the Board at the fourth step.

"Removal of NLRB ALJs involves a two-step process prescribed by statute: (1) the Board must bring an action to remove an ALJ; and (2) the Merit Systems Protection Board ("MSPB"), an independent federal agency, must then determine that good cause for removal has been

established." *Alivio Medical Center*, 2024 WL 4188068 at \*3 (citing 5 U.S.C. § 7521(a)).  "As for the members of the MSPB," in turn "they may only be removed for 'inefficiency, neglect of duty, or malfeasance in office.'"  *Id.* (quoting 5 U.S.C. § 1202(d)).

## PROCEDURAL HISTORY

The underlying NLRB proceedings against Respondent began on August 2, 2023, when SEIU Healthcare Michigan filed an unfair labor practices charge over a decertification election it won regarding union representation at the Respondent hospital.  The union asserted the employer refused to honor the election result and refused to bargain with the union.  An additional charge was filed by the union on September 28, 2023, and amended charges were filed in December 2023.  (Pet. ¶ 3, ECF No. 1, PageID.2).[3]  The Regional Director, Petitioner Elizabeth Kerwin, subsequently determined that there was reasonable cause to believe that the charges had merit and so on January 29, 2024, Petitioner issued a Consolidated Complaint and Notice of Hearing.  (ECF No. 1-3).  Respondent filed an Answer and Affirmative Defense on February 12, 2024.  (ECF No. 1-4).  Included in the affirmative defenses was an assertion by Respondent that "[t]he Complaint is improper and should be dismissed because the structure of the National Labor Relations Board, and the manner in which it processes and adjudicates cases, violates the United States Constitution, including the constitutional provisions on separation of powers, U.S. CONST. art. II, due process, U.S. CONST. amend V & XIV, and trial by jury U.S. CONST. amend. VII."  (ECF No. 1-4, PageID.37).

An administrative hearing began on April 3, 2024, in Grand Rapids, Michigan before Administrative Law Judge Michael A. Rosas.  The case was tried over eight days between April

---

[3] Additional discussion regarding the specific allegations of the charges can be found in the Opinion and Order on the 10(j) petition that is being filed contemporaneously with this decision.

3, 2024, and May 15, 2024.  On April 30, 2024, Petitioner filed a Petition for Preliminary Injunction under Section 10(j) of the NLRA in this Court.  (ECF No. 1).  Respondent filed an Answer along with a series of affirmative defenses that included the structural argument previously raised during the administrative proceedings.  (ECF No. 16).  On July 1, 2024, Respondent filed the instant motion and brief for judgment on the pleadings under Rule 12(c).  (ECF Nos. 35 and 36).  Petitioner has responded in opposition.  (ECF No. 39) and Respondent has replied.  (ECF No. 54).

On September 6, 2024, the ALJ issued his decision.  (ECF No. 56-1).  The ALJ determined that Respondent violated Section 8(a)(1), (a)(3) and (a)(5) of the NLRA in several enumerated respects and ordered affirmative relief.  (ECF No. 56-1, PageID.3090-3091).  Respondent has indicated it intends to file exceptions with the NLRB.  (ECF No. 63, PageID.3133).

## LEGAL STANDARDS

FED. R. CIV. P. 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Courts analyze motions for judgment on the pleadings under the same standards as motions to dismiss under FED. R. CIV. P. 12(b)(6).  *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012).  Consequently, to survive a motion for judgment on the pleadings, Petitioner must allege facts that—taken as true by the Court—are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility requirement is satisfied if Petitioner's well-pleaded factual allegations "allow[] the court to draw the reasonable inference that [Respondent is] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

"In recent years, the Supreme Court has addressed several statutory schemes that shield executive officers from at-will removal by the President." *YAPP USA Automotive Sys. Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024) (citing *Collins v. Yellen*, 594 U.S. 220 (2021); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); and *Free Enter. Fund v. Public. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)). "Even more recently, some courts have found that the dual-layer removal protections for executive agency ALJs are unconstitutional." *Id.* (citing *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024); *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *2 (S.D. Tex. July 29, 2024); and *Space Expl. Technolo-Gies Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024)). Other courts have disagreed and have concluded that the structure of the NLRB survives constitutional scrutiny. *See, e.g.*, *YAPP USA Automotive Sys. Inc. v. NLRB*, ___ F. Supp. 3d___ 2024 WL 4119058 at *2 (E.D. Mich. Sept. 9, 2024); *Alivio Medical Center v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024).

