## No. 24-50627

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES CORPORATION,

*Plaintiff - Appellee*

v.

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as Board Member of the National Labor Relations Board; JOHN DOE, Administrative Law Judge NLRB,

*Defendants - Appellants*

consolidated with
_____

24-40533
_____

ENERGY TRANSFER, L.P.; LA GRANGE ACQUISITION, L.P.,

*Plaintiffs - Appellees*

v.

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in their official capacities as Board Members of the National Labor Relations Board; GWYNNE A. WILCOX, in their official capacities as Board Members of the National Labor Relations Board; DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board; JOHN DOE, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants - Appellants*

consolidated with

———————

24-10855

———————

AUNT BERTHA, doing business as Findhelp,

*Plaintiff - Appellee*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;
JENNIFER ABRUZZO, in her official capacity as the General Counsel of
the National Labor Relations Board; LAUREN MCFERRAN, in her official
capacity as the General Counsel of the National Labor Relations Board;
MARVIN E. KAPLAN; GWYNNE A. WILCOX; DAVID M. PROUTY, in their
official capacities as Board Members of the National Labor Relations
Board; JOHN DOE, in their official capacity as an Administrative Law
Judge of the National Labor Relations Board,

*Defendants - Appellants*

On Appeals from the United States District Courts
for the Northern, Southern, and Western Districts of Texas

## BRIEF OF APPELLEE
## SPACE EXPLORATION TECHNOLOGIES CORP.

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF INTERESTED PERSONS

*Nos. 24-50627, 24-40533, 24-10855*
*Space Exploration Technologies Corp. v. NLRB*
*Energy Transfer, L.P. v. NLRB*
*Aunt Bertha v. NLRB*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.     Space Exploration Technologies Corp. ("SpaceX"), Plaintiff and Appellee. SpaceX has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2.     National Labor Relations Board, a federal administrative agency, Defendant and Appellant.

3.     Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Appellant.

4.     Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Appellant.

5.     Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Appellant.

6.    Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Appellant.

7.    David M. Prouty, in his official capacity as Board member of the National Labor Relations Board, Defendant and Appellant.

8.    John Doe, in his official capacity as an Administrative Law Judge of the National Labor Relations Board, Defendant and Appellant.

9.    Constitutional Accountability Center, *Amicus Curiae*.

10.    American Federation of Labor & Congress of Industrial Organizations (AFL-CIO) and Office and Professional Employees International Union (OPEIU), *Amici Curiae*.

11.    Alan D. Albright, in his official capacity as United States District Judge of United States District Court for the Western District of Texas, Waco Division.

12.    United States of America, appropriates funds for and assumes debts of Defendants and Appellants.

The undersigned counsel for SpaceX, separately lists the following persons as attorneys of record:

13.    Harry I. Johnson, III, Attorney for SpaceX.

14.    Michael E. Kenneally, Attorney for SpaceX.

15.  Catherine L. Eschbach, Attorney for SpaceX.

16.  Stefanie Moll, Attorney for SpaceX.

17.  David P. Boehm, Attorney for Defendants.

18.  Kevin P. Flanagan, Attorney for Defendants.

19.  Paul A. Thomas, Attorney for Defendants.

20.  Matheus Teixeira, Attorney for Defendants.

21.  Grace L. Pezzella, Attorney for Defendants.

22.  Christine Flack, Attorney for Defendants.

23.  Peter Sung Ohr, Attorney for Defendants.

24.  Nancy E. Kessler Platt, Attorney for Defendants.

25.  Dawn L. Goldstein, Attorney for Defendants.

26.  Elizabeth B. Wydra, Attorney for *Amicus Curiae*.

27.  Brianne J. Gorod, Attorney for *Amicus Curiae*.

28.  Brian R. Frazell, Attorney for *Amicus Curiae*.

29.  Margaret Hassel, Attorney for *Amicus Curiae*.

30.  Andrew Lyubarsky, Attorney for *Amicus Curiae*.

31.  Jane Lauer Barker, Attorney for *Amicus Curiae*.

Dated:  December 11, 2024          s/ Michael E. Kenneally
                                    MICHAEL E. KENNEALLY

## STATEMENT REGARDING ORAL ARGUMENT

This Court has scheduled this case for oral argument on February 5, 2025. SpaceX agrees that the case warrants oral argument given the importance of the issues presented.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...........................................i

STATEMENT REGARDING ORAL ARGUMENT .................................iv

TABLE OF AUTHORITIES ...................................................................vii

INTRODUCTION....................................................................................1

STATEMENT OF JURISDICTION .........................................................2

STATEMENT OF THE ISSUE.................................................................3

STATEMENT OF THE CASE .................................................................3

I.    The NLRB pursues unfair labor practice charges against
      SpaceX after it terminates an employee for unsafe conduct...........3

II.   SpaceX challenges the NLRB proceedings, and the district
      court enjoins them after a hearing on the preliminary
      injunction motion. .........................................................................6

III.  The NLRB appeals and then moves to consolidate the appeal
      with two other appeals in this Circuit. ...........................................9

SUMMARY OF THE ARGUMENT .......................................................10

STANDARD OF REVIEW.....................................................................12

ARGUMENT ........................................................................................13

I.    SpaceX is likely to succeed on its claims. .....................................13

      A.    NLRB ALJs are unconstitutionally insulated from
            removal. .................................................................................13

            1.    *Jarkesy* controls the outcome because two layers
                  of removal protection insulate NLRB ALJs. ...............13

            2.    *Collins* does not apply if a plaintiff files suit to
                  avoid undergoing an unconstitutional proceeding
                  in the first place. .........................................................19

      B.    NLRB Members are unconstitutionally insulated from
            removal. .................................................................................27

# TABLE OF CONTENTS
(continued)

Page

II. The unconstitutional NLRB proceedings inflict irreparable harm. ....................................................................................... 37

    A. Being subject to an unconstitutionally structured administrative hearing inflicts irreparable harm. ............... 38

    B. The NLRB proceedings also inflict irreparable economic and reputational harm. ........................................................ 44

    C. The district court correctly concluded severability was irrelevant to the preliminary injunction analysis. ............... 45

        1. Severance is not relevant because a preliminary injunction merely preserves the status quo until the final remedy can be fashioned on the merits. ....... 45

        2. The NLRB has forfeited any argument against the district court's findings that SpaceX would likely succeed on its arguments that these provisions are not severable. ....................................... 49

III. The balance of harms and public interest favor a preliminary injunction. ................................................................................. 51

IV. The Norris-LaGuardia Act does not apply. ................... 54

    A. The NLRB failed to preserve its arguments. ....................... 54

    B. The injunction below does not implicate the Norris-LaGuardia Act's requirements. ......................................... 56

    C. Even if the Norris-LaGuardia Act did apply, SpaceX fulfilled its requirements. ..................................................... 61

CONCLUSION ................................................................................. 64

CERTIFICATE OF SERVICE ........................................................ 65

CERTIFICATE OF COMPLIANCE ............................................... 66

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*ABM Indus. Grps., LLC v. U.S. Dep't of Lab.,*
  No. 24-cv-3353, 2024 WL 4642962 (S.D. Tex. Oct. 30, 2024)....... 22, 40

*Alpine Sec. Corp. v. FINRA,*
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ................... 39

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) .......................................................................... 55

*Aunt Bertha v. NLRB,*
  No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) .... *passim*

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ................................................................. *passim*

*BST Holdings, L.L.C. v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) .................................................. 12, 52, 53

*Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Emps.,*
  143 F. Supp. 2d 672 (N.D. Tex. 2001)................................................ 62

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) ...................................................... 24, 25

*CFPB v. All Am. Check Cashing, Inc.,*
  33 F.4th 218 (5th Cir. 2022) ............................................................ 43

*Chi. & N. W. Ry. Co. v. United Transp. Union,*
  402 U.S. 570 (1971).......................................................................... 56

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ...................................................... 24, 25

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) (en banc) ...................................... *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Collins v. Dep't of Treasury,*
   83 F.4th 970 (5th Cir. 2023) ............................................................ 24

*Collins v. Yellen,*
   594 U.S. 220 (2021) .......................................................... *passim*

*Consumers' Rsch. v. CPSC,*
   91 F.4th 342 (5th Cir. 2024) ............................................ 32, 33, 34, 35

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
   710 F.3d 579 (5th Cir. 2013) .............................................................. 52

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
   661 F.2d 328 (5th Cir. 1981) ................................................ 38, 41, 42

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety &*
   *Homeland Sec.,*
   108 F.4th 194 (3d Cir. 2024) ............................................................ 41

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
   601 U.S. 42 (2024) .............................................................................. 60

*Doran v. Salem Inn, Inc.,*
   422 U.S. 922 (1975) ...................................................................... 43, 46

*Elrod v. Burns,*
   427 U.S. 347 (1976) ............................................................................ 38

*Energy Transfer, LP v. NLRB,*
   No. 24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ...... *passim*

*Exela Enter. Sols., Inc. v. NLRB,*
   32 F.4th 436 (5th Cir. 2022) ................................................ 31, 32, 34

*Free Enter. Fund v. PCAOB,*
   561 U.S. 477 (2010) .......................................................... *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*FTC v. U.S. Anesthesia Partners,*
No. 24-20270, 2024 WL 5003580 (5th Cir. Aug. 15, 2024) ............... 27

*Humphrey's Ex'r v. United States,*
295 U.S. 602 (1935) ................................................................... *passim*

*Illumina, Inc. v. FTC,*
88 F.4th 1036 (5th Cir. 2023) ........................................................ 35

*Indep. Elec. Contractors of Houston, Inc. v. NLRB,*
720 F.3d 543 (5th Cir. 2013) .......................................................... 55

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n,*
457 U.S. 702 (1982) ......................................................................... 59

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ..................................................... *passim*

*Kan. City S. Transp. Co. v. Teamsters Loc. Union #41,*
126 F.3d 1059 (8th Cir. 1997) ......................................................... 62

*Lambert v. Bd. of Comm'rs of Orleans Levee Dist.,*
No. 05-cv-5931, 2006 WL 8456316 (E.D. La. Mar. 22, 2006) ............ 42

