# Nos. 24-50627, 24-40533, 24-10855

In The

# United States Court Of Appeals For The Fifth Circuit

---

**NO. 24-50627**

---

## SPACE EXPLORATION TECHNOLOGIES CORPORATION,

*Plaintiff – Appellee,*

V.

## NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, IN HER OFFICIAL CAPACITY AS THE GENERAL COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD; LAUREN MCFERRAN, IN HER OFFICIAL CAPACITY AS THE CHAIRMAN OF THE NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE NATIONAL LABOR RELATIONS BOARD; GWYNNE A. WILCOX, IN HER OFFICIAL CAPACITY AS BOARD MEMBER OF THE NATIONAL LABOR RELATIONS BOARD; DAVID M. PROUTY, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE NATIONAL LABOR RELATIONS BOARD; JOHN DOE, ADMINISTRATIVE LAW JUDGE NLRB,

*Defendants – Appellants.*

CONSOLIDATED WITH

---

**24-40533**

---

## ENERGY TRANSFER, L.P.; LA GRANGE ACQUISITION, L.P.,

*Plaintiffs – Appellees,*

V.

## NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, IN HER OFFICIAL CAPACITY AS THE GENERAL COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD; LAUREN M. MCFERRAN, IN HER OFFICIAL CAPACITY AS THE CHAIRMAN OF THE NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD; GWYNNE A. WILCOX, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD; DAVID M. PROUTY, IN THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD; JOHN DOE, IN THEIR OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE OF THE NATIONAL LABOR RELATIONS BOARD,

*Defendants – Appellants.*

CONSOLIDATED WITH

---

24-10855

AUNT BERTHA, DOING BUSINESS AS FINDHELP,
*Plaintiff – Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, A FEDERAL ADMINISTRATIVE AGENCY;
JENNIFER ABRUZZO, IN HER OFFICIAL CAPACITY AS THE GENERAL
COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD; LAUREN MCFERRAN,
IN HER OFFICIAL CAPACITY AS THE GENERAL COUNSEL OF THE
NATIONAL LABOR RELATIONS BOARD; MARVIN E. KAPLAN;
GWYNNE A. WILCOX; DAVID M. PROUTY, IN THEIR OFFICIAL CAPACITIES AS
BOARD MEMBERS OF THE NATIONAL LABOR RELATIONS BOARD;
JOHN DOE, IN THEIR OFFICIAL CAPACITY AS AN ADMINISTRATIVE
LAW JUDGE OF THE NATIONAL LABOR RELATIONS BOARD,
*Defendants – Appellants.*

ON APPEAL FROM THE SOUTHERN DISTRICT OF TEXAS, GALVESTON

BRIEF OF *AMICI CURIAE* THE COALITION FOR A DEMOCRATIC WORKPLACE,
ASSOCIATED BUILDERS AND CONTRACTORS, MACKINAC CENTER FOR PUBLIC POLICY,
INSTITUTE FOR THE AMERICAN WORKER &
WASHINGTON LEGAL FOUNDATION
IN SUPPORT OF APPELLEES

Alex T. MacDonald
LITTLER MENDELSON, P.C.
Workplace Policy Institute
815 Connecticut Avenue, NW
Suite 400
Washington, D.C.  20006-4046
(202) 772-2505
amacdonald@littler.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE

In accordance with Federal Rule of Appellate Procedure 29(a)(4), Amici Coalition for a Democratic Workplace, Associated Builders and Contractors, Mackinac Institute for Public Policy, Institute for the American Worker, and Washington Legal Foundation certify that they each have no parent corporation, that they issue no stock, and that no publicly held corporation owns ten percent or more in them.

## SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

### No. 24-40533, Energy Transfer L.P. v. NLRB

The undersigned counsel certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

1. Associated Builders and Contractors

2. Coalition for a Democratic Workplace

3. Institute for the American Worker

4. Mackinac Center for Public Policy

The above-listed parties are represented by

Alexander T. MacDonald
Littler Mendelson, PC, Workplace Policy Institute

The above-listed parties certify that no parent corporation and no publicly held company has a 10% or greater ownership interest in any of them.

s/ Alex T. MacDonald
Alex T. MacDonald
amacdonald@littler.com
LITTLER MENDELSON, P.C.
Workplace Policy Institute
815 Connecticut Avenue, P.C.
Suite 400
Washington, D.C.  20006-4046
Telephone: 202.772.2505

*Attorney for the Coalition for a Democratic Workplace & Associated Builders and Contractors*

TABLE OF CONTENTS

PAGE:

CORPORATE DISCLOSURE ..............................................................i

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES ................................ii

TABLE OF AUTHORITIES ..............................................................iv

INTEREST OF AMICUS .................................................................1

SUMMARY OF ARGUMENT ...........................................................3

ARGUMENT .................................................................................8

    1.   A decision in Respondents' favor flows directly from
        controlling precedent .........................................................8

    2.   The Board's ALJs are inferior officers .................................13

    3.   The Board and its amici overstate the policy
        consequences .......................................................................25

CONCLUSION .............................................................................31

CERTIFICATE OF FILING AND SERVICE .......................................33

CERTIFICATE OF COMPLIANCE ..................................................34

TABLE OF AUTHORITIES

PAGE(S):

CASES:

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009) ...................................................................... 26

*Am. Com. Barge Lines Co. v. Seafarers Int'l Union of
N. Am., Atl., Gulf, Lakes & Inland Waters Dist., AFL-CIO*,
    730 F.2d 327 (5th Cir. 1984) ......................................................... 25

*AMB Indus. Grps., LLC v. U.S. Dep't of Labor*,
    Case No. 4:24-cv-03353 (S.D. Tex. Oct. 30, 2024) .......................... 13

*Asociación Hóspital del Maestro*,
    317 N.L.R.B. 485 (1995) ................................................................ 17

*Aunt Bertha v. NLRB*,
    No. 4:24-cv-00798-P (N.D. Tex. Sept. 16, 2024) ........................ 12-13

*Billiot v. Puckett*,
    135 F.3d 311 (5th Cir. 1998) ........................................................... 3

*Butz v. Economou*,
    438 U.S. 478 (1978) .................................................................... 5, 6

*Ctr. Prop. Mgmt. v. NLRB*,
    807 F.2d 1264 (5th Cir. 1987) ....................................................... 22

*Decker Coal Co. v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021).......................................................... 27

*Edmond v. United States*,
    520 U.S. 651 (1997) .................................................................. 5, 14

*Elec. Workers*,
    188 N.L.R.B. 855 (1971) ............................................................... 19

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................ *passim*

*Garten Trucking LC*,
    373 N.L.R.B. No. 64 (2024) ........................................................ 21

*Gibson v. Berryhill*,
    411 U.S. 564 (1973) .................................................................. 31

