# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

SPACE EXPLORATION TECHNOLOGIES CORPORATION,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, et al.,

*Defendants-Appellants.*

---

consolidated with
No. 24-40533

---

ENERGY TRANSFER, L.P. and its subsidiary and employing entity
LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, et al.,

*Defendants-Appellants.*

---

consolidated with
No. 24-10855

---

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, et al.,

*Defendants-Appellants.*

---

On Appeals from the U.S. District Courts
for the Northern, Southern, and Western Districts of Texas

**BRIEF FOR THE STATE OF TENNESSEE AND 18 OTHER STATES
AS *AMICI CURIAE* IN SUPPORT OF APPELLEES**

JONATHAN SKRMETTI
   *Attorney General of Tennessee*
OFFICE OF THE TENNESSEE
ATTORNEY GENERAL
 P.O. Box 20207
 Nashville, Tennessee 37202
 (615) 741-3491
Jenna.Adamson@ag.tn.gov

J. MATTHEW RICE
   *Solicitor General*
WHITNEY D. HERMANDORFER
   *Director of Strategic Litigation*
VIRGINIA N. ADAMSON
   *Strategic Litigation Counsel and
   Assistant Solicitor General*
PHILIP HAMMERSLEY
   *Senior Assistant Solicitor General*

*Counsel for* Amicus Curiae *State of Tennessee*
[additional counsel listed in signature block]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................... iv

INTERESTS OF *AMICI CURIAE*............................................................................1

INTRODUCTION .........................................................................................................3

SUMMARY OF ARGUMENT.......................................................................................4

ARGUMENT..................................................................................................................6

   I.  *Collins* Does Not Deny Employers a Likelihood of Success on the Merits..6

     A. *Collins* does not bar courts from issuing prospective relief from agency proceedings before an unconstitutional authority....................................6

     B. NLRB mistakenly relies on *CFSA* to implicitly overrule *Cochran*........11

   II. The Employers Suffer Irreparable Harm from Ongoing Regulation by an Unconstitutionally Structured Agency........................................................17

CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023) .................................................................. *passim*

*Bhatti v. FHFA,*
15 F.4th 848 (8th Cir. 2021) ...................................................9

*Bond v. United States,*
564 U.S. 211 (2011) ............................................................. 1, 19

*Bowsher v. Synar,*
478 U.S. 714 (1986) ........................................................ 16, 18

*BST Holdings, L.L.C. v. OSHA,*
17 F.4th 604 (5th Cir. 2021) .................................................19

*Calcutt v. FDIC,*
37 F.4th 293 (6th Cir. 2022) ........................................... 7, 12

*Chacon v. Granata,*
515 F.2d 922 (5th Cir. 1975) ...............................................18

*Cochran v. SEC,*
20 F.4th 194 (5th Cir. 2021) ...................................... *passim*

*Collins v. Yellen,*
594 U.S. 220 (2021) ................................................... *passim*

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB,*
51 F.4th 616 (5th Cir. 2022) ....................................... *passim*

*Dennis Melancon, Inc. v. City of New Orleans,*
703 F.3d 262 (5th Cir. 2012) ...............................................18

*Elrod v. Burns,*
427 U.S. 347 (1976) .............................................................19

iv

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010) ......................................................................... 15, 16

*Freytag v. Comm'r*,
  501 U.S. 868 (1991) ................................................................................3

*Garcia v. San Antonio Metro. Transit Auth.*,
  469 U.S. 528 (1985) ............................................................................1, 2

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) ............................................................19

*Humphrey's Ex'r v. United States*,
  295 U.S. 602 (1935) ................................................................................2

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) ..............................................................18

*John Doe Co. v. CFPB*,
  849 F.3d 1129 (D.C. Cir. 2017) ..................................................... 19, 20

*Leachco, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024) ................................................. 7, 17, 18

*Lucia v. SEC*,
  585 U.S. 237 (2018) ........................................................................ 3, 10

*Ohio v. Becerra*,
  87 F.4th 759 (6th Cir. 2023) ...............................................................18

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ....................................................... 3, 15, 17, 18

