**Nos. 24-50627, 24-40533, 24-10855**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SPACE EXPLORATION TECHNOLOGIES CORPORATION,

*Plaintiff-Appellee*,

vs.

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as Board Member of the National Labor Relations Board; JOHN DOE, Administrative Law Judge NLRB,

*Defendants-Appellees.*

*(Caption Continued on Inside Cover)*

On Appeal from the United States District Court for the Western District of Texas, No. 6:24-cv-00203-ADA, Hon. Alan D. Albright

### BRIEF OF *AMICUS CURIAE*
### THE CHAMBER OF COMMERCE OF THE UNITED STATES OF
### AMERICA IN SUPPORT OF PLAINTIFFS-APPELLEES

BRIAN A. KULP
JULIA M. FITZGERALD
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

MARIA C. MONAGHAN
CHRISTOPHER J. WALKER
U.S. CHAMBER LITIGATION
CENTER
1615 H Street, NW
Washington, DC 20062

STEVEN A. ENGEL
  *Counsel of Record*
MICHAEL H. MCGINLEY
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel for the Chamber of Commerce of the United States of America*

Consolidated With:

---

### No. 24-40533

ENERGY TRANSFER, L.P.; LA GRANGE ACQUISITION, L.P.,
*Plaintiffs-Appellees*,

vs.

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board; JOHN DOE, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,
*Defendants-Appellees.*

---

### No. 24-10855

AUNT BERTHA, doing business as FINDHELP,
*Plaintiff-Appellee*,

vs.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; LAUREN MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board; JOHN DOE, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,
*Defendants-Appellees.*

---

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

### Nos. 24-50627, 24-40533, 24-10855
*Space Exploration Techs. Corp. v. NLRB et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 also have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.    **The Chamber of Commerce of the United States of America**

("Chamber"), *Amicus Curiae*, represented by:

> **Steven A. Engel**
> **Michael H. McGinley**
> **Brian A. Kulp**
> **Julia M. Fitzgerald**
> **DECHERT LLP**
>
> **Maria C. Monaghan**
> **Christopher J. Walker**
> **U.S. CHAMBER LITIGATION CENTER**

2.    The Chamber is a nonprofit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

Dated: December 18, 2024

> */s/ Steven A. Engel*
> Steven A. Engel
> DECHERT LLP
> 1900 K Street, NW
> Washington, DC 20006
> (202) 261-3369
> steven.engel@dechert.com

i

# TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE*..........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .....................................2

ARGUMENT ..........................................................................................................5

I.     Appellees Are Entitled to a Proceeding Before Officers who Are Not
       Impermissibly Shielded from the President's Removal Authority. ..............5

       A.     NLRB ALJs Are Unconstitutionally Shielded from Removal. ..........6

              1.     NLRB ALJs Are Inferior Officers who Exercise
                     Significant Executive Power....................................................7

              2.     NLRB ALJs Are Triply Insulated from the President's
                     Removal Authority...................................................................9

       B.     NLRB Board Members Are Unconstitutionally Shielded from
              Removal............................................................................................11

II.    Subjection to an Administrative Proceeding Before Unconstitutionally
       Insulated Agency Officials Creates a Here-and-Now Injury. ....................18

CONCLUSION .....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axon Enter. Inc. v. FTC*,
  598 U.S. 175 (2023).........................................................................4, 21

*Bowsher v. Synar*,
  478 U.S. 714 (1986)..............................................................................19

*Burgess v. FDIC*,
  871 F.3d 297 (5th Cir. 2017) ..........................................................7, 8, 9

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) .................................................................21

*City of Arlington v. FCC*,
  569 U.S. 290 (2013)...............................................................................13

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) .................................................................20

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) ............................................................4, 20

*Collins v. Yellen*,
  594 U.S. 220 (2021).....................................................................19, 20, 21

*Consumers' Research v. Consumer Prod. Safety Comm'n*,
  91 F.4th 342 (5th Cir. 2024) ...........................................................15, 16

*Exela Enter. Sols., Inc. v. NLRB*,
  32 F.4th 436 (5th Cir. 2022) .................................................................14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010).......................................................................*passim*

*Humphrey's Executor v. United States*,
  295 U.S. 60 (1935)...................................................................4, 6, 13, 14

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ........................................................*passim*

*Lion Elastomers, L.L.C. v. NLRB*,
    108 F.4th 252 (5th Cir. 2024) ..............................................................13

*Lucia v. SEC*,
    585 U.S. 237 (2018) .......................................................................7, 8, 9

*McLaren Macomb*,
    372 NLRB No. 58 (Feb. 21, 2023) .......................................................12

*Morrison v. Olson*,
    487 U.S. 654 (1988) ...............................................................................6

*Myers v. United States*,
    272 U.S. 52 (1926) .............................................................................2, 5

