**Nos. 24-50627, 24-40533, 24-10855**

# United States Court of Appeals
# for the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants.*

---

**On Appeal from the United States District Courts
for the Northern, Southern, and Western Districts of Texas**

---

### APPELLANTS' REPLY BRIEF

---

JENNIFER A. ABRUZZO
  *General Counsel*
JESSICA RUTTER
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Attorney*
DAVID P. BOEHM
  *Senior Attorney*
PHILLIP H. MELTON
JAMES G. O'DUDEN
  *Trial Attorneys*

NATIONAL LABOR RELATIONS BOARD
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(202) 273-4202

# TABLE OF CONTENTS

I.   The Norris-LaGuardia Act precludes these injunctions. .................1

II.  The district courts erred in finding that Employers need not show causal harm and/or that causal harm was readily satisfied. ..............14

III. NLRB ALJs are constitutionally shielded from removal without cause. ........................................................................................24

IV.  NLRB Members are constitutionally shielded from removal without cause.......................................................................................26

V.   No Employer has shown irreparable harm. ...................................33

VI.  The balance of equities and public interest weigh in the Board's favor. .......................................................................................37

Conclusion...........................................................................43

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aeronautical Indus. Dist. Lodge 91, IAM v. United Techs. Corp., Pratt & Whitney,*
  230 F.3d 569 (2d Cir. 2000) ................................................................ 6
*Agostini v. Felton,*
  521 U.S. 203 (1997) ................................................................ 19, 26
*Alpine Sec. Corp. v. FINRA,*
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ..................... 35
*Alpine Sec. Corp. v. FINRA,*
  122 F.4th 1314 (D.C. Cir. 2024) ........................................................ 35
*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ................................................................ 3
*Armco, Inc. v. United Steelworkers of Am.,*
  280 F.3d 669 (6th Cir. 2002) ........................................................ 5, 11
*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) ................................................................ 11
*AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers,*
  317 F.3d 758 (7th Cir. 2003) ........................................................ 5
*Axon Enter. Inc. v. FTC,*
  598 U.S. 175 (2023) ................................................................ 19, 21, 35
*Bhd. of R.R. Trainmen, Enter. Lodge, No. 27 v. Toledo, P.&W.R.R.,*
  321 U.S. 50 (1944) ................................................................ 13
*Bradley Lumber Co. of Ark. v. NLRB,*
  84 F.2d 97 (5th Cir. 1936) ........................................................ 35, 36
*BST Holdings v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) ........................................................ 41
*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) ........................................................ 23
*Camping Const. Co. v. Dist. Council of Iron Workers,*
  915 F.2d 1333 (9th Cir. 1990) ........................................................ 6
*Carter v. Herrin Motor Freight Lines,*
  131 F.2d 557 (5th Cir. 1942) ........................................................ 13, 14
*Cmty. Fin. Servs. Ass'n of Am. v. CFPB ("CFSA"),*
  51 F.4th 616 (5th Cir. 2022) ........................................................ 15, 16, 20

*Cochran v. SEC,*
   20 F.4th 194 (5th Cir. 2021) .............................................. 16, 17, 18, 36
*Collins v. Dep't of Treasury,*
   83 F.4th 970 (5th Cir. 2023) ...................................................... passim
*Collins v. Lew,*
   642 F. Supp. 3d 577 (S.D. Tex. 2022) ................................................ 20
*Collins v. Yellen,*
   27 F.4th 1068 (5th Cir. 2022) ........................................................ 20
*Collins v. Yellen,*
   594 U.S. 220 (2021) ................................................................ passim
*Columbia River Packers Ass'n v. Hinton,*
   315 U.S. 143 (1942) .................................................................... 8
*Consumers' Rsch. v. CPSC,*
   91 F.4th 342 (5th Cir. 2024) .............................................. 26, 27, 29, 30
*D.R. Horton, Inc. v. NLRB,*
   737 F.3d 344 (5th Cir. 2013) .......................................................... 12
*Delaware State Sportsmen's Association, Inc. v. Delaware Department of*
   *Safety & Homeland Security,*
   108 F.4th 194 (3d Cir. 2024) ...................................................... 36, 42
*Dist. 29, United Mine Workers v. New Beckley Min. Corp.,*
   895 F.2d 942 (4th Cir. 1990) .......................................................... 6
*Elgin v. Dep't of Treasury,*
   567 U.S. 1 (2012) .................................................................... 14
*Exela Enter. Sols. v. NLRB,*
   32 F.4th 436 (5th Cir. 2022) .......................................................... 30
*Fibreboard Paper Prods. v. NLRB,*
   379 U.S. 203 (1964) .................................................................. 31
*Free Enter. Fund v. PCAOB,*
   561 U.S. 477 (2010) .............................................................. 22, 36
*FTC v. Standard Oil Co. of Cal.,*
   449 U.S. 232 (1980) .................................................................. 35
*FTC v. U.S. Anesthesia Partners, Inc.,*
   No. 24-20270, 2024 WL 5003580 (5th Cir. Aug. 15, 2024) .................. 18
*Humphrey's Executor v. United States,*
   295 U.S. 602 (1935) .............................................................. 26, 28
*Illumina, Inc. v. FTC,*
   88 F.4th 1036 (5th Cir. 2023) ...................................................... 26, 27

*In re Continental Airlines, Inc.*,
    484 F.3d 173 (3d Cir. 2007) .................................................. 7
*In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*,
    723 F.2d 70 (D.C. Cir. 1983) ................................................. 6
*Jarkesy v SEC*,
    34 F.4th 446, 449 (5th Cir. 2022) .................................. 22, 24
*Lauf v. E.G. Shinner & Co.*,
    303 U.S. 323 (1938) ......................................................... 2, 3
*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
    103 F.4th 748 (10th Cir. 2024) ........................................... 16
*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ...................................................... 31
*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ............................................ 41
*Lucia v. SEC*,
    585 U.S. 237 (2018)................................................ 22, 23, 24
*Morrison v. Olson*,
    487 U.S. 654 (1978)........................................................... 32
*Nat'l Collegiate Master Student Loan Tr.*,
    96 F.4th 599 (3d Cir. 2024).................................................. 16
*New Negro All. v. Sanitary Grocery Co.*,
    303 U.S. 552 (1938)............................................................. 8
*NLRB v. Curtin Matheson Sci., Inc.*,
    494 U.S. 775, (1990).......................................................... 32
*NLRB v. Erie Resistor Corp.*,
    373 U.S. 221 (1963).......................................................... 31
*NLRB v. J. Weingarten, Inc.*,
    420 U.S. 251 (1975).......................................................... 31
*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) ............................................................ 38
*NLRB v. Seven-Up Bottling Co. of,*
    *Mia.*, 344 U.S. 344 (1953) ................................................ 31
*Milk Wagon Drivers' Union, Loc. No. 753 v. Lake Valley Farm Prods.*,
    311 U.S. 91 (1940) ..................................................... 2, 3, 9
*Overstreet v. El Paso Disposal, LP*,
    625 F.3d 844 (5th Cir. 2010)............................................. 38
*Parks v. International Brotherhood of Electrical Workers*,
    314 F.2d 886 (4th Cir. 1963)............................................. 11

*Retail Clerks Union Loc. 122 v. Alfred M. Lewis, Inc.*,
   327 F.2d 442 (9th Cir. 1964) ................................................................ 6

*Reuter v. Skipper*,
   4 F.3d 716 (9th Cir. 1993) ........................................................... 10, 11

*Sampson v. Murray*,
   415 U.S. 61 (1974) .............................................................................. 36

*San Diego Bldg. Trades Council v. Garmon*,
   359 U.S. 236 (1959) ............................................................................ 31

