# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

24-50627

Space Exploration Technologies Corporation,

*Plaintiff-Appellee*,

v.

National Labor Relations Board; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; John Doe, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

24-40533

Energy Transfer, L.P.; La Grange Acquisition, L.P.,

*Plaintiffs-Appellees*

v.

National Labor Relations Board; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; John Doe, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

consolidated with

24-10855

Aunt Bertha, doing business as Findhelp,

*Plaintiff - Appellee*

v.

National Labor Relations Board; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; John Doe, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants – Appellants*

## FINDHELP'S OPPOSITION TO THE RENEWED MOTION TO INTERVENE BY OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION (OPEIU)

/s/ Talley R. Parker
Talley R. Parker
Texas State Bar No. 24065872
talley.parker@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, Texas 75201
(214) 520-2400 – Telephone
(214) 520-2008 – Fax

COUNSEL FOR AUNT BERTHA, A
PUBLIC BENEFIT CORPORATION
DOING BUSINESS AS FINDHELP

## INTRODUCTION

Less than five hours before the oral argument in this consolidated appeal was set to take place, the Office and Professional Employees International Union ("OPEIU") filed yet another motion to intervene in this appeal. This Court has cautioned that "motions to intervene on appeal are reserved for truly exceptional cases" and for "imperative reasons." *Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020). The OPEIU—which has already made its position on this litigation clear through *amicus* briefs at both the district and appellate court levels—cannot meet that burden here, and its eleventh-hour request to intervene should be denied.

## ARGUMENT

At the outset, Aunt Bertha, a Public Benefit Corporation doing business as Findhelp ("Findhelp"), reiterates that there "is no appellate rule allowing for intervention generally. Instead, the Federal Rules of Appellate Procedure contemplate intervention only in proceedings to review agency action" (*Richardson*, 979 F.3d at 1104), which does not apply here. The type of intervention the OPEIU seeks is "reserved for truly exceptional cases" and for "imperative reasons." *Id.* (quoting *United States v. Bursey*, 515 F.2d 1228, 1238 n.24 (5th Cir. 1975)).[1] The Court implicitly recognized that such extraordinary circumstances did not exist when

---

[1] Federal Rule of Appellate Procedure 15(d) provides, moreover, that a motion to intervene "must be filed within 30 days after the petition for review is filed."

it denied the OPEIU's previous motion to intervene in October (in Case No. 24-10855—the Appellants' appeal against Findhelp, before it was consolidated with its appeals against Space Exploration Technologies Corporation ["SpaceX"] and Energy Transfer, L.P. and La Grange Acquisition, L.P. ["Energy Transfer"] in this case). *See* **Exhibit A** (10/11/2024 Order denying OPEIU's motion to intervene in 24-10855). So, for the reasons already set forth in Findhelp's opposition to the OPEIU's initial request to intervene in October, the Court should deny the OPEIU's current request to intervene. *See* **Exhibit B** (Findhelp's Opposition to the OPEIU's Motion to Intervene in Case No. 24-10855).

Nothing that has happened since the Court's previous ruling justifies the OPEIU's intervention now.

**A.** **The OPEIU Sent a Letter to the NLRB Disclaiming Any Interest in Representing the Findhelp Bargaining Unit, and it Does Not Otherwise Have a Legally Cognizable Interest in this Case That Justifies Intervention.**

The OPEIU asserts that it has an interest in this case because it "is the Charging Party in the NLRB proceedings that [Findhelp] sought successfully to enjoin in the District Court." Motion to Intervene at 3. But on January 28, 2025, a week before oral argument, the OPEIU sent a letter to the NLRB advising that it "***disclaims interest in representing the bargaining unit*** that is the subject of" its unfair-labor-practice charges against Findhelp—i.e., the charges that gave rise to Findhelp's lawsuit against the NLRB and, in turn, the NLRB's current appeal. *See*

**Exhibit C** (1/28/2025 Letter from OPEIU to NLRB) (emphasis added).  The OPEIU

went on to state that its "disclaimer of interest is effective immediately."  *Id.*  Thus,

if the OPEIU lacked sufficient interest in this appeal in October, that is certainly the

case now, when it has explicitly *disclaimed* its interest.

