# United States Court of Appeals
# For the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the  National Labor Relations Board, LAUREN M. MCFERRAN, in her official  capacity as the Chairman of the National Labor Relations Board,  MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their  official capacities as Board Members of the National Labor Relations  Board, and JOHN DOE in his official capacity as an Administrative Law  Judge of the National Labor Relations Board,

*Defendants-Appellants,*

*consolidated with*

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their  official capacities as Board Members of the National Labor Relations  Board, and JOHN DOE in his official capacity as an Administrative Law  Judge of the National Labor

Relations Board,

*Defendants-Appellants*

*consolidated with*

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency,  JENNIFER ABRUZZO, in her official capacity as the General Counsel of the  National Labor Relations Board, LAUREN M. MCFERRAN, in her official  capacity as the Chairman of the National Labor Relations Board,  MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their  official capacities as Board Members of the National Labor Relations  Board, and JOHN DOE in his official capacity as an Administrative Law  Judge of the National Labor Relations Board,

*Defendants-Appellants.*

---

**On Appeal from the United States District Courts
for the Northern, Southern, and Western Districts of Texas**

---

**OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION'S OPPOSITION TO PLAINTIFFS-APPELLEES' "MOTIONS FOR RECONSIDERATION"**

---

Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza NW
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
Tel. (212) 652-3828
jbarker@pittalaw.com

Three weeks ago, this Court granted the Office and Professional Employees International Union ("OPEIU") leave to intervene in this appeal. *See* ECF No. 187 (Feb. 5, 2025). Nevertheless, Plaintiff-Appellees Aunt Bertha d/b/a Findhelp ("Findhelp"), Space Exploration Technologies Corp. ("SpaceX"), and Energy Transfer L.P. each purported to have filed an "opposition" to OPEIU's motion on February 18, 2025. *See* ECF No. 194 (Findhelp's opposition); 196 (SpaceX's opposition); 197 (Energy Transfer's opposition). These "oppositions" were facially improper, insofar as they purported to "oppose" a motion that had already been granted by the Court and was no longer *sub judice*. *See* Fed. R. App. P. 27(b) ("Timely opposition filed after [a procedural] motion is granted in whole or in part does not constitute a request to reconsider, vacate, or modify, the disposition; a motion requesting that relief must be filed.") *Id.* (emphasis added).

A day later, Plaintiffs-Appellees filed a joint motion requesting that this Court "construe" their oppositions as motions to reconsider the Court's February 5 order. ECF No. 199.

The Court would act well within its discretion to strike Plaintiffs-Appellees' defective filings. In the event, however, that the Court

entertains Plaintiffs-Appellees' filings as motions to reconsider, OPEIU offers this opposition. None of Plaintiffs-Appellees' arguments provide any basis for reconsidering the Court's order; moreover, rapidly-evolving legal developments have only *strengthened* OPEIU's case for intervention since February 5.

## ARGUMENT

### I. OPEIU's Interests Will Not Be Adequately Represented by the Board

We begin with what we believe to be the core issue relating to OPEIU's Renewed Motion to Intervene—the inadequacy of the NLRB's representation of the Union's interest. While Findhelp makes strained arguments that, despite being the Charging Party in the underlying NLRB proceedings, the Union lacks a cognizable interest in the case, the Court need not expend much effort on these assertions. Simply put,

*every* circuit[1] and district[2] court that OPEIU knows to have addressed the issue has granted union Charging Parties leave to intervene in analogous constitutional challenges seeking to enjoin the NLRB's unfair labor practice proceedings, finding that they had compelling private interests in the resolution of their charges.[3]

---

[1] *See Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-3043, ECF No. 20 (3d Cir. Jan. 2, 2025) (granting union leave to intervene under identical "exceptional circumstances for imperative reasons" standard); *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, ECF No. 33 (6th Cir. Nov. 21, 2024) (granting leave to intervene upon finding that unions "have indisputable interests in this appeal because it directly implicates their statutory rights under the National Labor Relations Act").

