# United States Court of Appeals
# For the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants,*

*consolidated with*

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor

Relations Board,

*Defendants-Appellants*

*consolidated with*

---

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants.*

---

**On Appeal from the United States District Courts
for the Northern, Southern, and Western Districts of Texas**

---

**MOTION TO DISMISS AS MOOT CASE NO. 24-10855, *AUNT BERTHA V. NLRB*, AND VACATE PRELIMINARY INJUNCTION**

---

| | |
|---|---|
| Andrew Lyubarsky | Jane Lauer Barker |
| AFL-CIO | Pitta LLP |
| 815 Black Lives Matter Plaza NW | 120 Broadway, 28th Floor |
| Washington, DC 20006 | New York, NY 10271 |
| Tel. (202) 227-8969 | Tel. (212) 652-3828 |
| alyubarsky@aflcio.org | jbarker@pittalaw.com |

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of this Court's Rule 28.2.1 have an interest in the outcome of this case. These disclosures are made pursuant to this Court's Rules 28.2.1 and 29.2 in order that the judges of this Court may evaluate possible disqualification or recusal.

1. National Labor Relations Board (NLRB)

2. Jennifer Abruzzo, former General Counsel, NLRB

3. Lauren M. McFerran, former Chairman, NLRB

4. William B. Cowen, Acting General Counsel, NLRB

5. Marvin E. Kaplan, Member, NLRB

6. Gwynne A. Wilcox, Member, NLRB

7. David M. Prouty, Member, NLRB

8. Space Exploration Technologies Corporation

9. Aunt Bertha, d/b/a Findhelp

10. Energy Transfer L.P.

11. La Grange Acquisition, L.P.

12. Talley Ray Parker, David A. Kelly, Counsel for Plaintiff-Appellee Aunt Bertha

13. Michael E. Kenneally, Catherine Lynn Eschbach, Harry Isaac Johnson III, Counsel for Plaintiff-Appellee Space Exploration Technologies Corporation

14. Amber Michelle Rogers, Counsel for Plaintiffs-Appellees Energy Transfer L.P. and La Grange Acquisition, L.P.

15. David Paul Boehm, Christine Flack, Maxie Elena Gallardo Miller, Grace L. Pezzella, Matheus Teixeira, Counsel for Defendants-Appellants

16. Office and Professional Employees International Union (OPEIU)

17. Jane Lauer Barker, Andrew Lyubarsky, Counsel for OPEIU

Dated: March 19, 2025

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

Intervenor Office and Professional Employees International Union ("OPEIU") respectfully moves this Court to dismiss the appeal in Case No. 24-10855 as moot and vacate, or remand to the District Court with instructions to vacate, the preliminary injunction at issue in this case.

At the commencement of this case, Plaintiff-Appellee Aunt Bertha d/b/a Findhelp ("Findhelp") and the National Labor Relations Board ("NLRB") Defendants stood in a relationship of direct antagonism. Findhelp argued that the protections from at-will removal enjoyed by NLRB administrative law judges ("ALJs") and Board Members rendered them unconstitutionally insulated from Presidential control, and contended that proceeding to a hearing before such adjudicators violated its own constitutional rights. For their part, the NLRB Defendants vigorously defended the lawfulness of both ALJs' and Board Members' removal protections before both the District Court and this Court.

Things have changed. After the inauguration, the new President and his Attorney General concluded that both sets of removal protections at issue in this case were, in fact, unconstitutional, and the NLRB Defendants rapidly conformed to this newly-announced Executive

position. Formerly adversaries, the parties on both sides of the "v." now proclaim Findhelp's position in unison.

This Court now lacks Article III power to decide this appeal, which is plainly moot. Moreover, because the President has asserted that he has the unrestricted to remove precisely the officers whose protections were challenged by Findhelp, there is no longer any conceivable basis for preventing the underlying NLRB proceedings enjoined by the District Court from taking place. The District Court's injunction cannot stand and must be vacated forthwith.

Findhelp opposes the relief sought in this motion. The NLRB Defendants take no position pending consideration of the arguments raised herein.

