# United States Court of Appeals
# For the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; MARVIN KAPLAN, in his official capacity as the Chairman of the National Labor Relations Board; MARVIN E. KAPLAN, in his official capacity as Board Member of the National Labor Relations Board; GWYNNE A. WILCOX, in her official capacity as Board Member of the National Labor Relations Board; DAVID M. PROUTY, in his official capacity as Board Member of the National Labor Relations Board; JOHN DOE, Administrative Law Judge NLRB,

*Defendants-Appellants,*

*consolidated with*

ENERGY TRANSFER L.P. and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD; JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; MARVIN KAPLAN, in his official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, in their official capacities as Board Members of the National Labor Relations Board; GWYNNE A. WILCOX, in their official capacities as Board Members of the National Labor Relations Board; and DAVID M. PROUTY, in their official capacities as Board Members

of the National Labor Relations Board; JOHN DOE, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants*

*consolidated with*

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency;  JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board; MARVIN KAPLAN, in his official  capacity as the Chairman of the National Labor Relations Board;  MARVIN E. KAPLAN; GWYNNE A. WILCOX; DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations  Board; JOHN DOE in their official capacity as an Administrative Law  Judge of the National Labor Relations Board,

*Defendants-Appellants.*

**On Appeal from the United States District Courts
for the Northern, Southern, and Western Districts of Texas**

**REPLY IN SUPPORT OF MOTION TO DISMISS AS MOOT CASE NO. 24-10855, *AUNT BERTHA V. NLRB*, AND VACATE PRELIMINARY INJUNCTION**

| | |
|---|---|
| Andrew Lyubarsky | Jane Lauer Barker |
| AFL-CIO | Pitta LLP |
| 815 Black Lives Matter Plaza NW | 120 Broadway, 28th Floor |
| Washington, DC 20006 | New York, NY 10271 |
| Tel. (202) 227-8969 | Tel. (212) 652-3828 |
| alyubarsky@aflcio.org | jbarker@pittalaw.com |

Appellees and NLRB each contest that this case is now moot, but none explain how the courts can still grant Appellees any meaningful relief. Each Employer seeks the same final relief in their Complaints: a declaration that the removal protections afforded NLRB administrative law judges and NLRB Members are unconstitutional, and a permanent injunction prohibiting Defendants "from implementing or carrying out the unconstitutional removal-protections provisions[.]" ROA 24-50627 24 (SpaceX Compl.); ROA 24-40533 24–25 (Energy Transfer Compl.); ROA 24-10855 24–25 (Findhelp Compl.). Each alleged they were entitled to this relief because the NLRB intended to "compel[] [them] to undergo an unconstitutional proceeding before [] insufficiently accountable agency official[s]." ROA 24-10855 10 (Findhelp Compl. ¶ 3). And each requested—and were granted—preliminary injunctive relief "pending final resolution" of their removal-protections claims, so that they not be subject to the alleged unconstitutional proceeding until the court issued the requested declaratory and permanent injunctive relief. ROA 24-50627 24 (SpaceX Compl.); ROA 24-40533 24–25 (Energy Transfer Compl.); ROA 24-10855 24–25 (Findhelp Compl.).

But granting the requested declaratory and permanent injunctive relief now "would be meaningless," *Yarls v. Bunton*, 905 F.3d 905, 909-10 (5th Cir. 2018) (cleaned up), as it would have no effect. As described in OPEIU's motion to dismiss, the President—whose removal authority is at issue here—has already declared the removal provisions unconstitutional and claimed the authority to remove NLRB ALJs and Board Members at will. Indeed, he has acted on that authority and removed a Board Member.[1] And the NLRB itself has conformed itself to the President's determination (ECF No. 210), and so is no longer "implementing or carrying out the unconstitutional removal-protections provisions." There is then nothing more for a court to grant Appellees, and any relief granted would change nothing about the President's or the Board's actions as to the operation of the removal provisions.

1. For this reason, SpaceX's citations to *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), and *United States v. Windsor*, 570 U.S. 744 (2013), are unavailing. ECF No. 234, SpaceX Supp. Br. 3–5. Start with *Seila Law*.