"These separation of powers questions are both complicated and consequential[.]" *YAPP USA Automotive Sys. Inc. v. NLRB*, 2024 WL 4489598, at *2. But the questions are not unique. Indeed the issues raised in Petitioner's motion have been squarely addressed by several court decisions. The Court has carefully reviewed the arguments in the parties' briefing, and the discussion throughout the case law. The Court determines that Respondent's motion lacks merit.

1. *Harm*

As a threshold matter, the Court determines that Respondent cannot make the requisite showing of harm.[4]  "Under Supreme Court and Sixth Circuit precedent, a party challenging an agency's removal protection scheme 'is not entitled to relief unless that unconstitutional provision inflicts compensable harm.'" *YAPP USA Automotive Sys. Inc.*, 2024 WL 4489598 at *2 (6th Cir. Oct. 13, 2024) (quoting *Calcutt v. FDIC*, 37 F.4th 293, 310 (6th Cir. 2022)) (internal quotation marks and alterations omitted).  Respondent recognizes that under *Calcutt* it must show an injury and that an adverse administrative ruling itself does not constitute harm from the appointment process.  But it contends there are two bases from which this Court can find the requisite harm.  First, it says, it is asking the Court for prospective relief.  This constitutes an ongoing harm, it says, that distinguishes *Calcutt* and other cases cited by Petitioner.  Second, it says, the Section 10(j) proceedings in this Court provide the requisite harm.  These arguments are not persuasive.

A panel of the Sixth Circuit Court of Appeals recently addressed similar arguments in an appeal from the denial of an injunction to halt upcoming proceedings before the Board.  *YAPP USA Automotive Sys. Inc.*, 2024 WL 4489598 at *2 (6th Cir. Oct. 13, 2024).  Applying *Calcutt*, the Court of Appeals noted two points: "First, a party challenging the constitutionality of an agency's removal protection scheme cannot simply show that the agency's action caused—or will

---

[4] Petitioner also argues that Respondent's challenge to the ALJ's removal protections is not relevant to the Board's request for temporary injunctive relief under Section 10(j) because ALJs do not participate in the decision to seek 10(j) relief, and the Court—if there was any concern about the administrative proceedings—could create an independent evidentiary record.  (ECF No. 39, PageID.2713-2714).  It is not clear what heft, if any, Petitioner sees in this argument as Respondent is also challenging the constitutionality of the Board, and Petitioner readily admits the Board is typically involved in making decisions regarding 10(j) relief.  While the Board's authority over 10(j) petitions can sometimes be delegated to the General Counsel, Petitioner does not claim that is what happened in this case.  The Court need not wade into the issue any deeper, as there are independent bases for denying the motion here.

cause—harm.  Instead, 'the constitutional violation must have *caused* the harm.'" *Id.* (quoting *Calcutt*, 37 F.4th at 316).  "Second, a challenger cannot rely on 'vague, generalized allegations' of harm; 'a more concrete showing [i]s needed.'" *Id.* (quoting *Calcutt*, 37 F.4th at 317).  "In short, a challenger 'would need to show that the removal restriction *specifically* impacted the agency actions of which they complain.'" *Id.* (quoting *Calcutt*, 37 F.4th at 315) (emphasis in original).

Respondent's arguments fail to demonstrate how the removal protections for the ALJs or Board members "specifically impacted" the proceedings.  Here, a "bare claim" of illegitimacy is not enough.  *Id.* Rather Respondent must making a showing along the lines that the alleged unconstitutional protections "'prevent[ed] superior officers from removing Board members when they attempted to do so' or 'alter[ed] the Board's behavior' prior to the proceeding" or that "'but for the allegedly unconstitutional removal provisions the [NLRB Board members] or [the NLRB ALJ] would have been removed, the [NLRB] proceedings against it would not be occurring, or the proceedings would be different in any way.'"  *Id.* at *3 (quoting *Leachco, Inc. v. Consumer Prod. Safety Com'n*, 103 F.4th 748, 757 (10th Cir. 2024) (alternations in *YAPP USA Automotive*).