*Leachco, Inc. v. CPSC,*
103 F.4th 748 (10th Cir. 2024) ................................................. 23, 41

*League of Women Voters of U.S. v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) ............................................................ 52

*Louisiana v. Biden,*
55 F.4th 1017 (5th Cir. 2022) ............................................. 13, 52, 53

*Lucia v. SEC,*
585 U.S. 237 (2018) ....................................................... 14, 20, 21, 50

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) ............................................................ 47

*Moore v. Brown*,
   868 F.3d 398 (5th Cir. 2017) ............................................................ 12

*Myers v. United States*,
   272 U.S. 52 (1926) ............................................................ 13, 14, 36

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................ 52

*NLRB v. United Food & Com. Workers Union*,
   484 U.S. 112 (1987) ............................................................ 31

*Overstreet v. El Paso Disposal*,
   625 F.3d 844 (5th Cir. 2010) ............................................................ 30, 32

*Petteway v. Galveston County*,
   111 F.4th 596 (5th Cir. 2024) ............................................................ 23

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ............................................................ 55

*Rollins v. Home Depot USA*,
   8 F.4th 393 (5th Cir. 2021) ............................................................ 49

*SEC v. Jarkesy*,
   144 S. Ct. 2117 (2024) ............................................................ 15

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) ............................................................ *passim*

*Sheffield v. Bush*,
   604 F. Supp. 3d 586 (S.D. Tex. 2022) ............................................................ 42

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*SpaceX v. NLRB,*
    No. 24-cv-203, 2024 WL 3512082 (W.D. Tex. July 23, 2024)..... *passim*

*Starbucks Corp. v. McKinney,*
    602 U.S. 339 (2024)................................................................. 30

*Stern v. Marshall,*
    564 U.S. 462 (2011)................................................................. 53

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
    732 F.3d 535 (5th Cir. 2013)................................................. 12

*Thomas v. Tex. Dep't of Crim. Just.,*
    297 F.3d 361 (5th Cir. 2002)................................................ 35

*Topletz v. Skinner,*
    7 F.4th 284 (5th Cir. 2021) ................................................. 12

*United States v. Ayika,*
    837 F.3d 460 (5th Cir. 2016)................................................ 49

*United States v. Petras,*
    879 F.3d 155 (5th Cir. 2018)................................................ 15

*United States v. Texas,*
    599 U.S. 670 (2023).............................................................. 30

*United Steelworkers of Am., AFL-CIO v. Bishop,*
    598 F.2d 408 (5th Cir. 1979)........................................... 59, 60

*VHS Acquisition Subsidiary No. 7, Inc. v. NLRB,*
    No. 24-cv-2577, 2024 WL 4817175 (D.D.C. Nov. 17, 2024).......... 60, 61

*VHS Acquisition Subsidiary No. 7 v. NLRB,*
    No. 24-cv-2577, 2024 WL 5056358 (D.D.C. Dec. 10, 2024) .......... 23, 26

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wenner v. Tex. Lottery Comm'n*,
123 F.3d 321 (5th Cir. 1997)......................................................43, 47

*WestRock Servs., Inc.*,
366 N.L.R.B. No. 157 (Aug. 6, 2018) ................................................16

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)................................................................................13

*Wooten v. Ohler*,
303 F.2d 759 (5th Cir. 1962)..................................................56, 57, 58

*YAPP USA Auto. Sys., Inc. v. NLRB*,
No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ...................23

## CONSTITUTIONAL PROVISIONS & STATUTES

5 U.S.C.
§ 1202 ..................................................................................................15
§ 7521 ............................................................................................14, 15

15 U.S.C.
§ 2053 ..................................................................................................34
§ 2064 ..................................................................................................31

28 U.S.C.
§ 1292 ....................................................................................................2
§ 1331 ....................................................................................................2

Federal Trade Commission Act
15 U.S.C. § 41......................................................................................28
15 U.S.C. § 49......................................................................................30
15 U.S.C. § 53................................................................................30, 31
Act of Mar. 21, 1938, ch. 49, § 4, 52 Stat. 111..................................30
Act of Sept. 26, 1914, ch. 311, § 9, 38 Stat. 717 ...............................30

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Labor Management Relations Act of 1947, Pub. L. No. 80-101,
§ 101, 61 Stat. 136, 139................................................................33, 57

National Labor Relations Act
29 U.S.C. § 153................................................. 15, 28, 31, 33
29 U.S.C. § 154................................................................29
29 U.S.C. § 159................................................................29
29 U.S.C. § 160................................................................*passim*

Norris-LaGuardia Act
29 U.S.C. § 107................................................................*passim*
29 U.S.C. § 113.................................................57, 58, 60, 61

U.S. CONST.
amend. I ................................................................41
amend. VII ................................................................15
art. II ...............................................11, 13, 14, 28
art. III................................................1, 27, 36

## RULES & REGULATIONS

5 C.F.R. § 1200.1 ................................................................50

17 C.F.R.
§ 201.180 ................................................................17
§ 201.360 ................................................................18

29 C.F.R.
§ 101.10 ................................................................16
§ 101.11 ................................................................17
§ 101.12 ................................................................17
§ 102.35 ................................................................16
§ 102.45 ................................................................17
§ 102.48 ............................................................17, 18
§ 102.177 ................................................................17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

FED. R. APP. P. 4 ...................................................................................... 3

**OTHER AUTHORITIES**

THE FEDERALIST
    No. 78 (Hamilton) .......................................................................... 53
    No. 47 (Madison) ............................................................................. 1

Michael J. Heilman, *The National Labor Relations Act at Fifty:*
    *Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059
    (1985).............................................................................................. 50

**INTRODUCTION**

The Constitution protects against the concentration of executive, legislative, and judicial powers in a single set of hands. *See* THE FEDER-ALIST NO. 47 (Madison). But today's National Labor Relations Board ("NLRB") fits poorly within that framework. The NLRB prosecutes alleged violations of federal labor law, defines the legal standards that govern the prosecutions, and weighs the facts necessary to find a violation—with only limited judicial review by Article III courts. Congress has tried to insulate the NLRB from control by the executive branch by making it hard for NLRB Members and administrative law judges ("ALJs") to be removed from office. But that has only created further problems by making these powerful executive officers unaccountable to the President despite their execution of federal law.

SpaceX filed this action to avoid irreparable injuries that it would suffer through an unconstitutionally structured administrative proceeding before the NLRB. After a hearing, the district court issued a thorough opinion holding that SpaceX was entitled to a preliminary injunction under Fifth Circuit and Supreme Court precedent. This Court should affirm.

1

As the district court held, SpaceX is entitled to a preliminary injunction on two independent grounds. Both sets of agency officers—the ALJ and the NLRB Members—presiding over this administrative proceeding against SpaceX are unconstitutionally protected from presidential oversight. Having to appear in a proceeding before unconstitutionally insulated agency officials is an injury and, as this Court and the Supreme Court have recognized, that injury cannot meaningfully be remedied once the administrative proceeding has run its course. To preserve the status quo, SpaceX is entitled to temporary relief until the district court can fashion adequate final relief.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because SpaceX claims that the NLRB's proceedings against it are structured in ways that violate the Constitution of the United States. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023). For the reasons described *infra*, pp. 54-64, the Norris-LaGuardia Act did not deprive the district court of jurisdiction to enter the preliminary injunction.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) because Defendants appeal an order granting an injunction. The appeal

is timely because Defendants filed their notice of appeal on July 29, 2024, within 60 days of the district court's July 23, 2024 injunction order. ROA.24-50627.336; *see* FED. R. APP. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUE

Whether the NLRB's administrative proceeding against SpaceX should be preliminarily enjoined pending the final adjudication of this action.

## STATEMENT OF THE CASE

### I.   The NLRB pursues unfair labor practice charges against SpaceX after it terminates an employee for unsafe conduct.

SpaceX was founded in 2002 with the audacious goal of making life multiplanetary. ROA.24-50627.77. Today, SpaceX operates a space launch business and a global satellite-based internet service known as Starlink. ROA.24-50627.77. It employs more than 14,000 people in facilities around the country, including in its rocket development and test facility in McGregor, Texas; its Starlink manufacturing facility in Bastrop, Texas; its Starbase rocket manufacturing and launch facility in Boca Chica, Texas; its human spaceflight mission operations and integration facility in Houston, Texas; and various facilities in Florida, Washington State, California, Connecticut, and Washington, D.C. ROA.24-50627.77.

3

Customers of SpaceX's launch business include, among others, NASA, U.S. government national security agencies, commercial customers from around the world, and international space agencies. ROA.24-50627.77. NASA selected Starship—the largest rocket ever built—to return American astronauts to the Moon. ROA.24-50627.77. Sending crewed spacecraft to the International Space Station, the Moon, and Mars (and beyond) requires the utmost vigilance, discipline, technical excellence, and teamwork of SpaceX personnel across all its facilities—as does building and maintaining its constellation of thousands of Starlink satellites and serving millions of Starlink customers in more than 70 (now more than 100) countries around the world. ROA.24-50627.77-78. To ensure this work is performed properly, SpaceX has implemented safety and attendance policies that it expects all employees to follow. ROA.24-50627.78.

In the nearly seven months between November 29, 2021, and June 14, 2022, a former SpaceX employee (the "Charging Party")[1] committed

---

[1] Because the identity of the Charging Party is irrelevant to this litigation and the NLRB has chosen to redact it from the public version of the administrative complaint, SpaceX has not used the Charging Party's name in this litigation.

four violations of SpaceX's safety policies, including causing damage from repeated reckless operation of a forklift, and fifteen violations of SpaceX's attendance policies. ROA.24-50627.78. On June 21, 2022, SpaceX gave notice that the Charging Party's employment was being terminated. ROA.24-50627.78. SpaceX offered the Charging Party a separation agreement similar to those it offers terminated employees nationwide. ROA.24-50627.78.