*Golden State Bottling Co. v. NLRB*,
    414 U.S. 168 (1973) .................................................................. 28

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ............................................................... 9, 11

*Illumina, Inc. v. FTC*,
    No. 23-60167 (5th Cir. Dec. 15, 2023).......................................... 11

*In Re Offshore Mariners United*,
    338 N.L.R.B. 745 (2002) ............................................................ 24

*Janus v. AFSCME*,
    585 U.S. 878 (2018) .................................................................... 2

*Jarkesy v. SEC (Jarkesy I)*,
    34 F.4th 446 (5th Cir. 2022)................................................. *passim*

*Lucia v. Sec. & Exch. Comm'n*,
    585 U.S. 237 (2018) ............................................................ *passim*

*Metro Health, Inc.*,
    378 N.L.R.B. No. 89 (Aug. 22, 2024).......................................... 20

*Morrison v. Olson*,
    487 U.S. 654 (1988) .................................................................... 9

*Myers v. United States*,
    272 U.S. 52 (1926) ...................................................................... 8

*N.Y. Paving, Inc.*,
    371 N.L.R.B. No. 139 (2022) .......................................................... 18

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ....................................................................... 26

*NLRB v. Aycock*,
    377 F.2d 81 (5th Cir. 1967) ........................................................... 22

*NLRB v. Brooks Cameras, Inc.*,
    691 F.2d 912 (9th Cir. 1982) ......................................................... 22

*NLRB v. Dixie Gas, Inc.*,
    323 F.2d 433 (5th Cir. 1963) ......................................................... 23

*NLRB v. Neuhoff Bros. Packers*,
    398 F.2d 640 (5th Cir. 1968) ......................................................... 28

*NLRB v. Thermon Heat Tracing Servs., Inc.*,
    143 F.3d 181 (5th Cir. 1998) ......................................................... 23

*NLRB v. Washington Heights*,
    897 F.2d 1238 (2d Cir. 1990)......................................................... 24

*Pioneer Hotel, Inc.*,
    324 N.L.R.B. 918 (1997) ................................................................ 18

*Schweiker v. McClure*,
    456 U.S. 188 (1982) ....................................................................... 31

*SEC v. Jarkesy* (*Jarkesy II*),
    144 S. Ct. 2217 (2024) ............................................................... 3, 24

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) .................................................................... 8, 9

*SFR, Inc.*,
    373 N.L.R.B. No. 84 (Aug. 21, 2024)............................................. 21

*Sheet Metal Workers Local 162*,
    314 N.L.R.B. 923 (1994) ................................................................. 16

*SpaceX Exploration Techs. Corp. v. NLRB*,
    No. W-24-cv-00203-ADA, (W.D. Tex. July 23, 2024) ..................... 12

*Starbucks Corp.*,
    373 N.L.R.B. No. 85 (Aug. 29, 2024)................................................ 21

*TNT Logistics*,
    346 N.L.R.B. 1301 (2006) ................................................................ 16

*Tri-County Paving, Inc.*,
    342 N.L.R.B. 1213 (2004) ................................................................ 15

*United Food & Commercial Workers, Local 135*,
    373 N.L.R.B. No. 77 (July 19, 2024) ............................................... 21

*United States v. Lopez-Velasquez*,
    526 F.3d 804 (5th Cir. 2008) ............................................................. 3

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) .................................................................. 22, 23

*YAPP USA v. NLRB*,
    No. 24-12173 (E.D. Mich. Sept. 9, 2024) ........................................ 13

**STATUTES:**

5 U.S.C. § 557 ......................................................................................... 20

5 U.S.C. § 1202(d) ............................................................................... 4, 12

5 U.S.C. § 3105 .................................................................................. 29, 30

5 U.S.C. § 7521(a) ............................................................................... 4, 11

15 U.S.C. § 78d-1(c) ............................................................................... 23

29 U.S.C. § 101.109(d)(1).......................................................................... 19

29 U.S.C. § 141, *et seq.* [Taft-Hartley Act].................................28

29 U.S.C. § 153(a) ................................................4, 11-12

29 U.S.C. § 153(d) ..........................................15, 28, 30

29 U.S.C. § 154(d) ...................................................4

29 U.S.C. § 158(a)–(b) ............................................15

29 U.S.C. § 160(a) ...................................................14

29 U.S.C. § 160(b) ...................................................14

29 U.S.C. § 160(c)..................................4, 20, 25, 28

29 U.S.C. § 160(j) ...................................................14

## CONSTITUTIONAL PROVISIONS:

U.S. Const. art. II ...........................................*passim*

U.S. Const. art. II, § 3...............................................8

U.S. Const. amend. VII ............................................3

## REGULATIONS:

17 C.F.R. § 201.360....................................................10

17 C.F.R. § 201.360(d)(2) .....................................10, 23

29 C.F.R. pt. 102 ......................................................6

29 C.F.R. § 101.11(a) ...............................................20

29 C.F.R. § 102.15......................................................15

29 C.F.R. § 102.17......................................................15

29 C.F.R. § 102.18......................................................16

29 C.F.R. § 102.23.................................................................... 15

29 C.F.R. § 102.24(a) ............................................................... 17

29 C.F.R. § 102.25............................................................ 15, 30

29 C.F.R. § 102.27.................................................................... 16

29 C.F.R. § 102.29.................................................................... 16

29 C.F.R. § 102.31............................................................... 7, 17

29 C.F.R. § 102.34...................................................................... 4

29 C.F.R. § 102.35(a)(2)–(3)................................................... 18

29 C.F.R. § 102.35(a)(4) .............................................. 17, 18, 24

29 C.F.R. § 102.35(a)(6) ..................................................... 17, 19

29 C.F.R. § 102.35(a)(10) ......................................................... 20

29 C.F.R. § 102.45(a) ............................................................... 20

29 C.F.R. § 102.46.................................................................... 20

29 C.F.R. § 102.46(a)(1)(ii) ..................................................... 20

29 C.F.R. § 102.46(f) ............................................................... 21

29 C.F.R. § 102.126(b)(ii)........................................................ 30

29 C.F.R. § 102.128(e)............................................................. 30

Rules:

Fed. R. Evid. 403.................................................................... 17

OTHER AUTHORITIES:

Administrative Conference of the United States,
Non-ALJ Adjudicators in Federal Agencies: Status, Selection,
Oversight, and Removal (2018) https://www.acus.gov/
sites/default/files/documents/Non-ALJ%20Draft%20
Report_2.pdf#page=7 [Administrative Conference Report] ........... *passim*

Final Report of Attorney General's Committee on Administrative
Procedure (1941) https://www.regulationwriters.com/
downloads/apa1941.pdf [Attorney General's Report] .............................. 8

How to Take a Case Before the NLRB
    (John Higgins et al., eds. 2021) .......................................................... 15

Labor-Management Relations Act of 1947,
    Pub. L. 80-101, 61 Stat. 136 ................................................................ 28