*Stern v. Marshall*,
  564 U.S. 462 (2011) ................................................................................1

*Synar v. United States*,
  626 F. Supp. 1374 (D.D.C. 1986) ........................................................16

*United States v. King*,
  979 F.3d 1075 (5th Cir. 2020) ............................................................13

*VHS Acquisition Subsidiary No. 7 v. NLRB.*,
   No. 1:24-cv-02577, 2024 WL 5056358 (D.D.C. Dec. 10, 2024) ................. 10, 16

**Statutes**

5 U.S.C. § 1202(d) ...............................................................................1

5 U.S.C. § 7521(a) ...............................................................................1

29 U.S.C. § 153(a) ...............................................................................1

**Other Authorities**

11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. June 2024) ......................................18

# INTERESTS OF *AMICI CURIAE*

The balance of powers between the States and the Federal Government "preserves the integrity, dignity, and residual sovereignty of the States," allowing States to "function as political entities in their own right." *Bond v. United States*, 564 U.S. 211, 221 (2011).  And the "structure of the Federal Government itself," which "gave the States a role" in selecting both the Executive and Legislative branches, "was designed in large part to protect the States from overreaching by Congress." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 550-51 (1985).  The vertical and horizontal "separation of powers protect the individual as well." *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting *Bond*, 564 U.S. at 222).

Independent agencies, like the National Labor Relations Board, present an especially grave danger to the States and their citizens.  As an independent agency, the NLRB is run by officers insulated from presidential removal by one or more layers of restrictions.  29 U.S.C. § 153(a); 5 U.S.C. §§ 1202(d), 7521(a).  This is by design.  Independent agencies like the NLRB emerged out of a desire to "ditch the Founders' tripartite system and their checks and balances for a 'more efficient separation of politics and administration.'" *Cochran v. SEC*, 20 F.4th 194, 218 (5th Cir. 2021) (Oldham, J., concurring) (quoting Ronald J. Pestritto, *Woodrow Wilson and the Roots of Modern Liberalism* 227 (2005)); *see also id.* at 219-21.  As the Supreme Court remarked of the Federal Trade Commission, Congress "inten[ded] to create a

1

body of experts … which shall be independent of executive authority[.]" *Humphrey's Ex'r v. United States*, 295 U.S. 602, 625 (1935). Left out in the cold? States—which largely lack the power to supervise independent agencies through the bicameral lawmaking process. *Cf. Garcia*, 469 U.S. at 550-51. And the people, who lost a key "security … to the[ir] rights." *The Federalist No. 51*, at 351 (James Madison) (Wesleyan University ed. 1961).

Separation-of-powers challenges like this one promote *amici* States' interest in safeguarding their political power and their citizens' liberty. The States thus have an imperative interest in courts' policing unlawful agency structures that empower entities lacking the political accountability our Constitution requires. [1]

---

[1] No party's counsel authored the brief in whole or in part, and no party, party's counsel, or third party—other than amici—contributed money that was intended to fund the preparation or submission of the brief.

**INTRODUCTION**

States fail to defend structural limitations on federal power at their peril. The judiciary, too, has a "strong interest" in creating "incentive[s]" for litigants to challenge separation-of-powers violations that undermine our constitutional order. *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991) (citation omitted); *Lucia v. SEC*, 585 U.S. 237, 251 n.5 (2018) (citation omitted). The decisions below properly recognize the constitutional injury that the plaintiffs—SpaceX, Energy Transfer, and Findhelp (collectively, "the Employers")—suffer from being haled before agency proceedings prosecuted and presided over by officials who are unconstitutionally insulated from removal by the President.