*NLRB v. Curtin Matheson Sci., Inc.*,
    494 U.S. 775 (1990) .............................................................................12

*Overstreet ex rel. NLRB v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010) ..............................................................15

*PHH Corp. v. CFPB*,
    881 F.3d 75 (D.C. Cir. 2018) ..............................................................12

*Rieth-Riley Constr. Co.*,
    373 NLRB No. 149 (Dec. 13, 2024) ......................................................9

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ........................................................................*passim*

*Stericycle, Inc.*,
    372 NLRB No. 113 (Aug. 2, 2023) ......................................................12

*Thryv, Inc. v. NLRB*,
    102 F.4th 727 (5th Cir. 2024) ..............................................................12

*Trump v. United States*,
    603 U.S. 593 (2024) ...............................................................................2

*United States v. Arthrex, Inc.*,
   594 U.S. 1 (2021) .......................................................................12, 13

*Valley Hosp. Med. Ctr., Inc. v. NLRB*,
   100 F.4th 994 (9th Cir. 2024) ..................................................14

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 ....................................................2, 5

U.S. Const. art. II, § 3 .............................................................2, 5

**Statutes**

5 U.S.C. § 556 ...........................................................................7

5 U.S.C. § 556(c) .......................................................................7

5 U.S.C. § 557 ...........................................................................7

5 U.S.C. § 1202(d) ...................................................................10

5 U.S.C. § 3105 .........................................................................7

5 U.S.C. § 7521(a) ...................................................................10

15 U.S.C. § 2053(a) ..................................................................15

15 U.S.C. § 2053(b)(1) .............................................................16

15 U.S.C. § 2053(c) ..................................................................16

29 U.S.C. § 153 ...................................................................14, 16

29 U.S.C. § 153(a) ..............................................................10, 16

29 U.S.C. § 160(a) ...................................................................15

29 U.S.C. § 160(b) ...................................................................15

29 U.S.C. § 160(c) .....................................................................8

29 U.S.C. § 160(j) ....................................................................15

29 U.S.C. § 161 ........................................................................15

*Interstate Commerce Act*, ch. 104, 24 Stat. 379 (1887)............................................17

**Regulations**

29 C.F.R. § 102.35(a)(1).................................................................................7

29 C.F.R. § 102.35(a)(2).................................................................................7

29 C.F.R. § 102.35(a)(4).................................................................................7

29 C.F.R. § 102.35(a)(5).................................................................................7

29 C.F.R. § 102.35(a)(6).................................................................................7

29 C.F.R. § 102.35(a)(7).................................................................................7

29 C.F.R. § 102.35(a)(8).................................................................................7

29 C.F.R. § 102.35(a)(10)...............................................................................7

29 C.F.R. § 102.35(a)(11)...............................................................................7

29 C.F.R. § 102.48(a).....................................................................................8

29 C.F.R. § 102.177(b)...................................................................................7

29 C.F.R. § 102.177(c)...................................................................................7

**Other Authorities**

1 *Annals of Cong.* (Joseph Gales ed., 1834) .................................................5

Marshall J. Breger & Gary J. Edles, *Independent Agencies in the United States: Law, Structure, and Politics* (2015)...........................................17

James J. Brudney, *Isolated and Politicized: The NLRB's Uncertain Future*, 26 Comp. Lab. L. & Pol'y J. 221 (2004)................................................16

Steven G. Calabresi & Christopher S. Yoo, *The Unitary Executive During the Second Half-Century*, 26 Harv. J.L. & Pub. Pol'y 667 (2003)............................................................................................................17

Steven G. Calabresi & Gary Lawson, *The Depravity of the 1930s and the Modern Administrative State*, 94 Notre Dame L. Rev. 821 (2018)............................................................................................................16

Robert E. Cushman, *The Independent Regulatory Commissions* (1941) ...............17

*Disposition of Unfair Labor Practice Charges Per FY*,
    NLRB, bit.ly/3YTFW5N ....................................................................................8

The Federalist No. 70 (Alexander Hamilton) (Clinton Rossiter ed.,
    2003) ...............................................................................................................11

Zev J. Eigen & Sandro Garofalo, *Less Is More: A Case for Structural
    Reform of the National Labor Relations Board*, 98 Minn. L. Rev.
    1879 (2014) ......................................................................................................14

U.S. Chamber of Commerce, *The Biden Administration's "Whole of
    Government" Approach to Promoting Labor Unions* (2023),
    bit.ly/4d3RuZK .........................................................................................12, 16

## INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber's members are frequent respondents in administrative enforcement actions brought by the National Labor Relations Board ("NLRB" or "Board") and by other federal agencies who regulate their day-to-day activities nationwide. The Chamber has a significant interest in ensuring that those proceedings respect the Constitution's structural limitations. It therefore submits this brief to explain why the removal protection scheme for Board Members and Administrative Law Judges ("ALJs") at the NLRB is unconstitutional.