*Schaub v. W. Mich. Plumbing & Heating, Inc.*,
   250 F.3d 962 (6th Cir. 2001) ............................................................. 39

*Scott v. Moore*,
   680 F.2d 979 (5th Cir. 1982) ............................................................... 7

*Seila Law v. CFPB*,
   591 U.S. 197, 235 (2020) ..................................................... 22, 26, 36

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*,
   702 F.3d 794 (5th Cir. 2012) ............................................................... 4

*Union No. 449*,
   353 U.S. 87 (1957) ............................................................................. 31

*United States v. Est. of Romani*,
   523 U.S. 517 (1998) ............................................................................. 5

*United States v. SCRAP*,
   412 U.S. 669 (1973) ........................................................................... 34

*United Steelworkers v. Bishop*,
   598 F.2d 408 (5th Cir. 1979) ........................................................ 4, 12

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) ........................................................................... 33

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
   No. 1:24-CV-02577 (TNM), 2024 WL 4817175 (D.D.C. Nov. 17, 2024) . 5

*WestRock Services*,
   366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ............................ 25

*Whitney v. Stearns*,
   16 Me. 394 (Mich. 1839) ................................................................... 34

*Wooten v. Ohler*,
   303 F.2d 759 (5th Cir. 1962) ......................................................... 9, 10

*YAPP USA Auto. Sys. v. NLRB*,
   No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ................... 19

Statutes

28 U.S.C. § 1331 .................................................................................18
29 U.S.C. § 101 .............................................................................. 1, 8
29 U.S.C. § 102 ......................................................................... passim
29 U.S.C. § 104 ............................................................................. 6, 9
29 U.S.C. § 107 ...................................................................................2
29 U.S.C. § 110 ...................................................................................4
29 U.S.C. § 113(a) .............................................................................7
29 U.S.C. § 113(c) ..........................................................................5, 9
29 U.S.C. § 152(3) .............................................................................5
29 U.S.C. § 154(a) ...........................................................................30
29 U.S.C. § 157 ........................................................................... 12, 38
29 U.S.C. § 160(c) ...........................................................................25
29 U.S.C. § 160(h) .............................................................................5
29 U.S.C. § 166 ................................................................................37
29 U.S.C. § 412 ................................................................................11
29 U.S.C. §§ 108, 109................................................................ 4, 13, 14
42 U.S.C. § 1983 ...................................................................... 9, 10, 11
49 U.S.C. §§ 11, 15-16 (1934) .......................................................28
U.S. Const. art. I, § 8, cl. 9; art. III, §§ 1, 2 cl. 2 .......................3

Rules

Federal Rule of Civil Procedure 12(b)(6) .................................20

Regulations

17 C.F.R. § 201.180(a)(1).................................................................24
29 C.F.R. § 102.177(b) ....................................................................25

The injunctions entered below exceeded statutory limits on the jurisdiction of the courts that entered them and would render fundamental employee rights unenforceable save through disruptive self-help measures. And each injunction below was the product of prejudicial legal errors as to every injunction factor—errors that dictate reversal. Most salient, each employer's claim fails on simple causation grounds because they fail to show the allegedly unlawful officer-tenure protections they challenge harmed them.[1]

## I.    The Norris-LaGuardia Act precludes these injunctions.

Congress has forbidden federal courts from issuing injunctions in cases involving or growing out of labor disputes and contrary to specified policies. 29 U.S.C. § 101. That choice places no one, including unions, employees, employers, or the NLRB, above the law; it merely limits what forms of relief are available and under what circumstances.

---

[1] Capitalized terms are consistent with the NLRB's opening brief. We cite the NLRB's brief as "NLRB Br.," Space Exploration Technologies Corp.'s brief as "SpaceX Br.," the Energy Transfer plaintiffs' brief as "Energy Transfer Br.," FindHelp's brief as "FindHelp Br.," the brief of states Tennessee, *et al.* as "Tenn Br.," the Chamber of Commerce of the United States's brief as "Chamber Br.," and the Coalition for a Democratic Workplace *et al.*'s brief as "CDW Br."

Initially, the jurisdictional strictures of the Norris-LaGuardia Act ("NLGA") are a bar on the judiciary's power to act and not, as SpaceX suggests [Br. 55-56], a procedural defense subject to forfeiture.[2] The NLGA has a singular and strictly defined exception permitting the issuance of injunctions to protect property where public police are unable or unwilling to do so, with its own procedural limitations. 29 U.S.C. § 107.[3] But there is no support for the contention that Congress intended the NLGA as anything other than a "unequivocal jurisdictional limitation" on the judicial power under its Article I authority to constitute lower federal courts, and the Judicial Vesting and Exceptions Clauses of Article III. *Milk Wagon Drivers' Union, Loc.*

---

[2] This includes the procedural requirements of 29 U.S.C. § 107. *Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 329-30 (1938). While the NLRB's opening brief (at 18) noted that this objection was not presented in the cases below, this was an error. The NLGA's jurisdictional bar on injunctive relief, and the need for a hearing "in open court" was in fact presented to the district court in the SpaceX case. 24-50627.ROA.183-84. Understanding it was contested, district court nonetheless elected to proceed on affidavit evidence. 24-50627.ROA.377:1-4.

[3] Notably, no Employer establishes that this exception applies in the cases under review. While SpaceX argues [Br. 61] that the requirements of 29 U.S.C. § 107 are met, it then quibbles with that provision's requirement that an injunction may only issue to protect the complainant's property, which it tacitly admits is not the case here.

*No. 753 v. Lake Valley Farm Prods.*, 311 U.S. 91, 101 (1940).[4] This is clear from the law's text: "the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the United States are enacted." 29 U.S.C. § 102. "There can be no question of the power of Congress thus to define and limit the jurisdiction of the inferior courts of the United States." *Lauf*, 303 U.S. at 330.

Congress meant what it said when it described the NLGA as a limit on federal-court jurisdiction. It used the conjunctive term "jurisdiction *and* authority" in Section 102. 29 U.S.C. § 102 (emphasis added). Where Congress uses the term "jurisdiction" to denote a restriction on judicial cognizance; courts are not at liberty to disregard such limitations. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006) ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.").

Where a statute forbids courts from acting, failure of a party or court to address the issue cannot confer authority withheld by Congress. Indeed, "if the record discloses that the lower court was

---

[4] U.S. Const. art. I, § 8, cl. 9; art. III, §§ 1, 2 cl. 2.

without jurisdiction [this Court] will notice the defect, [even if] the parties make no contention concerning it." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799 (5th Cir. 2012) (cleaned up). Jurisdictional objections of this type are thus not subject to forfeiture or waiver.[5]

Each Employer misses the point by suggesting that because their lawsuits themselves are constitutional challenges and not labor disputes, these cases do not come under the NLGA's ambit. SpaceX Br. 56-57; Energy Transfer Br. 46-47; FindHelp Br. 12-13. That is not the standard. Under the law of this Circuit, the fact that issues and disputants in a labor dispute are not the same as those in a lawsuit "cannot control." *See* NLRB Br. 22 (quoting *United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979)). It cannot be plausibly maintained that the charges brought by employees (including former

---

[5] Notably, the NLGA independently provides that appeals "shall be heard" expeditiously "[w]henever any court of the United States shall issue or deny any temporary injunction in a case involving or growing out of a labor dispute[.]" 29 U.S.C. § 110. It omits any requirement of exhaustion or party presentation below for parties opposing an injunction, while the NLGA imposes comprehensive exhaustion requirements for parties *seeking* such an injunction, 29 U.S.C. §§ 108, 109.