But even setting aside the OPEIU's recent express disavowal of interest,

circuit law is clear that a charging party has no legally cognizable interest in the

prosecution of his or her charges.  When a charging party files a charge, "the Board's

General Counsel has reviewable discretion to refuse to institute an unfair labor

practice complaint."  *Vaca v. Sipes*, 386 U.S. 171, 182 (1967).  "The practical effect

of this administrative scheme is that a party believing himself the victim of an unfair

labor practice can obtain neither adjudication nor remedy under the labor statute

without first persuading the Office of General Counsel that his claim is sufficiently

meritorious to warrant Board consideration."  *NLRB v. Sears, Roebuck & Co.*, 421

U.S. 132, 139 (1975).  And even after the General Counsel files the administrative

complaint, the charging party still does not control the proceeding.  Until the

administrative hearing begins, the General Counsel has unreviewable discretion to

settle the dispute or withdraw the complaint—even if the charging party objects.

*NLRB v. United Food & Com. Workers Union*, 484 U.S. 112, 126 (1987).

The mere fact that the OPEIU supports the NLRB's position on Board-

member removal protections does not justify its intervention.  Not any interest in the

subject matter of a case is enough. *Saldano v. Roach,* 363 F.3d 545, 551 (5th Cir. 2004). Rather, "the interest must be 'direct, substantial, [and] legally protectable.'" *Id.* (quoting *New Orleans Pub. Serv, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). This Court has acknowledged that "the interest must be one which the substantive law recognizes as belonging to or being owned by the applicant." *Id.* Here, the "subject of [this] action" is the pending NLRB proceedings. And it is clear from the OPEIU's express disavowal of interest in representing Findhelp's bargaining unit, and the caselaw discussed, that the OPEIU has no legally protectable interest in the proceedings—particularly where the relevant issue in this appeal is the purely legal issue of the constitutionality of the process of a governmental agency wholly distinct from the OPEIU.

Aside from its inability to establish a legally cognizable interest, the OPEIU has no practical purpose for intervention. It has nothing to add to the legal issues in dispute here. *See, e.g.*, *Texas v. United States Department of Energy,* 754 F.2d 550, 553 (5th Cir. 1985) (denying intervention as of right because, among other reasons, the purported intervenors could "offer no special expertise on the administrative law issues that will be argued in the appeal" against the government). This is particularly so where the arguments have already been fully briefed and argued. This action involves purely legal constitutional questions about the NLRB's structure and proceedings that warrant little to no factual development to resolve. Permissive

intervention is routinely denied in cases involving administrative agencies where factual development will not be aided by intervention. *See, e.g., Mississippi v. Becerra*, No. 1:22cv113-HSO-RPM, 2023 U.S. Dist. LEXIS 156646, at *25 (S.D. Miss. July 12, 2023) ("given the narrow scope of the question before the Court and further given that this case is a review of an administrative agency rulemaking based upon an administrative record, Proposed Intervenors cannot significantly contribute to the development of any additional factual issues outside the administrative record").

To the extent the OPEIU has a unique view to offer, it has made its position known already in its *amicus* briefs to both the district court and this Court.

**B.** **The Issue on Which the OPEIU Seeks to Opine (the Constitutionality of Board-Member Removal Protections) is Not the Primary Issue in This Appeal, and the NLRB Has Not Disavowed its Position on That Issue.**

The OPEIU states that it is seeking again to intervene because the NLRB filed a letter with the Court on February 3, 2025 stating that it would not present argument on whether the NLRA's removal protections for NLRB Members are constitutional. *See* **Exhibit D** (2/3/2025 Letter from the NLRB to the Court). In its letter, however, the NLRB does not disavow its position or arguments relating to the Board-member removal issue as articulated in its opening and reply briefs. Those arguments were supplemented by OPEIU's *amicus* briefing in both the circuit and district courts. As this Court noted in *Richardson*, even if the OPEIU were to "express a unique view"

on the Board-member removal issue not offered by the NLRB, that would not be enough to warrant intervention; rather, the "proper procedure is to move to appear as amici curiae, not to move to intervene." 979 F.3d at 1104.

Further, OPEIU's motion presumes that the Court will address the Board-member removal issue in its holding, which was not addressed by the district court in Findhelp's case. Nor was it substantively addressed by the Court or any of the parties during the oral argument on this appeal on February 5, 2025. The common issue uniting the three consolidated cases is the respective district courts' holding that the *administrative-law-judge* removal protections violate the Constitution, which is a sufficient basis to affirm the district courts' injunctions. The NLRB advised the Court that it will proceed on those grounds, including its arguments relating to "lack of subject-matter jurisdiction by effect of the Norris-LaGuardia Act, lack of causal harm, lack of irreparable harm, and balancing of the equities." *See* **Exhibit B**. And, at oral argument on February 5, it did proceed on those arguments. Intervention at this late date and time is inappropriate where it is unclear whether the Board-member removal issue will even be addressed by the Court in its ultimate opinion.

## <u>CONCLUSION</u>

For the foregoing reasons, Findhelp respectfully requests that this Court deny the OPEIU's last-minute request to intervene in this appeal.