[2] *See, e.g., Waffle House, Inc. v. NLRB*, No. 3:24-cv-6751 (MGL), No. 3:24-cv-6751 (MGL) (D.S.C. Feb. 10, 2025) (denying preliminary injunction and granting motion to intervene); *Ares Collective Grp. LLC v. NLRB*, No. 4:24-cv-517 (SHR), ECF No. 18 (D. Ariz. Jan. 16, 2025); *Amazon.com Servs., LLC v. NLRB*, No. 2:24-cv-9564 (SPG), ECF No. 34 (C.D. Cal. Dec. 2, 2024); *Ascension Seton v. NLRB*, No. 1:24-cv-1176 (ADA), ECF No. 41 (W.D. Tex. Nov. 12, 2024) (reconsidering prior denial and granting intervention); *Loren Cook Co. v. NLRB*, No. 6:24-cv-3277 (BCW), ECF No. 14 (W.D. Mo. Oct. 28, 2024); *Aguila Food Distrib. LLC v. NLRB*, No. 7:24-cv-00395, ECF No. 19 (S.D. Tex. Oct. 2, 2024); *Amazon.com Servs., LLC v. NLRB*, No. 5:24-cv-1000 (XR) (W.D. Tex. Sept. 27, 2024).

[3] This should come as no surprise. In *UAW Loc. 83 v. Scofield*, 382 U.S. 205 (1965), the Supreme Court held unequivocally that a Charging Party in Board proceeding must be allowed to intervene on judicial review of Board orders. There, the Court rejected the notion that a

In its Renewed Motion, OPEIU relied significantly on the NLRB's February 3 letter to this Court stating that it would not present argument on one of the core issues in this case—whether NLRB Members' removal protections are unconstitutional. *See* ECF No. 179 at 2, 4–5. While Findhelp seeks to trivialize the importance of the Board's letter and speculates that this claim *might* not be addressed by the Court in its final decision, *see* ECF No. 194 at 7–8, it marks an extraordinary departure from the Board's prior positions.[4]

Subsequent events have turned the very real possibility that the Board would be unable to adequately protect OPEIU's interests into a

---

Charging Party was just "another member the public whose interests the Board is designed to serve," and emphasized that it may have "vital private rights in the Board proceeding." *Id.* at 218, 220. And *Scofield* recognized that this interest does not merely adhere in defending the Board's final decisions on appeal; to the contrary, the Court emphasized that throughout the proceedings, "the charging party is accorded formal recognition: he participates in the hearings as a party; he may call witnesses and cross-examine others, may file exceptions to any order of the [ALJ], and may file a petition for reconsideration to a Board order[.]" *Id.* at 219 (cleaned up).

[4] On February 12, following oral argument in this case, the Department of Justice notified Congress that it would not defend the "for-cause removal provisions that apply to members of multi-member regulatory commissions," such as the NLRB. *See* Exhibit B (attached hereto).

certainty. On February 18, President Trump signed an Executive Order entitled "Ensuring Accountability for all Agencies." Section 7 of this Order states that "[t]he President and the Attorney General's opinions on questions of law are controlling on [executive branch] employees in the conduct of their official duties," and prohibits any employee from "advanc[ing] an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law," including "positions advanced in litigation." *Id. See* Exhibit A (attached hereto).

Two days later, Acting Solicitor General Sarah M. Harris submitted a letter to U.S. House of Representatives Speaker Mike Johnson, stating that the "Department of Justice has concluded that the multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution [and] that the Department will no longer defend them in court." *See* Exhibit C (attached hereto).

The NLRB has acceded to the positions reflected in the President's Executive Order and the Acting Solicitor General. In *VHS Acquisition Subsidiary No. 7, Inc. v. NLRB*, No. 25-5006 (D.C. Cir.), the Board filed

a statement declaring that it "does not intend to rely on any arguments defending the constitutionality" of *either* the ALJ *or* Board Member removal protections at issue in this case. *See* Exhibit D (attached hereto).

These rapidly-developing events only underscore the correctness of this Court's February 5 order granting OPEIU intervention. Simply put, this "exceptional case" has only grown more exceptional, and OPEIU's reasons for intervention have become more "imperative." *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020) (citation omitted). To OPEIU's knowledge, for the first time since the agency's creation in 1935, the NLRB has declined to defend the constitutionality not one but two core elements of its organic statute. This position directly contradicts the arguments that the agency has made to this Court and the three district courts below, as well as the position taken by OPEIU as *amicus*. *See* ECF No. 63 at 15 n.2 (OPEIU position on ALJ removal protections); 35–38 (OPEIU position on Board member removal protections). It is readily apparent that the NLRB is in no position to zealously advance key merits arguments that may lead to the vacatur of the injunction barring OPEIU from proceeding with its unfair labor

practice charges. It is therefore imperative that OPEIU be given the opportunity to do so.