## ARGUMENT

## I.     Findhelp's Requests for Injunctive and Declaratory Relief Pursuant to its ALJ Removal Protection Claim are Moot

"Article III limits [this Court's] jurisdiction to live cases and controversies." *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 629 (5th Cir. 2023) (cleaned up). And "[t]here must be a case or controversy through all stages of a case—not just when a suit comes *into* existence but

*throughout* its existence." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (cleaned up; emphasis in original). "[A] dispute is no longer live when the parties lack a legally cognizable interest in the outcome[,]" *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023) (cleaned up), or, put differently, when the parties' dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls*, 905 F.3d at 909. (cleaned up). As to injunctive relief, "[i]t is axiomatic that a request for injunctive relief remains live only so long as there is some present harm left to enjoin." *McClelland v. Gronwaldt*, 155 F.3d 507, 514 (5th Cir. 1998) (cleaned up). Determining mootness "requires a highly individualistic, and usually intuitive, appraisal of the facts of each case." *In re Corrugated Container Grand Jury*, 659 F.2d 1330, 1331 (5th Cir. 1981) (cleaned up).

In its complaint, Findhelp alleges that "[t]he Constitution requires that the President be able to exercise authority over the functions of inferior officers of an executive agency." ROA 24-10855 17 (Compl. ¶ 45). It then points to the removal protections afforded NLRB administrative law judges ("ALJs"), and those afforded members of the Merit Systems Protection Board ("MSPB") who review agency requests to remove ALJs,

and states that the "provision of at least two layers of removal protection for NLRB ALJs prevents the exercise of Presidential authority over those officers as mandated by Article II of the Constitution." ROA 24-10855 18 (Compl. ¶ 49). Findhelp explains its concern about the ALJs'—and NLRB members'—insulation as follows:

> Because of these restrictions on the President's Article II authority, neither the ALJ assigned to Findhelp's administrative hearing nor the NLRB Members who are responsible for supervising and exercising control over the ALJ need to concern themselves in the least with how the President may view their actions during the proceedings against Findhelp or constrain their actions accordingly.

*Id.* (Compl. ¶ 50).

Findhelp further asserted that "[b]eing subject to unconstitutional agency authority, including proceedings before unconstitutionally insulated agency officials, qualifies as a 'here-and-now injury.'" *Id.* (Compl. ¶ 51) (quoting *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2024)). Thus, according to Findhelp, it was "entitled to declaratory relief sufficient to ensure that the administrative standards to which Findhelp is subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* (Compl. ¶ 52) (cleaned up). And in seeking injunctive relief, Findhelp described its harm as "[t]he harm of being subjected to a

proceeding by unaccountable officials . . . .'" ROA 24-10855 33 (quoting *Axon Enter.*, 598 U.S. at 191).

Accordingly, Findhelp's requests for declaratory and injunctive relief pursuant to the ALJ removal protection claim are entirely tied to being subject to proceedings before ALJs who are "unaccountable" to the Executive. And the District Court granted a preliminary injunction on these grounds only.

But the Department of Justice now agrees with Findhelp that the dual-layers of tenure protection afforded ALJs are unconstitutional. *See* Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 20, 2025), https://www.justice.gov/oip/media/1390336/dl?inline. And the NLRB has conformed its position to that of the DOJ. *See* ECF No. 210 (NLRB Defendants' Rule 28(j) letter confirming change in position).

As such, there is no longer a live controversy. Findhelp will no longer "[b]e[] subject to . . . proceedings before unconstitutionally insulated agency officials." The President's position is that the NLRB ALJs are removable at will by him, as are the members of the NLRB and MSPB, whose protections made up the other "layers" of insulation that Findhelp

contended created an unconstitutional scheme. The ALJs are then entirely accountable to the President, and so the ALJ assigned to hear the complaint against Findhelp will most certainly "need to concern themsel[f] . . . with how the President may view their actions during the proceedings against Findhelp [and] constrain their actions accordingly."[1]

Findhelp's claim has thus been rendered moot by the President's unequivocal assertion of his removal authority and Findhelp can no longer maintain a claim for declaratory relief. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (cleaned up). Here, Findhelp and NLRB Defendants are in full accord on the core issue on which the District Court issued an injunction. Courts may only entertain a declaratory judgment action where "there is a substantial

---

[1] In discharging other statutorily-insulated executive actors, the President has not followed any of the statutory due process requirements for removal. *See* Exh. A (emails showing that Member Wilcox, MSPB Member Cathy Harris, Federal Labor Relations Authority Member Susan Tsui Grundmann, and Special Counsel Hampton Dellinger—all of whom enjoy statutory removal protections—were removed peremptorily without notice or hearing). There then is no reason to believe he would honor the extensive due process provided ALJs under 5 U.S.C. § 7521(a) and its implementing regulations, 5 C.F.R. §§ 1201.137(b); 1201.138.