---

[1] While the Board Member is contesting her removal, as of this filing, she is not serving on the Board. *Wilcox v. Trump*, No. 25-5037, ECF No. 2108335 (D.C. Cir. Mar. 28, 2025) (split motions panel decision staying district court injunction returning Member Wilcox to Board service).

There, the plaintiff resisted a district court order requiring it to comply with a civil investigatory demand by the Consumer Financial Protection Bureau ("CFPB") by arguing that "that the CFPB is unconstitutionally structured [because its director is afforded removal protections], thereby rendering the [civil investigatory demand] (and everything else the agency has done) unlawful." *CFPB v. Seila Law LLC*, 923 F.3d 680, 682 (9th Cir. 2019), *vacated and remanded*, 591 U.S. 197 (2020). By the time the case reached the Supreme Court, "the parties agree[d] on the merits of the constitutional question[,]" but they continued to "disagree about whether petitioner must comply with the civil investigative demand." *Seila Law*, 591 U.S. at 212. As such, adversity existed, because the plaintiff sought permanent relief from the CFPB's action.[2] The Supreme Court easily found no mootness there. *Id.* at 212–13.

That is nothing like the instant cases. Here, no Appellee sought to permanently enjoin the NLRB from pursuing the underlying

---

[2] Specifically, the plaintiff contended that "the demand [was] unenforceable because the statutory provision insulating the CFPB Director from removal cannot be severed from the other statutory provisions that define the CFPB's authority," thus creating "a live controversy over the question of severability." *Seila Law*, 591 U.S. at 231, 233.

3

administrative proceedings against them due to the removal protections.[3] Instead, Appellees sought only a temporary pause in the administrative proceeding, and only until the court could ensure that the NLRB ALJ and the NLRB Members in the administrative proceeding were sufficiently accountable to the President. As to Appellees' removal-protection claims, once that accountability was assured, the preliminary injunction would dissolve and the proceeding could move forward. Now that the President has delivered that accountability, there is nothing more that the courts can do.

*Windsor* is even less helpful to Appellees. There, the Government no longer defended the constitutionality of the statutory provision at issue, but declared that the statute "will continue to be enforced by the Executive Branch." *Windsor*, 570 U.S. at 753–54. As a result, the

---

[3] At most, Appellees have speculated that the removal restriction may not be severable in opposing the NLRB's position that they should be severed in crafting *preliminary relief*. ECF No. 95-1, Energy Transfr Br. 51–56; ECF No. 101, Findhelp Br. 41–47; ECF No. 107, SpaceX Br. 50–51. But no Appellee has asked for *permanent* declaratory or injunctive relief aimed beyond the operation of the challenged removal protections. *Contra CFPB v. Seila Law, LLC*, No. 8:17-cv-1081 (JLS), Dkt. No. 20 at 12–13 (C.D. Cal. July 21, 2017) (petitioner in *Seila Law* contended that removal restrictions were not severable and that the CFPB should be stricken in its entirety in its first pleading).

Government continued to "deny [tax] refunds and to assess deficiencies" in reliance on the challenged provision, resulting in a pocketbook injury to the plaintiff to the tune of over $300,000. *Id.* at 753. Because the Government "agree[d] with Windsor's legal contention but refuse[d] to give it effect," the Court found a continuing "justiciable controversy between the parties." *Id.* at 756. The Court noted that "[i]t would be a different case if," in addition to agreeing with her constitutional argument, "the Executive had taken the further step of paying Windsor the refund to which she was entitled." *Id.* at 758.

This too is nothing like the instant cases. Here, the President has not only declared the removal protections at issue unconstitutional, but has acted on that position by removing a NLRB Member[4] and a whole host of other independent agency officers. That is the "further step" to which *Windsor* referred—far from "refus[ing] . . . to provide the relief

---

[4] SpaceX's citation to the Board Member's lawsuit contesting her removal does not help its argument that these cases are not moot. SpaceX Supp. Br. 7–8. Even if Wilcox is ordered reinstated to the Board, it would not revive the need for the relief Appellees seek—the NLRB would not be implementing the removal protections (aside from that required to fulfill the court order) and would continue to adhere to the President's position that they were unconstitutional.