Respondent does not come close to making this type of showing. Instead, it claims that *Calcutt* is not applicable to prospective relief.  But that case "explicitly stated that the distinction between prospective and retrospective relief 'does not matter.'"  *Id.* (quoting *Calcutt*, 37 F.4th at 316); *see also id.* (quoting *Calcutt*, 37 F.4th at 316 for the proposition that the question of harm "remains the same whether the petitioner seeks retrospective or prospective relief.").  Respondent essentially seeks to distinguish these statements as dicta, however the panel decision in *YAPP USA Automotive* found them sufficient on which the reject an identical claim—albeit in a preliminary injunction motion—that *Calcutt* was not applicable to prospective relief.  *Id.*  This Court does too. Likewise, Respondent's attempt to distinguish this case based on the procedural posture of a 10(j)

petition is not persuasive, and does not make the type of showing that the court in court in *YAPP USA Automotive* found was required under *Leacho*.

That leaves Respondent with its claim that the Supreme Court recognized harm in "being subjected to unconstitutional agency authority" in *Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023). But as the panel discussed in *YAPP USA Automotive*, the case of *Axon Enterprises* is not as broad as Respondent reads it, and "did not overrule *Collins*—or, by extension, *Calcutt*." *YAPP USA Automotive Sys. Inc.*, 2024 WL 4489598 at *3. For these reasons, then, the Court concludes that Respondent has failed to demonstrate the requisite causal harm that is necessary for a successful challenge to an agency's removal protection scheme.

2.  *Merits*

Even if Respondent could demonstrate the causal harm, however, the Court concludes that the motion fails on the merits. Article II of the United States Constitution provides that the President shall have the sole power and responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3. Here, Respondent contends that the removal procedures for both members of the Board and NLRB ALJs run afoul of this provision. The Court disagrees.

The Court begins with the ALJs. "Generally speaking, it is constitutional for Congress to protect inferior officers with 'good cause' removal restrictions." *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *7 (collecting cases). NLRB ALJs are inferior officers. *See id.* The Supreme Court has previously found an Article II violation when inferior officers with significant regulatory powers are given two layers of removal protections. *Id.* (citing *Free Enter. Fund*, 561 U.S. at 498). But the Court distinguished ALJs from other inferior officers. *See id.*; *see also Alivio Medical Center*, 2024 WL 4188067 at *9 ("The Court [in *Free Enter. Fund.*] did not categorically deem unconstitutional all two-level tenure protection for inferior officers, and it expressly stated

11

that its holding 'does not address that subset of independent agency employees who serve as administrative law judges." *Alivio Medical Center*, 2024 WL 4188067, at *9 (citing *Free Enter. Fund*, 561 U.S. at 507 n.10)).

Subsequently, "[t]he circuits have split on the question of whether the *Free Enterprise* holding . . . applies to the two-level tenure protection schemes afforded to agency ALJs like those employed by the NLRB." *Id.* at *10. Those upholding the agency ALJs have generally determined that removal protections are constitutional, or at least likely so, when the ALJs perform a "purely adjudicatory function." *Id.* (collecting cases). For example, the Sixth Circuit in *Calcutt* "expressed serious 'doubt[s]' that those subject to agency enforcement proceedings 'could establish a constitutional violation from the ALJ removal restrictions' enacted by Congress." *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *7.

In the motion, and subsequent briefing, Respondent contends this Court should find *Calcutt* distinguishable, and instead apply the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, ___ U.S. ___, 144 S. Ct. 2117 (2024) and those of two Texas district courts bound by that decision that applied *Jarkesy* to determine the NLRB ALJs' removal protections was unconstitutional. But this Court is bound by *Calcutt*, and the Court finds Respondent's efforts to distinguish that case are without merit. In the main, Respondent says that NLRB ALJs have a greater level of decisional authority than the FDIC ALJs. Respondent does not explain why that should matter.[5]   an identical argument was recently rejected in *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *7. The Court agrees with the analysis of that case that

---

[5] To the extent that Respondent is arguing from this that NLRB ALJs enjoy significant executive power beyond an adjudicatory function, the Court agrees with the analysis in *Alivio Medical Center* that rejected a similar contention and determined the NLRB ALJs exercise adjudicatory, rather than executive functions. *See Alivio Medical Center*, 2024 WL 4188067, at *10-*11.