On December 20, 2022, the Charging Party filed a charge with the NLRB alleging that the termination constituted an unfair labor practice in violation of the National Labor Relations Act ("NLRA"). ROA.24-50627.78. The NLRB requested SpaceX's response to the charges. ROA.24-50627.78. SpaceX submitted its position statement and supporting evidence refuting the allegations on March 17, 2023. ROA.24-50627.78.

On March 20, 2024, fifteen months after the charge, the Regional Director for Region 19 issued a complaint for NLRB case number 19-CA-309274 and a notice that an administrative hearing would occur before an ALJ on October 29, 2024. ROA.24-50627.78-79. The administrative complaint alleged no statutory violation in SpaceX's decision to terminate

Charging Party's employment; rather, it challenged SpaceX's nationwide use of certain separation and arbitration agreements. ROA.24-50627.79. SpaceX answered the administrative complaint on April 17, 2024. ROA. 24-50627.79.

## II.  SpaceX challenges the NLRB proceedings, and the district court enjoins them after a hearing on the preliminary injunction motion.

On April 19, 2024, SpaceX filed a complaint in federal district court alleging that the NLRB proceedings are unconstitutionally structured because of statutory removal restrictions that impede the President's control over (1) the NLRB's ALJ and (2) the NLRB's Members. *See* ROA.24-50627.12-25. SpaceX also moved for a preliminary injunction based on both claims on April 25. ROA.24-50627.69-94. On July 10, the district court held a hearing. *See* ROA.24-50627.375-406. At that hearing, the district court received evidence into the record and heard argument from both sides. ROA.24-50627.376-405. After hearing argument and considering the evidence, the district court ruled from the bench stating it would grant SpaceX's request for a preliminary injunction. ROA.24-50627.405.

The district court issued its written order granting the preliminary injunction about two weeks later. ROA.24-50627.319-33. The district court determined that SpaceX had shown a likelihood of success on both claims and had also shown that the other three factors favored a preliminary injunction.

As to the ALJ removal-protection claim, the district court applied this Court's precedent in *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024), and found that the multilayered for-cause removal protections shielding NLRB ALJs from presidential control violate the Constitution. *SpaceX v. NLRB*, No. 24-cv-203, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024).[2] Thus, under "current Fifth Circuit law, there is a substantial likelihood that SpaceX succeeds on the merits with regards to showing that the NLRB ALJs are unconstitutionally protected from removal."

As for the NLRB Members' removal protections, the district court held that there is no justification to expand *Humphrey's Executor v.*

---

[2] Given there are three different records on appeal, to avoid confusion, SpaceX uses the reporter citations on Westlaw and not the record citations when citing the district court opinions.

*United States*, 295 U.S. 602 (1935), to the NLRB given facts that distinguish the NLRB from the FTC as well as recent Supreme Court case law. *SpaceX*, 2024 WL 3512082, at *3-4. Thus, the district court concluded there is also "a substantial likelihood that SpaceX succeeds on the merits with regards to a finding that the NLRB Members are unconstitutionally protected from removal." *Id.* at *4.

The court then turned to irreparable harm. It applied *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023), and cases relying on it, and found that being subjected to the authority of unaccountable ALJs and NLRB Members would inflict irreparable harm. *SpaceX*, 2024 WL 3512082, at *6.

Finally, the court concluded that "the balance of harms and public interest weigh in favor of granting a preliminary injunction" because there is no harm from preventing unlawful agency action. *Id.* at *7. The court did not question that federal labor law promotes strong public interests as well. *Id.* But "Congress exceeds its power when it attempts to neuter the President's constitutional power to remove and control executive officers by conferring a web of removal protections upon NLRB ALJs

and the NLRB Members." *Id.* The district court therefore enjoined the relevant administrative proceeding against SpaceX. *Id.*

### III. The NLRB appeals and then moves to consolidate the appeal with two other appeals in this Circuit.

The NLRB timely appealed the district court's order. ROA.24-50627.336. It then moved to consolidate this appeal with two others. Dkt. 31. Those two appeals arose when two other courts in this Circuit followed the district court's reasoning and granted those plaintiffs preliminary injunctions on removal-protection claims involving NLRB ALJs. *See Aunt Bertha v. NLRB*, No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024); *Energy Transfer, LP v. NLRB*, No. 24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024). No court in this Circuit has drawn the opposite conclusion.

Neither of the consolidated cases reached claims addressing the removal protections of NLRB Members (or other claims presented in the complaints), finding it sufficient to enjoin the underlying administrative proceedings based on the ALJ removal-protection claims. The NLRB also appealed the grants of preliminary injunctions in those cases.

On October 11, this Court consolidated this appeal with the appeals in Case Numbers 24-40533 and 24-10855. Dkt. 41-1. This appeal was designated the lead appeal on the docket in the consolidated appeal. This Court issued a briefing schedule that allowed the NLRB to file a consolidated opening brief but allowed the appellees to each file their own respective response briefs. *See* Dkt. 41-1. For this reason, SpaceX does not address the distinct facts and issues in the other two cases, as the respective appellees in those matters will address any case-specific matters in their cases.

## SUMMARY OF THE ARGUMENT

The district court properly exercised its discretion to grant a preliminary injunction to halt the NLRB's proceeding against SpaceX and preserve the status quo to enable the fashioning of effective final relief. SpaceX satisfied all four preliminary injunction requirements, and this Court should affirm.

I.    On the most important injunction factor—likelihood of success—SpaceX carried its burden for both its claims.

First, this Court's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024), is dispositive of

Count I. Just like the SEC ALJs in *Jarkesy*, NLRB ALJs are inferior officers for purposes of Article II of the Constitution, and they are unconstitutionally insulated from presidential oversight by three layers of removal protection. The Supreme Court's affirmance of *Jarkesy* left this Court's removal-protection holding undisturbed. Under the rule of orderliness, it binds this panel just as it bound the district court.

Second, the NLRB Members' insulation from presidential control violates Article II under *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020). The Supreme Court's oft-criticized ruling in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), does not extend to the NLRB's unique structure, which splits prosecutorial powers in a distinctive way between the NLRB Members and the NLRB's politically accountable General Counsel, and which insulates NLRB Members with unusually restrictive removal protections.

II.    SpaceX has also shown irreparable harm. As the Supreme Court recently recognized in affirming this Court, "[b]eing subjected to unconstitutional agency authority"—including having to appear before unconstitutionally insulated executive officers—is a cognizable injury that "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S.

at 191 (cleaned up). Thus, SpaceX's constitutional injuries cannot be remedied after the NLRB's administrative proceedings occur. Nor can its tangible harms be cured—like the time and resources SpaceX must divert to the NLRB proceedings and the damage they pose to SpaceX's reputation.

III.    The final two injunction factors merge where the government is the defendant. There is no governmental or public interest in conducting an unconstitutional agency proceeding. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

IV.    The government's jurisdictional objection under the Norris-LaGuardia Act is meritless.

## STANDARD OF REVIEW

A grant of a preliminary injunction is reviewed "for abuse of discretion," with this Court "reviewing findings of fact for clear error and conclusions of law de novo." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013); *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021). "Under the clearly erroneous standard, this court upholds findings by the district court that are plausible in light of the record as a whole." *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017).

# ARGUMENT

Preliminary injunctive relief is warranted when the movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also, e.g.*, *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies all four factors.

## I.    SpaceX is likely to succeed on its claims.

### A.    NLRB ALJs are unconstitutionally insulated from removal.

#### 1.    *Jarkesy* controls the outcome because two layers of removal protection insulate NLRB ALJs.

The district court correctly determined that SpaceX demonstrated a likelihood of success on its ALJ removal-protection claim.

The NLRB ALJ's protection from removal by the President renders the proceeding unconstitutionally structured. Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020). The President does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the

assistance of subordinates." *Id.* Because executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010). The Constitution requires that the President have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L.*, 591 U.S. at 204.

Fifth Circuit precedent clearly establishes that SpaceX's claim that NLRB ALJs are unconstitutionally protected from removal will succeed. In *Jarkesy*, this Court held that indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [Merit System Protection Board] on the record after opportunity for hearing.'" *Jarkesy*, 34 F.4th at 464. Similarly, SEC Commissioners and MSPB Members "can only be removed by the President for cause." *Id.* Because SEC ALJs are "inferior officers" under Article II they are "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id.* (citing *Lucia v. SEC*, 585

14

U.S. 237, 248-49 (2018)). But multiple "layers of for-cause protection" unconstitutionally "stand in the President's way." *Id.* at 465.[3]

And exactly like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Id.* Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs. Likewise, MSPB Members have the same removal protection under 5 U.S.C. § 1202(d) regardless of whether they are considering SEC ALJs or NLRB ALJs. Finally, the NLRB Members also have explicit removal protection: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight by multiple layers of removal protections. *See Jarkesy*, 34 F.4th at 464. Indeed, NLRB ALJs' removal protections are indistinguishable from SEC ALJs'.

---

[3] The Supreme Court's affirmance of *Jarkesy*'s Seventh Amendment holding did not disturb this Court's removal-protection holding. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). It remains binding precedent. *See, e.g., United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018) ("[F]or a Supreme Court decision to override a Fifth Circuit case, the decision must unequivocally overrule prior precedent[.]" (citation omitted)).

The NLRB seemingly agrees. It declined to make any attempt to distinguish SEC ALJs and NLRB ALJs in any of the three cases in this appeal. As the district court in this case observed, "Defendants do not attempt to distinguish the SEC ALJs from the NLRB ALJs." *SpaceX v. NLRB*, No. 24-cv-203, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024); *see Energy Transfer, LP v. NLRB*, No. 24-cv-198, 2024 WL 3571494, at *2 (S.D. Tex. July 29, 2024) ("Indeed, the NLRB has offered no distinction between the removal protections at issue and those held to be unconstitutional in *Jarkesy*"); *Aunt Bertha v. NLRB*, No. 24-cv-798, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024) ("In fact, the NLRB has not, and cannot, offer any distinction between the relevant provisions or the protections they confer upon the ALJs").