Linda D. Jellum, *You're Fired! Why the ALJ Multi-Track*
*Dual Removal Provisions Violate the Constitution &*
*How to Fix Them*,
    26 Geo. Mason L. Rev. 705 (2019) .................................................. 4, 29

NLRB Division of Judges, Bench Book: An
NLRB Trial Manual (April 2023) [NLRB Bench Book] .................. *passim*

Removal Protections for Administrative Adjudicators:
Constitutional Scrutiny and Considerations for Congress,
Cong. Res. Serv. No. LSB10823 (Sept. 21, 2022)
https://crsreports.congress.gov/product/pdf/
LSB/LSB10823 [CRS Report] ............................................................. 27, 29

Richard J. Linton, A History of the NLRB Judges Division (2004)
https://www.nlrb.gov/sites/default/files/attachments/pages/node-
82/judgesdivisionhistory.pdf ............................................................. 7, 28

Ross Davies, *Remedial Nonacquiescence*,
89 Iowa L. Rev. 65 (2003) ............................................................. 21-22

Teamsters Local 917 (Peerless Importers),
345 N.L.R.B. 1010 (2005) ................................................................ 18

William B. Gould IV, *Politics and the Effect on the National
Labor Relations Board's Adjudicative and Rulemaking Procedures*,
64 Emory L.J. 1501 (2015) ................................................................ 31

## INTEREST OF AMICUS

The Coalition for a Democratic Workplace (CDW) represents millions of businesses that employ tens of millions of workers across the country in nearly every industry. Its purpose is to combat regulatory overreach by the National Labor Relations Board, which though expansive interpretations of its own authority, has threatened the wellbeing of employers, employees, and the national economy.

Associated Builders and Contractors (ABC) is a national construction industry trade association representing more than 23,000 members. Founded on the merit shop philosophy, ABC and its 67 chapters help members develop people, win work, and deliver that work safely, ethically, and profitability for the betterment of the communities in which ABC its members work. ABC's membership represents all specialties within the U.S. construction industry and comprises primarily firms that perform work in the industrial and commercial sectors.

The Mackinac Center for Public Policy is a Michigan based, nonpartisan research and educational institute advancing policies fostering free markets, limited government, personal responsibility, and respect for private property. The Center is a 501(c)(3) organization founded in 1987. It has played a prominent role in studying and litigating issues related to mandatory collective bargaining laws, and its

work in that area has been cited by the United States Supreme Court. *See Janus v. AFSCME*, 585 U.S. 878, 898 n.3 (2018).

The Institute for the American Worker is devoted to informing policymakers and stakeholders about current developments in labor policy. Its leadership consists of experts in labor law, labor policy, and the inner workings of congressional labor committees. It is regarded as one of the leading experts in the field.

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as an amicus to oppose the accumulation of power in any one governmental branch, contrary to the Constitution's careful separation of powers.

As organizations devoted to merit-based competition and freedom of choice, amici have been particularly concerned with the Board's unprincipled and uncontrolled approach to adjudicating unfair labor practice charges. That situation has been worsened by the lack of accountability of the Board's administrative law judges (ALJs). Amici submit this brief to help deepen the Court's knowledge of these issues.

Counsel for all parties have been notified and have stated that they have no objection to the filing. No party's counsel authored this brief, no

party or its counsel contributed money to prepare the brief, and no person other than amici, their members, or their counsel contributed money intended to fund the preparation or submission of the brief.

## SUMMARY OF ARGUMENT

This case presents a rare beast: a constitutional question with an easy answer. Under controlling precedent, Congress cannot insulate inferior officers of the United States from presidential control through two layers of for-cause removal protection. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010); *Jarkesy v. SEC* (*Jarkesy I*), 34 F.4th 446, 464–65 (5th Cir. 2022).[1] Controlling precedent also states that administrative law judges (ALJs) are inferior officers. *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237 (2018). The Board's judges

---

[1] On review, the Supreme Court affirmed this Court's decision on Seventh Amendment grounds. *See SEC v. Jarkesy* (*Jarkesy II*), 144 S. Ct. 2217 (2024) It did not reach the removal question. Because the Supreme Court left this Court's Article II holding undisturbed, that holding remains the law of the circuit. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue."); *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998) ("As a general rule, one panel may not overrule the decision of a prior panel, right or wrong, in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court.").

are ALJs. *See* 29 C.F.R. § 102.34 ("The hearing for the purpose of taking evidence upon a complaint will be conducted by an Administrative Law Judge . . . ."). *See also* 29 U.S.C. §§ 154(d) (referring to "administrative law judges"), 160(c) (same). These ALJs also have at least two layers of for-cause removal protection—and by some descriptions, three. *See* 5 U.S.C. § 7521(a) (providing that ALJs may be removed only for "good cause established" as determined by the MSPB); 29 U.S.C. § 153(a) (providing that Board members may be removed only for "neglect of duty or malfeasance in office"); 5 U.S.C. § 1202(d) (providing that members of the MSPB members may be removed only for "inefficiency, neglect of duty, or malfeasance in office"). *See also* Linda D. Jellum, *You're Fired! Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution & How to Fix Them*, 26 Geo. Mason L. Rev. 705, 714 (2019) (describing this scheme as "dual-track" removal protection). So under controlling precedent, the ALJs are unconstitutionally insulated from presidential control. *See Jarkesy I*, 34 F.4th at 464 (holding that double-insulation for SEC ALJs violated Article II).

And yet, the Board resists that straightforward conclusion. It argues that its judges are properly insulated because they exercise only

4

ministerial duties. *See* Nat'l Labor Relations Bd., Appellants' Br. at 38, ECF No. 49-1 [hereinafter NLRB Br.] (arguing that Board's ALJs exercise powers "materially more restricted in scope" than SEC ALJs). That is, the Board effectively argues that the ALJs are not inferior officers under Article II; they are employees. *See Edmond v. United States*, 520 U.S. 651, 662 (1997) (explaining that the "significant authority" test marks "not the line between principal and inferior officer for Appointments Clause purposes, but rather . . . the line between officer and nonofficer"). It also warns this Court about the dire consequences of a decision in Respondents' favor. It suggests that the decision could not only cripple the Board's operations but could also sew bias throughout the administrative state. [*See* NLRB Br. 58–65 (warning of consequences of interfering with Board proceedings).]