The NLRB seeks to reverse those decisions, primarily arguing (at 27-37) that *Collins v. Yellen*, 594 U.S. 220 (2021), required Employers to concretely show *previous* harm from the unconstitutional removal restriction—even when an agency's exercise of illegitimate authority is impending or ongoing. But as the Supreme Court clarified in *Axon Enterprise, Inc. v. Federal Trade Commission*, being subjected to a proceeding before an unconstitutionally structured agency is a "here-and-now injury" that inflicts redressable harm. *See* 598 U.S. 175, 191 (2023) (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020)). Waiting to grant relief until a party has suffered such structural harm would largely defeat the point of judicial review. After all, "[a] proceeding that has already happened cannot be undone." *Id.*

3

The NLRB attacks the decisions below by relying on *Community Financial Services Association of America v. Consumer Financial Protection Bureau*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"). But that decision does not apply to these appeals, and NLRB's interpretation of *CFSA* creates tension with *Axon* and other binding precedent. This Court should clarify that forward-looking constitutional challenges to agency proceedings remain a path for preserving the separation of powers—and that removal restrictions, as in *Axon*, inflict irreparable harm here.

## SUMMARY OF ARGUMENT

The district courts properly granted injunctive relief. *Collins*'s holding involved only retrospective relief from prior agency actions. That case does not foreclose removal-based challenges to ongoing or future agency proceedings that violate the Constitution. Being subjected to such unconstitutional proceedings constitutes here-and-now injury, as *Axon* confirms.

I. *Collins*'s holding about what's needed to gain retrospective relief from past agency action does not control the Employers' entitlement to relief from ongoing or future agency harms.

A. By the time *Collins* reached the Supreme Court, an amendment to the challenged agency action had eliminated the prospect of ongoing injury. And the action could not be entirely undone, the Court said, because an accountable political actor had ratified it. In that context, the Court stated that obtaining retrospective

relief required a party to show that the cited constitutional defect caused it compensable harm. But that prejudice discussion did not grant unconstitutionally structured agencies a license to injure parties in perpetuity. And *Axon* confirms as much: It authorizes the very separation-of-power suits the district court's reading of *Collins* would foreclose.

B.     This Court's decision in *CFSA* does not require reversal. First, this Court's en banc *Cochran* decision clarifies that *Collins* (and thus *CFSA*) does not apply to cases where a plaintiff seeks to enjoin ongoing proceedings before an unconstitutional agency authority. Second, the NLRB's interpretation of *CFSA*'s prejudice discussion cannot be correct because it conflicts not only with *Cochran*, but also with the Supreme Court's intervening decision in *Axon*.

II.     The Employers' ongoing regulation by an unconstitutionally structured agency inflicts paradigmatic irreparable harm. In a series of separation-of-powers cases involving removal restrictions, the Supreme Court has confirmed that parties subject to enforcement by unlawful regulators face here-and-now harm entitling them to here-and-now relief. The NLRB's misreading of *Collins* infects its irreparable-harm argument. And it would produce a result directly at odds with *Axon*'s allowance for injunctive actions to challenge prospective agency proceedings.

# ARGUMENT

## I. *Collins* Does Not Deny Employers a Likelihood of Success on the Merits.

The district courts below properly granted preliminary injunctive relief. Contra NLRB, *Collins* does not suggest otherwise. The decisions below properly recognized the legitimacy of the Employers' claimed injuries—the harm of being subjected to proceedings before an unconstitutional agency authority. Accepting the NLRB's no-harm position would allow it and other unconstitutionally structured agencies to escape review on the merits. *Axon*'s directives foreclose that result.

### A. *Collins* does not bar courts from issuing prospective relief from agency proceedings before an unconstitutional authority.

*Collins*'s causation discussion addressed a single, narrow issue: the showing required to obtain retrospective relief for compensable harm flowing from final agency action. 594 U.S. at 257. Although the *Collins* plaintiffs originally sought prospective relief, by the time the Court issued its opinion, the challenged agency action was no longer in place. *Id.* at 235, 244, 257. Thus, the "only … remedial question" at issue in that decision "concern[ed] retrospective relief." *Id.* at 257; *accord id.* at 276 (Gorsuch, J., concurring in part). The Court also ruled out plaintiffs' entitlement to certain retrospective relief—voiding the underlying action "in its entirety." *Id.* at 257. Such relief would be inappropriate because the officer who "*adopted* the [challenged agency action] was removable at will" and the officers who

6

*implemented* the action were validly appointed. *Id.* Thus, the plaintiffs had "no entitlement to retrospective relief" unless they could show the unlawful removal restriction "inflict[ed] compensable harm." *Id.* at 259. The Court then discussed two non-exclusive examples of the evidence that might satisfy that showing. *Id.*