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. Counsel for all parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The tenure protections afforded to the NLRB's officers are unconstitutional. Through Article II, the Framers vested "[t]he executive Power" in the President, who "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 3. As the Supreme Court has explained, the Framers adopted that unitary structure to promote accountability and ensure that "a President chosen by the entire Nation" would "oversee the execution of the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010). Yet the President can ensure that the laws are faithfully executed only when he "oversee[s] the faithfulness of the officers who execute them." *Id.* at 484. Article II thus gives the President the general "prerogative to remove executive officials." *Seila Law LLC v. CFPB*, 591 U.S. 197, 214 (2020). And "Congress lacks authority to control the President's 'unrestricted power of removal'" for these Officers, because that would hamstring his ability to supervise the Executive Branch. *Trump v. United States*, 603 U.S. 593, 608–09 (2024) (quoting *Myers v. United States*, 272 U.S. 52, 176 (1926)).

The multi-layer removal protections afforded to NLRB ALJs run roughshod over these structural safeguards. Congress has insulated those executive Officers from presidential supervision by at least two levels of tenure protection. That statutory scheme unconstitutionally "subverts the President's ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on

2

his efforts." *Free Enter. Fund*, 561 U.S. at 498. It is therefore "incompatible with the Constitution's separation of powers" and cannot stand. *Id.*

This Court's precedent confirms as much. In *Jarkesy v. SEC*, this Court addressed tenure protections for SEC ALJs that are materially identical to those at issue in this case. *See* 34 F.4th 446, 464–65 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). The Court held that because "SEC ALJs are inferior officers" who "can only be removed by the SEC Commissioners if good cause is found by the Merits Systems Protection Board," and because "SEC Commissioners and MSPB members can only be removed by the President for cause," the "SEC ALJs are insulated from the President by at least two layers of for-cause protection from removal, which is unconstitutional." *Id.* at 464. The NLRB offers no persuasive basis to distinguish *Jarkesy*. Nor could it.

The removal protections afforded to the NLRB's Board Members are even more troubling. The Board Members are principal officers, and they run the entire show at the NLRB. But they, too, are insulated by statute from the President's removal authority. The result is a body of agency leaders who are "neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is." *Seila Law*, 591 U.S. at 224–25. Without that meaningful control, the President has no realistic means to take care that the laws be faithfully executed in a sprawling and politicized segment of the federal government.

The Board retorts that the tenure protections for NLRB Members fall within the "scope of *Humphrey's Executor* [*v. United States*, 295 U.S. 60 (1935)]." NLRB Br. at 45. But "*Humphrey's Executor* permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. The Board lacks several of those key attributes. It is not statutorily required to be balanced along partisan lines. It acts in a highly politicized manner. And it exercises core executive power. The statutory scheme thus finds no sanction in the holding of *Humphrey's Executor*.

Unable to square its position with binding precedent, the NLRB ultimately suggests that Appellees must affirmatively show prejudice to prevail on their removal challenges. But *Free Enterprise Fund* confirms that subjection to a proceeding within the NLRB's unconstitutional structure creates "a here-and-now injury" that the courts can remedy. 561 U.S. at 513 (quotation marks omitted). This Court's en banc decision in *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), is to the same effect. The Board tries to brush aside that precedent in favor of decisions limiting efforts to unwind *past* agency action. But those decisions do not stop a regulated party from demanding a constitutionally structured proceeding in advance.

Indeed, such a prospective action is the only meaningful way that regulated parties can ensure their adjudications comply with the Constitution's commands.

Accordingly, this Court should affirm the orders preliminarily enjoining the NLRB's unconstitutionally structured in-house proceedings against Appellees.

## ARGUMENT

## I.    Appellees Are Entitled to a Proceeding Before Officers who Are Not Impermissibly Shielded from the President's Removal Authority.

Article II provides that "[t]he executive Power shall be vested in a President." U.S. Const. art. II, § 1, cl. 1. "The entire 'executive Power' belongs to the President alone." *Seila Law*, 591 U.S. at 213. But because the President "alone and unaided" cannot perform all of the Nation's executive functions, he necessarily must rely on "the assistance of subordinates." *Myers*, 272 U.S. at 117.