4

employees)[6] or their representatives before the NLRB do not encompass labor disputes.[7] And as the Sixth Circuit has explained, the employment relationship is the "matrix of the controversy," and the NLGA is properly applied, where the claim "would not exist but for the underlying [labor dispute]." *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 679-80 (6th Cir. 2002).[8]

---

[6] With respect to terminated employees, contrary to SpaceX [Br. 59] a labor dispute exists "regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c); *cf.* 29 U.S.C. § 152(3) ("employee" includes terminated employees in connection with a "labor dispute").

[7] FindHelp's argument [Br. 14 n.4] that congressional inaction in an entirely different context should be read to preclude the application of the NLGA does not help. "The actual measures taken by Congress provide a superior insight regarding its intent." *United States v. Est. of Romani*, 523 U.S. 517, 534 (1998). In enacting the NLRA, Congress addressed precisely how to accommodate the NLGA and created a tailored limitation which did not admit of injunctions against the NLRB. 29 U.S.C. § 160(h); *see* NLRB Br. 20.

[8] *See VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-CV-02577 (TNM), 2024 WL 4817175, at *5 (D.D.C. Nov. 17, 2024) ("The [NLGA] has great breadth. It precludes jurisdiction when a suit merely 'grow[s] out of a labor dispute.' [The Plaintiff's] beef with the Board is due to its conflict with the Union.") (cleaned up); *cf. AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 760 (7th Cir. 2003) (Easterbrook, J.) ("That the arbitration is not *itself* a 'labor dispute' does not make this suit less one 'growing out of' a labor dispute.").

The protection of the NLGA is moreover not limited to strikes, picketing, and union activities. *Contra, e.g,* FindHelp Br. 14. While the statute does provide a list of certain acts not subject to injunctions or restraining orders, 29 U.S.C. § 104, that list is merely illustrative of the worst abuses of the injunctive power against worker action prior to the NLGA's enactment. *See generally* Felix Frankfurter & Nathan Green, The Labor Injunction (1930). "It does not follow . . . that a district court has jurisdiction to issue a restraining order or injunction . . . whenever the act sought to be enjoined is not listed in [Section 104]." *In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*, 723 F.2d 70, 80 (D.C. Cir. 1983); *see Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1344 (9th Cir. 1990) ("Congress did not stop with section [104]"); *accord Dist. 29, United Mine Workers v. New Beckley Min. Corp.*, 895 F.2d 942, 947 (4th Cir. 1990).[9]

---

[9] FindHelp's cases [Br. 14] do not hold otherwise. *See Aeronautical Indus. Dist. Lodge 91, IAM v. United Techs. Corp., Pratt & Whitney*, 230 F.3d 569, 580, 582 (2d Cir. 2000) (granting injunction under "*Boys Markets* exception" to order arbitration as consistent with policy of Section 102 and not violative of the "letter or spirit" of Section 104); *accord Retail Clerks Union Loc. 122 v. Alfred M. Lewis, Inc.*, 327 F.2d

Employers' attempts [FindHelp Br. 13; SpaceX Br. 60-61; Energy Transfer Br. 46] to selectively parse the statutory definition of "involve and grow out of labor dispute" by excising the relevant language and focusing on impertinent disjunctive clauses accordingly fail. Omitting those irrelevant clauses, the key language reads:

> A case shall be held to involve or to grow out of a labor dispute when the case involves . . . employees of the same employer; or who are members of the same [union] whether such dispute is . . . between one or more employers . . . and one or more employees or [unions.]"

29 U.S.C. § 113(a). Whether or not they are parties to the litigation, each of the cases in these appeals "involves" (and would not exist but for) a dispute between employees or their union and an employer.[10] These are accordingly not cases in which "the employer-employee

---

442, 446 (9th Cir. 1964); *and Scott v. Moore*, 680 F.2d 979, 986 (5th Cir. 1982), *rev'd sub nom. United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825 (1983), simply held that the NLGA did not prevent courts from enjoining "violence, breaches of the peace, or criminal acts" because they were connected to a labor dispute.

[10] *In re Continental Airlines, Inc.*, 484 F.3d 173, 185 (3d Cir. 2007), cited by Energy Transfer, Br. 48, involved a group of airline pilots attempting to obtain money damages pursuant to a defunct collective-bargaining agreement, which no longer governed any terms and conditions of employment, to circumvent a bankruptcy discharge. Here, by contrast, employees have live disputes over rights emanating from their employment.

relationship has no bearing." *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147 (1942); *contra* Energy Transfer Br. 48. Nor is it appropriate to consider the presence or absence of a union, the particular employee activities engaged in, or the merits of the underlying NLRB charges, because the NLGA "does not concern itself with the background or the motives of the dispute." *New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 561 (1938).

The fact that the instant litigation also involves the government and disputes of a constitutional character also makes no difference. The NLGA first, in Section 101, instructs that no court of the United States has jurisdiction to enter an injunction contrary to the public policy set forth in Section 102. 29 U.S.C. § 101. Section 102, in turn, finds that employees' "freedom of labor" depends upon having the right to:

> full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and [to] be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

8

29 U.S.C. § 102.[11] Employee efforts to vindicate these rights, presenting

a "controversy concerning terms or conditions of employment," 29

U.S.C. § 113(c), are the genesis of each of the cases on appeal.

SpaceX's reliance on *Wooten v. Ohler*, 303 F.2d 759 (5th Cir. 1962),

is thus unavailing. *See* SpaceX Br. 56-57. There, a civil-rights injunction

was sought under 42 U.S.C. § 1983 to protect, rather than interfere

with, collective employee action that had an arguably constitutional

dimension and was being subject to interference by state peace officers.

*See Wooten*, 303 F.2d at 764 (noting "this is the reverse of the usual

case. . . Here it is a question of permissible court action to secure—not

prohibit—the opportunity of picketing"). And notably, peaceful

picketing is among the acts explicitly protected under the NLGA. 29

---

[11] Employers' efforts to handwave the NLGA as unsuited to deal with the problems presented in these cases [*e.g.*, SpaceX Br. 61] contradict both the text and purpose of the law. *See Milk Wagon Drivers*, 311 U.S. at 103 ("For us to hold, in the face of this legislation, that the federal courts have jurisdiction to grant injunctions in cases growing out of labor disputes, merely because alleged violations of the Sherman Act are involved, would run counter to the plain mandate of the [NLGA] . . . ."). As Senator Norris stated in support of the legislation: "when . . . public policy is declared, it becomes the duty of all the courts to give effect to such policy and carry it out in the enforcement of *any law* where such public policy has application." 75 Cong. Rec. 4502 (1932) (emphasis added).

U.S.C. § 104. In other words, the injunction in *Wooten* was in aid of the very type of employee action the policies of the NLGA, 29 U.S.C. § 102, were designed to protect. Not so here, where Employers want this Court to affirm injunctions that indefinitely preclude employees from obtaining redress for alleged unfair labor practices.

*Wooten* also has no application here because that case was brought under a statutory cause of action explicitly providing for equitable remedies: 42 U.S.C. § 1983. "[E]xceptions to the literal strictures of [the NLGA] are [to accommodate it] either to a duty imposed by another statute, or to the strong federal policy favoring labor arbitration." *Reuter v. Skipper*, 4 F.3d 716, 720 (9th Cir. 1993) (finding, in government employee plaintiff's suit, that Section 1983 "falls into the limited category of statutes excepted from the anti-injunction provisions of [the NLGA]" and that the contemplated injunction did not "interfere with the policy aims of Norris-LaGuardia"). No other statutory considerations are at play in these appeals because the injunctions sought here are "a judge-made remedy" which is

"subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).[12]

Even under Section 1983, where constitutional rights and government parties are involved, injunctions that limit, rather than protect, employee rights are impermissible under the NLGA. The Sixth Circuit's explained this in the *Armco* case. 280 F.3d at 669. There, an employer (Armco) sued a union for breach of a collective-bargaining agreement, later adding local government officials alleging a conspiracy to violate its constitutional rights. *Id.* Armco sought entry of a consent decree negotiated with the government defendants enjoining the alleged conspiracy. *Id.* A Section 1983 injunction is permissible where it is "consistent with the purpose of the [NLGA]: to protect workers in exercising their organizing powers." 280 F.3d at 681 (citing *Reuter*, 4 F.3d at 720). But in *Armco*, the consent decree was impermissible because it restricted the union's power to effect change in the underlying labor dispute. *Id.*

---

[12] *See* NLRB Br. 20. *Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 923 (4th Cir. 1963), cited by FindHelp, Br. 15, involved injunctive relief expressly provided for by another labor statute, 29 U.S.C. § 412.