Dated: February 18, 2025

Respectfully submitted,

/s/ Talley R. Parker

Talley R. Parker
Texas State Bar No. 24065872
talley.parker@jacksonlewis.com
David Kelly
Arizona State Bar No. 013035
david.kelly@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, Texas 75201
(214) 520-2400 – Telephone
(214) 520-2008 - Fax

**ATTORNEYS FOR APPELLEE
AUNT BERTHA, A PUBLIC
BENEFIT CORPORATION
DOING BUSINESS AS FINDHELP**

## CERTIFICATE OF SERVICE

I certify that on February 18, 2025, I electronically filed the foregoing Opposition with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

/s/ Talley R. Parker
Talley R. Parker

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that the foregoing brief contains 1,465 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. *See* FED. R. APP. P. 27(d)(A).

This document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Times New Roman font.

/s/ Talley R. Parker
Talley R. Parker

# Exhibit A

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 11, 2024

Lyle W. Cayce
Clerk

No. 24-10855

Aunt Bertha, *doing business as* Findhelp,

*Plaintiff—Appellee,*

*versus*

National Labor Relations Board, a federal administrative agency; Jennifer Abruzzo, *in her official capacity as the General Counsel of the National Labor Relations Board*; Lauren McFerran, *in her official capacity as the General Counsel of the National Labor Relations Board*; Marvin E. Kaplan; Gwynne A. Wilcox; David M. Prouty, *in their official capacities as Board Members of the National Labor Relations Board*; John Doe, *in their official capacity as an Administrative Law Judge of the National Labor Relations Board*,

*Defendants—Appellants.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-798

ORDER:

IT IS ORDERED that the opposed motion of Office and Professional Employees International Union to intervene on behalf of Defendants-Appellants is DENIED.

No. 24-10855

_____

STUART KYLE DUNCAN
*United States Circuit Judge*

# Exhibit B

No. 24-10855

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

AUNT BERTHA, a public benefit corporation doing business as FINDHELP –
*Plaintiff-Appellee*,

v.

NATIONAL LABOR RELATIONS BOARD, et al. –
*Defendants-Appellants*.

On Appeal From
the United States District Court for the Northern District of Texas
No. 4-24-CV-00798-P

**APPELLEE'S OPPOSITION TO THE OFFICE AND PROFESSIONAL
EMPLOYEES INTERNATIONAL UNION'S MOTION TO INTERVENE**

Talley R. Parker
Texas State Bar No. 24065872
talley.parker@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, Texas 75201
(214) 520-2400 – Telephone
(214) 520-2008 – Fax

**ATTORNEYS FOR APPELLEE**

## **INTRODUCTION**

The Office and Professional Employees International Union ("OPEIU") has waited more than a month and a half from the onset of this lawsuit to file its Motion to Intervene, and it has wholly failed to meet its burden of demonstrating "exceptional circumstances" justifying its intervention—a form of intervention that the Federal Rules of Appellate Procedure do not even contemplate. Importantly, it has not articulated in any more than conclusory terms why the NLRB and the five other NLRB-affiliated Defendants in this lawsuit, which share its exact goal, cannot adequately protect its interests. Nor has it explained why it waited more than a month and a half after the filing of the lawsuit to move to intervene, despite filing an *amicus* brief at the district court level in the interim. To the extent it has views distinct from the NLRB—which Findhelp is not convinced of, as OPEIU's arguments in its *amicus* brief at the district court level were nearly identical to that of the NLRB Defendants in their Response—OPEIU has failed to articulate why another *amicus* brief  (this time with the Fifth Circuit) would not be sufficient to express those views.

For those reasons, and as described herein, Aunt Bertha, a public benefit corporation doing business as Findhelp ("Findhelp") respectfully requests that the Court deny OPEIU's Motion to Intervene.

1

# ARGUMENT

## I. Intervention at the Appellate Level is Available Only in Exceptional Circumstances and, Contrary to OPEIU's Position, *Cameron* Does Not Change That Requirement.

"There is no appellate rule allowing intervention generally. Instead, the Federal Rules of Appellate Procedure contemplate intervention only in proceedings to review agency action." *Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020) (citing FED. R. APP. P. 15(d)). The instant appeal is *not* a proceeding to review agency action. OPEIU—though it inaptly cites numerous cases dealing with such proceedings (*see* Motion at 8)—seems to agree that Rule 15 does not apply to this case. *See* Motion at 19-23 (attempting to distinguish *Richardson*).