## II. OPEIU Has an Unquestionable Legal Interest in the Underlying Board Proceedings

As noted *supra* at 2–3, the Supreme Court's decision in *Scofield* and the overwhelming weight of precedent negate Findhelp's contention that a Union lacks an interest in unfair labor practice proceedings where it is the Charging Party. Findhelp also suggests that OPEIU's interest in the proceedings is somehow extinguished because it disclaimed interest in representing its employees for collective bargaining purposes. *See* ECF No. 194 at 4–5.

This argument is unpersuasive because OPEIU's disclaimer—or its status as the exclusive collective bargaining representative for the Findhelp bargaining unit—bears no relation to its unfair labor charges or the enjoined NLRB proceedings.

As an initial matter, OPEIU notes that it affirmatively brought the issue of the disclaimer to the Court's attention in its Renewed Motion to Intervene. As OPEIU explained, the disclaimer meant that Findhelp no longer has a legal duty to bargain with the Union over a collective

bargaining agreement, *see* 29 U.S.C. § 158(d), and, consequently, cannot be subject to a bargaining order if it refuses to bargain in good faith, *see* 29 U.S.C. § 158(a)(5). *See* ECF No. 179 at 4 n.3.

That is, however, *all* that OPEIU's disclaimer means. And it has no relevance to the present situation, where *none* of the charges at issue relate to a refusal to bargain. Instead, they seek to vindicate Findhelp employees' statutory "right to self-organization" and "to form, join or assist labor organizations." 29 U.S.C. § 157. OPEIU alleges that Findhelp's conduct—up to and including retaliatory firings—tended to "interfere with, restrain, or coerce employees" in the exercise of these rights and to "discourage membership in any labor organization"—in this case, OPEIU—"by discrimination in regard to hire or tenure of employment or any term or condition of employment." 29 U.S.C. §§ 158(a)(1), (3).[5] Such conduct violates the National Labor Relations Act and can be fully remedied regardless of whether employees are

---

[5] The original administrative complaint issued by the NLRB's General Counsel—which reflects that none of the charges related to a failure to bargain—can be found on the District Court docket. *See* ECF No. 4 at 10-18 in *Aunt Bertha v. NLRB*, No. 4:24-cv-798-P (N.D. Tex. 2024) (ROA 24-10855 64-72).

represented by a union, and, as a matter of law, the underlying charges are not rendered moot by OPEIU's disclaimer.

Moreover, OPEIU continues to have an obvious real-world interest in zealously pursuing these charges. OPEIU regularly engages in organizing campaigns where workers are, regrettably, discharged because of their support for the Union. If OPEIU were to leave these unfair labor practices unremedied, it would send a chilling message to employees across a variety of workplaces that employers can discriminate against OPEIU supporters with impunity, and that the Union will abandon these workers if it is unable to attain a contract. Thus, OPEIU's organizational interests remain deeply invested in the outcome of these proceedings.

### III. OPEIU's Intervention Serves a Practical Purpose and Will Not Delay This Appeal

Finally, Findhelp and SpaceX question the practical purpose of OPEIU's intervention. *See* ECF No. 194 at 6–7; ECF No. 196 at 4–5 (questioning whether OPEIU intended to seek "additional briefing" or "new argument").

OPEIU clarifies that it does not seek any additional briefing, new argument, or any other extraordinary privileges not granted to the existing parties. Like any party to an appeal, OPEIU seeks only the right to bring relevant developments to the Court's attention pursuant to Federal Rule of Appellate Procedure 28(j), petition for panel rehearing or rehearing *en banc* of any decision adverse to its interests, and to petition the U.S. Supreme Court for a writ of *certiorari* should it prove appropriate.