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). But "it is well settled that, where" as here, "the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy." *Pool v. City of Houston*, 87 F.4th 733, 733–34 (5th Cir. 2023) (vacating declaratory judgment and remanding with instructions to dismiss); *see also Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 48 (1971) (no case or controversy where "both litigants desire precisely the same result"). [2]

---

[2] To be sure, some of the President's actions have been found to be unlawful (correctly, we believe) in separate litigation. *See, e.g., Wilcox v. Trump*, No. 25-cv-334 (BAH), 2025 WL 720914 (D.D.C. Mar. 6, 2025), *appeal docketed,* No. 25-5057 (D.C. Cir. Mar. 7, 2025) (removal of NLRB Member Wilcox); *Harris v. Bessent*, No. 25-cv-412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025), *appeal docketed*, No. 25-5055 (D.C. Cir. Mar. 4, 2025) (removal of MSPB Member Cathy Harris).

While it is possible that the Executive will change its position in the future due to an adverse court decision finding the ALJ removal protections constitutional, this possibility "does not support that an injury is actual or imminent; rather, it is conjectural or hypothetical." *DeOtte v. State*, 20 F.4th 1055, 1064 (5th Cir. 2021) (cleaned up). An extensive chain of events would have to occur for this to affect Findhelp's rights—(1) The President would have to decide to remove an ALJ whose removal protections he deems unconstitutional; (2) A court would have to find this

That the NLRB maintains other arguments for why Findhelp is not entitled to an injunction does not mean adversity survives. Those remaining arguments—that federal courts lack jurisdiction to issue the requested preliminary injunction under the Norris-LaGuardia Act and that Findhelp failed to make a showing of causal harm to support an injunction—are remedial in nature and do not go to either the Court's subject-matter jurisdiction or the merits of Findhelp's constitutional claims. *See Emery Air Freight, Corp. v. Int'l Bhd. of Teamsters, Loc. 295*, 185 F.3d 85, 89 (2d Cir. 1999) ("Norris–LaGuardia is a limit on remedial authority, not subject matter jurisdiction."); *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring) (observing that, after *Collins*, "a case involving only an improper removal restriction is, remedially speaking, unique"). To proceed to resolve these remedial issues in a case where both parties clearly agree on the

---

removal unlawful; and (3) The President would have to decide to change his position with respect to the ALJ presiding over Findhelp's case (or all NLRB ALJs). *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (standing theory that "relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending").

underlying constitutional question would be to render an advisory opinion untethered from any actually existing case or controversy.

Lastly, even if Findhelp could continue to demonstrate some adversity with the NLRB Defendants as to its ALJ claim—which it cannot— "any relief [Findhelp] seek[s] now would be meaningless." *Yarls*, 905 F.3d at 909–10. (cleaned up). Because the President himself has declared that ALJs are removable at will (and thus accountable to him), there is simply no more "present harm left to enjoin" from appearing before an ALJ unaccountable to the Executive. *McClelland*, 155 F.3d at 514. Findhelp's only argument up until now was that the President was deterred from exercising his rightful removal authority by the unconstitutional statutory provisions. That is without question no longer the case.

Findhelp's ALJ removal protection claim for declaratory and injunctive relief is moot.

## II. Findhelp's Requests for Injunctive and Declaratory Relief Pursuant to its Board Member Removal Protection Claim are Moot

For largely the same reasons stated above, Findhelp's claims as to Board Member removal protections is also moot. On the same day that

the Acting Solicitor General declared to Congress that NLRB ALJs' removal protections to be unconstitutional, she made a similar declaration with respect to Board Member protections. *See* Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 12, 2025), https://www.justice.gov/oip/media/1389526/dl?inline (concluding that NLRB members' removal protections as well as those enjoyed by Federal Trade Commission ("FTC") and Consumer Product Safety Commission ("CPSC") commissioners, are unconstitutional).