sought," *cf. Windsor*, 570 U.S. at 756, in Appellees' Complaints—the President has provided it in full by subjecting Board members to removal at his will.[5]

2. SpaceX and the NLRB are also wrong to point to the adverseness between Appellees and the NLRB on the preliminary injunction to dispute mootness. SpaceX Supp. Br. 2–3; ECF No. 235, NLRB Supp. Br. 4. Here, Appellees asked only for the preliminary injunction until they received their final relief, which—to repeat—was aimed solely at assuring that the removal protections would not interfere with the President's authority to remove the NLRB ALJ and the Board Members. Now that the President has provided that assurance, the preliminary injunction is no longer necessary, and is itself moot.

---

[5] The same situation was presented in this Court's decision in *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019), *rev'd sub nom. California v. Texas*, 593 U.S. 659 (2021), where the Government agreed with plaintiffs' merits argument that the statute at issue was unconstitutional, but "continue[d] to enforce the entire Act," and "made no indication that it will begin dismantling any part of the [statute] in the absence of a final court order." *Id.* at 375. The NLRB here is not enforcing the whole NLRA, and instead is refusing to enforce the removal provisions.

And the same applies to the NLRB's argument that the case is not moot because adverseness remains between Appellees and the NLRB on the need to show causal harm to make a viable removal-protections claim,[6] or on the applicability of the Norris-LaGuardia Act. NLRB Supp. Br. 4–5. Whether a party must show causal harm from an unconstitutional removal protection to gain relief means nothing to the continuity of these cases; the President has provided the relief sought. A

---

[6] It should be noted that the NLRB largely concurs that the President's determination that the challenged removal protections are inoperable ends this case; they simply place the analysis somewhere other than at the jurisdictional stage. NLRB Supp. Br. 6.

It is true, as the NLRB notes, that the President's removal of Member Wilcox and other agency officers makes plain that he does not suffer from a "perceived inability to remove the [challenged] actor[s] due to the infirm provision," *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*"), which this Court requires to secure relief against agency action on a removal-protections claim.

The flaw, however, runs deeper than the NLRB recognizes. It is not that the NLRB continues to "implement[] or enforce[]" the challenged removal protections, but that Appellees have failed to show the "connection between the President's frustrated desire to remove the actor and the agency action complained of" necessary to state a cause of action or secure injunctive relief. *Id.* Instead, under the President's command, the Defendants have completely desisted from carrying out the provisions at all, and Appellees no longer have an injury-in-fact that could support Article III jurisdiction.

fight over what needs to be shown for the court to order meaningless relief does not defeat mootness. *See Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023) (finding that disagreement over availability of declaratory and injunctive relief was a moot "faux dispute[]," because the city had "agreed that it would and could not enforce the [city charter] provisions [at issue]," and has "repeatedly . . . emphasized its agreement [on the merits] with the plaintiffs").

3. For that reason, the presence of OPEIU as intervenor also does not defeat mootness. ECF No. 238, Energy Transfer Supp. Br. 5–10; NLRB Supp. Br. 8–10. Even if OPEIU were to maintain a position of adverseness—and it has not yet done so as an intervenor, its only substantive filing has been the instant motion to dismiss[7]—that does not change the fact that the relief sought would be meaningless in the current situation.

At bottom, the instant cases are moot because Appellees seek relief that will allow for them to appear in an administrative proceeding

---

[7] Which was its right. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (intervenor entitled to "move to dismiss the proceeding and can challenge the subject matter jurisdiction of the [] court").

before an ALJ and Board Members who are accountable to the President, and the President's recent actions—along with the Board's conformity to the President's position—have provided that relief. OPEIU's presence as intervenor does nothing to breathe life into this dead dispute. As Appellees and the NLRB provide no answer as to how a court can provide meaningful relief now, the Court should dismiss these cases as moot.

4. Finally, Findhelp contends that, even if this appeal is moot, vacatur of the District Court's preliminary injunction is inappropriate. ECF No. 236, Findhelp Supp. Br. 5–8. It errs for two reasons.[8]

*First*, in Findhelp's cited cases, district court injunctions had no practical, prospective effect on the parties after the case became moot.