the argument is beside the point in any event. "*Calcutt* makes clear that the permissibility of ALJs' removal protections 'centers on their status as adjudicatory officials that issue non-final recommendations to an agency.'" *Id.* at \*8 (citing *Calcutt*, 37 F.4th at 320). Likewise, as that case makes clear, under the statutory framework the NLRB is not required to assign a case to an ALJ, and even where ALJs are used, the Board may reverse a finding made by the ALJ, even if no party has filed an exception. *Id.* Accordingly, the Court agrees with the holding in *YAPP USA Automotive* that "NLRB ALJs perform purely adjudicatory functions, issue non-final recommendations to the NLRB, and enjoy good-cause protections that are a 'lesser impingement' than the removal standard at issue in *Free Enterprise Fund.*" *Id.* Thus the two-level removal protections for NLRB ALJs do not violate Article II of the Constitution.

And neither do the protections for NLRB Board members. Here, the inquiry begins by determining whether the removal protection falls within an established exception to the President's general removal authority. *See YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at \*4. Both sides' focus here is on the exception established in *Humphrey's Executor* that "'permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power.'" *Id.* (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020)). Respondent contends that NLRB Board members exercise significant executive power, and thus *Humphrey's Executor* does not save the NLRB Board from a constitutional challenge. This argument was also considered, and rejected, in *YAPP USA Automotive Sys.* As that decision persuasively explains, this argument reads *Humphrey's Executor* and its progeny too narrowly. The Court agrees with that decision that *Humprey's Executor* "remains binding and continues to apply to traditional independent agencies led by a multimember board, including the NLRB." *Id.* at \*7.

13

Respondent's remaining argument then is that it would be an unjustified expansion of *Humphrey's Executor* to find that the removal protections for NLRB Board members survives scrutiny because NLRB Board members are removable only for neglect of duty or malfeasance in office, whereas the *Humphrey's Executor* standard includes inefficiency. Respondent contends those courts that have upheld the removal restrictions for NLRB Board members have failed to appreciate the difference. At least one court, however, has expressly rejected this argument. *See Alivio Medical Center*, 2024 WL 4188068 at *8, and it appears some commentators have also viewed this contention with skepticism. *See id.* at n.5 ("Legal commentators have likewise cast doubt on the proposition that the removal of "inefficiency" from the grounds upon which board members or commissioners can be removed from office renders unconstitutional the removal protections of independent agencies."). Based on this record, the Court finds Respondent's contention that the removal protections for NLRB Board members would be a significant expansion of the *Humprey's Executor* standard unfounded.

The Court concludes, therefore, that Respondent has not met its burden under Rule 12 of demonstrating that the removal protections for NLRB Board members violates Article II of the Constitution.

*3. Seventh Amendment*

Finally, both sides spend a few sentences addressing whether monetary damages in the NLRB proceedings would be unconstitutional under the Seventh Amendment. This does not appear to be an issue that, at least currently, is properly before the Court as both sides frame the issue as a hypothetical and thus the requisite constitutional standing element is not met. The Court merely notes here authority that has found a Seventh Amendment challenge based on similar grounds would not succeed. *YAPP USA Automotive Sys. Inc.*, 2024 WL 4119058 at *10-*13.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Respondent's Motion for Judgment on the

Pleadings (ECF No. 35) is **DENIED.**


Dated:   October 25, 2024                    /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                      UNITED STATES DISTRICT JUDGE

Tab C
Exhibit C

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ares Collective Group LLC, et al., | No. CV-24-00517-TUC-SHR |
| Plaintiffs, | **Order Denying TRO** |
| v. | |
| National Labor Relations Board, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' "Application for Temporary Restraining Order and Preliminary Injunction" ("TRO Motion") filed pursuant to Federal Rule of Civil Procedure 65. (Doc. 2.) For the reasons stated below, the Court denies Plaintiffs' TRO Motion.