For good reason—NLRB precedent itself forecloses any distinction. *WestRock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) (finding that *Lucia*'s reasoning on SEC ALJs extends to NLRB ALJs). "Board judges, like SEC judges, are inferior officers." *Id.* Like SEC ALJs, they "exercise considerable power over administrative case records" and "may punish contemptuous conduct." *Jarkesy*, 34 F.4th at 464; *see* 29 C.F.R. §§ 101.10, 102.35. They also issue decisions and, if no party files

exceptions, those decisions become the decision of the NLRB. 29 C.F.R. §§ 101.11, 101.12(b), 102.45, 102.48(a).

The NLRB concedes that if *Jarkesy* applies, then it is binding and controls. NLRB Br. 40. But the NLRB still half-heartedly argues that "NLRB ALJs' powers are materially more restricted in scope" than SEC ALJs'. NLRB Br. 39 (noting that this Court found significant in *Jarkesy* that SEC ALJs punish contemptuous conduct and their decisions become final). Yet NLRB ALJs possess the same powers as SEC ALJs, and the NLRB cannot escape *Jarkesy*'s applicability. First, the NLRB claims that its ALJs lack the power to sanction and can only exclude persons engaged in misconduct from a hearing, citing 29 C.F.R. § 102.177(b). NLRB Br. 39. For one thing, that is still the power to sanction, as in *Jarkesy*. This power is not meaningfully different from SEC ALJs' power to sanction. *See* 17 C.F.R. § 201.180. But it also understates the full scope of ALJs' powers under 29 C.F.R. § 102.177. Subsection (b) makes clear the ALJ also can "admonish or reprimand, after due notice, any person who engages in misconduct at a hearing" and subsection (c) allows an ALJ to strike all witness testimony as a sanction for refusing to answer a question. 29 C.F.R. § 102.177(b)-(c).

The NLRB similarly ignores the language of the provision it cites when it claims that NLRB ALJ decisions are "definitionally non-final." NLRB Br. 39 (citing 29 U.S.C. § 160(c)). Not only does Section 160(c) state an ALJ decision is final if no exceptions are filed, the NLRB's regulation underscores the point: "If no timely or proper exceptions are filed, the findings, conclusions, and recommendations contained in the Administrative Law Judge's decision will, pursuant to Section 10(c) of the Act, automatically become the decision and order of the Board and become its findings, conclusions, and order." 29 C.F.R. § 102.48(a). If anything, decisions by SEC ALJs are less final, because the SEC has discretion to review them "on its own initiative," even if no party files a request for SEC review. *See* 17 C.F.R. § 201.360(d)(1). NLRB ALJs have the same essential powers as SEC ALJs, and there is no escape from *Jarkesy*.

Because *Jarkesy* is on-point and binding, there is no question about SpaceX's likelihood of success on the merits.

**2.** ***Collins* does not apply if a plaintiff files suit to avoid undergoing an unconstitutional proceeding in the first place.**

Realizing they cannot escape *Jarkesy*, the NLRB tries to instead add to SpaceX's burden and argue that to avoid undergoing an unconstitutional administrative proceeding, SpaceX must first show the ALJ would be removed but for the removal protections.

There is no such requirement to obtain relief. Plaintiffs who are parties in ongoing administrative proceedings and have a meritorious objection to the agency officials' removal protections are, at the very minimum, "entitled to declaratory relief sufficient to ensure that the [administrative] requirements and . . . standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter.*, 561 U.S. at 513. Both in *Free Enterprise* and *Jarkesy*, the courts held statutory removal restrictions unconstitutional without any inquiry into whether any particular ALJ would actually have been removed. 34 F.4th at 465. The NLRB has argued that *Collins v. Yellen*, 594 U.S. 220 (2021), requires such an inquiry. But this Court, sitting en banc, has explained that the *Collins* requirement does not apply when, as here,

the plaintiff "seeks an administrative adjudication untainted by separa-tion-of-powers violations" but "does not seek to 'void' the acts of any [agency] official." *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter. Inc. v. FTC*, 598 U.S. 175 (2023).

That distinction makes sense. A structural problem pollutes the en-tirety of a proceeding, regardless of the particular actors' identities. And even if a President may not openly state their interest in removing a par-ticular ALJ, the potential for removal influences how ALJs carry out their duties. After all, Congress sought to make NLRB ALJs politically independent for a reason: it wanted to insulate them from political pres-sures. *See, e.g.*, *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judg-ment in part and dissenting in part). A showing of particularized cause-and-effect is not necessary to declare that such insulation from Presiden-tial oversight is unconstitutional.

What's more, requiring a plaintiff to make such a showing in this posture—where they seek to avoid an unconstitutional proceeding and being subject to *any* rulings by an ALJ—makes no sense. No party could make this particularized showing where the ALJ who will hear its case and make rulings has not been named, or early in the case before an ALJ

acts in a way the parties might speculate the President might find objectionable. If a party had to wait until after the assigned ALJ was named by the NLRB, it would need to rush into court on a highly expedited emergency basis because the naming of an NLRB ALJ often triggers hearings, and rulings, at any time. In this type of case, the constitutional flaw is that, as Justice Breyer's *Lucia* opinion sets forth, ALJs who are accountable to the president act differently than those who know they are fully under the President's control. In contrast, *Collins* is concerned with scenarios in which a party waits to challenge removal protections after it sees the ALJ's particular rulings and then seeks to unwind them. When a party has not sought beforehand to protect itself from constitutional harm and then seeks to void unfavorable ALJ rulings, a showing of particularized cause-and-effect is required.

The en banc Court in *Cochran* recognized this distinction. This Court explained there that *Collins*'s causal-harm requirement does not apply when a litigant sues to obtain "an administrative adjudication untainted by separation-of-powers violations," as SpaceX has done. *Cochran*, 20 F.4th at 210 n.16. Rather, the causal-harm requirement ap-

21

plies when a litigant "seek[s] to 'void' the acts of [the unlawfully protected] official." *Id.* The NLRB pretends that *Cochran* is irrelevant. NLRB Br. 34-36. But *Cochran* recognizes—precisely because of the high showing that might be required to void an official's past acts—that a litigant's "only hope for meaningful judicial review" on a removal-protection claim is usually through a pre-enforcement lawsuit like this one. *Cochran*, 20 F.4th at 210 n.16.

For this reason, the three district courts in the cases on appeal (and other courts in this Circuit) have applied *Cochran* in concluding a plaintiff does not need make a heightened particularized causal showing when it seeks a preliminary injunction to enjoin an administrative hearing. As recognized in *Axon*, "the fact that being subject to a proceeding before an improperly insulated ALJ is a legal harm separate from any decisions made by the ALJ." *ABM Indus. Grps., LLC v. U.S. Dep't of Lab.*, No. 24-cv-3353, 2024 WL 4642962, at *5 (S.D. Tex. Oct. 30, 2024) (Lake, J.) (citing *Axon*, 598 U.S. at 903). *Collins*, on the other hand, "dealt with challenges to the substantive actions taken by an improperly insulated officer," which is a separate form of harm. *Id.* For this reason, the district court here recognized that SpaceX's removal protection challenge "is not

about [any NLRB] order" but about avoiding "an illegitimate proceeding." *SpaceX*, 2024 WL 3512082, at \*6 (citation omitted). The *Energy Transfer* and *Aunt Bertha* courts similarly recognized here that *Collins* applies in cases where "the 'harm,' . . . is being subjected to a specific rule or decision implemented by an unconstitutionally protected official." *Energy Transfer*, 2024 WL 3571494, at \*3; *Aunt Bertha*, 2024 WL 4202383, at \*2. But the claims raised in these cases where a party seeks to avoid an unconstitutional proceeding altogether are a "fundamentally different injury," as "[a]fter all, the insulated actor, the NLRB ALJ, has yet to take any action whatsoever." *Energy Transfer*, 2024 WL 3571494, at \*3. And in such cases, this Court in *Cochran* held that *Collins* does not control. *Id.* at \*4.[4]

---

[4] *See also VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 24-cv-2577, 2024 WL 5056358, at \*9 (D.D.C. Dec. 10, 2024) (agreeing with *Cochran* that the *Collins* compensable harm inquiry does not extend to claims seeking preemptive declaratory relief). To the extent out-of-circuit cases like *YAPP USA Automotive Systems, Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at 3-5 (6th Cir. Oct. 13, 2024), and *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024), have suggested otherwise, those case are (1) wrongly decided and (2) unable to overcome the en banc Fifth Circuit ruling in *Cochran*. Similarly, Justice Kavanaugh's unexplained denial of an emergency injunction in the *Yapp* case is of no precedential value and "minimally informative." *Petteway v. Galveston County*, 111 F.4th 596, 608 n.5 (5th Cir. 2024) (en banc).

Rather than grapple with the on-point en banc decision, the NLRB claims it is "settled law" that *Collins* applies, citing *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), and *Collins v. Department of Treasury*, 83 F.4th 970 (5th Cir. 2023). NLRB Br. 30-32. Not so. These cases both involved challenges to actions already undertaken by executive officials—actions that had both prospective and retrospective effect. Within that specific context, the Court determined that *Collins* applies to certain types of "prospective" relief that, in substance, seek to void or otherwise nullify actions undertaken by an unconstitutionally insulated officer. As *Cochran* articulates, that application of *Collins* does not extend to a pre-enforcement lawsuit to halt a proceeding before an unaccountable agency official. And, tellingly, the NLRB cites no Fifth Circuit case that applies *Collins* in a likelihood-of-success assessment for a pre-enforcement structural challenge to agency proceedings.[5]

---

[5] To the extent the NLRB suggests (at 32-33) that this Court's decision in *Community Financial Services Ass'n* embraced *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023), in a way that requires a party seeking a constitutionally untainted proceeding to satisfy the *Collins* causal harm requirement, that simply repeats the NLRB's misunderstanding of the harm SpaceX seeks to avoid. As discussed above, the harm when a party seeks to

To the extent that the NLRB tries to confine *Cochran* only to the topic of subject-matter jurisdiction, that characterization disregards the scope of *Cochran*'s rationale. NLRB Br. 34-35. *Cochran* did not distinguish between "constitutional injuries" for merits purposes and jurisdictional purposes. *See Cochran*, 20 F.4th at 210 n.16. On the contrary, *Cochran* specifically contemplated that the potential unavailability of redress on the merits of a removal protection claim in a post-enforcement challenge is precisely why a party must be able to obtain "meaningful judicial review" through a pre-enforcement challenge. *Id.* The Court's holding was that "Cochran's injury is sufficiently serious to justify pre-enforcement review in federal court." *Id.* There is no basis to conclude that this Court somehow found this a serious enough constitutional injury to support jurisdiction but no actual relief. Besides, if the holding were simply about jurisdiction, there would have been no reason to consider *Collins*.