Those arguments are merely the rearguard actions of a lost cause. Substantively, the Board's ALJs exercise powers this Court and the U.S. Supreme Court have found to be significant. Both *Lucia* and *Jarkesy* found that SEC ALJs exercise significant authority when supervising administrative hearings. *See Lucia*, 585 U.S. at 241 (describing SEC ALJ powers as "extensive"); *Jarkesy*, 34 F.4th at 464

5

(describing those powers as "considerable"). *See also Butz v. Economou*, 438 U.S. 478, 513 (1978) (explaining that an ALJ has "powers are often, if not generally, comparable to those of a trial judge"). To be sure, those conclusions came in cases involving SEC ALJs. But the Board's ALJs exercise effectively identical powers. *See* 29 C.F.R. pt. 102 (describing judges' power to manage unfair-labor-practice hearings); NLRB Division of Judges, Bench Book: An NLRB Trial Manual (April 2023) [hereinafter NLRB Bench Book] (same). *See also* section 2, *infra.* There is no daylight between the authority exercised by the two sets of ALJs. So if precedent means anything, it means that the Board's ALJs occupy the same constitutional status as the SEC's ALJs. Neither of them can be double-insulated from presidential control. *See Jarkesy I*, 34 F.4th at 464 (rejecting attempt to distinguish *Free Enterprise*) ("[T]he fact remains that two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them.").

As for consequences, the Board overstates the case. A decision in Respondents' favor would affect only ALJs at the Board. It would leave untouched the vast majority of federal adjudicators—a group consisting

overwhelmingly of non-ALJ hearing officers. *See* Administrative Conference of the United States, Non-ALJ Adjudicators in Federal Agencies: Status, Selection, Oversight, and Removal 1 (2018)[2] [hereinafter Administrative Conference Report] (counting less than 2,000 ALJs but more than 10,000 non-ALJs). It would also leave the Board free to employ its own non-ALJ examiners. The Board did exactly that so for much of its history, and it points to no reason it couldn't do so again. *See* Richard J. Linton, A History of the NLRB Judges Division 2–3 (2004)[3] (noting that the Board didn't switch to "administrative law judges" until 1971).

The Board and its amici suggest that non-ALJ hearing examiners would be subject to undue influence or bias. But that suggestion is simplistic. It ignores the many other steps the Board could take to prevent biased decisionmaking. The Board could, for example, still ban ex parte communications, could still assign cases by rotation, and could still forbid any intermingling of functions. *Cf.* 29 C.F.R. § 102.31

---

[2] Available online: https://www.acus.gov/sites/default/files/documents/Non-ALJ%20Draft%20Report_2.pdf#page=7.

[3] Available online: https://www.nlrb.gov/sites/default/files/attachments/pages/node-82/judgesdivisionhistory.pdf.

(forbidding ex parte communications by Board regulation); Final Report of Attorney General's Committee on Administrative Procedure 50 (1941)[4] [hereinafter Attorney General's Report] (recommending multiple measures to protect independent judgment, of which removal protection was only one). Any or all of these steps would be available after a decision in Respondent's favor. The Board's sky-is-falling warnings are simply not credible.

The answer, then, is remarkably simple. The Board's ALJs are unconstitutionally insulated from presidential control. The district court correctly reached that conclusion. This Court should affirm.

## ARGUMENT

### 1.    A decision in Respondents' favor flows directly from controlling precedent.

Under Article II, the president must ensure that the laws are faithfully executed. U.S. Const. art. II, § 3. To do that, he must be able to control the officers who work in the executive branch. *Myers v. United States*, 272 U.S. 52, 135 (1926). So as a general rule, he may remove officers at will. *Seila Law LLC v. Consumer Fin. Prot. Bureau*,

---

[4] Available online:
https://www.regulationwriters.com/downloads/apa1941.pdf.

591 U.S. 197, 203 (2020). That rule has some exceptions; for example, Congress may insulate the heads of certain expert agencies with "for cause" removal protection. *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935). Congress may also give for-cause protection to some inferior officers. *Morrison v. Olson*, 487 U.S. 654, 673 (1988). But those exceptions aside, the president's removal power is plenary: at-will removal is the rule. *Seila Law*, 591 U.S. at 203 ("[A]s a general matter, the Constitution gives the President the authority to remove those who assist him in carrying out his duties" (quotation marks omitted)).

In fact, the Supreme Court has repeatedly refused to extend those exceptions. For example, in *Free Enterprise*, the Court held that members of the Public Company Accountability and Oversight Board (PCAOB) could not be insulated from control by two layers of for-cause removal. 561 U.S. at 498. Congress had first protected the members by providing that they could be removed only for cause. *Id.* at 495. It then provided that they could be removed only by commissioners of the SEC, who themselves could be removed only for cause. *Id.* at 495–96. The Court found that the PCAOB's members were inferior officers under Article II, and as such, could be protected by only one level of for-cause

removal. *Id.* at 510, 514. Congress had given them two. *Id.* They were therefore improperly insulated from the president's control. *Id.* at 514 ("[T]he Act before us imposes . . . two levels of protection from removal . . . . Congress cannot limit the President's authority in this way.").

Later, in *Lucia*, the Supreme Court applied Article II to ALJs at the SEC. It found that the SEC's ALJs exercised significant executive power when overseeing administrative hearings. 585 U.S. at 241–42. The ALJs ruled on evidentiary disputes, managed the administrative record, authorized subpoena requests, and issued recommended decisions. *Id.* In theory, those decisions could be reviewed by the SEC commissioners. *Id.* (citing 17 C.F.R. § 201.360). But in practice, they were often final. *Id.* at 242 (citing 17 C.F.R. § 201.360(d)(2)). These powers, according to the Court, gave the ALJs significant authority over private parties. And that authority made them officers of the United States. *Id.* at 246–51 (rejecting government's position that ALJs were "mere employees").

In *Jarkesy*, this Court carried those decisions to their logical conclusion. The Court explained that because SEC ALJs were inferior officers, they could not be insulated by two layers of for-cause removal.

34 F.4th at 464. Congress had given the ALJs one layer of protection by providing that they could be removed only for cause. *Id.* (citing 5 U.S.C. § 7521(a)). And it had given them a second when it applied the same protection to the SEC's commissioners. *Id.* This two-layer scheme interfered with presidential control and was therefore unconstitutional. *Id.* at 465 (holding that "two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them").[5]

This case asks the Court to take a similarly straightforward step. Like the SEC ALJs, the Board's ALJs are insulated by at least two layers of for-cause removal. First, the ALJs themselves can be removed only for cause. *See* 5 U.S.C. § 7521(a). Second, the officers who supervise them—the Board's members—have the same removal protection. *See* 29

---

[5] This Court's recent decision in *Illumina, Inc. v. FTC*, No. 23-60167 (5th Cir. Dec. 15, 2023), is consistent with *Jarkesy I*. In *Illumina*, this Court found that the FTC's commissioners were properly insulated from presidential control. *Id.*, slip op. at 7. The commissioners, however, are principle officers with only one layer of for-cause removal protection. The Supreme Court blessed that single layer of protection in *Humphrey's Executor*, 295 U.S. at 626–32. This case falls outside *Humphrey's Executor* because it involves inferior officers with at least two layers of insulation. It is therefore different from *Illumina* and on all fours with *Jarkesy*.