*Collins* left open several questions that have sown confusion among lower courts. Most prominently, the Court gave no hint about whether plaintiffs would have been entitled to prospective relief without satisfying the "compensable harm" showing. Some courts have rejected attempts to distinguish prospective from retrospective relief. *See, e.g.*, *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023). In *CFSA*, for example, a panel of this Court held that *Collins* applied to plaintiffs' requests both to void the challenged agency action—a final rule—and to permanently enjoin enforcement of that promulgated rule. *CFSA*, 51 F.4th at 631. But notably, plaintiffs did not seek to enjoin allegedly unconstitutional enforcement proceedings before they happened. By contrast, in *Cochran v. Securities and Exchange Commission*, this Court sitting en banc held that *Collins* did not affect a plaintiff's entitlement to pre-enforcement review when the plaintiff did "not seek to 'void' the acts of any SEC official" through retrospective relief but instead sought "an administrative adjudication untainted by separation-of-powers violations." 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom.*, 598 U.S. 175 (2023).

Enter *Axon*. There, respondents in administrative enforcement actions before two federal agencies claimed that the double for-cause tenure protections for the agency ALJs violated Article II. 598 U.S. at 180. As a result, they argued, the agencies were "unconstitutional in much of their work." *Id.* Like the Employers here, the *Axon* respondents sued in federal district court to stop the allegedly unconstitutional actions against them, *id.*, and were granted stays of the proceedings, *see* Order, *Cochran v. SEC*, No. 19-10396 (5th Cir. Sept. 24, 2019); Order, *Axon Enter., Inc. v. FTC*, No. 20-15662 (9th Cir. Oct. 2, 2020). The agencies ultimately appealed to the Supreme Court, including from this Circuit's decision in *Cochran*.

*Axon* did not directly answer the prospective-retrospective question left open in *Collins*, but its reasoning provides helpful guidance. *Axon* considered whether forcing parties to raise their structural claims before agencies, rather than collaterally in federal court, would "foreclose all meaningful judicial review." 598 U.S. at 190 (citation omitted). The Court answered yes for two reasons. First, "being subjected" to "unconstitutional agency authority" was "a here-and-now injury." *Id.* at 191 (citation omitted). And second, such an injury would be "*impossible* to remedy once the proceeding [was] over[.]" *Id.* (emphasis added). The Court distinguished that irreparable harm from the kind of injury arising in *Collins*. The harm in *Axon*? Being subjected to "an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And the harm in *Collins*? Being subject to an illegitimate decisionmaker's final

8

order. *See id.* Unlike the *Collins* respondents, the *Axon* respondents would "have the same claim" whether they won or lost before the agency. *Id.*

Read together, *Collins* and *Axon* set distinct remedial rules depending on the nature of the injury alleged and relief pursued. If a party seeks relief from a past agency order, then it must show that the challenged removal restriction, not just the challenged action, "inflict[ed] compensable harm." *Collins*, 594 U.S. at 259; *see, e.g.*, *Bhatti v. FHFA*, 15 F.4th 848, 854 (8th Cir. 2021) (holding parties were entitled to "retrospective relief" if they had suffered "compensable harm" (quoting *Collins*, 594 U.S. at 259)). But if a party seeks prospective relief from agency action that continues to "inflict" redressable "harm," *Collins*, 594 U.S. at 259—like enjoining "an illegitimate proceeding," *Axon*, 598 U.S. at 191—then a party need only show that the proceeding is constitutionally defective to obtain relief.

This distinction makes sense. Underpinning *Collins*'s discussion was the recognition that an unconstitutional provision—*e.g.*, a for-cause removal statute—is "never really part of the body of governing law" but is "automatically displace[d]" by "the Constitution." *Collins*, 594 U.S. at 259-60. That meant, Justice Thomas' concurrence suggested, that the "Government does not necessarily act unlawfully even if a removal restriction is unlawful" and thus such restrictions do not neces-sarily cause post-hoc remediable harm. *Id.* at 261 (Thomas, J., concurring). Instead, a party must show that the unlawful removal restriction in fact prejudiced its rights

9

by affecting official decisionmakers' behavior. *Id.* at 259. Applied here, *Collins* would cover "scenarios in which a party waits to challenge removal protections after it sees the ALJ's particular rulings and then seeks to unwind them." SpaceX Br. 21.