At the same time, "[t]hese lesser officers must remain accountable to the President, whose authority they wield." *Seila Law*, 591 U.S. at 213. After all, it is the President's solemn duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. And because "[t]he buck stops with the President," he "must have some 'power of removing those for whom he can not continue to be responsible.'" *Free Enter. Fund*, 561 U.S. at 493 (quoting *Myers*, 272 U.S. at 117). To hold otherwise "would make it impossible for the President" to fulfill his constitutional prerogative, and to "keep [his] officers accountable" to the law and the people whom he serves. *Seila Law*, 591 U.S. at 214–15 (citations omitted); *see* 1 *Annals of Cong.*

5

518 (1789) (Joseph Gales ed., 1834) (James Madison) (explaining that the President's removal power is necessary to preserve "the chain of dependence" and ensure that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community").

That said, "not all removal restrictions are constitutionally problematic" under existing caselaw. *Jarkesy*, 34 F.4th at 463. The Supreme Court has carved out "two exceptions to the President's unrestricted removal power"—"one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 215, 218; *see Morrison v. Olson*, 487 U.S. 654, 691–96 (1988); *Humphrey's Executor*, 295 U.S. at 628–29. This case involves neither exception—for either the NLRB ALJs or the Board Members.

### A. NLRB ALJs Are Unconstitutionally Shielded from Removal.

Start with the NLRB's ALJs. There is no question that these ALJs are Officers of the United States. Nor is there any question that they are insulated from the President's command by multiple layers of tenure protection. "[S]uch multilevel protection from removal is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 484.

1.    **NLRB ALJs Are Inferior Officers who Exercise Significant Executive Power.**

NLRB ALJs indisputably qualify as "inferior Officers." *See Lucia v. SEC*, 585 U.S. 237, 247–51 (2018) (SEC ALJs); *Burgess v. FDIC*, 871 F.3d 297, 303 (5th Cir. 2017) (FDIC ALJs). They "occupy a 'continuing' position established by law." *Lucia*, 585 U.S. at 245 (citation omitted); *see* 5 U.S.C. §§ 556–57, 3105. And they exercise "significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245; *see also Burgess*, 871 F.3d at 302–03.

Indeed, NLRB ALJs wield their "broad authority to preside over agency adjudications," *Burgess*, 871 F.3d at 302, while armed with "nearly all the tools of federal trial judges," *Lucia*, 585 U.S. at 248. For instance, they may "receive relevant evidence" and "[r]ule upon offers of proof." 29 C.F.R. § 102.35(a)(4). They are empowered to "[g]rant applications for subpoenas," "[a]dminister oaths and affirmations," "[t]ake or cause depositions to be taken," hold settlement conferences, "[c]all, examine, and cross-examine witnesses," and "introduce into the record documentary or other evidence." *Id.* § 102.35(a)(1)–(2), (5), (7), (11); *see* 5 U.S.C. § 556(c). They can impose certain sanctions. *See* 29 C.F.R. § 102.177(b)–(c). They can also "[d]ispose of procedural requests, motions, or similar matters," including motions for "summary judgment" or "to dismiss complaints." *Id.* § 102.35(a)(8). And they can "[r]egulate the course of the hearing" and "[m]ake and file decisions." *Id.* § 102.35(a)(6), (10).

In these ways, NLRB ALJs exercise significant authority to "shape the course and scope" of the adversarial proceedings before them, just like the FDIC ALJs in *Burgess*, and just like the SEC ALJs in *Lucia* and *Jarkesy*. *Burgess*, 871 F.3d at 303; *see Jarkesy*, 34 F.4th at 464 ("SEC ALJs exercise considerable power over administrative case records by controlling the presentation and admission of evidence; they may punish contemptuous conduct; and often their decisions are final and binding"); *Lucia*, 585 U.S. at 248 (noting that SEC ALJs "have all the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges").

It is true that the Board has final decisionmaking authority over ALJ decisions where "exceptions are filed" by a party. 29 U.S.C. § 160(c); *see* 29 C.F.R. § 102.48(a). But both the Supreme Court and this Court have made clear that the prospect of review by the Board does nothing to undermine the inferior-officer status of ALJs. *See Lucia*, 585 U.S. at 249; *Burgess*, 871 F.3d at 303. Nor does it blunt "the constitutional impact of for-cause removal." *Free Enter. Fund*, 561 U.S. at 504 (citation omitted). Many parties bow out and settle before they make their way past the ALJ and to the Board. *See Disposition of Unfair Labor Practice Charges Per FY*, NLRB, bit.ly/3YTFW5N (last visited Dec. 18, 2024). And even in those cases that proceed, the ALJ's influence lingers. After all, the ALJ has already "critically shape[d] the administrative record" by the time a case reaches the Board, and the

Board affords a measure of "deference to its ALJs, even if not by regulation." *Lucia*, 585 U.S. at 248, 250.  In fact, "[t]he Board's established policy is not to overrule an [ALJ's] credibility resolutions unless the clear preponderance of all the relevant evidence" compels it to do so.  *Rieth-Riley Constr. Co.*, 373 NLRB No. 149, at 1 n.1 (Dec. 13, 2024).