So too here, the requested injunctions would shut off the path for employees and their representatives to obtain NLRA relief as surely as an injunction against them filing NLRB charges would do. These suits are the modern analogue of the "comprehensive documents enjoining workers from doing legal as well as illegal acts" that FindHelp concedes [Br. 9] the NLGA abolished; the Employers all seek a holding that would deprive employees of any forum to adjudicate claims that those Employers have violated their labor rights. *See Bishop*, 598 F.2d at 414 (analyzing practical effect on collective employee power of injunction enlisting U.S. Marshal to aid recovery of goods from struck plant in replevin action where striking union was not a party). The decree sought here is not just "related to the abuses that motivated the [NLGA]" [FindHelp Br. 14]; it *is* those abuses, fully resurrected.[13]

---

[13] When employees seek relief from administrative forums like the NLRB, that is "concerted activit[y] for the purpose of . . . mutual aid or protection" within the meaning of both Section 102 of the NLGA and Section 7 of the NLRA, which contain identical language. 29 U.S.C. §§ 102, 157; *see D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 363 (5th Cir. 2013) (filing NLRB charges protected under 29 U.S.C. § 157); *see also* NLRB Br. 24 n.13 (collecting cases finding injunctions against labor arbitration are barred by the NLGA).

Finally, Energy Transfer [Br. 49] and FindHelp [Br. 17] circularly argue that they should be excused from the jurisdictional requirement of complying with labor law obligations and making every reasonable effort to resolve disputes, 29 U.S.C. § 108, because they contend those labor laws are invalid. First, although it includes them, "Section [108 of the NLGA] is not limited to railway labor disputes." *Bhd. of R.R. Trainmen, Enter. Lodge, No. 27 v. Toledo, P.&W.R.R.*, 321 U.S. 50, 58 (1944). And this "clean hands" requirement was intended to apply even if the conduct sought to be enjoined was unlawful or subject to an exception to the NLGA's anti-injunction policy. *See id.* Simply put, it is a broad exhaustion provision requiring plaintiffs to participate in proceedings, even ones they view as improper, to obtain injunctive relief. It does not prevent any party from "standing upon his legal rights" to, for example, challenge a particular procedure. *See Carter v. Herrin Motor Freight Lines*, 131 F.2d 557, 560 (5th Cir. 1942).[14] It

---

[14] There is no record evidence supporting FindHelp's claim that it made every reasonable effort to resolve the case; the fact that the *NLRB* unsuccessfully tried to settle the matter, FindHelp Br. 17 n.6, is not evidence of FindHelp's efforts.

merely limits those parties to non-injunctive remedies if they cannot or will not comply with applicable requirements. *Id.*[15]

In any event, compliance with Section 108 is "a part of plaintiff's case, which must, therefore, be pleaded and affirmatively found[.]" *Carter*, 131 F.2d at 560. No Employer here has met this, or any other requirement of the NLGA.

## II.    The district courts erred in finding that Employers need not show causal harm and/or that causal harm was readily satisfied.

In *Collins v. Yellen*, the Supreme Court made it clear that an unlawful removal restriction does not deprive properly appointed officers of "the authority to carry out the functions of the[ir] office[s]." 594 U.S. 220, 258 (2021). Consequently, for a plaintiff to be entitled to any relief based on a removal restriction claim, a challenger must allege that such protections "cause[d it] harm." *Id.* at 259-60. Employers in

---

[15] There is accordingly no "serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) (cleaned up). *Contra* SpaceX Br. 63.

this case are incorrect to argue that they need not meet this requirement, and moreover, they cannot do so.

As discussed at NLRB Br. 27-38, Supreme Court and Fifth Circuit precedent hold that a plaintiff seeking relief based on an allegedly invalid removal restriction must show that the provision actually prejudiced the President's control of the administrative proceeding. *Collins,* 594 U.S. at 259-60; *Collins v. Dep't of Treasury*, 83 F.4th 970, 982 (5th Cir. 2023); *Cmty. Fin. Servs. Ass'n of Am. v. CFPB ("CFSA")*, 51 F.4th 616, 631-33 (5th Cir. 2022). Applying the Supreme Court's holding in *Collins*, this Court held that there are "three requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *CFSA*, 51 F.4th at 632.[16]

Employers offer no evidence to show that they have suffered any such harm. Instead, Employers and several amici argue that Employers

---

[16]  *See also* NLRB Br. 29 n.16 (citing agreement from the Tenth, Eighth, Third, Fourth, Second, and Sixth Circuits). Notably, the Supreme Court

need not meet this requirement because the relief they seek is against a future proceeding rather than an action already taken by the agency. *See* SpaceX Br. 19-23; Energy Transfer Br. 35-37; FindHelp Br. 35-37. This Court in *CFSA*, however, explicitly stated that the *Collins* causal-harm requirement "did not rest on a distinction between prospective and retrospective relief." *CFSA*, 51 F.4th at 631; *see also* NLRB Br. 32-33 (discussing support from other circuits).

To circumvent this, Employers and two supporting amici argue that the causal-harm requirement established in *Collins* and *CFSA* is inapplicable based on *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd sub nom. Axon Enter. Inc. v. FTC*, 598 U.S. 175 (2023). *See* SpaceX Br. 20-25; Energy Transfer Br. 37-38; FindHelp Br. 39-40; Chamber Br. 20; Tenn. Br. 7-8, 11-14. Employers claim that *Cochran* establishes plaintiffs need not show causal harm when they seek to avoid an administrative adjudication before it happens. *Id.* It says nothing of the sort. *Cochran* was an appeal of a district court's dismissal

_____

recently denied two petitions for certiorari on this issue. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435 (Jan. 13, 2025); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599 (3d Cir. 2024), *cert. denied*, No. 24-185, 2024 WL 5112295 (Dec. 16, 2024).

for lack of subject-matter jurisdiction of a suit to enjoin an SEC enforcement proceeding. *Cochran,* 20 F.4th at 198. As such, the Court stated that "the *sole issue* on appeal is whether the district court had *subject-matter jurisdiction* over Cochran's claims." *Id.* at 199 (emphasis added). *Cochran* did not create a right to relief or explain the required elements of a removal-restrictions challenge. Rather, it simply recognized a plaintiff's right to bring a pre-enforcement collateral challenge to removal protections. *Id.* at 212.  In other words, a plaintiff can get into court on such a claim and does not have to challenge removal restrictions through the administrative proceeding itself. But this says nothing about what the plaintiff needs to show to actually win the case.

Employers and amici give considerable weight to footnote sixteen of the *Cochran* decision to support their argument that causal harm need not be shown to enjoin an allegedly unlawful agency proceeding because being subject to the proceeding itself is sufficient injury. SpaceX Br. 20-22, 25; Energy Transfer Br. 37; FindHelp Br. 39-40; Chamber Br. 19-20; Tenn. Br. 7. The point of that footnote, however, was that "Cochran's injury [was] sufficiently serious to *justify pre-*

17

*enforcement review in federal court.*" *Cochran*, 20 F.4th at 210 n.16 (emphasis added). It did not address what plaintiffs need to show to prove causation; *CFSA* and *Collins v. Department of Treasury*, on the other hand, do.