Thus, OPEIU asks the Court to make a move not even contemplated by the Federal Rules of Appellate Procedure. The Fifth Circuit has cautioned that such "motions to intervene on appeal are reserved for truly exceptional cases" and for "imperative reasons." *Richardson*, 979 F.3d at 1104 (quoting *United States v. Bursey*, 515 F.2d 1228, 1238 n.24 (5th Cir. 1975)).

OPEIU asserts that the Supreme Court's decision in *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022)—by allowing intervention in a non-Rule-15 context—abrogated the standard this Court described in *Richardson*. In fact, *Cameron* essentially applied the *Richardson* standard without

using its words—i.e., *Cameron* involved the exact sort of "exceptional circumstances" contemplated by *Richardson*.

A brief synopsis of *Cameron's* facts illustrates its inapplicability here. In *Cameron*, the plaintiffs sought to enjoin the State of Kentucky's enforcement of certain legislation regulating an abortion procedure. *Id.* at 267. The defendants were initially Kentucky's attorney general ("AG") and the cabinet secretary for its Health and Family Services department (the "Secretary"). *Id.* During district court proceedings, the plaintiffs stipulated to dismissal of their claim against the AG without prejudice. *Id.* In the stipulation, the AG's office specified that it reserved "all rights, claims, and defenses . . . in any appeals arising out of this action." *Id.* After the AG was dismissed, the district court held that the legislation at issue was unconstitutional, and the Secretary appealed that decision. *Id.* On appeal, the Sixth Circuit affirmed the district court's judgment finding the legislation unconstitutional. *Id.* But after losing at the Sixth Circuit, the Secretary informed the AG that it would *not* file a petition for rehearing en banc or a petition for a writ of certiorari challenging the court's decision. Put differently, the sole remaining defendant—the Secretary—abandoned the defense. Therefore, the AG, a prior defendant that specifically reserved rights relating to appeal, moved to intervene in the appeal so it could continue to defend the law's constitutionality. *Id.*

Under those unique circumstances, the Supreme Court held that the Sixth Circuit erred in denying the AG's motion to intervene. OPEIU's Motion attempts to recast *Cameron's* holding as having abrogated the Fifth Circuit's "exceptional circumstances" standard and takes the decision to mean that intervention on appeal should be assessed no differently from intervention at the district court level. (Motion at 23.)  But the *Cameron* Court expressly based its holding on the "importance of ensuring that States have a fair opportunity to defend their laws in federal court" and the "weighty interest that a State has in protecting its own laws." *Id.* at 278. The Court's decision includes numerous paragraphs describing the importance of those specific interests. The Supreme Court did not use the term "exceptional circumstances," but such circumstances were clearly present, given the significance of the identified interests and the factual and procedural background underlying the case, including one of two state-affiliated defendants—the sole remaining defendant—essentially abandoning its defense of the pertinent legislation's constitutionality.

Nothing in *Cameron* conflicts with this Court's decision in *Richardson*. The Court must determine whether exceptional circumstances exist, and the Court can look to a number of factors—*including* the factors district courts use—for guidance. *Compare Richardson*, 979 F.3d at 1104 (acknowledging the Supreme Court's "recogni[tion] that the policies underlying intervention (in the district courts) may

be applicable in appellate courts") *with Cameron*, 595 U.S. at 277 ("Without any rule that governs appellate intervention, we have looked elsewhere for guidance. Thus, we have considered the policies underlying intervention in the district courts.") (cleaned up).

Here, exceptional circumstances do not exist.

## II.    This Case Does Not Present Exceptional Circumstances Justifying OPEIU's Intervention.

Bearing in mind the applicable standard, the circumstances here are not sufficiently exceptional to justify the extraordinary relief OPEIU seeks—relief which, again, the Federal Rules of Appellate Procedure do not even contemplate. Indeed, the circumstances here are not exceptional at all.  None of the considerations that led the Supreme Court to its conclusion in *Cameron* are present here:

- OPEIU, unlike the intervening AG in *Cameron*, was never a defendant in this case and certainly did not reserve "all rights, claims, and defenses . . . in any appeals arising out of [the district court] action";

- the "weighty interest that a State has in protecting its own laws" is not at issue—OPEIU is a private party, and it seeks to intervene in a lawsuit regarding the constitutionality of a wholly different body's structure; and

- though OPEIU would rather not see the NLRB's structure declared unconstitutional, the NLRB itself, and the *five other* NLRB-affiliated Defendants in this case, share OPEIU's exact view—and they, unlike the secretary in *Cameron*, have clearly not abandoned their defense.