The Supreme Court has made clear that a non-party maintains an interest in the disposition of an appeal until its conclusion, even *after* a panel has rendered its decision. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 280 (2022) (state attorney general timely sought leave to intervene "within a week after the Sixth Circuit issued its decision and within the 14-day time limit for petitioning for rehearing en banc"). Rather than establishing an artificial cut-off point at some undefined point in an appeal, the Court held that "the most important circumstance relating to timeliness is that the [party] sought to intervene 'as soon as it became clear' that [its] interests 'would no

longer be protected' by the parties in the case." *Id.* at 279–80 (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).[6]

That is unquestionably the case here, where OPEIU filed its motion two days after receiving notice of the NLRB's change in position on one core constitutional claim, and *weeks before* it received notice of the Board's change in position on yet another key claim. Accordingly, OPEIU's intervention is unquestionably timely, continues to serve a practical purpose, and is imperative to protect its rights.

## IV. In the Alternative, the Court Should Deny Plaintiffs-Appellees' Joint Motion and Strike the Improper Filings

As noted *supra* at 1, Plaintiffs-Appellees' "oppositions" are procedurally improper and violated Federal Rule of Appellate Procedure 27(b) because they were filed weeks after the Court granted OPEIU's Renewed Motion to Intervene. While Plaintiffs-Appellees assert in their Joint Motion that they were not properly served with this Court's

---

[6] Moreover, *Cameron* repudiated the lower court's statement that the intervenor's interest was diminished because rehearing *en banc* and *certiorari* were "extraordinary procedure[s]" that a party is not "due as a matter of course." *EMW Women Surgical Ctr., P.S.C. v. Friedlander,* 831 F. App'x 748, 751 (6th Cir. 2020), *rev'd, Cameron*, 595 U.S. 267 (2022).

February 5 order, they appear to concede that their initial oppositions were, in fact, improperly filed. ECF No. 199. Any of the Plaintiffs-Appellees could have cured this deficiency as contemplated in the Federal Rules by simply withdrawing their defective filing and then properly moving for reconsideration. Instead, they ask this Court for relief that is directly contrary to Federal Rule 27(b).

Notably, Plaintiffs-Appellees' Joint Motion is itself procedurally deficient, because it fails to comply with this Court's Local Rule 27.4, which states, in boldface, that "[a]ll motions must state that the movant has contacted or attempted to contact all other parties and must indicate whether an opposition will be filed." The Joint Motion does not include the required certification or state OPEIU's or Defendants-Appellants' position on the motion.

Accordingly, while OPEIU does not doubt that this Court has discretion to grant Plaintiffs-Appellees' request to construe their "oppositions" as motions for reconsideration, Plaintiffs-Appellees are not entitled to this relief as of right. The Court has the prerogative to enforce compliance with the Federal Rules, and would act well within its

discretion by denying Plaintiffs-Appellees' Joint Motion and striking their non-conforming filings.

## CONCLUSION

In the event that the Court construes Plaintiffs-Appelless' "oppositions" as motions to reconsider its February 5 order granting OPEIU leave to intervene in this appeal, it should deny these motions. In the alternative, the Court should deny Plaintiffs-Appellees' Joint Motion and strike the oppositions as procedurally improper.

Date: February 25, 2025

Respectfully submitted,

<u>/s/ Andrew Lyubarsky</u>
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
Tel: (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3828
jbarker@pittalaw.com

*Counsel for Intervenor OPEIU*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing opposition contains 2,438 words, as counted by counsel's word processing system, and thus complies with the 5,200- word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Century Schoolbook font.

Dated: February 25, 2025

*/s/ Andrew Lyubarsky*

**CERTIFICATIONS UNDER ECF FILING STANDARDS**

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: February 25, 2025

*/s/ Andrew Lyubarsky*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2025, I electronically filed the foregoing Opposition using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 25, 2025

*/s/ Andrew Lyubarsky*

# Exhibit A



# ENSURING ACCOUNTABILITY FOR ALL AGENCIES

EXECUTIVE ORDER

February 18, 2025

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1. Policy and Purpose. The Constitution vests all executive power in the President and charges him with faithfully executing the laws. Since it would be impossible for the President to single-handedly perform all the executive business of the Federal Government, the Constitution also provides for subordinate officers to assist the President in his executive duties. In the exercise of their often-considerable authority, these executive branch officials remain subject to the President's ongoing supervision and control. The President in turn is regularly elected by and accountable to the American people. This is one of the structural safeguards, along with the separation of powers between the executive and legislative branches, regular elections for the Congress, and an independent judiciary whose judges are appointed by the President by and with the advice and consent of the Senate, by which the Framers created a Government accountable to the American people.