Thus, as is the case for ALJ removal protections, because Findhelp and the NLRB assert identical positions on the constitutionality of Board Member removal protections, this claim is also moot.

To be sure, the President's position has been rejected in *Wilcox v. Trump*, No. 25-cv-334 (BAH), 2025 WL 720914, at *5 (D.D.C. March 6, 2025), which held that the removal of Board Member Gwynne A. Wilcox was "blatantly illegal," and that the President's arguments were "contrary to Supreme Court precedent and over a century of practice." But whether a "case or controversy" continues to exist must be assessed with reference to this case, where the NLRB Defendants continue to adhere to the

position that Board Member removal protections are unconstitutional. ECF No. 210.[3] The fact that other courts may have ruled against the President and restored Member Wilcox to her post does not allow Findhelp to manufacture adversity *in this case* where none exists. The federal courts lack Article III "authority to act in friendly or feigned proceedings," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997), and the unity in the parties' legal position is dispositive. Because Findhelp and the NLRB Defendants "agree on [the] constitutional question, there is no adversity and hence no Article III case or controversy." *Pool*, 87 F.4th at 733–34.

The legality of NLRB Board Member protections is a weighty issue that must be adjudicated in an "honest and actual antagonistic assertion

_____

[3] On February 18, President Trump signed an Executive Order stating that "[n]o employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limit to . . positions advanced in litigation." E.O. 14215, "Ensuring Accountability for All Agencies," § 7, 90 Fed. Reg. 10447 (Feb. 18, 2025).

Therefore, while Member Wilcox has advanced a contrary position in litigation undertaken in her individual capacity, Executive Order 14215 constrains the NLRB Defendants to continue to take the position espoused by the Department of Justice in this case in their official capacities. That position is identical to that pressed by Findhelp.

of rights to be adjudicated—a safeguard essential to the integrity of the judicial process, and one which [is] indispensable to adjudication of constitutional questions." *United States v. Johnson*, 319 U.S. 302, 305 (1943) (internal quotation marks omitted). Because Member Wilcox has raised this question in a lawsuit filed in her individual capacity that is rapidly winding its way up on appeal, there is every indication that it will speedily be resolved. In the meantime, the loss of adversity between the parties means that this Court no longer has Article III power to adjudicate the claim.[4]

## III. No Exception to Mootness Applies

While "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of

---

[4] In the alternative, should the Court disagree, it should reject Findhelp's arguments on the merits for the reasons stated in OPEIU's amicus brief, as well as the NLRB Defendants' initial briefing. *See* NLRB Br. 40–48; OPEIU Amicus Br. 26–29. In short, *Consumers' Research v. CPSC*, 91 F.4th 342 (5th Cir. 2024), which reaffirmed that *Humphrey's Executor* remains good law and permits members of multi-member commissions like the NLRB to retain removal protections, governs this case. Indeed, it is striking that this Court has expressly rejected challenges to the removal protections enjoyed by two of the three independent agencies that the President has claimed are unconstitutional. *See Consumers' Research*, 91 F.4th at 342 (CPSC); *Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) (FTC).

the practice[,]" that exception to the mootness doctrine does not apply here for two reasons. *Freedom From Religion*, 58 F.4th at 833.

*First*, the NLRB Defendants have not voluntarily ceased any practice; the President—a nondefendant—has declared his right to remove ALJs and Board Members. The NLRB Defendants no longer defend the merits of the removal protections only in conformity with the President's position. Accordingly, the Defendants did not voluntary cease applying the removal protections, but were required to do so by an event outside of the Defendants' control.

*Second*, even if seen as a voluntary cessation, the exception would not apply. Typically, voluntary cessations are "viewed with caution[,]" otherwise "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Yarls*, 905 F.3d at 910. This Court then will not find a defendant's voluntary cessation to moot a case unless "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Boudreaux*, 86 F.4th at 630 (cleaned up). "But where the defendant is a government actor, the presumption flips." *Id*. Instead, this Court "presume[s] that state actors

'act in good faith,' and that 'formally announced changes to official governmental policy are not mere litigation posturing.'" *Id.* (cleaned up, quoting *Freedom From Religion*, 58 F.4th at 833 and *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). That is also why "[i]t is black-letter law that the government's mere ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023) (cleaned up). Thus, the voluntary cessation exception does not apply, as there is no reason to view the Executive's changed position on the President's removal authority—announced to Congress and to the federal judiciary, and acted upon in regards to a member of the NLRB and the MSPB—"skeptic[ally]" as "mere litigation posturing." *Yarls*, 905 F.3d at 910–11.