---

[8] Findhelp also alleges that OPEIU cites no case in which a preliminary injunction was vacated because mootness occurs on an interlocutory appeal, as opposed to an appeal from final judgment. But besides the fact that "[m]ootness arguments . . . can be pressed by any party at any time," *Carr v. Saucier*, 582 F.2d 14, 16 (5th Cir. 1978), there are many such cases. *See, e.g., Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020); *Yates v. Collier,* 677 F. App'x 915 (5th Cir. 2017); *Spirit of the Sage Council v. Norton*, 411 F.3d 225 (D.C. Cir. 2005); *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1259 (11th Cir. 2001).

*See U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023) (preliminary injunctions "no longer provide[d] . . . any effectual relief"); *Staley v. Harris Cnty.*, 485 F.3d 305, 310 (5th Cir. 2007) (en banc) (permanent injunction ordering removal of Bible from a public monument had no prospective effect after county removed entire monument from public view); *Houston Chronicle Publ. Co. v. City of League City*, 488 F.3d 613, 619 (5th Cir. 2007) (permanent injunction against city ordinance barring certain forms of solicitation had no prospective effect after challenged portions repealed). Unlike those cases, the preliminary injunction here has continuing prospective effect by restraining the NLRB Defendants from carrying out *any* of their functions under the NLRA as to Appellees.

This is, to say the least, unusual. Typically, a preliminary injunction issued in a case where a plaintiff's claims for permanent relief have become moot will have no prospective effect. But this is no ordinary case. As OPEIU explained in a prior submission, ECF No. 63, AFL-CIO/OPEIU Amicus Br. 21–24, the District Court's injunction is overbroad and not "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order as determined by the substantive law at

issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). While Findhelp sought *permanent* declaratory and injunctive relief aimed narrowly at restricting the NLRB Defendants from "implementing or carrying out" the challenged removal restrictions, it received *preliminary* relief of vastly greater scope under the guise of maintaining the status quo, restraining the NLRB Defendants from carrying out *any* of their functions under the NLRA as to Appellees. This injunction thus continues to have prospective effect on both the NLRB and OPEIU even following the mootness of Findhelp's claims for permanent relief.

"[V]acatur is to be determined on a case-by-case basis, governed by facts and not inflexible rules." *Staley*, 485 F.3d at 310. Though lower court orders should generally stand, this is not so when "a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp. Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). Here, the public interest clearly mandates vacatur.

Declining to vacate this injunction would, at this point, serve only to interfere with the very constitutional duty that Appellees sued to vindicate—the President's duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, Sect. 3.

*Second*, the general rule that vacatur is inappropriate when "mootness results from the losing party's voluntary actions," Findhelp Supp. Br. 7, does not apply here. Mootness here was not caused by the NLRB's strategic desire to avoid adverse precedent, but by an independent event—the President's determination that all such removal restrictions are unconstitutional and would no longer restrain his actions, and his subsequent removal of a bevy of independent agency officers. This Court has not hesitated to vacate lower court decisions under similar circumstances. *See, e.g., AT&T Commc'ns of the Sw., Inc. v. City of Austin*, 235 F.3d 241, 244 (5th Cir. 2000); *cf. Russman v. Bd. of Educ.*, 260 F.3d 114, 122 (2d Cir. 2001) ("conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit" does not preclude vacatur).

Accordingly, if the Court finds the appeal to be moot, it should vacate the injunction, or remand with an instruction to vacate.

Date: April 2, 2025    Respectfully submitted,

<u>/s/ Andrew Lyubarsky</u>
Andrew Lyubarsky
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
Tel: (202) 227-8969

12

alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3828
jbarker@pittalaw.com

*Counsel for Intervenor OPEIU*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Reply contains 2,590 words, as counted by counsel's word processing system, and thus complies with the 2,600- word limit. *See* Fed. R. App. P. 27(d)(2)(C).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Century Schoolbook font.

Dated: April 2, 2025

*/s/ Andrew Lyubarsky*

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: April 2, 2025

<u>/s/ Andrew Lyubarsky</u>

# CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2025, I electronically filed the foregoing Motion to Dismiss using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: April 2, 2025

*/s/Andrew Lyubarsky*