## I.    BACKGROUND

Plaintiffs are two Arizona limited liability companies and one organization that operate eateries and a grocery facility in Tucson. (Doc. 1 at 7.) On September 2, 2021, one of Plaintiffs' former employees filed an unfair labor practice charge with the National Labor Relations Board (NLRB) against Plaintiff Flora's Market Run. (Doc. 1 at 7.) On October 23, 2024, the Regional Director of Region 28 of the NLRB filed a Consolidated Complaint against Plaintiffs as well as a Notice of Hearing. (Doc. 1 at 8.) On September 24, 2024, the Regional Director issued a Second Amended Consolidated Complaint with notice that a hearing on the former employee's claims would be held before an

Administrative Law Judge (ALJ) on October 28, 2024. (Doc. 1-2 at 3, 24.) The NLRB's amended complaint seeks "payment for consequential economic harm" Plaintiffs' former employee incurred as a result of Plaintiffs' alleged illegal conduct. (Doc. 1-2 at 22.) Plaintiffs answered the second amended complaint, asserting, among other things, affirmative defenses challenging the constitutionality of the scheduled hearing and NLRB's structure. (Doc. 1-2 at 30.)

On October 23, 2024, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief, asking this Court to enjoin Defendants from subjecting them to "unconstitutionally structured administrative proceedings pending the final resolution of this action" and to "[p]ermanently enjoin[] Defendants from implementing or carrying out the unconstitutional removal-protection provisions" insulating NLRB ALJs and Board Members. (Doc. 1 at 17.) Also on October 23, Plaintiffs filed the instant TRO Motion seeking an order "enjoin[ing] unconstitutional administrative proceedings" against them. (Doc. 2 at 2.) Plaintiffs argue: (1) "the NLRB's quest for compensatory monetary damages in an administrative proceeding violates Plaintiffs' Seventh Amendment right to trial by jury"; 2) "the ALJ assigned to conduct the hearing will unconstitutionally exercise substantial executive power while being insulated from Presidential control through two layers of for-cause removal protection in violation of Article II of the United States Constitution"; and (3) "the NLRB Board Members are likewise unconstitutionally protected from the President's removal power and, more generally, Presidential control." (Doc. 2 at 2.)

## II. LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (TROs are analyzed in substantially the same way as preliminary injunctions). A plaintiff seeking a TRO must establish: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3)

the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the government is a party, the last two of the four factors— the balance of the equities and the public interest—merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The first factor, likelihood of success on the merits, is "the most important *Winter* factor." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("[I]f a movant fails to meet this threshold inquiry, the court need not consider the other factors."). However, in the Ninth Circuit, a temporary restraining order is warranted where "serious questions going to the merits" exist and a "hardship balance . . . tips sharply toward the plaintiff"—provided the other two elements of the *Winter* test are also met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (describing serious questions going to the merits as "a lesser showing than likelihood of success on the merits"). Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

## III.  DISCUSSION

Plaintiffs contend (1) the scheduled proceeding before an NLRB ALJ will violate their Seventh Amendment right to a jury trial (Doc. 2 at 6–8), and (2) the NLRB ALJs and Board Members are unconstitutionally insulated from removal by the President by two layers of "for cause" employment protection. (Doc. 2 at 3, 10.) Even assuming Plaintiffs are likely to succeed on the merits of these claims, the Court finds they fail to show irreparable harm and are therefore not entitled to a TRO enjoining the NLRB proceeding. *See Winter*, 555 U.S. at 20.

Plaintiffs claim they will suffer irreparable harm without the Court's intervention because they "will be forced to undergo an unconstitutional proceeding before an insufficiently accountable ALJ and NLRB, without the jury trial to which [they are] entitled." (Doc. 2 at 12.) Further, Plaintiffs argue, the "economic burdens" associated with preparing for and participating in the hearing "separately constitute irreparable harm." (*Id.*

at 13.) These arguments fail to meet the standard that the Supreme Court has established and the Ninth Circuit has reiterated: "[t]he key . . . is demonstrating that the unconstitutional provision actually caused the plaintiff harm." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021); *see Collins v. Yellen*, 594 U.S. 220, 260 (2021) (shareholders needed to show the unconstitutional removal restriction—not simply the agency's actions—"cause[d] harm" to be entitled to retrospective relief); *see also YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4489598, *2–3 (6th Cir. 2024) (plaintiff not entitled to preliminary injunction where it failed to show the removal protections for NLRB officials would cause harm).