---

avoid an unconstitutionally structured proceeding in the first instance, as SpaceX does, is different in kind from the harm inflicted by a particular final agency action. Both *Community Financial Services Ass'n* and *Calcutt* were addressing the latter scenario.

Worse, applying *Collins* as the NLRB advocates would conflict with *Collins* itself. *Collins* found merit in the challengers' claim that "the removal restriction violates the Constitution." 594 U.S. at 257. That finding is consistent with the Supreme Court's approach in *Free Enterprise* and *Seila Law* and this Court's approach in *Jarkesy*. Each case held removal-protection claims meritorious without any discussion of causal harm, let alone an indication that causal harm is an element of the claim. A litigant who brings a pre-enforcement challenge to an agency adjudicator's removal protections is "entitled to declaratory relief sufficient to ensure that the [administrative requirements] will be enforced only by a constitutional agency accountable to the Executive." *Free Enter.*, 561 U.S. at 513. If removal protections are unlawful, no further showing is required for a likelihood of success. *See VHS Acquisition*, 2024 WL 5056358, at *9 (entering summary judgment against the NLRB and explaining that the *Collins* harm "requirement does not logically extend to declaratory relief," which recognizes that the removal restrictions were "'never really part of the body of governing law' to begin with" (citation omitted)).[6]

---

[6] For this reason, there is no merit to the NLRB's contention (at 38) that this argument somehow creates a conflict between *Collins* and *Axon*. *Axon* is consistent with *Collins*, because they deal with different types

Nor is there any support for the NLRB's position as to the un-published order in *FTC v. U.S. Anesthesia Partners*, No. 24-20270, 2024 WL 5003580 (5th Cir. Aug. 15, 2024). *See* NLRB Br. 37. That nonprece-dential order merely rejected an appellant's effort to use *Axon* to appeal a federal district court's interlocutory denial of a motion to dismiss under the collateral order doctrine. The Fifth Circuit noted that unlike in *Axon*, the appellant there was not challenging illegitimate agency proceedings, but a supposedly illegitimate suit in an Article III court. *Id.* at *2-3.

\*\*\*\*\*

Thus, this Court should affirm the district court's holding that SpaceX has shown a likelihood of success on its removal protection claim.

## B.    NLRB Members are unconstitutionally insulated from removal.

The district court should also be affirmed in its holding that the NLRB Members are unconstitutionally insulated from presidential con-trol as well.

---

of injuries, and *Free Enterprise* (which pre-dates *Collins*) holds SpaceX is entitled to declaratory relief, at minimum, to redress this injury.

Unlike ALJs, the NLRB Members are not inferior officers; they are *principal* officers who exercise substantial executive power. The President cannot oversee their work because they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). This strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.

Removal restrictions for the executive branch are generally unconstitutional. For principal officers, the Supreme Court has recognized a narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila L.*, 591 U.S. at 218. This exception originated in *Humphrey's Executor*, which determined that Federal Trade Commission ("FTC") Commissioners did not (at the time) exercise "executive power in the constitutional sense." 295 U.S. at 628. The Supreme Court upheld the provision authorizing the Commissioners' removal "for inefficiency, neglect of duty, or malfeasance in office." *Id.* at 620 (quoting 15 U.S.C. § 41).

NLRB Members, however, enjoy stricter removal protection: they are removable only "for neglect of duty or malfeasance in office," but not inefficiency, 29 U.S.C. § 153(a). As the district court concluded, given

28

these strict removal protections as well as some distinguishing features compared to the FTC (discussed further below), *Humphrey's Executor* should not be extended to NLRB Members. *SpaceX*, 2024 WL 3512082, at *4. The NLRB (at 41-42) gets *Seila Law*'s command backward here: SpaceX is not asking this Court to overrule *Humphrey's Executor*, but instead to follow *Seila Law*'s instructions not to expand the exception.

Unlike FTC Commissioners in 1935, NLRB Members do exercise substantial executive power in the constitutional sense through their administrative, policymaking, and prosecutorial authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, regional directors, ALJs, and others. *Id.* § 154. The district court had no issue concluding that as a result, "NLRB members clearly wield substantial executive power through their administrative, policymaking, and prosecutorial authority." *SpaceX*, 2024 WL 3512082, at *3.

NLRB Members' substantial executive power is clearly seen in NLRA Section 10(j), which gives the Board quintessentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. *Id.* § 160(j). As this Court has found, this power belongs to the NLRB Members themselves and "is prosecutorial in nature." *Overstreet v. El Paso Disposal*, 625 F.3d 844, 852 (5th Cir. 2010); *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 359 (2024) (Jackson, J., concurring in judgment). And prosecuting a party for alleged violations of federal law lies at the heart of the Constitution's concept of executive power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678-79 (2023); *Seila L.*, 591 U.S. at 218-19. The FTC Commissioners that *Humphrey's Executor* examined in 1935 did not exercise similar prosecutorial powers.[7]

---

[7] Under the original FTC Act, the FTC relied on the Attorney General of the United States to seek mandamus relief in federal court. Act of Sept. 26, 1914, ch. 311, § 9, 38 Stat. 717, 722 (codified as amended at 15 U.S.C. § 49). After *Humphrey's Executor*, Congress amended the statute to authorize the FTC's own attorneys to seek injunctive relief in federal court in false advertising cases. Act of Mar. 21, 1938, ch. 49, § 4, 52 Stat. 111, 115 (codified as amended at 15 U.S.C. § 53). The NLRB's power to prosecute alleged labor law violations by seeking injunctive relief in federal court, before the agency has adjudicated and

Unlike other federal agencies, the NLRB has a distinctive structure that bestows executive power on both its Members and its General Counsel, who is a politically accountable agency official responsible for deciding which cases to prosecute with the NLRB and who enforces NLRB decisions in the courts of appeals. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022); *NLRB v. United Food & Com. Workers Union*, 484 U.S. 112, 128-29 (1987). This novel agency structure confirms the NLRB Members wield substantial executive power.

For example, in *Exela*, the Fifth Circuit held that the General Counsel exercises substantial executive power. 32 F.4th at 444. The *Exela* petitioner attempted to thwart the President's right to remove by arguing that the General Counsel wields power similar to and delegated by the Members, and thus needed the same removal protections. *Id.* at 441-46. Because the General Counsel "perform[s] quintessentially prosecutorial

---

found violations, is qualitatively different than the authority of the *Humphrey*'s-era FTC to enforce its own orders. Any similar authority for the FTC (or CPSC, *see infra*, pp. 32-33) is found only in post-*Humphrey's Executor* legislation. *See* NLRB Br. 48 n.24 (citing 15 U.S.C. § 53(b); 15 U.S.C. § 2064(g)).

functions," the logic of *Humphrey's Executor* did not extend to the General Counsel. *Exela*, 32 F.4th at 443. Like the General Counsel, NLRB Members also exercise quintessentially prosecutorial functions, through Section 10(j). *See Overstreet*, 625 F.3d at 852. *Exela* discussed the NLRB Members' quasi-legislative and quasi-judicial functions but did not discuss their Section 10(j) prosecutorial power. As *Exela* held that the General Counsel's exercise of prosecutorial authority is "core to the executive function," 32 F.4th at 444, it follows that the Members' exercise of Section 10(j) prosecutorial authority must also be core to the executive function.[8]

The NLRB turns to *Consumers' Research* to argue that a contrary result is required. NLRB Br. 42-43. But as the district court concluded, 2024 WL 3512082, at *4, this Court's fractured decision in *Consumers' Research v. CPSC*, 91 F.4th 342, 352 (5th Cir. 2024), does not warrant concluding that *Humphrey's Executor* controls. The majority acknowl-

---

[8] Thus, rather than act as a limiting feature as the NLRB claims, NLRB Br. 46, this division of the agency's prosecutorial authority confirms that NLRB Members exercise significant executive power under this Court's precedent. Nor does the fact the NLRB has to rely on external parties to file charges detract from the fact those Members then wield significant executive power in the cases that do come before it. *Contra* NLRB Br. 46.

edged that "the logic of *Humphrey's* may have been overtaken," but nonetheless applied that logic to the CPSC. *Consumers' Rsch.*, 91 F.4th at 346. The Court determined that merely exercising "substantial executive power" is not enough for a multimember-headed agency to fall outside the *Humphrey's Executor* exception. *Id.* at 353-54.

The Court's analysis of CPSC Commissioners does not extend to the removal protections here. Unlike the CPSC structure, the NLRB wields executive powers through both a multimember Board and a General Counsel, who serves at the pleasure of the President. Importantly, both the Board and the General Counsel wield not just substantial executive power but *core* executive power by authorizing their respective prosecutions. This unusual arrangement, which traces to Congress's creation of the position of General Counsel in 1947, lacks the historical pedigree that the Court considered in *Consumers' Research*. *See* Labor Management Relations Act of 1947, Pub. L. No. 80-101, § 101, 61 Stat. 136, 139 (codified as amended at 29 U.S.C. § 153(d)).

Thus, contrary to the NLRB's assertion, historical pedigree and the multimember nature of the Board do not favor applying *Humphrey's Ex-*

*ecutor.* The NLRB disregards *Exela*'s significance for this case. It highlights the NLRB's unique structure and recognizes that the General Counsel's prosecutorial functions make the position "core to the executive function." *Exela*, 32 F.4th at 444. As explained, NLRB Members also exercise prosecutorial and core executive functions when they supervise the General Counsel's requests for injunctive relief in district court under Section 10(j).