U.S.C. § 153(a). What's more, the officials who decide whether there is cause to remove a judge—the members of the Merit System Protection Board—are also removable only for cause. 5 U.S.C. § 1202(d) (allowing removal only for "inefficiency, neglect of duty, or malfeasance in office"). This scheme has been described alternatively as triple or two-track protection. *See* Jellum, *supra*, at 714 ("dual-track"); *SpaceX Exploration Techs. Corp. v. NLRB*, No. W-24-cv-00203-ADA, slip op. at 10 (W.D. Tex. July 23, 2024) ("three sets of removal protections"). But by either description, the scheme interferes with presidential management. To control an ALJ, the president must reach through at least two layers of insulation. *See Jarkesy*, 34 F.4th at 464–65. That degree of insulation violates the straightforward teachings of *Lucia*, *Free Enterprise*, and *Jarkesy*. Constitutional problems are rarely so obvious. *See id. See also SpaceX*, No. W-24-cv-00203-ADA, slip op. at 7 (finding that "under current Fifth Circuit law, there is a substantial likelihood that SpaceX succeeds on the merits with regards to showing that the NLRB ALJs are unconstitutionally protected from removal"); *Aunt Bertha v. NLRB*,

No. 4:24-cv-00798-P, slip op. at 4–5 (N.D. Tex. Sept. 16, 2024) (same).[6]

*See also AMB Indus. Grps., LLC v. U.S. Dep't of Labor*, Case No. 4:24-cv-03353, slip op. at 7–15 (S.D. Tex. Oct. 30, 2024) (finding that ALJs in the U.S. Department of Labor unconstitutionally insulated from presidential control under Fifth Circuit and U.S. Supreme Court precedent).

## 2. The Board's ALJs are inferior officers.

Yet obvious as the problem is, the Board denies it. The Board argues that despite *Lucia*, *Free Enterprise*, and *Jarkesy I*, its ALJs are properly insulated from presidential control. *See* NRLB Br. at 38–47. It insists that its ALJs exercise only ministerial functions; they do not wield significant authority under the laws of the United States. *See id.* at 38 (arguing that Board ALJs exercise powers "materially more

---

[6] At least one district court outside this circuit has reached a different conclusion. *See YAPP USA v. NLRB*, No. 24-12173, slip op. at 15–18 (E.D. Mich. Sept. 9, 2024). That court distinguished *Free Enterprise* by reasoning that while the PCAOB's members exercised significant regulatory and enforcement authority, Board ALJs exercise only quasi-judicial authority. *Id.* ALJs could therefore be insulated with two layers of for-cause removal without running afoul of *Free Enterprise*. *Id.* That rationale, however, cannot be squared with *Jarkesy I. Jarkesy I* applied *Free Enterprise* to the SEC's ALJs. 34 F.4th at 464–65. The SEC's ALJs perform functions just as "quasi-judicial" as the Board's. *See id.* The district court's conclusion therefore contradicts this Court's precedent.

restricted in scope" than SEC ALJs). The Court should understand that argument for what it is. In effect, it claims that Article II does not apply to the Board's ALJs because the ALJs are not officers of the United States—even inferior ones. Rather, they are mere "employees." *See Edmond*, 520 U.S. at 662 (explaining that the "significant authority" test distinguishes not inferior from principal officers, but officers from mere employees).

Understood in those terms, the argument is foreclosed by *Lucia*. *Lucia* clarified that SEC ALJs were officers subject to Article II. *See* 585 U.S. at 251. So to succeed, the Board would have to show that its own ALJs exercise less power. But it offers no details to support that conclusion. And even the briefest review of the Board's regulations shows that it is wrong. Far from sidelining ALJs, the regulations give them a central role in the enforcement process.

One of the Board's main jobs is prosecuting unfair labor practices. *See* 29 U.S.C. § 160(a). It does that mostly[7] through an internal administrative process. *Id.* § 160(b). The process starts when someone

---

[7] The Board can also seek an injunction in federal court to maintain the status quo while it processes charges through its internal process. *See* 29 U.S.C. § 160(j).

files a charge. *Id.* This charge typically alleges that the charged party violated the NLRA in some way. *See id.* § 158(a)–(b) (setting out unfair labor practices). *See also* How to Take a Case Before the NLRB ch. 12 (John Higgins et al., eds. 2021) (describing charge and investigation process). The charge is evaluated by the Board's general counsel. *See* 29 U.S.C. § 153(d); 29 C.F.R. § 102.15. If the General Counsel finds merit, she files a complaint. 29 C.F.R. § 102.15. This complaint then kicks off an administrative-hearing process overseen by a Board ALJ. *See* 29 C.F.R. § 102.25 (providing for designation of ALJ).

Once the hearing opens, the ALJ controls the proceedings from front to back. To start, the ALJ can rule on issues related to the pleadings. For example, the ALJ can allow a charged party to amend its answer or file a late answer. 29 C.F.R. §§ 102.17, 102.23. The ALJ can also strike certain affirmative defenses—for example, defenses that are not recognized by the Board or are raised only for delay. *See, e.g.*, NLRB Bench Book, *supra*, § 3-600; *Tri-County Paving, Inc.*, 342 N.L.R.B. 1213, 1216 (2004) (ALJ decision) (striking affirmative defenses related to bona fide applicant status of certain workers alleged to be "salts"). Likewise, the ALJ can block the General Counsel from withdrawing a

complaint in some cases. The General Counsel can generally withdraw a complaint any time, even sometimes after a hearing opens. 29 C.F.R. § 102.18; NLRB Bench Book, *supra*, § 3-500. But once the General Counsel puts on a prima facie case, she can withdraw the complaint only if the ALJ agrees. *See* NLRB Bench Book, *supra*, § 3-500; *Sheet Metal Workers Local 162*, 314 N.L.R.B. 923, 923 n.2 (1994) ("Because the General Counsel moved to withdraw the 8(b)(1)(A) allegation after evidence had been introduced in support of the allegation, the General Counsel no longer had unreviewable discretion to withdraw."). The ALJ therefore exercises control over pleadings on both sides of the case.

The ALJ also control motions practice. He or she can rule on motions in limine, motions to intervene, and motions to continue the hearing. *See* 29 C.F.R. § 102.29 (motions to intervene); NLRB Bench Book, *supra*, §§ 5-200, 5-300 (motions to continue), 10-100 (motions in limine). *See also TNT Logistics*, 346 N.L.R.B. 1301, 1301 n.1 (2006) (affirming ALJ's decision on motion in limine). The ALJ can also rule on dispositive motions, including motions for default or summary judgment. 29 C.F.R. § 102.27 (motion to dismiss complaint); Bench Book, *supra*, § 10-300 (motions for summary and default judgment

during the hearing). The latter motions are sometimes filed with the
Board itself. 29 C.F.R. § 102.24(a). But after a hearing opens, they must
be filed first with the ALJ. *Id. See also* NLRB Bench Book, *supra*, § 10-
300.