But as SpaceX and a recent decision of the D.C. District Court explain, the crux of *Collins*'s discussion does not "logically extend" to forward-looking declaratory or injunctive relief. *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 5056358, at *9 (D.D.C. Dec. 10, 2024). Unlike the voiding of a past agency action, the effectiveness of a declaration that a removal restriction is unconstitutional "does not turn on the effect of a purported statute that was 'never really part of the body of governing law' to begin with." *Id.* (quoting *Collins*, 594 U.S. at 259). Rather, it is "the vehicle by which a party asserts that the statute is 'displace[d]' by the Constitution." *Id.* (quoting *Collins*, 594 U.S. at 259). And like logic applies to a preliminary injunction: Its efficacy in redressing injury turns not on the effect of a removal restriction on a particular political actor, *cf. Collins*, 594 U.S. at 259-60, but on an injunction's ability to prevent injury before it becomes irremediable. As SpaceX explains here, "[a] structural problem pollutes the entirety of a proceeding, regardless of the particular actors' identities." SpaceX Br. 20. And the "potential for removal influences how ALJs carry out their duties." *Id.*; *see also Lucia*, 585 U.S. at 260-61 (Breyer, J., concurring in part).

The upshot here: the Employers satisfied *Collins* at the preliminary-injunction

stage for one of two independently sufficient reasons. Either they have no *Collins* burden to satisfy because they seek prospective relief from being subjected to unconstitutional agency authority. Or they have satisfied their *Collins* burden because they have shown injury flowing from an unconstitutional removal restriction. Either way, the NLRB is wrong that *Collins* poses an obstacle to the Employers' showing a likelihood of success on the merits of their removal-restriction claims.

**B.      NLRB mistakenly relies on *CFSA* to implicitly overrule *Cochran*.**

The NLRB seeks reversal on the ground that the Employers lack any compensable harm, which NLRB reads *Collins* to require. Appellant Br. 27-38. For support, the NLRB relies principally on the panel's decision in *CFSA*, which addressed the causal showing for a challenge to set aside past agency action. *See id.* at 28-29, 32; *see also CFSA*, 51 F.4th at 625. But as this Court's en banc precedent in *Cochran* directs, *Collins*'s prejudice decision does not apply to parties seeking to enjoin ongoing and allegedly unconstitutional agency proceedings, meaning *CFSA* does not control. And adopting NLRB's reading of *CFSA* would eliminate the proper remedy for the distinct injury presented here—in conflict with *Cochran*, *Axon*, and other binding precedent.

1.      Despite the NLRB's insistence otherwise (at 32), *CFSA* does not control here because that case involved materially different circumstances—a challenge to past agency action versus an effort to stop anticipated and ongoing illegal action.

11

*CFSA* presented a challenge to the CFPB's 2017 Payday Lending Rule. The plaintiffs claimed (among other things) that the rule "must be invalidated because [it] was initially promulgated by a director who was unconstitutionally shielded from removal." 51 F.4th at 631. This Court disagreed. It held that "*Collins* [was] directly on point," and it required plaintiffs to "demonstrate that the unconstitutional removal provision caused them harm." *Id.* at 632. And because "the [p]laintiffs … failed to demonstrate harm" under *Collins*, the Court refused to invalidate the challenged provisions of the Payday Lending Rule. *Id.* at 633.

To be sure, *CFSA* extended *Collins* into new territory. Although the *CFSA* panel acknowledged that *Collins* itself only involved "retrospective relief," *id.* at 631 n.5, it nevertheless declared that "*Collins* did not rest on a distinction between prospective and retrospective relief." *Id.* at 631. It then held the plaintiffs to the *Collins* standard even though they sought a prospective injunction of the challenged rule. In so doing, it reasoned that "*Collins*'s remedial inquiry 'focuse[d] on whether a "harm" occurred that would create an entitlement to a remedy, rather than the nature of the remedy,'" and it said the "'determination as to whether an unconstitutional removal protection "inflicted harm" remains the same whether the petitioner seeks retrospective or prospective relief.'" *Id.* (quoting *Calcutt*, 37 F.4th at 316).