All this goes to show that NLRB ALJs, like other ALJs, are "Officers of the United States."  *See Lucia*, 585 U.S. at 251; *Burgess*, 871 F.3d at 303.  They are therefore "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions."  *Jarkesy*, 34 F.4th at 464.

## 2. NLRB ALJs Are Triply Insulated from the President's Removal Authority.

Despite the substantial executive power entrusted to NLRB ALJs, they enjoy a constitutionally intolerable level of protection from the President's oversight.

Congress cannot "commit[] substantial executive authority to officers" who are shielded by "two layers of for-cause removal" protection.  *Free Enter. Fund*, 561 U.S. at 505; *see Jarkesy*, 34 F.4th at 463–64.  That is because such multi-level insulation "not only protects [the Officer] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists" in the first place.  *Free Enter. Fund*, 561 U.S. at 495.  The decision is instead vested in intermediaries not "subject to the President's direct control."  *Id.*  And thus, "the

President is no longer the judge of the [Officer's] conduct." *Id.* at 496. The result is that the President "can neither ensure that the laws are faithfully executed, nor be held responsible for [the Officer's] breach of faith." *Id.*

That straightforward principle resolves this case. The statutory scheme here is akin to those repudiated in *Free Enterprise Fund* and *Jarkesy*; for as in those cases, at least two "layers of insulation impede[] the President's power to remove [NLRB] ALJs based on their exercise of the discretion granted to them." *Jarkesy*, 34 F.4th at 465. NLRB ALJs may be removed "only for good cause established and determined by the Merit Systems Protection Board [MSPB]." 5 U.S.C. § 7521(a). And Congress has limited the President's ability to remove the NLRB's Board Members, who are the ones ultimately responsible for initiating the action to remove an ALJ for cause, except "for neglect of duty or malfeasance in office." 29 U.S.C. § 153(a); *see* 5 U.S.C. § 7521(a) (providing that the decision to seek removal before the MSPB is committed to "the agency in which the administrative law judge is employed"). To complicate matters further, the members of the MSPB are themselves removable "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

Add it all up, and NLRB ALJs are even less accountable than the Public Company Accounting Oversight Board in *Free Enterprise Fund*. The NLRB ALJs themselves cannot be removed—by anybody—except for cause. Those who decide

whether to move to fire an ALJ for cause (the NLRB Board Members) are statutorily insulated from presidential supervision.  And those who decide whether cause exists (the MSPB) are also shielded from the President by their own for-cause protections.

This sort of "diffusion of accountability," the Supreme Court has explained, is precisely what the Framers sought to prevent when they concentrated the executive power in a single President of the United States.  *Free Enter. Fund*, 561 U.S. at 497; *see Seila Law*, 591 U.S. at 224.  The public cannot "determine on whom the blame or the punishment . . . ought really to fall" for matters involving an NLRB ALJ.  The Federalist No. 70, at 426 (Alexander Hamilton) (Clinton Rossiter ed., 2003).  For "safely encased within a Matryoshka doll of tenure protections," those ALJs stand "immune from Presidential oversight, even as they exercise[] power in the people's name."  *Free Enter. Fund*, 561 U.S. at 497.  The law is settled that "Congress cannot limit the President's authority in this way."  *Id.* at 514; *see Jarkesy*, 34 F.4th at 465.

## B.   NLRB Board Members Are Unconstitutionally Shielded from Removal.

Congress's attempt to limit the President's ability to remove the NLRB's Board Members is also unconstitutional.  Again, the President's plenary power to remove executive officers is "the rule, not the exception."  *Seila Law*, 591 U.S. at 228.  And the two narrow exceptions identified by the Supreme Court in *Humphrey's Executor* and *Morrison* demarcate the "outermost constitutional limits of

11

permissible congressional restrictions on the President's removal power." *Id.* at 218 (quoting *PHH Corp. v. CFPB*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)). The Board fits within neither.

The *Morrison* exception for "inferior officers with limited duties" plainly does not apply. *Id.* "Everyone agrees the [NLRB Board Members are] not . . . inferior officer[s]." *Id.* at 219. They instead "have the 'power to render a final decision on behalf of the United States' without any . . . review by [a] nominal superior or any other principal officer in the Executive Branch." *United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021) (citation omitted). And the Board's statutory duties are "far from limited." *Seila Law*, 591 U.S. at 219. Indeed, the NLRB is charged with the "primary responsibility for developing and applying national labor policy" that affects tens if not hundreds of millions of Americans nationwide. *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990).[2]