Employers and their supporting amici further argue that the Supreme Court's decision in *Axon,* which upheld *Cochran,* dispenses with the causal-harm requirement established in *Collins* and *CFSA.* SpaceX Br. 22; Energy Transfer Br. 37-38; FindHelp Br. 37-39; Tenn. Br. 8-9, 11-14. They are incorrect. As this Court has noted, *Axon* is "a case about the original jurisdiction of federal courts under 28 U.S.C. § 1331." *FTC v. U.S. Anesthesia Partners, Inc.*, No. 24-20270, 2024 WL 5003580, at *3 (5th Cir. Aug. 15, 2024).[17]

*Axon*, like *Cochran*, addressed a single narrow issue: whether statutory provisions channeling judicial review of administrative action to the courts of appeals implicitly divest district courts of jurisdiction

---

[17] FindHelp argues that *Anesthesia Partners* is inapplicable because the issues presented in that case are different than those presented in *Axon* and here. FindHelp Br. 37 n.7. But that case's characterization of *Axon* as a decision solely about "the original jurisdiction of federal courts under 28 U.S.C. § 1331" is accurate. *U.S. Anesthesia Partners, Inc.*, 2024 WL 5003580, at *3.

over certain structural claims. 598 U.S. at 191. *Axon* says nothing about causal harm, let alone whether a plaintiff can obtain relief without it. "Because *Axon* does not overrule *Collins*," or even address it, it is of no help to Employers here. *See YAPP USA Auto. Sys. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024). As discussed in the Board's opening brief [Br. 37-38], Employers' position would require finding that *Axon* implicitly overruled *Collins,* contravening Supreme Court doctrine stating that where there is precedent directly on point, even if it "appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

SpaceX and FindHelp also argue that *Collins* cannot be applied to require a showing of causal harm for removal protections because in that case the Supreme Court invalidated the removal protections of the FHFA Director without considering causal harm. SpaceX Br. 26; FindHelp Br. 40. Employers misunderstand what occurred in that case. In *Collins*, the Supreme Court chose not to reach the issue of what, if any, relief would be appropriate, and accordingly did not address causal harm. *Collins*, 594 U.S. at 257-61. No judgment—declaratory,

19

injunctive, or otherwise—was rendered on the validity of removal protections. Instead, the Court remanded the issue of relief, and the consideration of causal harm, to this Court, which in turn remanded it to the district court. *Id.; Collins v. Yellen*, 27 F.4th 1068 (5th Cir. 2022).

On remand, the district court dismissed the plaintiffs' removal protection claims with prejudice for failure to plead causal harm. *Collins v. Lew*, 642 F. Supp. 3d 577, 585 (S.D. Tex. 2022). On appeal, this Court affirmed and made it explicit that *Collins* required a showing of causal harm to obtain relief, stating that "after *Collins*, a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Collins v. Dep't of Treasury*, 83 F.4th at 982 (quoting *CFSA*, 51 F.4th at 632). Accordingly, the final judgment in *Collins* dismissed the challengers' amended complaint under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 975.

Energy Transfer seems to argue that *Collins* is inapplicable because the relief it has obtained "neither seek[s] to prospectively invalidate nor retrospectively recover for past 'actions taken in the

agency proceedings.'" Energy Transfer Br. 37 (quoting *Axon*, 598 U.S. at 192). But the relief all Employers have obtained here is patently prospective in nature—it prevents agency proceedings from happening in the future. Moreover, while Energy Transfer and SpaceX carefully avoid describing their relief as prospective, apparently to avoid running headlong into this Court's holding in *CFSA*, FindHelp readily admits that the same relief is prospective, as do amici U.S. Chamber of Commerce and the State of Tennessee *et al. See* FindHelp Br. 41 (stating "FindHelp seeks prospective relief."); *see also* Chamber Br. 20; Tenn. Br. 6-11.

Additionally, SpaceX argues that the Supreme Court's decisions in *Seila Law, Free Enterprise Fund*, and this Court's decision in *Jarkesy v. SEC*, 34 F.4th 446, 449 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024), show that this Court need not consider causal harm because the courts in those cases invalidated removal restrictions without considering causal harm. *See* SpaceX Br. 19, 26. However, *Seila Law v. CFPB*, 591 U.S. 197 (2020) and *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), were both decided prior to the Supreme Court's most recent guidance in *Collins* (2021). And they are by no means

21

substantively inconsistent with *Collins*; the Supreme Court in both *Seila Law* and *Free Enterprise Fund* severed the statutes in question to remove the unlawful removal restrictions and did not issue injunctions. *Seila Law*, 591 U.S. at 234-35; *Free Enterprise Fund*, 561 U.S. at 513-14. Indeed, the Court in *Free Enterprise Fund* specifically found that "petitioners [were] not entitled to broad injunctive relief." *Free Enterprise Fund*, 561 U.S. at 513. Those cases don't just fail to support Employers' position here; they affirmatively reject it.

*Jarkesy* is equally unhelpful to Employers on this issue. There, petitioners were challenging a final agency action of the SEC—an ALJ finding that petitioners were liable for securities fraud—not seeking a pre-enforcement injunction. *Jarkesy*, 34 F.4th at 449. Further, neither this Court nor the Supreme Court in *Jarkesy* addressed what relief would be appropriate when removal restrictions are found unconstitutional. *Id.* at 465-66. *Jarkesy* certainly did not establish a right to injunctive relief for plaintiffs in Employers' position.

SpaceX also argues that its right to relief in pre-enforcement cases is based on the idea that "the potential for removal influences how ALJs carry out their duties." SpaceX Br. 20 (citing *Lucia v. SEC*, 585 U.S.

237, 260 (2018) (Breyer, J., concurring in the judgment in part and dissenting in part)). This argument is unpersuasive. First, the only case law that SpaceX cites is a partial concurrence in *Lucia,* a case that dealt with ALJ appointments—not removal protections. 585 U.S. at 241. Second, SpaceX has not provided actual evidence that officials act differently when not protected from removal, much less that the officials at issue here would act any differently if they were more easily removable. Indeed, in *Calcutt v. FDIC*, which this Court followed in *CFSA*, the Sixth Circuit rejected a similar argument that, based on *Collins*, the plaintiff need only show that the agency actor *might* have acted differently if not subject to removal protections. *See* 37 F.4th 293, 317 (6th Cir. 2022), ("The *Collins* Court was not deterred from its holding by the very possibility that harm might occur; rather, it indicated that a more concrete showing was needed.") *rev'd per curiam on other grounds*, 598 U.S. 623 (2023).

Lastly, SpaceX and FindHelp argue that requiring a showing of causal harm is generally unfair because it would be a difficult standard for plaintiffs to meet. SpaceX Br. 20-21; FindHelp Br. 40-41. That is a feature, not a bug, as the saying goes. The Supreme Court in *Collins* set

a high standard for showing causal harm by design because invalid removal protections, unlike invalid appointments, "generally do[] not automatically taint Government action by an official unlawfully insulated." *Id.* at 267 (Thomas, J., concurring). Requiring a showing of causal harm—even though it may be difficult—thus avoids "put[ting] the plaintiffs 'in a better position' than if no constitutional violation had occurred." *Id.* at 274 (Kagan, J., concurring).

No Employer attempts to satisfy even a single one of the required elements of *CFSA* (see above, p. 15). Because they can neither satisfy that case, nor explain why it does not control, they are not likely to succeed on the merits of their challenge to removal protections.