Significantly, OPEIU bases much of its case for intervention on the idea that it intends to raise distinct arguments that the NLRB defendants will not.  (Motion at

12) ("In addition to taking [the NLRB's] position before this Court, OPEIU also anticipates making arguments about the appropriate tailoring of the injunction that are likely to diverge from the Board's position.").  As an initial matter, it is unclear to Findhelp (and OPEIU does not attempt to explain) how the district court's injunction—which simply stayed the NLRB's administrative proceedings against Findhelp—could be "tailored" differently; either the proceedings are stayed or they are not.  And as discussed further below, Findhelp doubts that OPEIU's and the NLRB's arguments differ in any material way.  But even if that were the case, it does not justify intervention.  In fact, *Richardson* rejected an essentially identical argument.  In that case, movants, who were "not parties to the declaratory and injunctive portions of [the district court's] order . . . moved to intervene [on appeal] to protect their interests in regards to the injunctive relief issued by the district court that is now pending before [the Fifth Circuit]."  979 F.3d at 1104.  The *Richardson* movants apparently also sought to make arguments that were distinct from the parties to the lawsuit and sought a different injunction than what the district court granted.  But even though it was "true that the movants express[ed] a unique view offered by neither party," this Court determined that the "proper procedure is to move to appear as *amici curiae*, not to move to intervene."  *Id.* at 1106.

The same is true here.

**III.**     **The Policies Underlying Intervention at the District Court Level Do Not Justify OPEIU's Intervention.**

OPEIU takes the view that the factors district courts use to evaluate intervention are dispositive in *this* case, which concerns intervention at the appellate level. As addressed above, that view is incorrect—i.e., even if the district court factors did support OPEIU's intervention, additional exceptional circumstances must exist to justify intervention for the first time on appeal. *See Richardson*, 979 F.3d at 1105 ("If we analyzed motions to intervene on appeal using the same framework district courts use to address motions to intervene there, litigants would effectively have *de novo* review of their intervention motion. Therefore, allowing intervention on appeal only 'in an exceptional case for imperative reasons' is necessary to prevent such procedural gamesmanship.").

The district court framework for assessing intervention requires a movant to meet these requirements: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984).

That framework—even if it were dispositive—does not support OPEIU's intervention in this case.

## A.     OPEIU's Interests Are Adequately Represented by the NLRB.

Though OPEIU "does not doubt the Board's vigorous defense of its own constitutionality in this case" (Motion at 7), OPEIU suggests that it must nevertheless intervene.  It says that, that unlike the NLRB, which has a "broad interest in defending the constitutionality of its structure," OPEIU has the "narrower interest in lifting the [district court's] injunction."  (Motion at 12.)  That is a distinction without a difference.  The district court's preliminary injunction was based solely on its finding that the NLRB's structure likely violates the Constitution.  Thus, the NLRB's position—that its structure is constitutional—necessarily entails its vigorous support of OPEIU's purportedly "unique" position—that the preliminary injunction should be lifted.  Indeed, OPEIU seems to recognize that. (*See* Motion at 11) ("OPEIU and the Board share the common objective of vacating the preliminary injunction issued by the District Court.").  But OPEIU does not describe in any more than conclusory terms how its objectives differ or why the NLRB cannot adequately prosecute those objectives.

The mere fact that OPEIU may raise different arguments does not justify intervention.  To the extent it wants to raise those arguments, it may do so as *amicus curiae*.  *Richardson*, 979 F.3d at 1106.  In fact, it already has—at the district court

level.  (*See* Motion at 12.)  There is no reason it cannot do so again on appeal.[1]

Despite OPEIU's argument that it intends to raise arguments distinct from those of

the NLRB Defendants, the record so far does not bear that out.  OPEIU states in its

Motion that, in its *amicus* brief at the district court level, "OPEIU argued exclusively

that [] the Supreme Court's decision in *Collins v. Yellen* . . . and this Court's decision

in *Cmty. Fin. Servs. Assoc. of Am. v. CFPB* . . . preclude relief from agency action

in a case where the plaintiff has failed to draw a causal link between removal

protections and its individual case."  (Motion at 12.)  Yet the NLRB Defendants

raised that very same argument—at length—in their Response to Findhelp's Motion

for Preliminary Injunction.  (*See* District Court Doc. 21 at 8) (NLRB Defendants

citing *Collins* and arguing that "Findhelp has not alleged any of the facts necessary

to establish a right to relief on either of its removal claims because Findhelp must

show that the removal restrictions in question actually 'caused harm'").  The NLRB

Defendants are more than capable of making that argument again on appeal without

OPEIU's intervention.  If OPEIU wants to agree with the NLRB's position, it may

do so through an *amicus* brief.