However, previous administrations have allowed so-called "independent regulatory agencies" to operate with minimal Presidential supervision. These regulatory agencies currently exercise substantial executive authority without

sufficient accountability to the President, and through him, to the American people. Moreover, these regulatory agencies have been permitted to promulgate significant regulations without review by the President.

These practices undermine such regulatory agencies' accountability to the American people and prevent a unified and coherent execution of Federal law. For the Federal Government to be truly accountable to the American people, officials who wield vast executive power must be supervised and controlled by the people's elected President.

Therefore, in order to improve the administration of the executive branch and to increase regulatory officials' accountability to the American people, it shall be the policy of the executive branch to ensure Presidential supervision and control of the entire executive branch. Moreover, all executive departments and agencies, including so-called independent agencies, shall submit for review all proposed and final significant regulatory actions to the Office of Information and Regulatory Affairs (OIRA) within the Executive Office of the President before publication in the *Federal Register*.

Sec. 2. Definitions. For the purposes of this order:

(a) The term "employees" shall have the meaning given that term in section 2105 of title 5, United States Code.

(b) The term "independent regulatory agency" shall have the meaning given that term in section 3502(5) of title 44, United States Code. This order shall not apply to the Board of Governors of the Federal Reserve System or to the Federal Open Market Committee in its conduct of monetary policy. This order shall apply to the Board of Governors of the Federal Reserve System only in connection with its conduct and authorities directly related to its supervision and regulation of financial institutions.

(c) The term "independent regulatory agency chairman" shall mean, with regard to a multi-member independent regulatory agency, the chairman of such agency, and shall mean, with regard to a single-headed independent regulatory agency, such agency's chairman, director, or other presiding officer.

(d) The term "head" of an independent regulatory agency shall mean those appointed to supervise independent regulatory agencies and in whom the agencies' authorities are generally vested, encompassing the chairman, director, or other presiding officer, and, as applicable, other members, commissioners, or similar such officials with responsibility for supervising such agencies.

Sec. 3. OIRA Review of Agency Regulations. (a) Section 3(b) of Executive Order 12866 of September 30, 1993 ("Regulatory Planning and Review"), as amended, is hereby amended to read as follows:

"(b) "Agency," unless otherwise indicated, means any authority of the United States that is an "agency" under 44 U.S.C. 3502(1), and shall also include the Federal

Election Commission.  This order shall not apply to the Board of Governors of the Federal Reserve System or to the Federal Open Market Committee in its conduct of monetary policy.  This order shall apply to the Board of Governors of the Federal Reserve System only in connection with its conduct and authorities directly related to its supervision and regulation of financial institutions.".

(b)  The Director of the Office of Management and Budget (OMB) shall provide guidance on implementation of this order to the heads of executive departments and agencies newly submitting regulatory actions under section 3(b) of Executive Order 12866.  Agency submissions by independent regulatory agencies under such section shall commence within the earlier of 60 days from the date of this order, or completion of such implementation guidance.

Sec. 4.  <u>Performance Standards and Management Objectives</u>.  The Director of OMB shall establish performance standards and management objectives for independent agency heads, as appropriate and consistent with applicable law, and report periodically to the President on their performance and efficiency in attaining such standards and objectives.

Sec. 5.  <u>Apportionments for Independent Regulatory Agencies</u>.  The Director of OMB shall, on an ongoing basis:

(a)  review independent regulatory agencies' obligations for consistency with the President's policies and priorities; and

(b)  consult with independent regulatory agency chairmen and adjust such agencies' apportionments by activity, function, project, or object, as necessary and appropriate, to advance the President's policies and priorities.  Such adjustments to apportionments may prohibit independent regulatory agencies from expending appropriations on particular activities, functions, projects, or objects, so long as such restrictions are consistent with law.