## IV. This Court Should Vacate the District Court's Preliminary Injunction, or Remand this Matter to the District Court with Instruction to Vacate the Preliminary Injunction

The question of vacatur on appeal due to mootness is "an equitable one." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994). The courts must address mootness issues in a manner "most consonant with justice[.]" *Id.* at 24 (cleaned up). Here that requires

vacatur of the preliminary injunction, or remand to the district court with instructions to vacate the preliminary injunction.

The preliminary injunction on appeal halts the NLRB's administrative proceedings entirely in order to ensure that Findhelp does not have to appear before an unaccountable ALJ. But now that the assigned ALJ is accountable in the way Findhelp ultimately sought, that reason no longer provides a justification for enjoining the administrative proceeding. Unlike in cases where this Court does not vacate preliminary injunctions on appeal in moot cases because the injunction no longer has practical effect, *see, e.g., U.S. Navy Seals*, 72 F.4th at 676 n.10, here the injunction continues to block the administrative proceeding.

Maintaining the injunction under this state of affairs would generate an intolerable violation of the separation of powers. As this Court has recognized, the gravamen of a removal-restrictions claim is the vindication of the President's constitutional responsibility to "take Care that the Laws be faithfully executed." *See Jarkesy v. SEC*, 34 F.4th 446, 463–64 (5th Cir. 2022) (finding constitutional violation where inferior officers "serve sufficiently important executive functions, and . . . the restrictions on their removal are sufficiently onerous, [such] that the

President has lost the ability to take care that the laws are faithfully executed"); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484 (2010) (President "cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them").

But if the President's authority may be undermined by a legislative determination to insulate inferior officers from Presidential removal, it is obliterated by a judicial decree that prevents these lawfully-appointed officers from carrying out their duties when *no* constitutional violation is present. After all, "[b]ecause no single person could fulfill [the executive] responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Seila Law, LLC v. CFPB*, 591 U.S. 197, 203–04 (2020). Any continuation of the injunction prevents the President from relying on subordinate officers to execute the laws in the absence of any articulable constitutional or statutory defect. While the District Court initially issued the injunction because it deemed it necessary to *prevent* a potential separation-of-powers violation, the injunction now *causes* an even more serious constitutional violation after the President's change in position. If legislative limits on the President's power to supervise inferior officers offends the Constitution, then a

judicial intervention that prevents the President from allowing inferior officers to carry out the duties surely does so as well.

An injunction cannot stand "if it enjoins a defendant from engaging in legal conduct." *Missouri v. Biden*, 83 F.4th 350, 395 (5th Cir. 2023), *rev'd on some other grounds sub nom. Murthy v. Missouri*, 144 S. Ct. 1972 (2024); *see also B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1269 (5th Cir. 1971) (disapproving of injunction that "appears to us to enjoin perfectly legal acts"). After the President resolved the controversy concerning ALJ removal protections in Findhelp's favor, the NLRB Defendants have an undisputed legal right to compel Findhelp's participation in a proceeding before an ALJ that will determine whether the company violated national labor law. The injunction must therefore be vacated.[5]

---

[5] On remand, the District Court can determine whether Findhelp's claim arising under the Seventh Amendment, which was not addressed by the court below and not briefed before this Court, warrants any form of relief.

## CONCLUSION

The Court should dismiss Defendants-Appellants' appeal in Case No. 24-10855 as moot and vacate, or order the District Court to vacate, the preliminary injunction enjoining the agency proceedings in this case.[6]


Date: March 19, 2025           Respectfully submitted,

/s/ Andrew Lyubarsky
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
Tel: (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3828
jbarker@pittalaw.com

*Counsel for Intervenor OPEIU*

---

[6] While OPEIU has only been granted leave to intervene in Case No. 24-10855, we observe that identical mootness issues arise with respect to the other cases in this consolidated appeal, No. 24-50627, *Space Exploration Technologies Corp. v. NLRB*, and No. 24-40533, *Energy Transfer L.P. v. NLRB*. Therefore, OPEIU respectfully suggests that it would be appropriate for the Court order the relevant parties to show cause as to why the appeals should not be dismissed and the preliminary injunctions vacated.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion to Dismiss contains 3,669 words, as counted by counsel's word processing system, and thus complies with the 5,200- word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Century Schoolbook font.