Here, even assuming the alleged constitutional infirmities exist, Plaintiffs fail to show how this Court's failure to grant temporary relief will cause irreparable harm. First, nothing about the NLRB proceedings will permanently deprive Plaintiffs of their Seventh Amendment right. Rather, as detailed in the NLRA, Plaintiffs can seek review of the NLRB's decision in the court of appeals. Second, merely highlighting the fact there is a two-layer removal system in place does not establish the causal link between the removal restrictions and their impact on the upcoming proceeding. Even assuming the two-layer removal system could cause a per se harm to Plaintiffs, this harm can be completely extinguished by the court of appeals vacating an ALJ's decision. Lastly, the timing of this TRO Motion undermines Plaintiffs' irreparable harm argument. For nearly a year, Plaintiffs were on notice of the nature of the remedy sought and the fact that the NLRB ALJ would hold a hearing. As Plaintiffs admitted at today's hearing, it was a strategic decision to wait until two business days before the NLRB's scheduled hearing to file this Motion. The Court finds this delay weighs against granting the TRO Motion.

**IV. CONCLUSION**

**IT IS ORDERED** Plaintiffs' TRO Motion (Doc. 2) is **DENIED**.

Dated this 25th day of October, 2024.

Honorable Scott H. Rash
United States District Judge

Tab D
Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ASCENSION SETON D/B/A ASCENSION SETON MEDICAL CENTER AUSTIN, | § § § § | |
| Plaintiff, | § § | CIVIL NO. 1-24-CV-01176-ADA |
| v. | § § § | |
| NATIONAL LABOR RELATIONS BOARD, JENNIFER ABRUZZO, LAUREN MCFERRAN, MARVIN E. KAPLAN, GWYNNE A. WILCOX, DAVID M. PROUTY, and ELEANOR LAWS, | § § § § § § § § | |
| Defendants. | § | |

## **ORDER**

Consistent with this Court's Order granting a preliminary injunction in *Space Exploration Technologies Corp. v. National Labor Relations Board*, No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024), and upon consideration of Plaintiff Ascension Seton's ("Ascension") Motion for Preliminary Injunction (ECF No. 2) and the National Labor Relations Board's ("NLRB") response in opposition (ECF No. 22), it is hereby ordered that the Motion for Preliminary Injunction is **GRANTED.**

The Court notes that the primary issue raised in Plaintiff's Motion—the constitutionality of removal protections for NLRB Members and administrative law judges (ALJs)—is currently on appeal at the Fifth Circuit. *See Amazon.com Services LLC v. NLRB*, No. 24-50761 (5th Cir. Sept. 30, 2024). This Court's decision in *Space Exploration* is also on appeal at the Fifth Circuit. *See Space Exploration Techs. Corp.*

*v. NLRB*, No. 24-50627 (5th Cir. 2024). Upon the Fifth Circuit's ruling in either case, this Court will reconsider the Preliminary Injunction in light of the Fifth Circuit's guidance. In the interim, for the purpose of preserving the status quo and avoiding irreparable harm, this Court grants Plaintiff's Motion for Preliminary Injunction (ECF No. 2).

## I.     BACKGROUND

Ascension's Motion seeks to enjoin the NLRB's administrative proceedings against it. Pressingly, Ascension seeks to enjoin the administrative hearing scheduled for October 8, 2024, in NLRB causes 16-CA-307709 and 16-CA-308153. ECF No. 2-2 at 10.

In November and December of 2022, charges were filed with the NLRB alleging that Ascension committed unfair labor practices. *Id.* at 5. On April 17, 2024, the NLRB issued an order consolidating the cases and setting an ALJ hearing on October 8, 2024. Ascension filed its Motion for Preliminary Injunction on September 19, 2024, to enjoin the NLRB proceedings. ECF No. 2. The NLRB filed a response in opposition to Ascension's motion on October 3, 2024. ECF No. 22. The Court held a hearing on October 7, 2024, to hear the arguments of both parties. ECF No. 31.

## II.     LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

These elements are not examined in isolation but balanced in consideration of each other. *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).

## III. DISCUSSION

### a. Plaintiff has shown a substantial likelihood of success on the Merits.

This Court finds that Ascension has shown a likelihood of success on the merits of one or more of its claims. This Court has previously determined that there was a substantial likelihood of success on the merits with regards to showing that NLRB ALJs and Members are unconstitutionally protected from removal. *Space Expl.*, 2024 WL 3512082, at *3–4. Counts one and two of Ascension's complaint allege that NLRB ALJs and Members, respectively, are unconstitutionally insulated from removal. ECF No. 1 at ¶¶ 45–82. Ascension thereby presents the same issue the Court addressed in *Space Exploration*, and the Court sees no reason to depart from its prior determination or the reasoning set forth therein. *See Space Exploration*, 2024 WL 3512082, at *3.