Moreover, the *Consumers' Research* majority never reached the issue of whether the CPSC Commissioners' especially restrictive removal restrictions counseled against extending *Humphrey's Executor*. CPSC Commissioners, like NLRB Members but unlike FTC Commissioners, may not be removed for inefficiency; they may be removed only for neglect of duty or malfeasance in office. 15 U.S.C. § 2053(a). The *Consumers' Research* majority quoted that provision but did not address the difference between that provision and the one upheld in *Humphrey's Executor*—probably because the parties did not raise that argument as SpaceX has here. *See* 91 F.4th at 346; Response Brief for Appellees, *Consumers' Rsch.*, 91 F.4th 342 (No. 22-40328), 2022 WL 6164656. *Consumers' Research* thus does not foreclose SpaceX's argument that this difference in

removability is material. *Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("Where an opinion fails to address a question squarely, we will not treat it as binding precedent."). For this reason, the NLRB's citation to *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023), is also misplaced. NLRB Br. 43. The analyses of different agencies, including the same multimember body from *Humphrey's Executor*, are not controlling for NLRB Members.

The NLRB does not deny that, as the district court observed and found relevant, NLRB Members have stricter for-cause protections than those examined in *Humphrey's Executor*: unlike FTC Commissioners, NLRB Members cannot be removed for "inefficiency." NLRB Br. 47-48. Under Supreme Court precedent, it is problematic that NLRB Members cannot be removed for inefficiency. *See SpaceX*, 2024 WL 3512082, at *4. The NLRB claims (at 48) that *Consumers' Research* applied *Humphrey's Executor* to other officers with the same strict removal protection, but this argument was not raised in *Consumers' Research*. The NLRB also insists that the difference in removal protections does not matter based on a claim in a law review article. NLRB Br. 48. The Supreme Court, however, has explained that "[t]he President must be able to remove not

just officers who disobey his commands but also those he finds 'negligent and inefficient.'" *Collins*, 594 U.S. at 256 (quoting *Myers*, 272 U.S. at 135).

Nor are the NLRB's arguments about the staggered terms or budget appropriation grounds to reverse the district court's conclusion that SpaceX showed a likelihood of success on this claim. NLRB Br. 45. The NLRB did not raise these arguments below and forfeited them. *See* ROA.24-50627.177-80. In all events, they are unavailing. The NLRB ignores the ways in which it implicates the concerns recognized in *Seila Law*. The FTC Commissioners in *Humphrey's Executor* simply "ma[de] reports and recommendations to Congress" and "submit[ed] recommended dispositions to an Article III court." *Seila L.*, 591 U.S. at 218-19. Here, closer to the CFPB features the Supreme Court found problematic in *Seila Law*, NLRB Members may "issue final decisions awarding legal and equitable relief in administrative adjudication" and regulate a "major segment of the U.S. economy." *Id.* at 218-19. And although NLRB Members have staggered terms, if the Senate is slow to confirm a President's appointees to the Board, the President may be stuck with a Board

that operates at odds with his view of what it means to take care that the nation's labor laws are faithfully executed.

This Court is bound by the implications of its NLRB-specific caselaw as well as the Supreme Court's instructions. As the district court correctly concluded, courts need not, and should not, further extend *Humphrey's Executor* to the NLRB's unique circumstances. SpaceX is likely to prevail on this claim, too.[9]

## II.    The unconstitutional NLRB proceedings inflict irreparable harm.

The district court in this case and the two others on appeal correctly held that being subject to an unconstitutionally structured proceeding inflicts irreparable harm. *SpaceX*, 2024 WL 3512082, at *6; *Energy Transfer*, 2024 WL 3571494, at *4-5; *Aunt Bertha*, 2024 WL 4202383, at *3. The finding that SpaceX met its burden to show irreparable harm should be affirmed.

---

[9]    Should the Court disagree, SpaceX expressly preserves its argument that the Supreme Court should revisit *Humphrey's Executor*.

## A. Being subject to an unconstitutionally structured administrative hearing inflicts irreparable harm.

Deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). In *Axon*, the Supreme Court held that being subjected to unconstitutionally structured agency proceedings is an irreparable constitutional injury. 598 U.S. at 191.

As for SpaceX's ALJ removal claim, "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id*. Once the proceeding has concluded, a court cannot remedy *that* harm: "[a] proceeding that has already happened cannot be undone," and "[j]udicial review . . . would come too late to be meaningful." *Id*. This reasoning directly applies here.

The en banc Fifth Circuit has likewise recognized that if a removal claim is "meritorious," the plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control." *Cochran*, 20 F.4th at 212-13; *see also Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (per curiam) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on its claim that officers were unlawfully "shielded from removal").

The same reasoning applies to the irreparable harm from proceedings before unaccountable NLRB Members. Like the ALJs, NLRB Members are overseeing an illegitimate proceeding (including before the ALJ proceedings start), so *Axon* and *Cochran*'s reasoning is equally on point. *SpaceX*, 2024 WL 3512082, at *6.

The NLRB claims *Axon* addresses only subject-matter jurisdiction, not the requirements for an injunction. NLRB Br. 51-53. This attempt to narrow *Axon* makes no sense. *Axon* holds that for jurisdictional purposes, the exact injury here is a legally cognizable "injury" that is "impossible to remedy" after the administrative proceeding. 598 U.S. at 191 (citation

omitted). What more could be needed for irreparable injury? SpaceX introduced evidence that an administrative complaint had been filed against it and the NLRB had set the matter for a hearing. ROA.24-50627.107-17. It did not allege a constitutional injury in the abstract—it demonstrated with concrete evidence that without court intervention it would be subject to the irreparable harm of undergoing an illegitimate proceeding before an illegitimate decisionmaker.

The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," "cannot be undone" after the fact. *Id.* at 191. And as discussed in detail above, the en banc Court has already recognized that *Collins*'s analysis does not apply to litigants seeking an "administrative adjudication untainted by separation-of-powers violations"; it applies to litigants seeking to "'void' the acts of any [agency] official." *Cochran*, 20 F.4th at 210 n.16; *see also ABM*, 2024 WL 4642962, at *6 ("The Fifth Circuit and Supreme Court made clear in *Cochran* and *Axon* that being subject to a proceeding before an improperly insulated ALJ is cognizable legal injury").

40

*Leachco* and the other cases that NLRB cites (at 52) are unpersuasive because they apply *Collins* even when the claimant does not seek to void agency action. 103 F.4th at 759. As discussed, this application of *Collins* is foreclosed by this Court's en banc *Cochran* decision. *See supra* Section I.A.2. If anything, the NLRB's cited authority supports SpaceX. It recognizes that injunctions are appropriate when "'required to preserve the status quo' while litigation is pending" and when the movant is suffering "harms beyond ones that can be cured after final judgment." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (citation omitted). That describes this case: without an injunction, the administrative proceeding will move forward, and courts will lose their ability to remedy SpaceX's harm of undergoing an unconstitutionally structured proceeding with each new development in that proceeding.

The NLRB suggests (at 50) that deprivation of a constitutional right is irreparable only when the First Amendment or privacy rights are involved. But as the cases the NLRB cites, including *Deerfield Medical Center*, make clear, the harm from those constitutional violations is irreparable because "once an infringement has occurred it cannot be undone by

41

monetary relief." 661 F.2d at 338. Here, it is even clearer that once SpaceX undergoes an unconstitutionally structured administrative proceeding, the injury becomes impossible to remedy. *Axon*, 598 U.S. at 191. The NLRB does not explain how SpaceX's harm from undergoing an unconstitutionally structured proceeding can be remedied afterward, by monetary relief or otherwise.[10]

In this action SpaceX is "entitled," at a minimum, "to declaratory relief sufficient to ensure that the [labor law] requirements and . . . standards to which [it is] subject will be enforced only by a constitutional

---

[10] To the extent the NLRB suggests there is a different rule for individual rights and structural constitutional violations that finds no support in the cases they cite. In *Sheffield v. Bush*, 604 F. Supp. 3d 586, 609 (S.D. Tex. 2022), the court's conclusion that constitutional injury was not shown was in the context of questioning that any constitutional violation had been shown. Notably the judge in the *Sheffield* case is the same judge who concluded in *Energy Transfer* here that under *Axon* "being subjected to 'a proceeding by an unaccountable ALJ' is an injury that 'cannot be undone,'" which is the definition of irreparable harm. *Energy Transfer*, 2024 WL 3571494, at *4. And in *Lambert v. Board of Commissioners of Orleans Levee District*, No. 05-cv-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006), the alleged constitutional violation was a due process violation that created a risk of physical harm the plaintiff's vessel, which the court held could be remedied by monetary damages.

agency accountable to the Executive."[11] *Free Enter.*, 561 U.S. at 513. Because there is no mechanism for such declaratory relief before final judgment, a preliminary injunction is necessary to prevent the irreparable injury and preserve the status quo so the judiciary can provide meaningful final relief. *See, e.g.*, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997).

For this reason, Judge Jones's concurrence in *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (per curiam), supports finding irreparable harm in this case. As Judge Jones stated there, "[t]he proper remedy in a separation of powers case depends on the nature of the underlying problem." *Id.* In cases like *Collins*, which seek "invalidation" of past agency action, the harm alleged resulted from specific actions by the officials who were acting pursuant to a lawful grant of authority. *All Am. Check Cashing*, 33 F.4th at 241. The concurrence did not address removal-protection claims seeking to avoid having to undergo the illegitimate proceeding in the first place. Here, the district court correctly

---

[11] For the reasons discussed below in Section II.C, given the severance complexities, a declaration severing the unconstitutional provisions may not be an appropriate remedy here. But the Court need not resolve that question at this juncture.

held that SpaceX suffered irreparable harm if subjected to a constitutionally infirm proceeding that the Supreme Court has already stated cannot be remedied after the fact.

### B. The NLRB proceedings also inflict irreparable economic and reputational harm.

The NLRB entirely ignores the other bases on which SpaceX proved up irreparable harm below. While the unconstitutional nature of the NLRB proceeding is enough to establish irreparable harm, the real-world burdens of the proceedings also inflict irreparable harm. SpaceX showed below that it was suffering real world harm in the form of costs and time by its personnel preparing for the unconstitutional agency proceedings, as well as reputational injury arising from the proceedings. *See* ROA.24-50627.87-88; ROA.24-50627.103-05.