Similarly, the ALJ controls the order and conduct of the hearing.
29 C.F.R. § 102.35(a)(6). The ALJ can consolidate, bifurcate, or sever a
case into several parts. *See* NLRB Bench Book, *supra*, § 3-430;
*Asociación Hóspital del Maestro*, 317 N.L.R.B. 485, 490 (1995)
(describing ALJ decision to bifurcate hearing). The ALJ can also decide
what evidence comes in. 29 C.F.R. § 102.35(a)(4). He or she decides
whether evidence is relevant, whether witness questions are
appropriate, and whether to allow expert testimony. *See id.*; NLRB
Bench Book, *supra*, § 16-402 (incorporating standards of Fed. R. Evid.
403). The ALJ can also strike nonresponsive testimony. 29 C.F.R. §
102.35(a)(6). He or she can even cut off evidence by limiting a party's
presentation time. NLRB Bench Book, *supra*, § 2-300.

The ALJ also supervises the subpoena process. Parties must apply
for a subpoena to the ALJ. 29 C.F.R. § 102.31. The ALJ can then control
the scope of the subpoena, limiting or withdrawing it when necessary.

*See id. See also* 29 C.F.R. § 102.35(a)(2)–(3). The ALJ also rules on any disputes over scope and relevance. 29 C.F.R. § 102.35(a)(4). The ALJ also may issue a protective order when necessary. NLRB Bench Book, *supra*, § 8-600; Teamsters Local 917 (Peerless Importers), 345 N.L.R.B. 1010, 1011 (2005). In fact, the ALJ even rules on issues affecting the attorney-client privilege: he or she decides, among other things, whether subpoenaed documents are privileged and whether the privilege has been waived. *See* NLRB Bench Book, *supra*, §§ 8-415, 8-520.

What's more, the ALJ can sanction parties for failing to comply. *Id.* § 8-710. For example, the ALJ can bar a party from relying on documents it failed to produce. *Id.* § 720; *N.Y. Paving, Inc.*, 371 N.L.R.B. No. 139, slip op. at 38–40 (2022) (excluding certain telephone records as sanction for "significant non-compliance" with subpoena). The ALJ can also limit a party's testimony. *Id.* The ALJ can even draw an adverse inference for a party's failure to produce evidence. *See Pioneer Hotel, Inc.*, 324 N.L.R.B. 918, 927 (1997) (ALJ opinion) (drawing adverse inference for failure to produce records).

The ALJ also controls the parties themselves. Generally speaking, the ALJ has no power to hold a party in contempt. NLRB Bench Book, *supra*, § 6-600. But the ALJ can exclude parties from a hearing for contemptuous conduct. 29 C.F.R. § 102.35(a)(6). The ALJ can also exclude or reprimand a party's counsel. NLRB Bench Book, *supra*, § 6-600. And in extreme cases, the ALJ can even refer counsel for further disciplinary proceedings. *Id.* § 6-630.

The ALJ has even more authority over settlements. After the hearing opens, any settlement must be approved by the judge.[8] 29 U.S.C. § 101.109(d)(1). What's more, the judge can approve some settlements without the General Counsel's consent. *See id.* If the charging party and the charged party agree, the judge can approve their settlement and dismiss the complaint even over the General Counsel's objection.[9] *See id.* ("If any party will not join in the settlement agreed to

---

[8] ALJs can approve "informal" settlements. NLRB Bench Book, *supra*, § 9-330. "Formal" settlements must also be approved by the Board. *Id.* But the Board reviews formal settlements only after they have first been approved by the ALJ. *Id.*

[9] For more than forty years, the Board also allowed an ALJ to approve unilateral consent orders—offers by a charged party to take certain steps to resolve the case. *See Elec. Workers*, 188 N.L.R.B. 855, 855 (1971). The ALJ could approve the offer and issue a consent order even over the objections of the charging party and the General Counsel. *Id.*

19

by the other parties, the administrative law judge will give such party an opportunity to state on the record or in writing its reasons for opposing the settlement.").

If the parties do not settle, the hearing ends in a decision. 29 C.F.R. §§ 101.11(a), 102.45(a). The ALJ usually issues the decision in writing (though the ALJ may, in his or her discretion, decide to issue an oral "bench" decision). 29 C.F.R. § 102.35(a)(10). The decision includes findings of fact and conclusions of law. *Id.* (incorporating 5 U.S.C. § 557). It may also include a remedy. 29 C.F.R. § 102.45(a). Parties then have up to 28 days to petition the Board for review. 29 C.F.R. § 102.46. But if a party fails to petition the Board, the ALJ's decision is final: it is automatically accepted as the decision of the Board itself. 29 U.S.C. § 160(c).

The same is true for any issue not specifically raised in the petition. 29 C.F.R. § 102.46(a)(1)(ii). For those issues, the ALJ has the final word. *Id.* ("Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged will be deemed waived.

---

After this appeal was filed, the Board signaled that it would withdraw that authority. *See Metro Health, Inc.*, 378 N.L.R.B. No. 89, slip op. at 1 (Aug. 22, 2024).

Any exception which fails to comply with the foregoing requirements will be disregarded."). *See also id.* § 102.46(f) ("Matters not included in exceptions or cross-exceptions may not thereafter be urged before the Board, or in any further proceeding.").

What's more, even when a party petitions the Board for review, the Board often simply accepts the ALJ's decision. Many Board opinions run no longer than a paragraph or two—only long enough to rubber stamp the ALJ's rationale. *See, e.g.*, *SFR, Inc.*, 373 N.L.R.B. No. 84, slip op. at 1 (Aug. 21, 2024) (adopting ALJ's opinion); *United Food & Commercial Workers, Local 135*, 373 N.L.R.B. No. 77, slip op. at 1 (July 19, 2024) (adopting ALJ opinion with only slight modifications). To be sure, the Board does often set out its own reasoning. *See Starbucks Corp.*, 373 N.L.R.B. No. 85, slip op. at 1 (Aug. 29, 2024) (setting out reasons for adopting order). But just as often, it simply accepts the ALJ's opinion without change. *See, e.g.*, *Garten Trucking LC*, 373 N.L.R.B. No. 64, slip op. at 1 ("The Board has considered the decision and record in light of the exceptions and briefs and has decided to affirm the judge's rulings, findings, and conclusions and to adopt the recommended order."). *See also* Ross Davies, *Remedial*

*Nonacquiescence*, 89 Iowa L. Rev. 65, 87 (2003) ("Usually, the Board adopts the ALJ's decision with a few modifications and issues the final order.").