But applying *Collins* here would go one step further and run headlong into this Court's en banc decision in *Cochran*. The plaintiffs in *Collins* and *CFSA* sought to

12

invalidate prior agency action allegedly affected by an unconstitutional removal restriction. *See Collins*, 594 U.S. at 227, 257 (an agreement negotiated between the FHFA and the Treasury Department); *CFSA*, 51 F.4th at 631 (CFPB Payday Lending Rule). That triggered the requirement that those plaintiffs establish compensable harm caused by challenged agency actions taken in the past. *See Collins*, 594 U.S. at 259-60; *CFSA*, 51 F.4th at 631-32. However, when plaintiffs do "not seek to 'void' the acts" of an agency and instead "seek[] an administrative adjudication untainted by separation-of-powers violations," *Cochran* instructs that the *Collins* framework does not apply. 20 F.4th at 210 n.16. Rather, being forced to participate in an unconstitutional adjudication causes an "injury" that opens the door to prospective relief even without making the *Collins* showing. *See id.*

Like the plaintiff in *Cochran*, the Employers seek to enjoin ongoing agency proceedings because the agency officials prosecuting those actions were unconstitutionally insulated from removal by the President. *See id.* at 198; ROA.24-50627.13; ROA.24-10855.16-17; ROA.24-40533.16-17. These cases fall squarely within *Cochran*'s heartland (*see, e.g.*, SpaceX Br. 21-23, 25), so *CFSA* does not govern—and indeed, cannot govern—because *Cochran* was an en banc decision of this Court. *Cf. United States v. King*, 979 F.3d 1075, 1084 (5th Cir. 2020).

2.      The tension NLRB's reading of *CFSA* would create with other binding precedent underlines that it cannot be right. NLRB interprets *CFSA* to elide any

13

"distinction between prospective and retrospective relief" for *Collins* purposes, regardless of the harm claimed and the remedy sought. Appellant Br. 32 (quoting *CFSA*, 51 F.4th at 631). But that reading would essentially bar pre-enforcement review of removal-restriction challenges, flouting *Cochran*, *Axon*, and other U.S. Supreme Court precedent. At minimum, Employers are entitled to declaratory relief.

If the NLRB's reading of *CFSA* is correct, a party who has yet to undergo an illegitimate agency proceeding might *never* satisfy *Collins*'s harm showing—thus losing any opportunity for "meaningful judicial review" in defiance of *Cochran*. *Cf. Cochran*, 20 F.4th at 210 n.16; *see also* SpaceX Br. 22. That's because showing that the removal restriction mattered—other than by subjecting a party to unconstitutional agency authority—would require predicting the future. SpaceX, for example, alleges that "undergo[ing] an unconstitutional proceeding before an insufficiently accountable agency official" is the precise harm that an injunction would prevent. ROA. 24-50627.12; *see also* La Grange Br. 41. And although SpaceX alleges it has already suffered irreparable economic and reputational harm from its compelled preparation for the challenged proceedings (*see* SpaceX Br. 44-45), NLRB ignores these harms, suggesting it thinks they wouldn't satisfy *Collins*. Yet Employers cannot now say what *future* injuries might flow from the NLRB's illegitimate exercise of authority.

Nor can NLRB's reading of *CFSA* be reconciled with *Axon*. *Axon* clarifies

that a challenge to an agency's "power to proceed at all" (the claim at issue here and in *Axon*) fundamentally differs from a challenge to specific "actions taken in the agency proceedings" (the claim at issue in *Collins* and *CFSA*). 598 U.S. at 192. As *Axon* explained, the separation-of-powers harm that accompanies subjection to unconstitutional agency proceedings could not be remedied except by pre-enforcement relief. After all, judicial relief issued after litigants are subjected to unconstitutional proceedings would "come too late to be meaningful." *Id.* at 191. So it makes sense that the *Collins*/*CFSA* causation analysis would not apply in cases like those at issue here—or that the kind of injury that the Employers have alleged would satisfy it. Reconciling *Collins* with *Axon* cannot mean that courts must recognize a party's entitlement to pre-enforcement judicial review of a removal-restriction challenge, only to jettison the party's entitlement to "meaningful" relief. *Cf. id.*