---

[2] In recent years, the Board has been particularly aggressive in pushing its policy agenda to "significantly rework[] U.S. labor law." U.S. Chamber of Commerce, *The Biden Administration's "Whole of Government" Approach to Promoting Labor Unions* 27–31 (2023), bit.ly/4d3RuZK. For example, it has imposed "a novel, consequential-damages-like labor law remedy" to deter and punish violators. *Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024). It recently held that facially neutral rules that an employee "could" reasonably interpret to restrict union activity—even if the rules do not restrict such activity—are "presumptively unlawful." *Stericycle, Inc.*, 372 NLRB No. 113, 2023 WL 4947792, at *15 (Aug. 2, 2023). It has also overruled precedent to hold that it is an unfair labor practice to merely offer routine confidentiality and non-disparagement provisions in a voluntary severance agreement. *See McLaren Macomb*, 372 NLRB No. 58, 2023 WL 2158775, at *1

The *Humphrey's Executor* exception is likewise inapplicable. *Humphrey's Executor* involved a presidential attempt to remove a member of the Federal Trade Commission ("FTC"), which Congress designed to be a "non-partisan" body of "experts" that "must, from the very nature of its duties, act with entire impartiality." 295 U.S. at 624. The Court also conceptualized the FTC's duties as "neither political nor executive," but rather, as "quasi-judicial and quasi-legislative." *Id.* In other words, the FTC performed "specified duties as a legislative or as a judicial aid." *Id.* at 628. As a "legislative agency," it "ma[de] investigations and reports thereon for the information of Congress." *Id.* And as an "agency of the judiciary," it made recommendations to courts. *Id.*

"The Court's conclusion that the FTC did not exercise executive power has not withstood the test of time." *Seila Law*, 591 U.S. at 216 n.2. While "[t]he activities of executive officers may 'take "legislative" and "judicial" forms,'" their activities "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power,"'" for which the President is ultimately responsible." *Arthrex*, 594 U.S. at 17 (quoting *City of Arlington v. FCC*, 569 U.S.

_____

(Feb. 21, 2023). And in yet another case, the Board "exceeded the scope of [this Court's] remand" and "violated . . . due-process rights" by reaching out to overrule precedent that had better protected employers' rights to maintain harassment-free workplaces—without even "providing the company an opportunity to be heard on the issue." *Lion Elastomers, L.L.C. v. NLRB*, 108 F.4th 252, 260 (5th Cir. 2024).

290, 305 n.4 (2013)).  As a result, the Supreme Court has cabined *Humphrey's Executor* as "permit[ting] Congress to give for-cause removal protections" to "a multimember body of experts," but only where that body both (1) is statutorily "balanced along partisan lines," and (2) "perform[s] legislative and judicial functions" such that it can be "said not to exercise *any* executive power." *Seila Law*, 591 U.S. at 216 (emphasis added); *see also Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 444 (5th Cir. 2022).

The Board possesses neither of these attributes.  First, unlike the FTC, the Board is not required to be balanced along partisan lines.  A new board member is instead replaced by the President each year.  *See* 29 U.S.C. § 153.  A President may thus install at least four members of his party to the five-member Board during one term.  And there is nothing "non-partisan" about the NLRB.  *Humphrey's Executor*, 295 U.S. at 624.  It is a fundamentally political institution, and "[n]ewly constituted Boards have made a practice of overruling precedent created by past administrations' Boards, with each Board instituting its own set of politically-motivated rules." *Valley Hosp. Med. Ctr., Inc. v. NLRB*, 100 F.4th 994, 1003 (9th Cir. 2024) (O'Scannlain, J., concurring) (quoting Zev J. Eigen & Sandro Garofalo, *Less Is More: A Case for Structural Reform of the National Labor Relations Board*, 98 Minn. L. Rev. 1879, 1887 (2014)).

Second, the Board wields quintessential executive power. Among other responsibilities, the Board "is empowered . . . to prevent any person from engaging in any unfair labor practice." 29 U.S.C. § 160(a). It possesses broad investigative authority. *See id.* § 161. It may issue complaints against employers alleged to have violated the law. *See id.* § 160(b). And its power to petition a federal court for injunctive relief is similarly "prosecutorial in nature." *Overstreet ex rel. NLRB v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010); *see* 29 U.S.C. § 160(j). It follows that Congress cannot insulate the Board Members from presidential control.

This Court's decision in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024), is not to the contrary. There, the Court upheld the tenure protections in 15 U.S.C. § 2053(a) for members of the Consumer Product Safety Commission ("CPSC"). *Id.* at 346–47. In reaching that conclusion, the *CPSC* Court recognized that "[t]he contours of the *Humphrey's Executor* exception depend upon the *characteristics* of the agency before the Court." *Id.* at 352–53 (quoting *Seila Law*, 591 U.S. at 215). This Court also made clear that it would "not adjust . . . the borders" of the *Humphrey's Executor* exception. *Id.* at 352. And it upheld the limited tenure protection there because it found the CPSC to be "structurally identical to the agency that the Supreme Court deemed constitutional in *Humphrey's*." *Id.* at 346.