## III. NLRB ALJs are constitutionally shielded from removal without cause.

This Court's decision in *Jarkesy* does not require a finding that NLRB ALJs' removal protections violate the Constitution. The powers of NLRB ALJs are more limited in scope than those of the SEC ALJs discussed in *Jarkesy*. SEC ALJs may sanction conduct that occurred "at or in connection with any conference, deposition or hearing." 17 C.F.R. § 201.180(a)(1). NLRB ALJs do not have general power to "punish contemptuous conduct," *Jarkesy*, 34 F.4th at 464. They may only

exclude persons engaged in misconduct "at any hearing before an ALJ." 29 C.F.R. § 102.177(b); *see also id.* § 102.35(a)(6).[18] And NLRB ALJ decisions, when issued, are nonfinal "proposed report[s]" and only become final if no exceptions are filed with the Board, i.e., by party consent. 29 U.S.C. § 160(c); *see also* discussion in NLRB Br. 38-40. An order that has any effect only "if" some other independent event occurs in the future is not final. *Contra* SpaceX Br. 18.

To the extent that Employers claim [SpaceX Br. at 16-17; Energy Transfer Br. 25; FindHelp Br. 22-23] that the Board's decision in *WestRock Services* holds that there is no difference between NLRB ALJs and SEC ALJs, they are incorrect. 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018). *WestRock Services* holds only that NLRB ALJs, like the SEC ALJs addressed in *Lucia*, are inferior officers that must be

---

[18] Indeed, amicus CDW essentially concedes this point, stating "[g]enerally speaking, the ALJ has no power to hold a party in contempt." Br. 19 (citing NLRB Division of Judges, Bench Book: An NLRB Trial Manual (April 2023) § 6-600). SpaceX, by contrast, claims that the power to exclude from a hearing is "not meaningfully different" from the "power to sanction" [SpaceX Br. 17]; by that logic, a homeowner is "not meaningfully different" from a police officer because the homeowner has the power to exclude a person from their home.

appointed in accordance with the Appointments Clause, not that their

powers are coextensive. *Id.*

Lastly, if this Court does find that *Jarkesy* applies here, the Board

again preserves the argument that *Jarkesy* was a flawed decision that

should be overruled or substantially limited.

## IV. NLRB Members are constitutionally shielded from removal without cause.

Employers claim that *Seila Law*, 591 U.S. 197, in a radical break

with settled precedent and practice, effectively overruled *Humphrey's*

*Executor v. United States*, 295 U.S. 602 (1935). SpaceX Br. 28-30;

Energy Transfer Br. 28-30; FindHelp Br. 25-27. But as the NLRB has

explained [Br. 41-43], *Seila Law* expressly disavowed that it was

disturbing any of the Court's prior precedents "allowing certain

limitations on the President's removal power." 591 U.S. at 204. The

NLRB and this Court have addressed this argument. *Consumers' Rsch.*

*v. CPSC*, 91 F.4th 342 (5th Cir. 2024), *cert. denied*, No. 23-1323, 2024

WL 4529808 (Oct. 21, 2024); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047

(5th Cir. 2023). Little more need be added. This Court has no authority

to deem Supreme Court precedent implicitly overruled. *Agostini,* 521 U.S. at 237.[19]

Employers also try to limit the reasoning of *Humphrey's Executor* to the Federal Trade Commission as it supposedly existed in 1935. SpaceX Br. 28-29, 30 n.7; Energy Transfer Br. 28, 34; FindHelp Br. 25-27. This attempt ignores both this Court's decisions and the text of *Humphrey's Executor. See Illumina,* 88 F.4th at 1047 (upholding FTC commissioners' removal protections as constitutional even though "the FTC's powers may have changed since *Humphrey's Executor* was decided"). To begin, this Court has said that permissible removal protections for principal officers cannot be limited to a single agency structure, nor are they invocable only by a single set of "magic words" identical to those of the FTC Act. *Consumers' Rsch.,* 91 F.4th at 352. Instead, these protections may be legislated to ensure the independence of a whole panoply of traditional agencies and structures; the Take Care clause is broad enough to accommodate Congress's desire to protect

---

[19] There is no merit to SpaceX's claim [Br. 36] that the NLRB "forfeited" reliance on key aspects of *Consumers' Research*'s holding by failing to summarize them with sufficient particularity in its brief to the district court.

those serving on traditional multimember agencies from at-will removal. NLRB Br. 47-48.

Furthermore, *Humphrey's Executor* was never limited to a single agency at a single time. Indeed, the Supreme Court recognized in 1935 that its decision must necessarily apply to all such agencies, including the "legislative" Court of Claims and Interstate Commerce Commission, *Humphrey's Ex'r*, 295 U.S. at 629—bodies with significantly different structures and powers than those belonging to the 1935 FTC. *See* Interstate Commerce Act, 49 U.S.C. §§ 11, 15-16 (1934) (repealed 1995) (granting removal protections to commissioners with power to set railroad rates, order payment of damages, and seek court enforcement of orders).[20] Unless *Humphrey's Executor* has been overruled—again, it has not—its central and binding holding cannot be limited to a single agency at a single time, but must instead be applied to "any traditional

---

[20] *Amicus* Chamber of Commerce suggests that it was somehow "far from clear" whether the Interstate Commerce Commission enjoyed removal protections at the time Congress created it in 1887. Chamber Br. 17. However, at the time of *Humphrey's Executor*, both the Supreme Court and the Executive Branch believed that issue to be "clear," with the Executive Branch conceding the two agencies to be identically situated at oral argument. 295 U.S. at 629.

independent agency headed by a multimember board," including the

NLRB. *Consumers' Research*, 91 F.4th at 352 (cleaned up).[21]

In that vein, the Court did not limit its decision to agencies using

a certain set of statutory magic words for their removal protections.

NLRB Br. 44-45, 47. True, the FTC's removal protections expressly

authorize removal for "inefficiency," a word not found in the NLRA. But

as the NLRB already explained, this slight distinction makes no

difference. NLRB Br. 47-48. Neither of the two Employers to contend

that Congress's omission of "inefficiency" as a grounds for removal

somehow renders the NLRB unconstitutional [FindHelp Br. 32-33;

SpaceX Br. 34-36] even attempts to explain *why* that omission matters;

indeed, as they construe the term, it is surplusage, since "inefficiency"

in the colloquial sense is a kind of "neglect of duty." The NLRB's

reading of that term as reflecting a specific attempt to preclude

patronage hires [NLRB Br. 47] is historically grounded and both avoids

---

[21] SpaceX's attempts [Br. 30-32] to conflate the Board's narrow role in authorizing Section 10(j) injunctions with the politically accountable General Counsel's pervasive control over every aspect of unfair-labor-practice case prosecution fail for the reasons already set forth at NLRB Br. 48 n.10.

the surplusage problem and rebuts Employers' implication that this Court should overrule *Consumers' Research*, 91 F.4th at 346.

Beyond these arguments already addressed by the NLRB, Employers advance arguments [Energy Transfer Br. 31-32; FindHelp Br. 28-32] that NLRB members cannot enjoy removal protections because the NLRB is neither independent nor expert. Their arguments essentially claim that, because the NLRB sometimes issues decisions changing some points of law after changes in partisan composition, the NLRB is too accountable to the President. This ironically undermines Employers' ultimate argument that the NLRB's removal protections are unconstitutional because they prevent accountability to the President.