---

[1] Interestingly, OPEIU claims that an *amicus* brief is insufficient to set forth its views because it "cannot raise an issue raised by neither of the parties absent exceptional circumstances" (Motion at 17), yet at the time same time states that it *has* already raised such distinct issues in its *amicus* brief at the district court level.  (Motion at 12.)  OPEIU cannot have it both ways.  This Court, in *Richardson*, allowed would-be intervenors to raise their unique views via an *amicus* brief rather than intervention, and it may do so here, too.  *See Richardson*, 979 F.3d at 1106.

Courts in analogous situations have denied motions to intervene. In *Building & Construction Trades Department v. Reich*, various labor organizations appealed the district court's grant of summary judgment in favor of the Secretary of Labor in an action to review a Department of Labor decision finding that the unions' job targeting programs violated federal law and labor regulations. 40 F.3d 1275, 1277 (D.C. Cir. 1994). Associated Builders and Contractors, Inc. ("ABC"), a national trade association of construction employers (and a nonparty to the litigation), moved to intervene in the appeal. The D.C. Circuit denied intervention, reasoning that ABC's purported interest "was adequately represented by [the Department of] Labor before the district court and continued to be adequately represented on appeal." *Id.* at 1282. The same is true here. In its Motion, OPEIU cites a number of cases in which charging parties in labor disputes were permitted to intervene in actions against the NLRB (Motion at 8), yet those cases are wholly inapplicable because, as OPEIU acknowledges, those cases concerned intervention "in cases involving a petition for review of an NLRB order." (Motion at 8.) Federal Rule of Appellate Procedure 15, which concerns review or enforcement of agency orders, expressly allows intervention in those cases. It does not here.

In short, OPEIU has failed to show why the five NLRB Defendants in this matter cannot adequately represent OPEIU's interests; and it has not shown that—

to the extent it has views that differ from the NLRB Defendants—why briefing as *amicus curiae* would not be sufficient to get those views across.

### B.     The Application for Intervention is Not Timely.

OPEIU asserts that its Motion to Intervene is timely because it was filed "less than two weeks after the present appeal was docketed and only a month-and-a-half after Findhelp's complaint was filed in District Court." (Motion at 6.) But "timeliness depends on the circumstances, and the progression of litigation is not solely dispositive." *Cameron*, 595 U.S. at 269 (cleaned up). In *Cameron*, for instance, the Court held that the attorney general's motion to intervene was timely when it was filed just "*two days* after learning that the secretary would not continue to defend" the Kentucky law at issue. *Id.* at 280 (emphasis added). Here, as addressed at length, the NLRB Defendants have defended and will continue to defend the constitutionality of its structure and the supposed impropriety of the district court's preliminary injunction. Thus, the NLRB can adequately protect OPEIU's interests, and denial of OPEIU's Motion will not cause it any prejudice, which is the third factor courts use in assessing timeliness. *See Rostain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021).

Yet even if OPEIU had a unique interest that the NLRB Defendants would not or could not adequately pursue, OPEIU waited 42 days—rather than the *two* days the *Cameron* movant waited—after Findhelp filed its complaint and motion for

preliminary injunction to file its Motion to Intervene.  OPEIU had from August 20, 2024 [District Court Doc. 1] until the district court granted a preliminary injunction in Findhelp's favor on September 16, 2024 [District Court Doc. 30] to move to intervene at the district court level and did not do so.  What is more, during that time, OPEIU moved (unopposed by Findhelp) to file a brief as *amicus curiae* and *did* file an *amicus* brief—on September 6, 2024 [District Court Doc. 19].  Presumably OPEIU knew at that point that the NLRB Defendants "would not adequately protect its interests."  It certainly should have known after the NLRB Defendants filed their response to Findhelp's preliminary injunction motion that same day [District Court Doc. 21].  Yet it still waited nearly a month—until after the NLRB Defendants docketed their appeal—to file its Motion.  That is not timely under the circumstances, and further undermines OPEIU's position that it would be prejudiced by a denial of its Motion.

## CONCLUSION

In short, OPEIU has not met its burden of demonstrating "exceptional circumstances" to justify its intervention in this appeal—a form of intervention that is not even contemplated by the Federal Rules of Appellate Procedure.  Even if that lofty standard were not applicable, OPEIU's intervention is not justified because the NLRB Defendants share its exact goal and will adequately pursue its interests, and

OPEIU's Motion to Intervene was not timely under the circumstances.  For those reasons, the Court should deny OPEIU's Motion.