Sec. 6.  <u>Additional Consultation with the Executive Office of the President</u>.  (a) Subject to subsection (b), independent regulatory agency chairmen shall regularly consult with and coordinate policies and priorities with the directors of OMB, the White House Domestic Policy Council, and the White House National Economic Council.

(b)  The heads of independent regulatory agencies shall establish a position of White House Liaison in their respective agencies.  Such position shall be in grade 15 of the General Schedule and shall be placed in Schedule C of the excepted service.

(c)  Independent regulatory agency chairmen shall submit agency strategic plans developed pursuant to the Government Performance and Results Act of 1993 to the Director of OMB for clearance prior to finalization.

Sec. 7.  <u>Rules of Conduct Guiding Federal Employees' Interpretation of the Law</u>. The President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch.

The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties.  No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General.

  Sec. 8.  General Provisions.  (a)  If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

  (b)  Nothing in this order shall be construed to impair or otherwise affect:

  (i)   the authority granted by law to an executive department, agency, or the head thereof; or

  (ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

  (c)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

  (d)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500

# Exhibit B

**U.S. Department of Justice**

Office of the Solicitor General

---

*The Solicitor General*                          *Washington, D.C. 20530*

February 12, 2025

The Honorable Mike Johnson
Speaker
U.S. House of Representatives
Washington, D.C. 20515

      Re: Restrictions on the Removal of Certain Principal Officers of the United States

Dear Mr. Speaker:

      Pursuant to 28 U.S.C. 530D, I am writing to advise you that the Department of Justice has determined that certain for-cause removal provisions that apply to members of multi-member regulatory commissions are unconstitutional and that the Department will no longer defend their constitutionality. Specifically, the Department has determined that the statutory tenure protections for members of the Federal Trade Commission (FTC), 15 U.S.C. 41, for members of the National Labor Relations Board (NLRB), 29 U.S.C. 153(a), and for members of the Consumer Product Safety Commission (CPSC), 15 U.S.C. 2053(a), are unconstitutional.

      In *Myers* v. *United States*, 272 U.S. 52 (1926), the Supreme Court recognized that Article II of the Constitution gives the President an "unrestricted" power of "removing executive officers who had been appointed by him by and with the advice and consent of the Senate." *Id.* at 176. In *Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935), the Supreme Court created an exception to that rule. The Court held that Congress may "forbid the[] removal except for cause" of members of the FTC, on the ground that the FTC exercised merely "quasi-legislative or quasi-judicial powers" and thus could be required to "act in discharge of their duties independently of executive control." *Id.* at 628-629. Statutory tenure protections for the members of a variety of independent agencies, including the FTC, the NLRB, and the CPSC, rely on that exception.

      The Department has concluded that those tenure protections are unconstitutional. The Supreme Court has made clear that the holding of *Humphrey's Executor* embodies a narrow "exception" to the "unrestricted removal power" that the President generally has over principal executive officers and that the exception represents "'the outermost constitutional limit[] of permissible congressional restrictions'" on the President's authority to remove such officers. *Seila Law LLC* v. *Consumer Fin. Protection Bureau*, 591 U.S. 197, 215, 218 (2020) (citation omitted). Further, the Supreme Court has held, the holding of *Humphrey's Executor* applies only to administrative bodies that do not exercise "substantial executive power." *Id.* at 218-219. The Supreme Court has also explained that *Humphrey's Executor* appears to have misapprehended the powers of the "New Deal-era FTC" and misclassified those powers as primarily legislative and judicial. *Id.* at 218.

The exception recognized in *Humphrey's Executor* thus does not fit the principal officers who head the regulatory commissions noted above. As presently constituted, those commissions exercise substantial executive power, including through "promulgat[ing] binding rules" and "unilaterally issu[ing] final decisions * * * in administrative adjudications." *Seila Law*, 591 U.S. at 218-219. An independent agency of that kind has "no basis in history and no place in our constitutional structure." *Id.* at 220; see *id.* at 222 & n.8.

To the extent that *Humphrey's Executor* requires otherwise, the Department intends to urge the Supreme Court to overrule that decision, which prevents the President from adequately supervising principal officers in the Executive Branch who execute the laws on the President's behalf, and which has already been severely eroded by recent Supreme Court decisions. See, *e.g.*, *Selia Law*, 591 U.S. at 223-229; *Free Enter. Fund* v. *Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492-494 (2010).