Dated: March 19, 2025

*/s/ Andrew Lyubarsky*

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: March 19, 2025

*/s/ Andrew Lyubarsky*

**CERTIFICATE OF CONFERENCE**

Pursuant to Fifth Circuit Rule 27.4, I certify that that on March 18 and 19, 2025, I contacted counsel for Plaintiff-Appellee and Defendant-Appellants to ask for their positions on the OPEIU's motion to dismiss.

Plainitff-Appellee Aunt Bertha d/b/a Findhelp opposes this motion. Defendants-Appellants take no position on the motion pending consideration of the arguments presented therein.

Dated: March 19, 2025

*/s/ Andrew Lyubarsky*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2025, I electronically filed the foregoing Motion to Dismiss using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: March 19, 2025

*/s/ Andrew Lyubarsky*

Exhibit A

**From:** Morse, Trent M. EOP/WHO <Trent.M.Morse@who.eop.gov>
**Sent:** Monday, January 27, 2025 10:38:24 PM
**To:** Abruzzo, Jennifer <Jennifer.Abruzzo@nlrb.gov>; Wilcox, Gwynne <Gwynne.Wilcox@nlrb.gov>
**Cc:** Gor, Sergio N. EOP/WHO <Sergio.Gor@who.eop.gov>
**Subject:** [EXTERNAL] Notification from PPO RE: NLRB

Gwynne and Jennifer,

On behalf of President Donald J. Trump, please see the letter below.

Trent Morse

Deputy Director

Office of Presidential Personnel

Article II of the U.S. Constitution vests the entire executive power in a single President, who alone is accountable to the people. Pursuant to my constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const. Art. II, §3, I must ensure that those who wield executive power on my behalf are held accountable. Of particular importance, heads of agencies within the Executive Branch must share the objectives of my administration and its commitment to serving the will of the American people.

In my judgment, the National Labor Relations Board is not presently fulfilling its responsibility to the American people. The NLRB wields immense executive power over private employment relationships and relations with unions—an area with vast economic consequences.

The aims and purposes of the Administration with respect to the work on the Board can be carried out most effectively with personnel of my own selection. To that end, effective as of this date, Gwynne A. Wilcox and Jennifer Abruzzo are hereby removed from the office of Members of the National Labor Relations Board. [1]

In addition, these two Board Members have not, in my judgment, been operating in a manner consistent with the objectives of my administration. In my judgment, Members Wilcox and General Counsel Abruzzo have adopted a host of decisions that have improperly cabined employers' rights to speak on the subject of unionization, raising serious First Amendment concerns about the censorship of important speech. Several such decisions were issued on the eve of the new Administration. They have also issued decisions that, in my judgment, have vastly exceeded the bounds of the National Labor Relations Act. To take just one example, they supported a new joint employer rule—a rule that courts then invalidated and the Board seemingly acknowledged could not go forward.

Viewing their record collectively, I lack confidence that Commissioners Wilcox and General Counsel Abruzzo can fairly evaluate matters before them without unduly disfavoring the interests of employers large and small. The country is eager to get to work, revitalize our economy, and operate under clear, predictable rules that are fair to employers, unions, and employees alike. I lack confidence that Commissioners Wilcox and General Counsel Abruzzo will faithfully execute those objectives.