The NLRB insists that even if the challenged removal restrictions are unconstitutional, *Collins v. Yellen*, 594 U.S. 220 (2021) compels Ascension to show something it has not shown: that the President has sought to remove the ALJ assigned to this case. This Court agrees with the NLRB to the extent that *Collins* requires a court to determine whether an unconstitutional removal provision has caused, or is set to cause, harm to the plaintiff. However, the Court disagrees that *Collins* requires a showing that the President has sought to remove the ALJ assigned to this case. This same issue has been addressed in *Energy Transfer, LP v. National*

*Labor Relations Board*, NO. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024). The court in *Energy Transfer* ultimately found that *Collins* did not require a plaintiff to show that the President has sought to remove the ALJ assigned to a case. *See Energy Transfer*, 2024 WL 3571494, at *4. Instead, *Collins* only required a court to determine whether an unconstitutional removal provision has caused, or is set to cause, harm to the plaintiff. *Id.* The court would ultimately conclude that "[f]or removal-restriction claims that seek relief *before* an insulated actor acts, it is not that *Collins*'s causal-harm requirement is altogether inapplicable, but rather that it is readily satisfied." *Id.* This Court adopts the *Energy Transfer* court's reasoning that *Collins*'s causal-harm requirement is satisfied when a removal-restriction claim is brought before the insulated actor acts.

Ascension's alleged harm is not the threat of being subjected to a particular action, but rather, being forced to participate in a constitutionally defective administrative process. And it is the removal provisions that protect the NLRB ALJ's and Members that create the constitutional defect.

### b. Plaintiff has sufficiently demonstrated that not issuing a preliminary injunction will result in an irreparable injury.

This Court also finds a likelihood of irreparable harm in the absence of preliminary injunctive relief. As the Supreme Court has stated, "being subjected to unconstitutional agency authority—a proceeding by an unaccountable ALJ. . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (internal quotation marks omitted). In *Axon*, "[t]he claim, again, is about subjection to an illegitimate proceeding, led by an

illegitimate decisionmaker." *Id.* Ascension has made the same claim. Even though the agency's order could be vacated after the proceeding, a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order" but about avoiding "an illegitimate proceeding." *Id.*

Ascension is currently scheduled for a hearing before an NLRB ALJ on October 8, 2024. ECF No. 2-2 at 2. This Court finds that subjecting Ascension to a hearing before a potentially unconstitutionally protected agency official satisfies the irreparable harm requirement.

The NLRB argues that *Axon* does not address injunctive relief and is narrowly tailored to jurisdiction over structural constitutional challenges. This Court acknowledges that *Axon* examined injury for jurisdictional purposes and not in the injunction context, but that does not change the Court's conclusion. This Court takes the *Axon* Court at its word when it stated that "being subjected to" "a proceeding by an unaccountable ALJ" is an injury that "cannot be undone." *Axon*, 598 U.S. at 191. A harm that "cannot be undone" is by definition irreparable.

### c. The balance of the harms and public interest weighs in favor of issuing a preliminary injunction.

Lastly, the Court finds that the balance of the harms and public interest weighs in favor of the injunction. Where the government is a defendant, the harm to the opposing party and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Nor would an injunction preventing unlawful agency

5

action "disserve the public interest." *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). It is not in the public interest to have an increasingly expansive Executive Branch that "slip[s] from the Executive's control, and thus from that of the people." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010). Here, the balance of the harms to the opposing party and the public interest weighs in favor of granting a preliminary injunction.

## IV.  CONCLUSION

In conclusion, Ascension has met all the requirements for a preliminary injunction, and its Motion for Preliminary Injunction is hereby **GRANTED.**

**IT IS ORDERED** that all administrative proceedings in National Labor Relations Board Cases 16-CA-307709 and 16-CA-308153, including without limitation any hearing before an ALJ, are hereby stayed and enjoined in all respects pending further order of this Court.


**Signed** this 18th day of October 2024.

_____
Alan D Albright
United States District Judge