The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). SpaceX here "challenges the entire legitimacy of [the] proceedings, not simply the cost and

annoyance." *Cochran*, 20 F.4th at 209-10 (disagreeing with the government that plaintiff complained only about the "expense and annoyance of litigation" (citation omitted)).

And there is no way to recover the lost time, money, or focus caused by these agency proceedings, even if SpaceX eventually succeeds in getting an administrative hearing that avoids the constitutional defects identified above. Without enjoining these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that is unrecoverable.

**C.    The district court correctly concluded severability was irrelevant to the preliminary injunction analysis.**

**1.    Severance is not relevant because a preliminary injunction merely preserves the status quo until the final remedy can be fashioned on the merits.**

The NLRB argues that an injunction is improper because the constitutional defects may be severed from the statute. NLRB Br. 54-59. The possibility of severance is no basis to deny a preliminary injunction. As the district court correctly concluded, "[a] preliminary injunction is not intended to fashion permanent relief, but rather preserve the status quo and protect the Court's ability to later provide meaningful permanent relief." *SpaceX*, 2024 WL 3512082, at *4. Thus, the district court held that

45

"there is a substantial likelihood that SpaceX is entitled at least to some amount of the relief requested in Counts I and II of the Complaint in the form of a declaratory judgment." *Id.* at *5; *see also Energy Transfer*, 2024 WL 3571494, at *4 (severance has "no bearing on [plaintiff's] right to preliminary relief," as a declaration [severing the unconstitutional provisions] would not take place until final judgment"); *Aunt Bertha*, 2024 WL 4202383, at *3 ("at this stage, it is too speculative to say that severance is the appropriate remedy such that it justifies subjecting [plaintiff] to an unconstitutional proceeding").

Severance is appropriate to consider only when determining how to craft the final remedy. *See Doran*, 422 U.S. at 931 ("prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). SpaceX needed a preliminary injunction to stop the ongoing constitutional harm. A preliminary injunction was the only tool available at this juncture before any final merits determination because there is no such thing as a preliminary declaration.

The district court correctly issued a preliminary injunction to preserve the status quo and protect its ability to later provide meaningful permanent relief. *SpaceX*, 2024 WL 3512082, at *4; *see also Wenner*, 123 F.3d at 326 ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

The NLRB's argument that severance should be considered at the preliminary injunction stage rests on several flawed assumptions. First, the NLRB assumes the unconstitutional provisions here can be severed, NLRB Br. 54-56. But they never explain how severance would work, and it is far from clear in this case that severance would be appropriate, as the district court explained. *SpaceX*, 2024 WL 3512082, at *4-6. Second, the NLRB claims "if the only ultimate remedy Employers can obtain is severance, then issuing an injunction now affords Employers a greater

remedy than they would obtain at final judgment."[12] NLRB Br. 56. But the NLRB does not cite any case law explaining how severance can occur at the preliminary injunction stage—and again this logic also assumes severance is in fact the appropriate remedy. Third, the NLRB claims the cases granting preliminary injunctions to preserve the status quo until final judgment are inapposite because those cases all involved "significant concrete harm." NLRB Br. 57. But this is just a disagreement based on the NLRB's erroneous view that the "*Collins* harm standard" applies and is not satisfied here, not because of severability. Finally, the NLRB mischaracterizes the district court's conclusion in this case as circular in finding "because the harm sought to be prevented is the proceeding itself, an injunction was warranted." NLRB Br. 58, but there is nothing circular about this logic especially where the district court found it was likely the unconstitutional provisions are not severable.

---

[12] The NLRB fails to consider that granting severance at a preliminary injunction stage would upset the status quo and likely go beyond a district court's remedial powers prior to final judgment.

> **2.    The NLRB has forfeited any argument against the district court's findings that SpaceX would likely succeed on its arguments that these provisions are not severable.**

The district court held that if it did need to consider severance at the preliminary injunction stage, SpaceX had shown a substantial likelihood of success on the argument that "there is no appropriate way to sever any of the removal protections here to remedy the constitutional problems with the NLRB's structure." *SpaceX*, 2024 WL 3512082, at *5; *see also Aunt Bertha*, 2024 WL 4202383, at *3 ("the Court is skeptical that severance is the proper remedy"). The NLRB fails to address these grounds in the district court's opinion anywhere in its brief, much less explain how the district court erred, and has forfeited any challenge to this finding on appeal. *United States v. Ayika*, 837 F.3d 460, 477 n.28 (5th Cir. 2016) ("fail[ure] to address on appeal the district court's reasons" abandons those grounds for appeal); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal.").

As the district court held, it is unlikely that severance would be appropriate even as a final remedy. Severance would be difficult for the ALJ removal-protection claims because there are three different layers of removal protections, and it is not at all clear which, if any, Congress would be willing to give up. All three (ALJ, MSPB, and NLRB) reflect measured legislative choices to create political independence. *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part) (ALJ removal protections prevent comingling of agency prosecutorial and adjudicatory functions); 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court"); Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069-70 (1985) (against failure of prior labor board due to reliance on Department of Justice and accountability to President, the NLRB was created to be independent of political control). To make matters worse, severing only one layer of protection would still leave two layers of removal protection, which is still unconstitutional under *Free Enterprise Fund*. It is difficult, and perhaps impossible, to figure out which removal protection Congress would preserve in fixing the constitutional problems

SpaceX has identified. Given the risk of usurping the legislature's judgment, severance is likely to be an inappropriate final remedy, as the district court concluded. *SpaceX*, 2024 WL 3512082, at *5 (holding "it is not clear which, if any, Congress would be willing to give up"). The district court correctly found that "there is no appropriate way to sever any of the removal protections to remedy the constitutional problems with the NLRB's structure." *Id.*

Without determining whether and how severance could be implemented—and the NLRB does not address the district court's reasoning on this issue and has never explained in the district court or this Court how severance would work—a court cannot assume that the mere possibility of severance eliminates the likelihood of irreparable harm. Particularly given the complexities of the severance question, a preliminary injunction is warranted to preserve the status quo until the appropriate final remedy can be determined.

## III. The balance of harms and public interest favor a preliminary injunction.

Finally, the district court correctly concluded here that the remaining two preliminary injunction factors favor issuing SpaceX's preliminary injunction. As the district court properly concluded, SpaceX satisfied the

remaining factors and the NLRB's "arguments against granting a pre-
liminary injunction on the balance of the harms and public interest are
predicated on its assertion that SpaceX should fail on the merits."
*SpaceX*, 2024 WL 3512082, at *7. On appeal, the NLRB's arguments suf-
fer the same flaw.

Where, as here, the government is a defendant, the balance of
harms and the public interest factors merge. *Nken v. Holder*, 556 U.S.
418, 435 (2009). Both factors strongly favor SpaceX. Given its likelihood
of success on the merits, an injunction would not harm Defendants be-
cause the government suffers no cognizable harm from stopping "the per-
petuation of unlawful agency action." *League of Women Voters of U.S. v.
Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings,* 17
F.4th at 618. Nor would an injunction "disserve the public interest." *Lou-
isiana*, 55 F.4th at 1022 (citation omitted); *see also BST Holdings*, 17
F.4th at 618; *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579, 585 (5th Cir. 2013) ("[T]he public is served when the law is
followed."); *League of Women Voters*, 838 F.3d at 12. It is not in the public
interest to have an increasingly expansive Executive Branch that none-
theless "slip[s] from the Executive's control, and thus from that of the

people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (C. Rossiter ed. 1961) (Hamilton)).

The NLRB ignores the cases the district court relied on, 2024 WL 3512082, at *7, in holding there is no valid governmental or public interest in unconstitutional executive conduct. *See, e.g.*, *BST Holdings*, 17 F.4th at 618; *Louisiana*, 55 F.4th at 1022. Instead, it concentrates on the public's interest in the enforcement of enacted laws. NLRB Br. 60-61. The Constitution, however, is the supreme enacted law. And the public's interest in enforcing statutes does not allow an agency to violate the Constitution to do so.

What is more, as to SpaceX, the NLRB admits that this is not a case "particularly in need of speedy resolution." NLRB Br. 61-64 (discussing why it believes the *Aunt Bertha* and *Energy Transfer* cases merit quick resolution). But regardless, any interest the NLRB may have in a quick resolution of cases under the relevant labor laws does not allow the NLRB to violate the constitution to do so.

53

And the NLRB's argument that affirming will encourage other parties to bring similar suits is easily dismissed. NLRB Br. 65-66. That many parties might have constitutional claims against the NLRB is no reason to let constitutional violations continue.

*****

Because the district court properly exercised its discretion in finding SpaceX had shown entitlement to a preliminary injunction, the Court should affirm.

## IV.    The Norris-LaGuardia Act does not apply.

The NLRB erroneously claims that the district court lacked jurisdiction to issue an injunction in this case. That argument fails for at least three independent reasons.

### A.    The NLRB failed to preserve its arguments.

First, the NLRB admits that it invented this claim almost entirely for appeal and it did not develop it below. NLRB Br. 18 & n.8. Although the NLRB invokes the rule that subject-matter jurisdiction cannot be forfeited, that rule does not apply because the Norris-LaGuardia Act invocation of the word "jurisdiction" is not meant to implicate the court's subject matter jurisdiction. Subject matter jurisdiction covers defects in "a

court's power to hear *a case.*" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (emphasis added) (citation omitted). But here, no one questions the district court's power to hear this case. *See* NLRB Br. 1. Indeed, even though the Norris-LaGuardia provision uses the term "jurisdiction," its restriction on certain injunctions is better understood as creating mandatory procedural prerequisites but not constricting federal court's subject-matter jurisdiction, as it expressly authorizes injunctions when certain exceptions are met. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) ("It would be . . . unusual to ascribe jurisdictional significance to a condition [in the Copyright Act] subject to these sorts of exceptions."); *Indep. Elec. Contractors of Houston, Inc. v. NLRB*, 720 F.3d 543, 550 (5th Cir. 2013) ("[I]t would be difficult to hold [29 U.S.C. § 160(e)'s exhaustion] requirement as 'jurisdictional' in this court because the statute itself creates an exception.").