And indeed, the Board cannot simply disregard the ALJ's findings. In theory, the Board can always set aside the ALJ's opinion and substitute its own. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496 (1951); *NLRB v. Brooks Cameras, Inc.*, 691 F.2d 912, 915 (9th Cir. 1982). But in practice, that kind of substitution can undermine the Board's goals. Even when the Board rejects an ALJ's findings, the findings remain part of the administrative record. *See Universal Camera*, 340 U.S. at 490, 496. And courts will consider the whole record on review, especially the ALJ's findings on witness credibility. *See, e.g.*, *Ctr. Prop. Mgmt. v. NLRB*, 807 F.2d 1264, 1268–69 (5th Cir. 1987) (explaining that the ALJ's credibility findings may be disturbed "only in the most unusual circumstances"); *NLRB v. Aycock*, 377 F.2d 81, 87 (5th Cir. 1967) ("Without at least substantial countervailing evidence, the Trial Examiner's credibility determinations may not be disregarded by the Board." (internal citations omitted)). So even when the Board makes its own findings, the ALJ's findings continue to influence

litigation in court. *See, e.g.*, *Universal Camera*, 340 U.S. at 490, 496 (explaining that courts should consider examiner's findings even when rejected by the Board to determine whether Board's decision is supported by substantial evidence); *NLRB v. Thermon Heat Tracing Servs., Inc.*, 143 F.3d 181, 187 (5th Cir. 1998) (giving ALJ's credibility findings "special deference"); *NLRB v. Dixie Gas, Inc.*, 323 F.2d 433, 435–36 (5th Cir. 1963) (giving trial examiner's credibility findings "great significance").

In short, Board ALJs exercise the same kind of authority the Supreme Court characterized as "significant" in *Lucia*. There, the Court observed that SEC ALJs could supervise subpoenas, rule on motions, admit evidence, hear and examine witnesses, regulate the proceedings, and sanction parties for improper conduct. *Lucia*, 585 U.S. at 241–42. SEC ALJs also issued decisions that were in many cases final. *Id.* (citing 17 C.F.R. § 201.360(d)(2); 15 U.S.C. § 78d-1(c)). These are the same powers exercised by Board ALJs.

The only real distinction between the ALJs relates to discovery. While *Lucia* noted that SEC judges "supervise" discovery, Board ALJs play little role in that process. But that difference stems not from the

ALJs' powers, but from the Board's processes. That is, Board ALJs play no role in discovery only because generally there is no discovery in Board proceedings. *See In Re Offshore Mariners United*, 338 N.L.R.B. 745, 746 (2002) ("Pretrial discovery in Board proceedings is neither constitutionally nor statutorily required." (quoting *NLRB v. Washington Heights,* 897 F.2d 1238, 1245 (2d Cir. 1990))). Evidence is often presented for the first time at the hearing. *See* NLRB Bench Book, *supra*, § 7-200. And there, Board ALJs still control whether evidence is admitted. *See* 29 C.F.R. § 102.35(a)(4); NLRB Bench Book, *supra*, § 16-402. So discovery aside, Board ALJs have at least as much control as SEC ALJs over shaping the administrative record. *See* NLRB Bench Book, *supra*, § 16-611.1 (noting that ALJs "retain broad discretion to exercise reasonable control over the order in which litigants interrogate witnesses and present evidence").

And indeed, Board ALJs exercise even more power than SEC ALJs in at least one sense. The SEC has two enforcement tracks: one through its administrative processes and one through court. *See Jarkesy II*, 144 S. Ct. at 2125 (observing that SEC could prosecute defendants for fraud in court or through its administrative process). So the SEC

24

always had the option to avoid its own ALJs. *See id.* But the Board has no such option. The Board can prosecute unfair labor practices only through its administrative process. *See* 29 U.S.C. § 160(c). Unless settled or withdrawn, every unfair-labor-practice case runs through an administrative hearing—a hearing controlled by a Board ALJ. *See id. See also Am. Com. Barge Lines Co. v. Seafarers Int'l Union of N. Am., Atl., Gulf, Lakes & Inland Waters Dist., AFL-CIO*, 730 F.2d 327, 331, 338–39 (5th Cir. 1984) (observing that the NLRA gives the NLRB primary jurisdiction over unfair labor practices, and its jurisdiction generally displaces the jurisdiction of district courts to resolve alleged violations).

In short, the Board's ALJs play an essential role. They influence enforcement at least as much, and in some ways more than, SEC ALJs. If the latter are inferior officers, so are the former.

**3.    The Board and its amici overstate the policy consequences.**

Seeing the writing on the wall, the Board and its amici turn to consequences. They warn the Court that a decision in Respondents' favor would cripple the Board's enforcement process. They suggest that

25

such a decision would reverberate across labor law, and maybe across the entire administrative state.

Of course, this Court cannot be distracted by such speculation about policy. The Court's duty is to apply the law. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 270 (2009) (explaining that policy considerations cannot override the written law); *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) ("But that kind of raw consequentialist calculation plays no role in our decision."). But even were the Court inclined to consider the downstream effects, those effects would be far more muted than the Board and its amici suggest.

To start, a decision in Respondents' favor would affect only a sliver of the federal workforce. Out of nearly two million federal civilian workers, only about two thousand (.001%) serve as ALJs. And those ALJs handle only a fraction of agency adjudication. *See* Administrative Conference of the United States, Non-ALJ Adjudicators in Federal Agencies: Status, Selection, Oversight, and Removal 1 (2018).[10] Compared with the two thousand ALJs, there are more than ten

---

[10] Available online: https://www.acus.gov/sites/default/files/documents/Non-ALJ%20Draft%20Report_2.pdf#page=7.

thousand non-ALJ adjudicators. *Id.* And few of those adjudicators have any for-cause removal protection, much less the two-track, double-layer protection enjoyed by Board ALJs.[11] *See id.* (finding that of 36 types of non-ALJ adjudicators, 35 lacked for-cause removal protections). These non-ALJ adjudicators will be unaffected by a decision in Respondents' favor. *See* Removal Protections for Administrative Adjudicators: Constitutional Scrutiny and Considerations for Congress, Cong. Res. Serv. No. LSB10823, at 4 (Sept. 21, 2022)[12] [hereinafter CRS Report] ("Future court decisions about the constitutionality of ALJ removal protections will likely have little impact on the vast majority of non-ALJs who already lack APA-like removal protections.").

Nor would such a decision necessarily interfere with the Board's own activities. To start, nothing in the NLRA explicitly requires the

---

[11] In fact, a decision in petitioner's favor may not even affect all judges with double protection. Other courts have found that judges in different agencies were properly insulated from removal because their decisions could be reviewed by officials who were themselves removable at will. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1135 (9th Cir. 2021) (rejecting Article II challenge to Department of Labor ALJs who were removable by Secretary of Labor, a cabinet-level official with no insulation from removal by the president).

[12] Available online: https://crsreports.congress.gov/product/pdf/LSB/LSB10823.