Subjecting parties like Employers to the kind of but-for-causation analysis *CFSA* adopted would also conflict with other Supreme Court precedent granting equitable relief in cases like these. When parties have sought prospective relief from separation-of-powers violations, including in removal restriction cases, the Supreme Court has never required them to "show that the challenged act would not have been taken if the responsible official had been subject to the President's control." *Seila Law*, 591 U.S. at 211; *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 512 n.12 (2010). To the contrary, it has instructed that ongoing constitutional violations of

this kind impose "a 'here-and-now injury' that can be remedied by a court." *Free Enter.*, 561 U.S. at 513 (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)). Thus, in *Free Enterprise Fund* and other cases involving the President's removal power, the Supreme Court has recognized challengers' "entitle[ment] to declaratory relief to ensure" that only a "constitutional agency accountable to the Executive" could take the challenged actions. 561 U.S. at 513; *see Bowsher*, 478 U.S. at 721; *Synar v. United States*, 626 F. Supp. 1374, 1404 (D.D.C. 1986), *aff'd*, 478 U.S. 714. Such "equitable relief 'has long been recognized as the proper means for preventing entities from acting unconstitutionally.'" *Free Enter.*, 561 U.S. at 491 n.2 (citation omitted). NLRB's reading of *CFSA* would create significant tension with these binding cases by ignoring the importance of *Collins*'s limitation to parties seeking retrospective relief from past agency action.

At minimum, and as SpaceX argues (at 42-43), these precedents show that Employers are "entitled to declaratory relief sufficient to ensure" that the proceedings and other agency actions to which they are subject "will be enforced only by a constitutional agency accountable to the Executive." *Free Enter.*, 561 U.S. at 513. This much is clear: The "Court need not find that the removal restriction[s] actually inflicted harm to grant declaratory relief." *VHS Acquisition*, 2024 WL 5056358, at *9.

## II.    The Employers Suffer Irreparable Harm from Ongoing Regulation by an Unconstitutionally Structured Agency.

Relying on a *Collins*-based causation analysis, the NLRB also argues that the Employers failed to show irreparable harm.  Appellant Br. 49-54.  But the Employers *have* shown irreparable harm, and they need not show past harm to obtain relief.

The Employers alleged a "here-and-now injury"—that of being "subjected" to proceedings prosecuted by "unconstitutional agency authority." *Axon*, 598 U.S. at 191 (quoting *Seila Law*, 591 U.S. at 212); *see e.g.*, SpaceX Br. 38-39; La Grange Br. 40.  In rejecting that injury as an irreparable harm, the NLRB relies on the Tenth Circuit's opinion in *Leachco*.  *See* Appellant Br. 52.  But *Leachco*'s reasoning is unpersuasive because it rests on a distinction with no significance.

*Leachco* held that *Axon*'s reference to "here-and-now injury" was restricted to *Axon*'s "limited jurisdictional holding" and could not alone entitle a party to any relief under *Collins*.  103 F.4th at 759.  But *Leachco*'s distinction does not hold up.  As *Leachco* acknowledged, *id.*, *Axon*'s "here-and-now injury" language came from *Seila Law*, which held that an unconstitutional removal restriction gives affected parties standing to challenge it, 591 U.S. at 212.  *Seila Law*, in turn, noted that such an injury is redressable, stating that *Bowsher* "'reject[ed]' the 'argument that consideration of the effect of a removal provision is not "ripe" until that provision is actually used,' because when such a provision violates the separation of powers it

inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court." *Id.* (quoting *Bowsher*, 478 U.S. at 727 n.5).