But the NLRB is not structurally identical. Unlike the CPSC, the NLRB is not required to be balanced along party lines. *Compare* 15 U.S.C. § 2053(c), *with* 29 U.S.C. § 153. Unlike the CPSC, the President can appoint a supermajority of the NLRB during any given four-year term. *Compare* 15 U.S.C. § 2053(b)(1) (seven-year terms for five-member commission), *with* 29 U.S.C. § 153(a) (five-year terms for five-member Board). Unlike the CPSC, the NLRB "operate[s] in an openly partisan manner." James J. Brudney, *Isolated and Politicized: The NLRB's Uncertain Future*, 26 Comp. Lab. L. & Pol'y J. 221, 223 (2004); *see also* U.S. Chamber of Commerce, *The Biden Administration's "Whole of Government" Approach to Promoting Labor Unions* 23–24, 27–31 (2023), bit.ly/4d3RuZK. And unlike the CPSC, the Board is hardly a "body of experts" designed to "act with entire impartiality." *CPSC*, 91 F.4th at 353 (citation omitted). Thus, *Consumers' Research* cannot and should not be read to expand the limited holding of *Humphrey's Executor* to this agency with fundamentally different "characteristics." *Id.* at 352 (citation omitted).

The Board is also wrong to suggest that it has "history on its side." NLRB Br. at 44 (citation omitted). For one thing, "[t]here were quite simply no independent agencies in seventeenth or eighteenth-century England or North America." Steven G. Calabresi & Gary Lawson, *The Depravity of the 1930s and the Modern Administrative State*, 94 Notre Dame L. Rev. 821, 859 (2018). And even once multi-

member agencies first appeared, they were subject to normal presidential removal authority. The first multi-headed "independent" agency, the Interstate Commerce Commission ("ICC"), was created in 1887 to regulate the railroads. *See Interstate Commerce Act*, ch. 104, 24 Stat. 379 (1887). But "[i]t is far from clear that [the ICC's] removal provisions in any way precluded the president from removing a member of the ICC simply for disagreements over policy." Steven G. Calabresi & Christopher S. Yoo, *The Unitary Executive During the Second Half-Century*, 26 Harv. J.L. & Pub. Pol'y 667, 797 (2003). "Independence of executive domination seems not to have been thought of and was certainly not discussed" in creating the ICC. Robert E. Cushman, *The Independent Regulatory Commissions* 61 (1941). That view emerged only in the New Deal era—roughly 150 years after our Founding—when the Progressives sought governmental administration marked by "reliance on experts together with independence from the political melee." Marshall J. Breger & Gary J. Edles, *Independent Agencies in the United States: Law, Structure, and Politics* 34 (2015).

Whatever the merits of that vision of government, it is not the Framers' conception. As the Supreme Court has explained, the Framers' vision allows "executive officials" to "wield significant authority" only if "that authority remains subject to the ongoing supervision and control of the elected President." *Seila Law*,

591 U.S. at 224.  That is not the case with the NLRB's Board Members.  The removal protections afforded to them violate Article II.

## II. Subjection to an Administrative Proceeding Before Unconstitutionally Insulated Agency Officials Creates a Here-and-Now Injury.

In the end, the Board cannot muster any persuasive defense of the removal protections afforded to NLRB Officers.  So, it urges this Court to look the other way unless Appellees first demonstrate "a causal link between either ALJ or Board member removal protections" and the results of their ongoing proceedings.  NLRB Br. at 27.  That is incorrect.

Once again, *Free Enterprise Fund* controls.  There, the Public Company Accounting Oversight Board initiated a formal investigation into a firm's auditing procedures.  *See* 561 U.S. at 487.  The firm then sought "an injunction preventing the Board from exercising its powers," arguing that the Board's members were unconstitutionally insulated from the President's removal power.  *Id.*  After holding the multi-layer tenure protections were "incompatible with the Constitution's separation of powers," *id.* at 498, the Court turned to the remedy.  And it held that the firm was "entitled to declaratory relief sufficient to ensure that" the law would "be enforced only by a constitutional agency accountable to the Executive."  *Id.* at 513.  The "separation-of-powers violation" loomed over the Board's ongoing investigation, and that created "a 'here-and-now' injury" for which the Court could

afford prospective relief.  *Id.* (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)).