"Congress created the NLRB as an independent agency," *Exela Enter. Sols. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022); the NLRB's independent status hardly merits further argument. Regarding the Board's expertise, it is true that later amendments to the NLRA removed the Agency's ability to employ economists. 29 U.S.C. § 154(a). This does not mean, however, that the NLRB lacks expertise in the separate field of labor relations. Indeed, the NLRB "must draw on enlightenment gained from experience" when "fashioning remedies to

30

undo the effects of violations of the Act"—a power which the Supreme Court has recognized "is a broad discretionary one . . . for the Board to wield, not for the courts." *NLRB v. Seven-Up Bottling Co. of Mia.*, 344 U.S. 344, 346 (1953); *accord NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266 (1975) (recognizing the Board's "special competence" in applying the generalities of the Act to "the complexities of industrial life") (internal citations omitted); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242 (1959). This special and recognized "enlightenment gained from experience" in labor relations is not something that courts have greater sensitivity to,[22] nor something that Congress has legislated away. Instead, it is part of the NLRB's unique expertise in fulfilling its

---

[22] Employers incorrectly claim [Energy Transfer Br. 30; FindHelp Br. 31-32] that, after *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the Board cannot claim special expertise. Long before *Chevron*, however, settled Supreme Court precedent, left untouched by *Loper*, recognized that the development of national labor policy is "a difficult and delicate responsibility" that Congress "committed primarily to the National Labor Relations Board." *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236 (1963) (quoting *NLRB v. Truck Drivers Loc. Union No. 449*, 353 U.S. 87, 96 (1957)). Further, *Loper* explicitly recognized that the Administrative Procedure Act "mandate[s] that judicial review of agency policymaking and factfinding be deferential," 144 S. Ct. at 2261, and did not disturb other standards of review applicable to the Board, including the discretion that Congress granted to the Board in determining remedies, *Fibreboard Paper Prods. v. NLRB*, 379 U.S. 203, 215-16 (1964).

congressional mandate of "developing and applying national labor policy." *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786, (1990) (compiling cases).

"Courts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies." *Collins*, 594 U.S. 224. They make decisions in particular cases based on factual records. It would be wholly inconsistent with the separation of powers for courts to veto Congress's institutional design decisions based on nothing more than broad characterizations about the "expertise," or lack thereof, of particular agencies. Essentially for this reason, the Supreme Court moved away from "rigid categories," and toward a functional analysis of whether particular removal restrictions interfere with the President's ability to faithfully execute the law, in *Morrison v. Olson*, 487 U.S. 654, 689 (1978).

Employers cannot twist settled definitions and cast speculation to make a paradigmatic independent expert agency into something more convenient for their argument. Faced with 90 years of independent, expert existence, Employers ask this Court to pretend that none of that history exists. This Court should decline.

## V.   No Employer has shown irreparable harm.

Employers have made no showing of irreparable harm. Instead, they have invited this Court to overlook key distinctions in binding caselaw and decide that any allegation of constitutional injury whatsoever is *per se* irreparable injury. As already described by the NLRB, this Court should trust its prior decisions finding *per se* irreparable injury only in specific circumstances not present here. NLRB Br. 49-50.

Employers rest their claims of irreparable harm on *Axon*, breezily asserting that "harm is harm." FindHelp Br. 49. However, as already explained, *Axon* dealt with jurisdiction, not remedies—and a preliminary injunction is an extraordinary remedy. NLRB Br. 51-54. A court may hear a case without issuing any remedy, much less an extraordinary one; an alleged harm may allow for jurisdiction, but not entitle a petitioner to relief.[23]  Simply put, the fact that a party has

---

[23] Although the analogy is not perfect, awards of nominal damages demonstrate that the mere finding of a violation of a party's rights— even a constitutional violation, in some instances—does not entitle that party to any particular remedy; rather, the remedy must always be tailored to the facts of the specific case. *Cf., e.g., Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) ("[N]ominal damages historically could provide prospective relief.").

suffered the loss of a peppercorn, *Whitney v. Stearns,* 16 Me. 394, 397

(Mich. 1839), or experienced an "identifiable trifle" of injury, *United*

*States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973), may well establish

standing, but it is not sufficient to establish irreparable harm, and so

Employers' citation to cases about the injury-in-fact standard are

entirely off point.[24]

Once their erroneous citations of *Axon* are swept aside, Employers

have not shown they would be irreparably harmed without an

injunction. Alleged structural constitutional infirmities are not, on their

own, an irreparable harm. NLRB Br. 49-50. Nor have Employers shown

any actual, concrete harm to their financial or reputational interests

beyond the costs and trouble of litigation. SpaceX Br. 44; FindHelp Br.

---

[24] By the same token, SpaceX's bizarre suggestion [Br. 42-43] that a preliminary injunction might be available even in cases where a permanent injunction is not lacks support in either case law or common sense. It would encourage parties obtaining preliminary injunctions to engage in intentional footdragging to prevent those injunctions from being inevitably vacated at final judgment. The cases it cites—where due to bankruptcy or compelled shutdown, mootness was threatened— bear no relationship to this one. *See* NLRB Br. 57 n.27.

4-5. Any speculation about the effects of publicity of ongoing NLRB

cases is just that—speculation—and not proof of irreparable injury.[25]

In any event, and contrary to SpaceX's implication [SpaceX Br. 44-

45], burdens related to litigation do not inflict irreparable harm. *Axon*

did not find such burdens sufficient to justify immediate court

intervention. 598 U.S. at 192. And the Supreme Court has repeatedly

held that neither the "expense and annoyance of litigation" nor

"litigation expense, even substantial and unrecoupable cost, constitute

irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244

(1980) (cleaned up). The Fifth Circuit has long recognized such

distractions and costs are part of the "social burden of living under

government." *Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th

Cir. 1936) (that proceedings may "stir up some feeling among employees

and cause some inconvenience by taking witnesses from their work"

---

[25] SpaceX's citation to an opinion concurring in a ruling issued by a motions panel in *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023), fails partly because that case is distinguishable (the plaintiff there would have been put out of business while litigation was ongoing, and the case alleged improper appointment, not mere excessive tenure), but mostly because its reasoning was squarely rejected by the merits panel's decision in that case, 122 F.4th 1314, 1334 (D.C. Cir. 2024).

was not irreparable harm). SpaceX's citation of *Cochran*, 20 F.4th at 209-10, avails nothing; the point this Court made there is that the expenses and annoyances of litigation are *not* relevant here. Nor is reputational harm occasioned by a proceeding irreparable. *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974).

Employers have added few arguments for this Court to find that they will be irreparably harmed without a preliminary injunction that were not already addressed by the NLRB.[26] Those that have been added are too speculative to support the extraordinary remedy requested. Employers also cannot show "inadequacy of legal remedies[,]" *Sampson,* 415 U.S. at 88, because severance is the sole remedy the Supreme Court has employed for similar structural claims. *Collins*, 594 U.S. at 257-60, *Seila Law*, 591 U.S. at 232-38, and *Free Enterprise Fund*, 561 U.S. at

---

[26] Employers note [FindHelp Br. 48; SpaceX Br. 41] that *Delaware State Sportsmen's Association, Inc. v. Delaware Department of Safety & Homeland Security*, 108 F.4th 194, 205 (3d Cir. 2024), allows for issuing a preliminary injunction to preserve the status quo during litigation where significant harm cannot be cured after final judgment. That's hornbook law, but it does not show that mere participation in NLRB proceedings *inflicts* an incurable harm. The argument begs the question.

508-10. The NLRA, moreover has an express severability clause, 29

U.S.C. § 166.[27]

Employers claim that it is not clear what provision should be

severed. SpaceX Br. 47-48. They also claim the NLRB has forfeited any

chance to argue which provisions to sever. *Id*. at 49-51. But it is

Employers, as the proponents of injunctions, who have the burden to

show inadequacy of legal remedies. In any event, remedial issues

surrounding severance are properly decided at final judgment. NLRB

Br. 55.