Dated: October 9, 2024                    Respectfully submitted,

                                          /s/Talley R. Parker
                                          Talley R. Parker
                                          Texas State Bar No. 24065872
                                          talley.parker@jacksonlewis.com
                                          JACKSON LEWIS P.C.
                                          500 N. Akard Street, Suite 2500
                                          Dallas, Texas 75201
                                          (214) 520-2400 – Telephone
                                          (214) 520-2008 - Fax

                                          **ATTORNEYS FOR APPELLEE**

## CERTIFICATE OF SERVICE

I certify that on October 9, 2024, I electronically filed the foregoing Opposition with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system.

/s/Talley R. Parker
Talley R. Parker

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that the foregoing Opposition contains 3,149 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit.  *See* FED. R. APP. P. 27(d)(A).

This document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Times New Roman font.

/s/Talley R. Parker
Talley R. Parker

Exhibit C

# PITTA LLP
Attorneys At Law

120 Broadway, 28th Floor
New York, New York 10271
Telephone: (212) 652-3890
Facsimile: (212) 652-3891

**Jane Lauer Barker**
**Partner**
Direct Dial: (212) 652-3828
jbarker@pittagiblin.com

January 28, 2025

<u>**Via E-Filing**</u>
Roxanne L. Rothschild, Executive Secretary
National Labor Relations Board
1015 Half Street SE
Washington, D.C. 20570-0001

Re:    Aunt Bertha, A Public Benefit Corporation d/b/a Findhelp and Dallas Mudd
       and Office and Professional Employees International Union (16-RD-351569)

Dear Ms. Rothschild:

      This firm represents the Office and Professional Employees International Union, AFL-CIO

("OPEIU").  Please be advised that the OPEIU disclaims interest in representing the bargaining

unit that is the subject of the above-referenced matter and was certified on April 19, 2023 in 16-

RC-310853.  The OPEIU's disclaimer of interest is effective immediately.

      Thank you for your consideration.

                     Respectfully yours,
                     PITTA LLP

                     /s/ *Jane Lauer Barker*

                     Jane Lauer Barker

cc:    Timothy Watson, Regional Director, Region 16
       James C. Devereaux, Esq.
       Kaitlyn Lavorini, Esq.
       Jeffery Edward, Esq.

# Exhibit D



**United States Government**
**NATIONAL LABOR RELATIONS BOARD**
**Office of the General Counsel**

WASHINGTON, D.C. 20570

February 3, 2025

**BY CM/ECF TO ALL PARTIES**
Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

           RE:   *Space Exploration Technologies Corp. v. NLRB*,
                 Consolidated Case No. 24-50627, et al.

Dear Mr. Cayce:

      We write to inform the court of relevant factual developments in these
consolidated cases. Last week, the President removed Gwynne A. Wilcox from her
position as Member of the National Labor Relations Board. The attached letter
from the President communicating the removal states that Board members may be
removed "with or without statutory cause," notwithstanding the limits set forth in
Section 3(a) of the National Labor Relations Act.

      In addition to its effect on former Member Wilcox's personal participation in
Board decisionmaking, this removal also had the effect of causing the number of
sitting Board Members to fall from three to two. *See* https://www.nlrb.gov/about-
nlrb/who-we-are/the-board (last visited Feb. 3, 2025). Pursuant to Section 3(b) of
the Act, the Board now lacks a quorum of members to review ALJ-recommended
findings and orders in the underlying unfair-labor-practice proceedings at issue in
these consolidated cases.

      The Court should also be made aware that the NLRB has a newly appointed
Acting General Counsel. *See* https://www.nlrb.gov/news-outreach/news-
story/president-trump-appoints-willam-b-cowen-acting-general-counsel-of-the (last
visited Feb. 3, 2025). In light of these executive actions, Board counsel is not in a
position to address the Board-member-removability arguments raised in the
government's briefs. For purposes of oral argument, therefore, counsel for the
NLRB will limit his presentation on this issue to the other grounds briefed as

Lyle W. Cayce
February 3, 2025
Page 2

warranting reversal of the injunctions below, i.e. lack of subject-matter jurisdiction by effect of the Norris-LaGuardia Act, lack of causal harm, lack of irreparable harm, and balancing of the equities.

Respectfully submitted,

Nancy E. Kessler Platt
*Associate General Counsel*

Dawn L. Goldstein
*Deputy Associate General Counsel*

Kevin P. Flanagan
*Deputy Assistant General Counsel*

Paul A. Thomas
*Supervisory Attorney*

/s/ David P. Boehm
David P. Boehm
*Trial Attorney*
Tel: (202) 273-4202
Fax: (202) 273-4244
National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half Street, SE, 4th Floor
Washington, D.C. 20570

Attachment

**From:** Morse, Trent M. EOP/WHO [___6___]@who.eop.gov>
**Sent:** 1/28/2025 3:38:24 AM
**To:** jennifer.abruzzo@nlrb.gov; gwynne.wilcox@nlrb.gov
**CC:** Gor, Sergio N. EOP/WHO [___6___]@who.eop.gov]
**Subject:** [EXTERNAL] Notification from PPO RE: NLRB


Gwynne and Jennifer,

On behalf of President Donald J. Trump, please see the letter below.