Please let me know if I can be of any further assistance in this matter.

Sincerely,

Sarah M. Harris
Acting Solicitor General

2

# Exhibit C



**U.S. Department of Justice**

Office of the Solicitor General

---

*The Solicitor General*                                    *Washington, D.C. 20530*

February 20, 2025

The Honorable Mike Johnson
Speaker
U.S. House of Representatives
Washington, DC 20515

     Re:     Multilayer Restrictions on the Removal of Administrative Law Judges

Dear Mr. Speaker:

     Pursuant to 28 U.S.C. 530D, I am writing to advise you that the Department of Justice has concluded that the multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, that the Department will no longer defend them in court, and that the Department has taken that position in ongoing litigation. See 2/11/25 Letter, *Axalta Coating Systems LLC* v. *FAA*, No. 23-2376 (3d Cir.).

     In *Free Enterprise Fund* v. *PCAOB*, 561 U.S. 477 (2010), the Supreme Court determined that granting "multilayer protection from removal" to executive officers "is contrary to Article II's vesting of the executive power in the President." *Id.* at 484. The President may not "be restricted in his ability to remove a principal [executive] officer, who is in turn restricted in his ability to remove an inferior [executive] officer." *Ibid.*

     A federal statute provides that a federal agency may remove an ALJ "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. 7521(a). Another statute provides that a member of the Board "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. 1202(d). Consistent with the Supreme Court's decision in *Free Enterprise Fund*, the Department has determined that those statutory provisions violate Article II by restricting the President's ability to remove principal executive officers, who are in turn restricted in their ability to remove inferior executive officers.

     Please let me know if I can be of any further assistance in this matter.

                         Sincerely,

                         Sarah M. Harris
                         Acting Solicitor General

# Exhibit D

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

VHS ACQUISITION SUBSIDIARY
NUMBER 7, INC. d/b/a SAINT
VINCENT HOSPITAL

*Appellee/Cross-Appellant*

v.

NATIONAL LABOR RELATIONS
BOARD, A FEDERAL
ADMINISTRATIVE AGENCY, *et al.*

*Appellants/Cross-Appellees*

---

Case Nos. 25-5006, 25-5021

## STATEMENT OF ISSUE TO BE RAISED

Appellants/Cross-Appellees National Labor Relations Board, a federal agency,

*et al.* (the NLRB) intends to raise the following issue on appeal in Case No. 25-5006:

- Whether the District Court erred in finding that it could grant

declaratory relief to the Appellee/Cross-Appellant VHS Acquisition Subsidiary

Number 7, Inc. d/b/a Saint Vincent Hospital (Saint Vincent), without also finding

that the removal protections caused harm to Saint Vincent.[1]

---

[1] The Department of Justice recently notified Congress that it would not continue to
defend the constitutionality of "multiple layers of removal restrictions for
administrative law judges (ALJs) in 5 U.S.C. § 1202(d) and 5 U.S.C. § 7521(a)." Letter

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD

Contempt, Compliance, and
      Special Litigation Branch

/s/ Paul A. Thomas
Paul A. Thomas
*Supervisory Attorney*
Tel: (202) 273-3788
paul.thomas@nlrb.gov
CA Bar No. 2800445

Craig R. Ewasiuk
*Attorney*
Tel: (202) 840-7258
craig.ewasiuk@nlrb.gov
D.C. Bar No. 1044296

Kevin P. Flanagan
*Deputy Assistant General Counsel*
1015 Half Street SE, 4th Floor
Washington, DC 20003
Tel: (202) 273-2938
kevin.flanagan@nlrb.gov
(No official bar number in Maryland)

Dated February 21, 2025

---

from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson,
Speaker of the United States House of Representatives (Feb. 20, 2025) (attached as
Exhibit A). In a separate letter, the Department of Justice notified Congress that it
would not defend the "for-cause removal provisions that apply to members of multi-
member regulatory commissions," such as the NLRB. Letter from Sarah M. Harris,
Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United
States House of Representatives (Feb. 12, 2025) (attached as Exhibit B).

Consistent with these positions, the NLRB does not intend to rely on any arguments
defending the constitutionality of those tenure provisions.