[1] While the National Labor Relations Act purports to limit removal of Board members to "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), this limitation is inconsistent with the vesting of the executive Power in the President and his constitutional duty to take care that the laws are faithfully executed and thus does not operate as a restriction on my ability to remove Board members. U.S. Const., Art. II, § 1, cl. 1; *id.* at § 3. "[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-514 (2010)). There are two recognized exceptions: one for certain inferior officers and one for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id.* at 216. Board members have broad policy making responsibilities and thus are not inferior officers. *See* 29 U.S.C § 160(a); *Seila Law LLC*, 591 U.S. at 219. Moreover, while the NLRB is a multimember board, it is not "balanced along partisan lines." Finally, and most importantly, the Board exercises core executive powers. To

wit, the Board has authority to promulgate binding regulations (*see* 29 U.S.C. § 159; *Seila Law LLC*, 591 U.S. at 218; pursue enforcement actions in federal court (*see* 29 USC 160(e); *Seila Law LLC*, 591 U.S. at 219); and unilaterally issue final decisions awarding equitable relief in administrative adjudications (*see* 29 USC 160(c)); *Seila Law LLC*, 591 U.S. at 219). Since neither exception applies to members of the NLRB, you are removable with or without statutory cause by the President.

---

[1] While the National Labor Relations Act purports to limit removal of Board members to "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), this limitation is inconsistent with the vesting of the executive Power in the President and his constitutional duty to take care that the laws are faithfully executed and thus does not operate as a restriction on my ability to remove Board members.  U.S. Const., Art. II, § 1, cl. 1; *id*. at § 3. "[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-514 (2010)). There are two recognized exceptions: one for certain inferior officers and one for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id*. at 216. Board members have broad policy making responsibilities and thus are not inferior officers. *See* 29 U.S.C § 160(a); *Seila Law LLC*, 591 U.S. at 219. Moreover, while the NLRB is a multimember board, it is not "balanced along partisan lines." Finally, and most importantly, the Board exercises core executive powers. To wit, the Board has authority to promulgate binding regulations (*see* 29 U.S.C. § 159; *Seila Law LLC*, 591 U.S. at 218; pursue enforcement actions in federal court (*see* 29 USC 160(e); *Seila Law LLC*, 591 U.S. at 219); and unilaterally issue final decisions awarding equitable relief in administrative adjudications (*see* 29 USC 160(c)); *Seila Law LLC*, 591 U.S. at 219).  Since neither exception applies to members of the NLRB, you are removable with or without statutory cause by the President.

**From:** Morse, Trent M. EOP/WHO <Trent.M.Morse@who.eop.gov>
**Sent:** Monday, February 10, 2025 10:49:52 PM
**To:** Harris, Cathy <Cathy.Harris@mspb.gov>
**Cc:** Office of General Counsel <OfficeofGeneralCounsel@mspb.gov>
**Subject:** Notice from the Office of Presidential Personnel


Cathy,

On behalf of President Donald J. Trump, I am writing to inform you that your position on the Merit Systems Protection Board is terminated, effective immediately.

Thank you for your service,

Trent Morse
Deputy Assistant to the President
Deputy Director of Presidential Personnel
The White House

**From:** Morse, Trent M. EOP/WHO <Trent.M.Morse@who.eop.gov>

**Sent:** Monday, February 10, 2025 10:46:01 PM

**To:** Grundmann, Susan <sgrundmann@flra.gov>

**Cc:** Turner, Catherine <CTurne@flra.gov>

**Subject:** Notice from the Office of Presidential Personnel

Susan,

On behalf of President Donald J. Trump, I am writing to inform you that your position on the Federal Labor Relations Authority is terminated, effective immediately.

Thank you for your service,

Trent Morse

Deputy Assistant to the President

Deputy Director of Presidential Personnel

The White House

**CAUTION:** This message may contain Controlled Unclassified Information (CUI) that requires safeguarding or dissemination control under applicable law, regulation, or Government-wide policy. This email, including all attachments, may constitute a Federal record or other Government property that is intended only for the use of the individual or entity to which it is addressed. If you are not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this email or its contents is strictly prohibited. If you have received this email in error, please notify the sender by responding to the email and then immediately delete the email.

**From:**         Gor, Sergio N. EOP/WHO
**To:**              Dellinger, Hampton
**Cc:**               Morse, Trent M. EOP/WHO
**Subject:**   A Notice from the White House
**Date:**        Friday, February 7, 2025 7:22:59 PM

Good evening Hampton,

On behalf of President Donald J. Trump, I am writing to inform you that your position as Special Counsel of the US Office of Special Counsel is terminated, effective immediately.

Thank you for your service,

Sergio


--
Sergio Gor
Assistant to the President
Director of Presidential Personnel Office
The White House