    In any event, the jurisdiction-forfeiture rule that the NLRB invokes does not sensibly apply here. In this case, the district court held a hearing at which evidence was received, ROA.24-50627.376-77, and the NLRB did not raise adherence to the Norris-LaGuardia Act's procedural requirements, such as "hearing the testimony of witnesses in open court."

29 U.S.C. § 107. SpaceX submitted a declaration in support of its preliminary injunction motion, which the NLRB did not object to or submit any contrary evidence creating a fact issue. Nor did the NLRB subpoena any SpaceX witnesses for the hearing or bring any witnesses of its own, despite the uncontested testimony of SpaceX's declarant already in the record in support of the preliminary injunction motion and the opportunity to do so if it wished to raise evidentiary issues or have testimony in open court. ROA.24-50627.98-105. The NLRB's objection is a day late and a dollar short. Allowing the NLRB to pursue this objection now would be highly prejudicial to SpaceX. The Norris-LaGuardia Act was not written to allow a party—least of all the government—to get a second bite at the apple.

## B.    The injunction below does not implicate the Norris-LaGuardia Act's requirements.

The Norris-LaGuardia Act regulates injunctions against strikes, picketing, and boycotts, "express[ing] a basic policy against the injunction of activities of labor unions." *Chi. & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 581-82 (1971) (citation omitted). The statute "on its face does not include the type of case" at issue here, in which an employer seeks to enjoin unconstitutional government action. *Wooten v. Ohler*, 303

F.2d 759, 762 (5th Cir. 1962) (Norris-LaGuardia Act did not apply to injunction where "the rights sought to be enforced by this injunction are not those arising under the Labor Management Relations Act or related laws as such. The rights asserted here are those claimed to be secured by the Constitution[.]"). In *Wooten*, this Court already explained that that detailed definitions in 29 U.S.C. § 113 do not fit controversies over government actors' unconstitutional conduct—even if terms and conditions of employment are "indirectly" related. 303 F.2d at 762-63. It follows that the procedural requirements of 29 U.S.C. § 107 do not apply, either. *Id.*

Even if there was not already binding precedent on the issue, it would not be hard to draw the same conclusion here. The statute does not purport to regulate injunctions against unconstitutionally structured proceedings by the NLRB. By the statute's terms, a case:

> involve[s] or . . . grow[s] out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; . . . or when the case involves any conflicting or competing interests in a 'labor dispute' (as defined in [Section 113(c)]) of 'persons participating or interested' therein (as defined in [Section 113(b)]).

29 U.S.C. § 113(a).

The NLRB's cursory textual argument never explains how this case falls into any of those categories. At most, the NLRB argues that this case falls within Section 113(c)'s definition of "labor dispute." NLRB Br. 19. But under Section 113(a), the existence of a "labor dispute" is not enough. The case would need to involve conflicting or competing interests of "persons participating or interested" in the "labor dispute." 29 U.S.C. § 113(a). This case—involving SpaceX's challenge to unconstitutional NLRB proceedings—cannot satisfy that statutory language. The NLRB is not "participating or interested" in the purported labor dispute in the statute's sense of those terms:

> A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

29 U.S.C. § 113(b); *see Wooten*, 303 F.2d at 762 (observing that "[a] fair reading" of Section 113(b)'s definition of "person participating or interested in a labor dispute" "would hardly include state peace officers").

None of the statute's possibilities plausibly encompasses this lawsuit between SpaceX and NLRB officials. There's no union here, and neither the statute nor relevant precedent addresses injunctions (or hearings) for unconstitutional NLRB proceedings. And even the issue in the underlying administrative proceeding—about the arbitration and severance agreement—was not raised until after the employee's termination, when the employment relationship had ended. However one looks at it, the "matrix of this controversy" is not "the employer-employee relationship," *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 713 (1982), but the relationship between the administrative agency and a regulated entity.

The NLRB cites *United Steelworkers of America, AFL-CIO v. Bishop*, 598 F.2d 408 (5th Cir. 1979), but it is inapposite. *See* NLRB Br. 21-22. *Bishop* involved union picketing and strikes, and this Court invoked "the intent of the Norris-LaGuardia Act" in concluding that "[t]he injunction in effect disarmed the Union of a significant economic weapon and altered the bargaining stance of [the employer] and the Union." 598 F.2d at 415. Unlike *Bishop*, this case involves an injunction against un-

59

constitutional government action, not an injunction "issued for the precise purpose of negating the effect of [a] strike and the picket line." *Id.* at 410.

It is likely on reply that the NLRB will cite the recent decision in *VHS Acquisition Subsidiary Number 7, Inc. v. NLRB*, No. 24-cv-2577, 2024 WL 4817175, at *1 (D.D.C. Nov. 17, 2024). That ruling is unpersuasive for multiple reasons. To start, it failed to recognize that the key phrase determining the Norris-LaGuardia Act's application—"involving or growing out of a labor dispute"—has an express statutory definition. As shown above, the definition of that phrase in 29 U.S.C. § 113(a) is distinct from the statute's definition of "labor dispute" in 29 U.S.C. § 113(c). Yet *VHS* disregarded Section 113(a) and instead asked whether, as a matter of everyday English, one would describe the lawsuit as having grown out of a Section 113(c) "labor dispute." 2024 WL 4817175, at *5. That was error. The court should have applied the statute's definition of "involve or . . . grow out of a labor dispute." *See, e.g., Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) (emphasizing the importance of applying statutory definitions). But, as already discussed, a structural constitutional lawsuit against the NLRB does not fall within

that definition or within any of the other category of cases that "involve or . . . grow out of a labor dispute" as Section 113(a) defines that phrase. Had *VHS* applied Section 113(a)'s express definition as it was required to do, it would have found Norris-LaGuardia inapplicable.

Although the text of Section 113(a) is enough to reject the NLRB's interpretation, the context supplied by Section 107 provides additional support. The findings that provision requires are ill-suited for a structural constitutional challenge against the NLRB. For example, this provision requires a finding that "the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." 29 U.S.C. § 107(e). But here, if the court attempted to imagine there was any property involved at all, the public officers at the NLRB are the very people responsible for the injury to SpaceX's property because they aim to force SpaceX to expend its resources on an unconstitutional NLRB proceeding. The Norris-LaGuardia Act simply was not written to cover the scenario before the district court.

## C.   Even if the Norris-LaGuardia Act did apply, SpaceX fulfilled its requirements.

Finally, the relevant Norris-LaGuardia Act provision does not preclude the issuance of an injunction in any event. It merely requires a

61

hearing with an opportunity for cross-examination, plus the required findings. 29 U.S.C. § 107. But a hearing is not required where, as here, the evidence is undisputed. *Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Employees*, 143 F. Supp. 2d 672, 691 (N.D. Tex. 2001), *aff'd*, 286 F.3d 803 (5th Cir. 2002); *Kan. City S. Transp. Co. v. Teamsters Loc. Union #41*, 126 F.3d 1059, 1067-68 (8th Cir. 1997). And, as explained above, there was a hearing in this case, and the NLRB did not take the opportunity to call any witnesses or create any disputed fact issue.[13]

Nor is there any problem with the required findings. The district court found that the NLRB proceeding was unlawfully structured, *see* 29 U.S.C. § 107(a), that SpaceX suffered irreparable injury, *see id.* § 107(b), that the balance of equities and public interest supported the injunction, *see id.* § 107(c), that a preliminary injunction was necessary to provide

---

[13] The NLRB's belated attempt to develop this objection on appeal is particularly problematic because SpaceX was fully prepared to produce the SpaceX declarant at that hearing if the NLRB pursued the objection or the district court indicated that it believed additional evidence beyond that already in the record was needed. But the NLRB did not raise the Norris-LaGuardia issue at the hearing, and so SpaceX believed there was no reason to call her given her testimony was uncontested and the NLRB had not indicated a wish to examine her. The NLRB should not get a do-over based on its own strategic choices.

meaningful relief, *see id.* § 107(d), and that public officers (the NLRB itself) were responsible for the injury, *see id.* § 107(e). The NLRB never identifies which of these findings, assuming they were required in the first place, are missing from the district court's analysis.

Nor is the NLRB correct to claim that SpaceX must administratively exhaust its claim that the NLRB's administrative process is violating its constitutional rights and inflicting irreparable harm. NLRB Br. 23-24. For reasons already discussed, by the time the NLRB proceeding is over, the courts won't be able to fashion meaningful relief. This argument provides further confirmation that the Norris-LaGuardia Act simply does not extend to structural challenges to NLRB proceedings. The dispute at issue in the suit is the constitutionality of the NLRB's administrative proceedings not the merits of the underlying employment dispute. And if the Norris-LaGuardia Act somehow did foreclose SpaceX's ability to obtain meaningful relief for these constitutional violations, that would raise doubts about the statute's constitutionality—not doubts about SpaceX's entitlement to an injunction.

## CONCLUSION

For all these reasons, the district court's order granting a preliminary injunction should be affirmed.

Dated:  December 11, 2024

HARRY I. JOHNSON, III
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
(310) 255-9005

CATHERINE L. ESCHBACH
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5719

Respectfully submitted,

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Space Exploration Technologies Corp.*

# CERTIFICATE OF SERVICE

I certify that on this day, December 11, 2024, I served a true and correct copy of the foregoing Brief of Appellee on counsel of record for all other parties through this Court's CM/ECF system:

DAVID P. BOEHM
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., Fourth Floor
Washington, DC 20003
David.Boehm@NLRB.gov
T: (202) 793-1017
F: (202) 273-4244

*Counsel for Appellants National
    Labor Relations Board, et al.*

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Space Exploration
Technologies Corp.*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 12,559 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Dated:  December 11, 2024          s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

                                   *Counsel for Space Exploration
                                   Technologies Corp.*