Board to use ALJs. Section 10(c) of the NLRA refers to "administrative law judges," but also refers to other "agents" and "agencies." And for much of its history, the Board employed varied adjudicators. *See* Linton, *supra* at 2–3. In its first decade of existence, the Board simply used regular agency employees called "staff judges" or "trial examiners." *See id.* (discussing early use of "staff judges"); *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 174 (1973) (referring to findings of Board's "trial examiner"); *NLRB v. Neuhoff Bros. Packers*, 398 F.2d 640, 648 (5th Cir. 1968) (same). In 1947, the Taft-Hartley Act removed those trial examiners from the General Counsel's chain of command. *See* Labor-Management Relations Act of 1947, Pub. L. 80-101, § 3, 61 Stat. 136, 139 (codified as amended at 29 U.S.C. § 153(d)) (providing that General Counsel could not supervise Board's "trial examiners"). But even then, it wasn't until 1972 that the Board formally adopted the title "administrative law judge." Linton, *supra* at 2–3. In other words, the Board effectively operated for nearly four decades without ALJs. It offers no reason it couldn't do so again. *See* Attorney General's Report, *supra*, at 45 (observing that by 1941 the Board had accumulated "large sections of attorneys isolated from other staff members to analyze the

records and prepare decisions in accordance with the Board's directions"); CRS Report, *supra*, at 4 (concluding that invalidating for-cause removal would leave non-ALJ adjudicators unaffected).

Besides, there no obvious need for removal protections in Board proceedings. Congress originally adopted removal protections for ALJs to address concerns about biased agency decisionmakers. *See* Attorney General's Report, *supra*, at 43, 47–48 (emphasizing the need for disinterested decisionmakers and recommending tenure in office as one way to assure it). *See also* Jellum, *supra*, at 708 (describing widespread concerns about biased decisionmakers).  But there are plenty of other was to insulate adjudicators from potential bias. For example, agencies can forbid their decisionmakers from performing any non-adjudicative duties. *See* Administrative Conference Report, *supra*, at 41 (reporting that more than half of agencies using non-ALJ decisionmakers assign only adjudicative duties). *Cf.* 5 U.S.C. § 3105 (forbidding ALJs from preforming duties "inconsistent with" adjudicative roles). They can ban ex parte communications. *See* Administrative Conference Report, *supra*, at 45 (reporting that 57% of agencies using non-ALJ decisionmakers ban ex parte communications). They can also assign cases by rotation.

*See* Administrative Conference Report, *supra*, at 61 (recommending that agencies assign non-ALJ adjudicators using a "panel-based process"). *Cf.* 5 U.S.C. § 3105 (requiring assignment by rotation to ALJs when practical). They can even implement their own recusal rules. *See* Administrative Conference Report, *supra*, at 49 (reporting that 84% of agencies using non-ALJ adjudicators have recusal rules).

None of these measures would be barred by a decision in Respondents' favor. They could all continue to apply through the Board's own regulations—as indeed, many already do. *See* 29 C.F.R. § 102.126(b)(ii) (forbidding ex parte communications); 29 C.F.R. § 102.128(e) (same). *See also* 29 C.F.R. § 102.25 (requiring assigned ALJ to make all rulings on the record); 29 U.S.C. § 153(d) (removing Board adjudicators from General Counsel's chain of command).

Even so, the Board and its amici imply that these safeguards would be too weak. They protest that if ALJs were subject to the president's control, hearings would be infected with an unavoidable risk of bias.

But that argument ignores basic principles of due process. The Due Process Clause guarantees parties an unbiased decisionmaker. *See*

30

*Schweiker v. McClure*, 456 U.S. 188, 195 (1982). It requires agencies to give every party a fair shake. *Id. See also Gibson v. Berryhill*, 411 U.S. 564, 578 (1973).  Dozens of federal agencies manage to do that without using double-insulated ALJs. *See* Administrative Conference Report, *supra*, at 1 (*"*Impartial non-ALJs are central to due process, fair proceedings with correct decisions, and—perhaps most overlooked— faith in government and administrative programs."). If the Board cannot do the same, perhaps it has deeper problems—ones for which for-cause removal would be little but a band-aid. *See, e.g.*, William B. Gould IV, *Politics and the Effect on the National Labor Relations Board's Adjudicative and Rulemaking Procedures*, 64 Emory L.J. 1501, 1523 (2015) (observing that while the Board was once conceived as an independent expert agency, appointments have devolved into "little more than a disjointed set of political calculations" (quoting Calvin Mackenzie)).

## CONCLUSION

Constitutional questions are rarely this straightforward. This Court and the U.S. Supreme Court have held that inferior officers cannot be insulated from presidential control by two layers of for-cause

removal. The Board's ALJs are inferior officers. And the ALJs have two layers (at least) of for-cause removal protection. The Board's ALJs are therefore unconstitutionally insulated. The district court naturally reached that conclusion, and the Board and its amici offer no persuasive reason to reach a different one. This Court should affirm.

Respectfully submitted,

<div style="margin-left:40%">

*s/ Alex T. MacDonald*
Alex T. MacDonald
amacdonald@littler.com
LITTLER MENDELSON, P.C.
Workplace Policy Institute
815 Connecticut Avenue, P.C.
Suite 400
Washington, D.C.  20006-4046
Telephone: 202.772.2505

*Attorney for the Coalition for a Democratic Workplace, Associated Builders and Contractors, Mackinac Center for Public Policy, Institute for the American Worker & Washington Legal Foundation*

</div>

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on December 18, 2024, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

Respectfully submitted,

*s/ Alex T. MacDonald*

Alex T. MacDonald
amacdonald@littler.com
LITTLER MENDELSON, P.C.
Workplace Policy Institute
815 Connecticut Avenue, P.C.
Suite 400
Washington, D.C.  20006-4046
Telephone: 202.772.2505

*Attorney for the Coalition for a Democratic Workplace, Associated Builders and Contractors, Mackinac Center for Public Policy, Institute for the American Worker & Washington Legal Foundation*

## CERTIFICATE OF COMPLIANCE

1.      I certify that this brief complies with the type-volume

limitation set forth in set forth in FRAP 32(a)(7)(A).

This brief contains <u>6,414</u> words.

2.      This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because

this brief has been prepared in a proportionally spaced typeface
using Microsoft® Word in <u>14-point</u> font size in <u>Century
Schoolbook</u>.

Respectfully submitted,

<u>s/ Alex T. MacDonald</u>
Alex T. MacDonald
amacdonald@littler.com
LITTLER MENDELSON, P.C.
Workplace Policy Institute
815 Connecticut Avenue, P.C.
Suite 400
Washington, D.C.  20006-4046
Telephone: 202.772.2505


*Attorney for the Coalition for a
Democratic Workplace, Associated
Builders and Contractors, Mackinac
Center for Public Policy, Institute for
the American Worker & Washington
Legal Foundation*