An injury for standing purposes, to be sure, isn't always irreparable. But that doesn't mean it isn't an *injury* for purposes of obtaining injunctive relief. To the contrary, after showing a "cognizable injury for standing" purposes, a party need only show that the "harm" qualifying as an Article III injury "is irreparable" at the preliminary injunction stage. *Ohio v. Becerra*, 87 F.4th 759, 781 n.13 (6th Cir. 2023). *Collins*'s clarification that *Seila Law* does not require "void[ing] *ab initio*" actions taken by an insulated actor is not to the contrary. *Cf. Leachco*, 103 F.4th at 759 (quoting *Collins*, 594 U.S. at 258 n.24). The fact that the Employers might not be entitled to void a final decision of the NLRB ALJ or Board does not mean they are not entitled to a preliminary injunction of the proceedings.

The Employers' "here-and-now" injury is also "irreparable" because it is not compensable by "monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011); *see Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Rather, as *Axon* made clear, their injury is *only* completely redressable by an injunction of the injury-inflicting proceedings. 598 U.S. at 192; *see also Cochran*, 20 F.4th at 210. Indeed, "[t]he very purpose of injunctive remedies … is to prevent the occurrence of certain kinds of injuries in the first instance," *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975), not to redress past harm, s*ee* 11A

18

Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. June 2024). *Collins*'s "retrospective relief" reasoning thus is not on point.

Neither the NLRB nor *Leachco* (or any other case the NLRB cites) supplies any principled basis for distinguishing between prospective violations of individual constitutional rights, which "unquestionably" establish irreparable harm, and structural constitutional violations. *See BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)); SpaceX Br. 42 n.10. Structural provisions should not be treated as second-class constitutional clauses; after all, "[t]he structural principles secured by the separation of powers protect the individual as well." *Bond*, 564 U.S. at 222.

Applying that principle, then-Judge Kavanaugh cited just such individual-rights cases to find irreparable injury in a removal restriction case. He reasoned that irreparable harm "occurs almost by definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency that has issued binding rules governing the plaintiff's conduct and that has authority to bring enforcement actions against the plaintiff." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("[A] prospective violation of a constitutional right constitutes irreparable injury[.]" (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013))). And defining the precise injury similarly to *Axon*—as "regulation by the [agency] in its current

19

unconstitutional … structure"—he found that a "preliminary injunction would alleviate that ongoing harm." *Id.* at 1137. The same is true here.

## CONCLUSION

The Court should affirm the grants of preliminary relief.

Dated: December 18, 2024

Respectfully submitted,

JONATHAN SKRMETTI
  *Attorney General and Reporter*

*s/ Virginia N. Adamson*
J. MATTHEW RICE
  *Solicitor General*
WHITNEY D. HERMANDORFER
  *Director of Strategic Litigation*
VIRGINIA N. ADAMSON
  *Counsel for Strategic Litigation &*
  *Assistant Solicitor General*
PHILIP HAMMERSLEY
  *Senior Assistant Solicitor General*
OFFICE OF THE TENNESSEE
ATTORNEY GENERAL
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3491
Jenna.Adamson@ag.tn.gov

*Counsel for* Amicus Curiae
*State of Tennessee*

*Additional Counsel for* Amici Curiae *Listed on Next Page*

# ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TIM GRIFFIN
Attorney General
State of Arkansas

ASHLEY MOODY
Attorney General
State of Florida

CHRIS CARR
Attorney General
State of Georgia

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

KEN PAXTON
Attorney General
State of Texas

SEAN REYES
Attorney General
State of Utah

PATRICK MORRISEY
Attorney General
State of West Virginia

## CERTIFICATE OF SERVICE

I certify that on this day, December 18, 2024, I filed an electronic copy of this brief with the Clerk of the Fifth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. *See* 5th Cir. R. 25.2.5.

 *s/ Virginia N. Adamson*
 Virginia N. Adamson
 *Counsel for* Amicus Curiae
 *State of Tennessee*

**CERTIFICATE OF COMPLIANCE**

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume requirements and, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), contains 4,437 words. *See* Fed. R. App. P. 29(a)(5).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully submitted, this 18th day of December, 2024.


          *s/ Virginia N. Adamson*
          Virginia N. Adamson
          *Counsel for* Amicus Curiae
          *State of Tennessee*