That remedial holding makes eminent sense.  After all, the decision-making processes of officers who are effectively shielded from removal will naturally differ from those who recognize their accountability to the President.  The Executive too may act differently in supervising the actions of those officers.  So, to ensure that only accountable officials will exercise the executive power, private parties like the Appellees here must be able to enforce "[t]he chain of dependence between those who govern and those who endow them with power" in an ongoing proceeding. *Collins v. Yellen*, 594 U.S. 220, 278 (2021) (Gorsuch, J., concurring in part). Upholding that sort of "structural protection[] against abuse of power [is] critical to preserving liberty." *Free Enter. Fund*, 561 U.S. at 501 (citation omitted).  And that is particularly true for pending adjudications that threaten to impose liabilities or strip the challenger of its rights.  If the request for prospective relief succeeds, then the previously shielded officer's "presumed desire to avoid removal" will create "here-and-now subservience" to the President and his obligations under the Take Care Clause. *Bowsher*, 478 U.S. at 727 n.5 (citation omitted).

That altered arrangement serves to protect the challenger from the whims of unelected and unconstitutionally insulated agency officials as the proceeding unfolds.  And it is why Appellees may seek and obtain relief.  Their removal

challenges are meritorious, and there is no reason to deprive them of "an administrative adjudication untainted by separation-of-powers violations." *Cochran*, 20 F.4th at 210 n.16.

In arguing otherwise, the NLRB relies on *Collins v. Yellen*, 594 U.S. 220, and *Community Financial Services Association of America, Limited v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), *rev'd and remanded*, 601 U.S. 416 (2024), *reinstated in part*, 104 F.4th 930 (5th Cir. 2024). Neither supports the NLRB's position.

In *Collins*, the "only" remedial question "concern[ed] *retrospective* relief." 594 U.S. at 257 (emphasis added). And even there, the Court remanded for the lower courts to "resolve[] in the first instance" whether the "unconstitutional removal restriction inflicted harm." *Id.* at 260. Accordingly, the Court in *Collins* had no occasion to consider the availability of prospective relief for ongoing separation-of-powers violations like those here. In these circumstances, the remedial holding in *Free Enterprise Fund*—not *Collins*—controls. *See also Cochran*, 20 F.4th at 210 n.16 (explaining that *Collins* does not apply where a party seeks to avoid an "enforcement proceeding presided over by an unconstitutionally insulated ALJ").

The NLRB's reliance on *CFSA* is similarly misplaced. There, the plaintiffs sought to "invalidate[]" a previously issued CFPB rule. 51 F.4th at 631. Given the nature of that challenge, this Court distilled a three-part test for cases where a plaintiff seeks "a *rewinding* of agency action" based on a "removal violation." *Id.*

at 632 (emphasis added) (quoting *Collins*, 594 U.S. at 274 (Kagan, J., concurring in part)).  But it said nothing about a challenger seeking prospective relief to ensure that, going forward, he "will be" subject to a proceeding before executive officers who are "accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.  Thus, *CFSA* is simply off-point.

*  *  *

In short, the NLRB is subjecting Appellees to in-house administrative proceedings before unaccountable agency officials.  That is unconstitutional.  And this Court has made clear that "subjecting [a party] to costly and dubiously authorized administrative adjudications amounts to irreparable harm." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 238 (5th Cir. 2024).  After all, an unlawfully structured administrative "proceeding that has already happened cannot be undone." *Axon*, 598 U.S. at 191.  Nor is there any mechanism to compensate Appellees for having to endure such an unconstitutional process after it concludes.  An injunction is therefore necessary to provide them meaningful relief.

## CONCLUSION

The unconstitutional administrative proceedings against Appellees were properly enjoined, and the judgments below should be affirmed.

Respectfully Submitted,

*/s/ Steven A. Engel*

| | |
|---|---|
| BRIAN A. KULP | STEVEN A. ENGEL |
| JULIA M. FITZGERALD | *Counsel of Record* |
| DECHERT LLP | MICHAEL H. MCGINLEY |
| Cira Centre | DECHERT LLP |
| 2929 Arch Street | 1900 K Street, NW |
| Philadelphia, PA 19104 | Washington, DC 20006 |
| | (202) 261-3369 |
| MARIA C. MONAGHAN | steven.engel@dechert.com |
| CHRISTOPHER J. WALKER | |
| U.S. CHAMBER LITIGATION | |
| CENTER | |
| 1615 H Street, NW | |
| Washington, DC 20062 | |

*Counsel for the Chamber of Commerce of the United States of America*

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I caused the foregoing *amicus curiae* brief to be filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit.  The Court's CM/ECF system was used to file the brief, and service will therefore be accomplished by the CM/ECF system on all CM/ECF-registered counsel.

Dated: December 18, 2024

*/s/ Steven A. Engel*
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of Record for the*
*Chamber of Commerce of the*
*United States of America*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 5,051 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f).   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-pt font.

Dated: December 18, 2024

*/s/ Steven A. Engel*
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of Record for the*
*Chamber of Commerce of the*
*United States of America*