## VI. The balance of equities and public interest weigh in the Board's favor.

Enforcing duly enacted laws matters, and the injunctions below

interfere with public policy articulated in two longstanding statutes—

the NLGA and the NLRA. *See generally* NLRB Br. 59-66. First,

Employers have obtained injunctions in circumvention of the NLGA,

which was enacted by Congress to "protect [workers] freedom of labor."

29 U.S.C. § 102. "[I]t is the duty of the court to follow such policy and to

decide litigated questions related thereto in accordance with the policy

---

[27] The NLRB's opening brief [Br. 54-59], addresses the severance
arguments raised in Employers' answering briefs.

thus declared by Congress." 75 Cong. Rec. 4502 (1932) (remarks of Senator Norris).

Second, by obtaining injunctions, Employers undercut the public policy that the NLRA was created to protect. And the NLRA is not just any law; it was enacted in 1935 to help pull the country out of the Great Depression by diminishing the harmful effects of labor unrest. To achieve that end, the NLRA empowers the NLRB alone to protect the "fundamental right" of employees to engage in union-related or other concerted activity "without restraint or coercion." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937) (quoting 29 U.S.C. § 157).

FindHelp myopically claims that the equities weigh in its favor because any harm to the alleged discriminatees in the underlying unfair-labor-practice cases can be repaired through monetary damages whereas their claimed injury (being subject to an administrative proceeding) cannot be remedied. FindHelp Br. 27 n.8. But, absent an administrative hearing on the underlying unfair labor practices, neither can the ground-level impact of unlawful discharges on employees' rights to organize and collectively bargain. *See, e.g., Overstreet v. El Paso*

*Disposal, LP*, 625 F.3d 844, 856 (5th Cir. 2010).[28] As the Sixth Circuit has explained, discrimination in employment affects "other employees who might have been interested in learning more about the potential benefits of joining a union" because they "will be discouraged from doing so"; those "employees are not guaranteed the right to engage in union activities without the threat of discrimination until after the Board has finally resolved this matter." *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 971 (6th Cir. 2001). The same is true of non-union concerted activities.

Moreover, the availability of backpay doesn't address any short-term pecuniary harm that can befall a discharged employee who loses their primary source of income, and that harm increases with the passage of time. And undue delay in providing a remedy makes things worse. As discussed, when a final Board order for reinstatement comes too late the chill experienced by other employees may not be successfully remedied, or the employer may profit from its own unfair

---

[28] The *FindHelp* district court did not hold a factfinding hearing regarding the impact of the alleged unfair-labor-practices upon employees' exercise of their NLRA rights, nor did it accord those rights even cursory weight in balancing the equities before enjoining the NLRB. ROA 24-10855-465-66.

labor practice if economic necessity has already forced a discharged employee to take another job. *See* NLRB Br. 63 (providing examples). In short, it is not just the alleged discriminatee in the unfair-labor-practice case who has something to lose from an injunction of the administrative hearing; the discharged employee's former colleagues would also be impacted.

An injunction would also cause harm to the Board itself. As in civil litigation, delay of the administrative hearing may lead to witnesses becoming unavailable or could impair their ability to recall specific details while testifying. This, in turn, harms the prosecuting NLRB attorneys' ability to make an effective case at trial on behalf of the employees who were victims of the alleged unfair-labor-practices. Energy Transfer's blithe claim that granting injunctive relief "would do the NLRB no harm whatsoever" [Energy Transfer Br. 42] turns a blind eye to the burdens such an injunction imposes.[29]

---

[29] Relatedly, Energy Transfer's statement [Br. 44] that NLRB proceedings "would simply be delayed" is belied by Employers' arguments regarding severance. If severance is either impossible or inappropriate, then nothing short of a complete legislative rewrite of the NLRA, which this Court can neither order nor assume, would ever permit NLRA cases to go forward.

In short, the reason courts hold factfinding hearings in injunction cases—and the reason the NLGA mandates them in labor injunction cases, *see* n.2, above—is to create a detailed factual record, rather than issuing injunctions based on sweeping assumptions that bear no relationship to the real world.

Employers cite this Court's decisions in *BST Holdings v. OSHA*, 17 F.4th 604 (5th Cir. 2021), and *Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022), as examples of when enjoining a government agency served the public interest. SpaceX Br. 53; Energy Transfer Br. 42-43; FindHelp Br. 49-50). Those cases, involving injunctions of OSHA's COVID-19 vaccine mandate for private-sector employers, and a similar vaccine mandate for federal contractors, respectively, are inapplicable. In those cases, this Court found that plaintiffs would be "irreparably harmed . . . by the business and financial effects of a lost or suspended employee, compliance and monitoring costs . . . , the diversion of resources . . . , or by OSHA's plan to impose stiff financial penalties . . . ." *BST Holdings*, 17 F.4th at 618. Here, Employers do not claim that they will suffer any sort of similar injury but instead attempt to rely on the abstract

41

principle of being subject to an allegedly unlawful proceeding. *See* SpaceX Br. 51-54; Energy Transfer Br. 42-45; FindHelp Br. 49-53.

Lastly, all three Employers argue that the balance of equities and public interest factors weigh in their favor because there is no public interest in enforcing unconstitutional laws or in the existence of an unconstitutionally constituted Executive Branch. *See id.* This improperly "collapses the four factors into one." *See Del. State Sportsmen's Ass'n*, 108 F.4th at 202. The reason we have a four-factor test for preliminary injunctive relief, and do not simply ask courts to look no further than an initial assessment of the merits, is because at the preliminary injunction stage, there is uncertainty as to the final outcome. Put another way, the public has a vital interest in the enforcement of laws that might one day be found to be unconstitutional because many of those laws ultimately will not be. *See id.* at 203 ("[T]he challengers' automatic approach presumes clarity early on. They perceive a finished drawing, while we see only the initial sketch. Early in a case, the merits are seldom clear, even when they seem black and white.").

## CONCLUSION

This Court should reverse the district courts and remand these cases for appropriate proceedings.

Respectfully submitted,

JENNIFER A. ABRUZZO
  *General Counsel*
JESSICA RUTTER
  *Deputy General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Associate General
Counsel*

KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Trial Attorney*
PHILLIP H. MELTON
JAMES G. O'DUDEN
  *Trial Attorneys*

/s/ David P. Boehm
  DAVID P. BOEHM
    *Senior Attorney*
National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20003
Tel: (202) 793-1017
Fax: (202) 273-4244
david.boehm@nlrb.gov

Dated: January 18, 2025
        Washington, D.C.

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellants' Reply

Brief was filed electronically with this Court's CM/ECF system on this

date, which will send an electronic notice to all registered parties and

counsel.

/s/ David P. Boehm
DAVID P. BOEHM
  *Senior Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (202) 793-1017
david.boehm@nlrb.gov

Dated: January 18, 2025
    Washington, D.C.

# CERTIFICATE OF COMPLIANCE

The National Labor Relations Board certifies that this document complies with the typeface, type-style, and length requirements in Fifth Circuit Rule 32.1 and Federal Rules of Appellate Procedure 32(a)(5)-(7), as modified by this Court's order of January 17, 2025 permitting a reply brief of no more than 9,000 words, because it contains 8,983 words, excluding those exempted by Federal Rule of Appellate Procedure 32(f), which are proportionally-spaced, 14-point Century Schoolbook font, and the word-processing software used was Microsoft Word for Office 365.

/s/ David P. Boehm
DAVID P. BOEHM
   *Trial Attorney*
National Labor Relations Board
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570
Tel: (202) 793-1017
david.boehm@nlrb.gov

Dated: January 18, 2025
     Washington, D.C.