Trent Morse
Deputy Director
Office of Presidential Personnel


 Article II of the U.S. Constitution vests the entire executive power in a single President, who alone is accountable to the people. Pursuant to my constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const. Art. II, §3, I must ensure that those who wield executive power on my behalf are held accountable. Of particular importance, heads of agencies within the Executive Branch must share the objectives of my administration and its commitment to serving the will of the American people.

 In my judgment, the National Labor Relations Board is not presently fulfilling its responsibility to the American people. The NLRB wields immense executive power over private employment relationships and relations with unions—an area with vast economic consequences.

 The aims and purposes of the Administration with respect to the work on the Board can be carried out most effectively with personnel of my own selection. To that end, effective as of this date, Gwynne A. Wilcox and Jennifer Abruzzo are hereby removed from the office of Members of the National Labor Relations Board.[1]

 In addition, these two Board Members have not, in my judgment, been operating in a manner consistent with the objectives of my administration. In my judgment, Members Wilcox and General Counsel Abruzzo have adopted a host of decisions that have improperly cabined employers' rights to speak on the subject of unionization, raising serious First Amendment concerns about the censorship of important

---

[1]While the National Labor Relations Act purports to limit removal of Board members to "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), this limitation is inconsistent with the vesting of the executive Power in the President and his constitutional duty to take care that the laws are faithfully executed and thus does not operate as a restriction on my ability to remove Board members. U.S. Const., Art. II, § 1, cl. 1; *id.* at § 3. "[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-514 (2010)). There are two recognized exceptions: one for certain inferior officers and one for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id.* at 216. Board members have broad policy making responsibilities and thus are not inferior officers. *See* 29 U.S.C § 160(a); *Seila Law LLC*, 591 U.S. at 219. Moreover, while the NLRB is a multimember board, it is not "balanced along partisan lines." Finally, and most importantly, the Board exercises core executive powers. To wit, the Board has authority to promulgate binding regulations (*see* 29 U.S.C. § 159; *Seila Law LLC*, 591 U.S. at 218; pursue enforcement actions in federal court (*see* 29 USC 160(e); *Seila Law LLC*, 591 U.S. at 219); and unilaterally issue final decisions awarding equitable relief in administrative adjudications (*see* 29 USC 160(c)); *Seila Law LLC*, 591 U.S. at 219). Since neither exception applies to members of the NLRB, you are removable with or without statutory cause by the President.

speech. Several such decisions were issued on the eve of the new Administration. They have also issued decisions that, in my judgment, have vastly exceeded the bounds of the National Labor Relations Act. To take just one example, they supported a new joint employer rule—a rule that courts then invalidated and the Board seemingly acknowledged could not go forward.

Viewing their record collectively, I lack confidence that Commissioners Wilcox and General Counsel Abruzzo can fairly evaluate matters before them without unduly disfavoring the interests of employers large and small. The country is eager to get to work, revitalize our economy, and operate under clear, predictable rules that are fair to employers, unions, and employees alike. I lack confidence that Commissioners Wilcox and General Counsel Abruzzo will faithfully execute those objectives.

---

[1] While the National Labor Relations Act purports to limit removal of Board members to "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), this limitation is inconsistent with the vesting of the executive Power in the President and his constitutional duty to take care that the laws are faithfully executed and thus does not operate as a restriction on my ability to remove Board members. U.S. Const., Art. II, § 1, cl. 1; *id.* at § 3. "[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-514 (2010)). There are two recognized exceptions: one for certain inferior officers and one for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id.* at 216. Board members have broad policy making responsibilities and thus are not inferior officers. *See* 29 U.S.C § 160(a); *Seila Law LLC*, 591 U.S. at 219. Moreover, while the NLRB is a multimember board, it is not "balanced along partisan lines." Finally, and most importantly, the Board exercises core executive powers. To wit, the Board has authority to promulgate binding regulations (*see* 29 U.S.C. § 159; *Seila Law LLC*, 591 U.S. at 218; pursue enforcement actions in federal court (*see* 29 USC 160(e); *Seila Law LLC*, 591 U.S. at 219); and unilaterally issue final decisions awarding equitable relief in administrative adjudications (*see* 29 USC 160(c)); *Seila Law LLC*, 591 U.S. at 219). Since neither exception applies to members of the NLRB, you are removable with or without statutory cause by the President.