# United States Court of Appeals
# For the Fifth Circuit

SPACE EXPLORATION TECHNOLOGIES CORP.,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative
agency, JENNIFER ABRUZZO, in her official capacity as the General
Counsel of the National Labor Relations Board, LAUREN M.
MCFERRAN, in her official capacity as the Chairman of the National
Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX,
and DAVID M. PROUTY, in their official capacities as Board Members
of the National Labor Relations Board, and JOHN DOE in his official
capacity as an Administrative Law Judge of the National Labor
Relations Board,

*Defendants-Appellants,*

*consolidated with*

ENERGY TRANSFER L.P. and its subsidiary and employing
entity LA GRANGE ACQUISITION, L.P.,

*Plaintiffs-Appellees,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative
agency, JENNIFER ABRUZZO, in her official capacity as the General
Counsel of the National Labor Relations Board, LAUREN M.
MCFERRAN, in her official capacity as the Chairman of the National
Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX,
and DAVID M. PROUTY, in their official capacities as Board Members
of the National Labor Relations Board, and JOHN DOE in his official
capacity as an Administrative Law Judge of the National Labor
Relations Board,

*Defendants-Appellants*

*consolidated with*

AUNT BERTHA, doing business as FINDHELP,

*Plaintiff-Appellee,*

v.

NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants-Appellants.*

**On Appeal from the United States District Courts
for the Northern, Southern, and Western Districts of Texas**

OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION'S (OPEIU) MOTION TO INTERVENE TO PETITION FOR CERTIORARI

Andrew Lyubarsky
Maneesh Sharma
Darin Dalmat
AFL-CIO
815 Sixteenth Street NW
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
Tel. (212) 652-3828
jbarker@pittalaw.com

# STATEMENT OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of this Court's Rule 28.2.1 have an interest in the outcome of this case. These disclosures are made pursuant to this Court's Rules 28.2.1 and 29.2 in order that the judges of this Court may evaluate possible disqualification or recusal.

1. National Labor Relations Board (NLRB)

2. Jennifer Abruzzo, Former General Counsel, NLRB

3. Lauren M. McFerran, Former Chairman, NLRB

4. Marvin E. Kaplan, Former Member, NLRB

5. Gwynne A. Wilcox, Former Member, NLRB

6. David M. Prouty, Member, NLRB

7. William B. Cowen, Acting General Counsel, NLRB

8. Space Exploration Technologies Corporation

9. Aunt Bertha, d/b/a Findhelp

10. Energy Transfer L.P.

11. La Grange Acquisition, L.P.

12. Talley Ray Parker, Counsel for Plaintiff-Appellee Aunt Bertha

13. Michael E. Kenneally, Counsel for Plaintiff-Appellee Space Exploration Technologies Corporation

14. Harry Isaac Johnson III, Counsel for Plaintiff-Appellee Space Exploration Technologies Corporation

15. Amber Michelle Rogers, Counsel for Plaintiffs-Appellees Energy Transfer L.P. and La Grange Acquisition, L.P.

16. David Paul Boehm, Counsel for Defendants-Appellants

17. Kevin Patrick Flanagan, Counsel for Defendants-Appellants

18. Matheus Teixeira, Counsel for Defendants-Appellants

19. Maxie E. Gallardo, Counsel for Defendants-Appellants

20. Grace L. Pezzella, Counsel for Defendants-Appellants

21. Office and Professional Employees International Union (OPEIU), Proposed Intervenor

22. Jane Lauer Barker, Counsel for Proposed Intervenor OPEIU

23. Andrew Lyubarsky, Counsel for Proposed Intervenor OPEIU

Dated: October 1, 2025

*/s/ Andrew Lyubarsky*
Andrew Lyubarsky
AFL-CIO
815 Sixteenth Street N.W.
Washington, DC 20006
Tel. (202) 227-8969
alyubarsky@aflcio.org

# TABLE OF CONTENTS

Pages(s)

STATEMENT OF THE CASE ................................................................. 2

ARGUMENT ....................................................................................... 6

I.   Under Any Standard, the OPEIU Merits Intervention .................. 6

A.   This Case is Exceptional and OPEIU's Participation is Imperative ................................................................................. 6

B.   The Reasons Stated in the Panel's Reconsideration Order Do Not Preclude Intervention at This Juncture ............................ 11

    i.  OPEIU Can No Longer Protect Its Interests as Amicus ........ 12

    ii.  The Disclaimer of Interest ...................................................... 13

C.   OPEIU's Motion to Intervene is Timely ................................... 17

II.   This Court's "Exceptional Case for Imperative Reasons" Test for Appellate Intervention Has Been Abrogated by *Cameron* .......... 18

III.   OPEIU's Motion to Intervene is Consistent with the Policies Underlying Fed. R. Civ. P. 24 ................................................... 23

A.   OPEIU Maintains a Legally Cognizable Interest in the Outcome of this Case .............................................................................. 24

B.   OPEIU's Interest Will Be Impaired if Intervention is Denied .. 26

CONCLUSION ...................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*ABM Indus. Grps., LLC v. U.S. DOL,*
   756 F. Supp. 3d 468 (S.D. Tex. 2024) ...................................... 8

*Axon Enter., Inc. v. FTC,*
   598 U.S. 175 (2023) ................................................................ 7

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
   595 U.S. 267 (2022) .......................... 5, 17, 18, 19, 20, 21, 22, 23

*CFPB v. All Am. Check Cashing, Inc.,*
   33 F.4th 218 (5th Cir. 2022) ................................................... 9

*CFPB v. L. Offs. of Crystal Moroney, P.C.,*
   63 F.4th 174 (2d Cir. 2023) ................................................... 10

*Collins v. Yellen,*
   594 U.S. 220 (2021) ............................................................ 8, 9

*Comm. Fin. Servs. Ass'n of Am. v. CFPB,*
   51 F.4th 616 (5th Cir. 2022) ................................................... 9

*Concrete Materials of Ga., Inc., v. NLRB,*
   440 F.2d 61 (5th Cir. 1971) ................................................... 25

*Day v. Apoliona,*
   505 F.3d 963 (9th Cir. 2007) ................................................. 21

*E. Bay Sanctuary Covenant v. Biden,*
   102 F.4th 996 (9th Cir. 2024) ............................................... 21

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) ................................................... 24

*EMW Women's Surgical Ctr., P.S.C. v. Friedlander,*
    831 F. App'x 748 (6th Cir. 2020) .......................................................... 17

*Gen. Land Off. v. Trump,*
    No. 24-40447, 2025 WL 1410414 (5th Cir. May 15, 2025)................22

*Humane Soc'y of the United States v. USDA,*
    54 F.4th 733 (D.C. Cir. 2022) ................................................................ 21

*Indep. Elec. Contractors of Houston, Inc. v. NLRB,*
    720 F.3d 543 (5th Cir. 2013) ................................................................. 25

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022)...............................................................2,3

*Leachco, Inc. v. CPSC,*
    103 F.4th 748 (10th Cir. 2024)............................................................... 9

*Lion Elastomers, L.L.C. v. NLRB,*
    108 F.4th 252 (5th Cir. 2024)............................................................... 25

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
    732 F.2d 452 (5th Cir. 1984) ................................................................. 23

*NLRB v. Jones & Laughlin Steel Corp.,*
    301 U.S. 1 (1937) ..................................................................................... 6

*Richardson v. Flores,*
    979 F.3d 1102 (5th Cir. 2020) .................................... 5, 6, 12, 18, 19, 20

*Space Expl. Techs. Corp. v. NLRB,*
    No. 24-50627, 2025 WL 2396748 (5th Cir. Aug. 19, 2025)..................3, 9

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015) ................................................................. 23

*UAW Local 283 v. Scofield,*
    382 U.S. 205 (1965) ........................................................................ 24, 25

*United Airlines, Inc. v. McDonald,*
    432 U.S. 385 (1977)) ................................................................ 17

*United States v. Bursey,*
    515 F.2d 1228 (5th Cir. 1975)) ............................................. 6, 20

*YAPP USA Auto. Sys., Inc. v. NLRB,*
    No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ...................... 10

**Statutes**

5 U.S.C. § 1202(d) ........................................................................ 8

5 U.S.C. § 7521(a) ........................................................................ 8

29 U.S.C. § 157 ............................................................................ 15

29 U.S.C. § 158(a)(1) ................................................................... 15

29 U.S.C. § 158(a)(3) ................................................................... 15

29 U.S.C. § 158(d) ....................................................................... 14

29 U.S.C. § 159(a) ....................................................................... 14

**Constitutional Provisions**

U.S. Const. Art. II, § 3 ................................................................. 8

**Federal Rules**

Fed. R. Civ. P. 24(a) ......................................................... 6, 19, 20, 23, 24

## OPEIU'S MOTION TO INTERVENE AND TO PETITION FOR CERTIORARI

The Office and Professional Employees International Union ("OPEIU") respectfully moves to intervene in this matter to seek review of this Panel's judgment by filing a petition for writ of certiorari with the U.S. Supreme Court.

This Court denied OPEIU's prior motion to intervene on the grounds that the National Labor Relations Board ("NLRB" or "Board") adequately represented its interests insofar as its merits briefs to this panel set forth arguments that OPEIU also pressed. A majority of the panel rejected those arguments. The situation, however, has now changed. Yesterday, the NLRB advised OPEIU that it informed Plaintiffs-Appellees that it would not seek higher review of the Court's judgment. Absent intervention, the positions previously shared by the NLRB and OPEIU will thus receive no further review.

OPEIU—whose interests are tangibly affected by the affirmance of the injunction in *Aunt Bertha v. NLRB*, No. 24-10855—seeks to chart a different path. As Judge Wiener emphasized in his dissenting opinion, this Court's approach to the quantum of harm a litigant must show to

prevail on a claim that a federal officer's tenure protections are unconstitutional differs markedly from that of its sister circuits. The Court's decision raises an important question about whether a lawfully-appointed officer, duly invested with authority under the Appointments Clause of the Constitution, may nevertheless be barred from exercising that authority solely because he enjoys a protection from removal that was never exercised in his case. OPEIU believes that this question, which affects enforcement of not only the National Labor Relations Act ("NLRA"), but a wide array of statutory regimes, should be definitively answered by the U.S. Supreme Court.

Accordingly, because the NLRB has declared that it will not seek higher review, including petitioning for a writ of certiorari, OPEIU's interests are no longer adequately represented. Therefore, OPEIU now moves to intervene.

## STATEMENT OF THE CASE

This is a case of exceptional importance for the parties, for OPEIU, and for the enforcement of labor law nationally. In *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), this Court held, as a general matter, that the multiple layers of removal protections enjoyed by agency administrative

law judges ("ALJs") are unconstitutional, but declined to determine the appropriate remedy for this violation. *Id.* at 463 & n.17. In these consolidated appeals, the Court answered the question left open by *Jarkesy*: holding that when a party seeks prospective relief, it may secure an injunction against any agency proceedings conducted by ALJs without making any showing that the President sought to remove the insulated officer. *See Space Expl. Techs. Corp. v. NLRB*, No. 24-50627, 2025 WL 2396748, at *13 n.114 (5th Cir. Aug. 19, 2025) ("*SpaceX*") ("injunctive relief is the only remedy that matters" where the "'here-and-now injury' of being hauled before an unlawful tribunal is inflicted the instant the proceeding begins").[1]

OPEIU, the Charging Party in the NLRB proceedings underlying *Aunt Bertha v. NLRB*, No. 24-10855, has been left with discharged supporters who have been deprived of a statutory remedy prescribed by Congress, and locked out of the exclusive forum in which unfair labor practice charges may be adjudicated. But OPEIU is, of course, not the only

---

[1] The Court reached the same remedial conclusion with respect to Plaintiffs-Appellees' claims that NLRB Board Members' removal restrictions were unconstitutional. *See SpaceX*, 2025 WL 2396748, at *9–14.

non-party to these cases whose interests have been affected. *All* NLRB unfair labor practice proceedings rely on ALJs to make proposed findings of facts and conclusions of law, and *all* such ALJs enjoy the same tenure protections.

Despite the importance of the *SpaceX* decision to the enforcement of our Nation's fundamental labor law, on September 30 (yesterday), the NLRB advised Plaintiffs-Appellees that it had no plans to seek higher review of the judgment. Consequently, the NLRB will not file a petition for a writ of certiorari to the U.S. Supreme Court.

OPEIU has previously attempted to intervene in this appeal. In an April 22 order that vacated a prior determination granting OPEIU intervenor status, the Court concluded that OPEIU was merely seeking to present "a unique view offered by neither party," and that it was able to ensure that "OPEIU's arguments have received due consideration in the form of its amicus brief." ECF No. 257-1 at 5 (hereinafter, "Reconsideration Order"). While OPEIU may have been able to adequately protect its interests as *amicus* at that stage in the case, that is clearly no longer so.

OPEIU cannot petition the Supreme Court for a writ of certiorari as *amicus*, and the NLRB has declined to do so in its own right. Thus, there can no longer be any contention that the NLRB adequately represents OPEIU's interests. If OPEIU is denied intervenor status, the important issues raised by *SpaceX* will quite simply evade review in this case.

Thus, OPEIU has met all of the requirements to intervene as of right in this appeal. When measured from the point when "it became clear" that its interests "'would no longer be protected' by the parties in the case," *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022), OPEIU's motion is unquestionably timely; the Board only informed OPEIU of its decision to not to seek further review yesterday. OPEIU clearly has an interest that would be impaired (indeed, extinguished) by an adverse disposition of this case—its supporters who had been fired and disciplined in its campaign to organize Aunt Bertha d/b/a Findhelp would be denied a Congressionally-prescribed remedy. Finally, to the extent that an elevated standard applies to this motion because OPEIU seeks to intervene on appeal, this case is "exceptional" and OPEIU's reasons to intervene "imperative." *Cf. Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020).

**ARGUMENT**

**I.         Under Any Standard, the OPEIU Merits Intervention**

A.    This Case is Exceptional and OPEIU's Participation is
        Imperative

This Court has stated that it grants intervention on appeal only

"in an exceptional case for imperative reasons." *Richardson*, 979 F.3d at

1105 (5th Cir. 2020) (quoting *United States v. Bursey*, 515 F.2d 1228,

1238 n.24 (5th Cir. 1975)). As OPEIU argues *infra* at 18–23, this

standard is ripe for reconsideration in light of recent Supreme Court

precedent that directs appellate courts to apply the principles

underlying Federal Rule of Civil Procedure 24. In any event, this

standard is met here.

This case is "exceptional" for at least two reasons. First, Plaintiffs-

Appellees have mounted a structural attack on an administrative

agency with a 90-year historical pedigree whose constitutionality was

definitively upheld by the Supreme Court immediately following its

establishment. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1

(1937). Thus, this is no garden-variety dispute implicating only the

rights of private parties; it is instead a case with far-reaching public

policy implications as to the workers' protection of American right to organize.

Second, the breadth of Plaintiffs-Appellees' claims about the agency's constitutionality is matched only by their expansive reading of *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). If the Court's opinion is correct, a preliminary injunction against agency proceedings is warranted as of right in *any* case where a regulated party can prove that a federal officer's removal protections are likely unconstitutional—absent any showing that the President had any intent to remove the challenged officer, or was somehow prevented from doing so. This means that *any* party who can properly allege venue within this Court's jurisdiction can stop the NLRB in its tracks automatically by filing a carbon-copy of Plaintiffs-Appellees' complaints in district court and then moving for preliminary injunctive relief.

But that's not all. Nothing in the Court's analysis of *Axon Enterprise* is limited to the NLRB. Regardless of whether they are employed by an independent agency, *all* ALJs have the right to contest their removal before the Merit Systems Protection Board ("MSPB"), whose members may also be removed by the President for good cause

only, and thus have at least "two layers" of removal protections. *See* 5 U.S.C. § 7521(a) (ALJs); 5 U.S.C. § 1202(d) (MSPB members). Thus, following *SpaceX, any* litigant may secure an injunctive reprieve from virtually *any* agency proceeding before an ALJ.[2] This is an "exceptional" consequence that severely burdens the President's constitutional ability to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3.

Moreover, the Supreme Court is likely to grant *certiorari* on the issue of whether a litigant must show a specific frustrated Presidential attempt to remove an insulated officer to secure prospective relief. In *Collins v. Yellen*, the Supreme Court emphasized that "the unlawfulness of [a] removal provision does *not* strip [an inferior officer] of the power to undertake the . . . responsibilities of his office." 594 U.S. 220, 258 n.23 (2021) (emphasis added); *see also id.* at 267 (Thomas, J., concurring) ("The mere existence of an unconstitutional removal provision, too, generally does not automatically taint Government action by an official

---

[2] As some have already done in district courts within this Circuit. *See, e.g., ABM Indus. Grps. LLC v. U.S. DOL*, 756 F. Supp. 3d 468 (S.D. Tex. 2024).

unlawfully insulated."). Consequently, courts across the Nation, including this Court, had long held that "a case involving only an improper removal restriction is, remedially speaking, unique," *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring), because it required a showing that the restriction actually caused harm in the proceeding in question. *See, e.g., Comm. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 631–32 (5th Cir. 2022) ("*CFSA*") (setting forth three-part test for proving the causal harm required by *Collins* and noting that the Supreme Court's decision "did not rest on a distinction between prospective and retrospective relief").

As Judge Wiener noted in dissent, *SpaceX*, 2025 WL 2396748, at *16–18, in addition to this Court's decision in *CFSA*, at least three Circuit courts have determined that the "causal harm" requirement applied without distinction to prospective claims for relief from future agency action—like the preliminary injunctions at issue here—and claims for retrospective relief. *See also Leachco, Inc. v. CPSC*, 103 F.4th 748, 757, 759 (10th Cir. 2024) (holding that "*Collins*' relief analysis applies to both retrospective and prospective relief," and noting that a contrary rule would impermissibly "create[] an entitlement on the

merits to a preliminary injunction in every case where such constitutional challenges are raised"); *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024) (denying injunction pending appeal because the plaintiff "ha[d] not explained how the removal protections for the NLRB Board members or the NLRB ALJs would specifically impact the upcoming proceedings"); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023) (explaining *Collins'* reasoning "that an officer's actions are valid so long as she was validly appointed applies with equal force regardless of the [prospective or retrospective] relief sought").

Except for *SpaceX* itself, there is no circuit-level precedent to the contrary. The circuit split on this issue is sharp, ripe for resolution, and creates stark regional disparities in the President's ability to faithfully execute laws that Congress intended to apply across the Nation.

OPEIU's participation in this litigation—at precisely *this* phase— has thus become "imperative." The NLRB does not intend to seek further review; thus, only OPEIU is in a position to urge the Supreme Court to resolve the circuit split and establish a single, national rule that would govern Plaintiffs-Appellees' claims.

B.    The Reasons Stated in the Panel's Reconsideration Order Do
      Not Preclude Intervention at This Juncture

Applying the "exceptional case for imperative reasons" standard, a majority of this panel previously found that several elements favoring intervention were not present. First, the majority noted that OPEIU disclaimed its interest in further representation of the Findhelp bargaining unit. Second, it observed that OPEIU had already presented its views on the merits as an *amicus*, and that the Board did not affirmatively withdraw its merits arguments, but only declined to rely on them. And, lastly, the Court found that "the practicalities of the moment weigh against the OPEIU," insofar as the case had already been fully briefed and argued.[3] ECF No. 257-1 at 5.

OPEIU addresses these elements in reverse order. Even if, at the time that OPEIU filed its renewed motion to intervene, it could

_____

[3] The panel also noted that OPEIU failed to move to intervene before the District Court. ECF No. 257-1 at 5. While true, this is so in every case where intervention on appeal, rather than appellate review of a district court order denying intervention, is at stake. Moreover, the changes in the Board's litigation positions that led to inadequacy of representation occurred after the case had moved to the Court of Appeals, thereby giving OPEIU cause to intervene.

adequately protect its interests as *amicus curiae*, that is plainly no longer the case now. And OPEIU never disclaimed an interest in vindicating the rights of its discharged supporters, thus rendering irrelevant its wholly separate disclaimer of an intent to represent Findhelp employees for the purposes of collective bargaining.

i.     *OPEIU Can No Longer Protect Its Interests as Amicus*

In the Reconsideration Order, the panel majority observed that "[w]hen a party seeks intervention at the appellate level simply because it has 'a unique view offered by neither party,' it should express that interests as an amicus, not an intervenor." ECF No. 257-1 at 5 (quoting *Richardson*, 979 F.3d at 1106). In sum, the panel majority concluded, although OPEIU's perspectives had diverged from the Board's over the course of litigation, "[t]he case has been fully briefed and argued," and "[t]he OPEIU's arguments have received due consideration in the form of its amicus brief." *Id.* Thus, the panel majority considered the practical purpose of OPEIU's intervention to be unclear. *Id.*

That is, without question, no longer the case. Simply put, OPEIU desires to seek further review of the Court's order on an issue of constitutional magnitude that has divided the Courts of Appeals.

OPEIU cannot petition for certiorari on this issue as *amicus*, but rather only as intervenor. Absent OPEIU's intervention, the crucial question of what showing a litigant must make to enjoin agency proceedings will evade Supreme Court review in this case, leading to a fractured enforcement landscape for administrative agencies, where like cases fail to produce like results due to accidents of geography.

Thus, the practical purpose of OPEIU's present motion is as clear as it is imperative. Even though this Court was able to consider the OPEIU's positions via its *amicus* participation, the Supreme Court would not be able to do the same. *Amicus* status is thus manifestly insufficient to protect OPEIU's interests in this appeal at this juncture.

ii.     *The Disclaimer of Interest*

It is unclear whether the Reconsideration Order relied on OPEIU's disclaimer of intent to engage in further collective bargaining-related representation of the Findhelp unit as a ground for denying intervention, because the order readily acknowledged "OPEIU's interest in the outcome of the litigation."[4] In any event, such a disclaimer is

---

[4] Additionally, Judge Wiener's dissent from the Reconsideration Order noted that he would allow OPEIU's intervention because "the

immaterial to OPEIU's interest in the NLRB proceedings, which do not allege the breach of any bargaining obligation on Findhelp's part, but rather the unlawful discharge and discipline of OPEIU's supporters.

A labor union need not be the certified bargaining representative to bring unfair labor practice charges on behalf of its supporters. Unions routinely bring charges to the NLRB before an election establishing their majority status, after an election in which the union failed to establish majority status, and after they have been decertified as bargaining representative following a decertification election. As here, in all these scenarios, the Union is not the certified collective bargaining representative for the bargaining unit, *see* 29 U.S.C. § 159(a), and consequently the employer has no legal duty to bargain with the Union over a contract, *see* 29 U.S.C. § 158(d).

---

Government's assertion raised in their February and March letters to the court . . . equate to the withdrawal of its arguments on Board-member and ALJ removability," ECF No. 257-1 at 3, but did not address the issue of the disclaimer. This further suggests that the majority and the dissent may have agreed that OPEIU maintained a concrete stake in the underlying Board proceedings sufficient to justify intervention, but disagreed as to the adequacy of the NLRB's representation of OPEIU's interests.

But Congress has legislated that *all* employees—whether or not represented by a union for the purpose of collective bargaining—"shall have the right to self-organization, to form, join, or assist labor organizations," and to "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

The administrative complaint against Findhelp stems from OPEIU's allegations that Findhelp, *inter alia*, terminated and engaged in other retaliation against former employees precisely because they exercised their right "to form, join, or assist labor organizations." *Id.* An employer commits an unfair labor practice when it acts "to interfere with, restrain, or coerce employees in the exercise of [this] right[]," *id.* § 158(a)(1), or to discriminate against employees in order "to encourage or discourage membership in any labor organization," *id.* § 158(a)(3), and victims of such practices are entitled to be made whole under the NLRA. These OPEIU supporters remain just as terminated—and just as entitled to equitable make-whole relief, if the NLRB's General Counsel can prove the merits of his case—after OPEIU's disclaimer as they were before.

Simply put, OPEIU retains a continuing interest in vigorously litigating this case against Findhelp, and it has *never* disclaimed this interest. In addition to an ethical commitment to Findhelp's former employees rooted in principles of labor movement solidarity, pursuing the charges at issue here is plainly within OPEIU's organizational self-interest. OPEIU regularly engages in organizing campaigns across the country, during which union supporters are discharged because of anti-union animus. If OPEIU were to leave these unfair labor practices unremedied, it would send a chilling message to employees across a variety of workplaces that employers can discriminate against OPEIU supporters with impunity, and that the Union will abandon these workers if it is unable to attain a contract. Moreover, it would convey to *current* OPEIU members that the Union would fail to pursue meritorious unfair labor practice charges if it were ever decertified, thus undermining its current representational strength. OPEIU thus has every incentive to zealously pursue relief in the underlying wrongful-termination case, even as it has recognized that a collective bargaining agreement with Findhelp is not forthcoming.

C. OPEIU's Motion to Intervene is Timely

Finally, it is clear that the instant motion is timely because OPEIU has attempted to intervene "'as soon as it became clear'" that [its] interests 'would no longer be protected' by the parties in the case." *Cameron*, 595 U.S. at 279–80 (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). This is true whether the Court considers this motion, standing alone, or considers OPEIU's three attempts to intervene in their totality.

Indeed, the Supreme Court's discussion of timeliness in *Cameron* is on all fours. In that case, the Kentucky Secretary for Health and Family Services, who had until that point defended a state abortion statute in court, declined to file a petition for rehearing *en banc* or a petition for writ of certiorari. *Id.* at 272–73. Kentucky's Attorney General moved to intervene for such purposes two days after learning of the Secretary's decision, but the Court of Appeals ruled that the motion was untimely because it came "years into [the case's] progress, after both the district court's decision and—more critically—this Court's decision." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 831 F. App'x 748, 750 (6th Cir. 2020). The Supreme Court found this to be

error; though "the litigation by that time had proceeded for years, that factor is not dispositive," because the "need to seek intervention did not arise until the secretary ceased defending the state law, and the timeliness of [the] motion should be assessed in relation to that point in time." *Cameron*, 595 U.S. at 280.

Here, OPEIU has been similarly diligent. OPEIU was informed by the NLRB that it would not file a certiorari petition yesterday, and is moving to intervene one day later. OPEIU's motion is thus timely.

## II. This Court's "Exceptional Case for Imperative Reasons" Test for Appellate Intervention Has Been Abrogated by *Cameron*

As discussed above, OPEIU believes that it has met the "exceptional case for imperative reasons" standard that this Court reaffirmed in *Richardson*, 979 F.3d at 1105, and applied in the Reconsideration Order. If the Court disagrees, however, OPEIU believes that it is nevertheless entitled to intervene as of right because the analysis in *Richardson* is inconsistent with the Supreme Court's later decision in *Cameron*.[5]

---

[5] OPEIU first raised this argument in its initial intervention motion. ECF No. 18 in 24-10855 at 19–20 (Oct. 1, 2024).

In *Cameron*, the Supreme Court spoke clearly. Though recognizing that "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," the Court pointed to Federal Rule of Civil Procedure 24 and instructed courts to "consider[] the 'policies underlying intervention in the district courts', including the legal 'interest' that a party seeks to 'protect' through intervention on appeal." 595 U.S. at 276-77 (citations omitted). Considering issues such as prejudice and timeliness, the Court stated that these were "factors that bear on all applications for appellate intervention." *Id.* at 279, 281.

*Richardson*'s analysis started at the same point, but reached the opposite conclusion. Much like the Supreme Court, this Court observed that "[t]here is no appellate rule allowing intervention generally," and the "caselaw explicating the standards for such motions is scarce." 979 F.3d at 1104. But *Richardson* then expressly declined to apply the policies underlying Fed. R. Civ. P. 24(a) to intervention. Instead, it held that "there must be a steep threshold for allowing intervention on appeal" in order "to prevent litigants from using procedural gamesmanship to skirt unfavorable standards of review." *Id.* at 1105.

Simply put, *Cameron* directs courts to apply Fed. R. Civ. P. 24(a) (or, at a minimum, the "policies underlying" the Rule) to motions to intervene on appeal; while *Richardson* expressly states that this Court does not do so but rather imposes a distinct "steep threshold" derived from dicta in a now-five-decades-old case. *See United States v. Bursey*, 515 F.2d 1228 (5th Cir. 1975). *Richardson* thus cannot be squared with *Cameron*.

Moreover, even if *Cameron*'s holding did not directly abrogate the test in *Richardson*, it fatally undermined its reasoning. Intervening while a case is on appeal is a question of timing; applying a more exacting test to appellate intervenors is a penalty for failing to intervene at a certain *time* in the litigation—at the district court level. But *Cameron* made clear that such considerations do *not* change the applicable test. Instead, the Supreme Court emphasized, "the most important circumstance relating to timeliness is that [a motion be filed] as soon as it became clear that the [intervenor's] interests 'would no longer be protected' by the parties in the case," and that timeliness "should be assessed in relation to that point in time." 595 U.S. at 279–80 (citation omitted).

Especially in cases involving government defendants, where political changes often lead to shifts in litigation positions, there is no

reason to expect that inadequacy of representation is more likely to arise at the district court level than on appeal. As Judge VanDyke of the Ninth Circuit explained, "it can [] be the case that an intervenor's rights were adequately protected until a party abruptly changed its position *at the appellate stage*." *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1004 (9th Cir. 2024) (VanDyke, J., dissenting). "Under such circumstances," Judge VanDyke continued, "it makes little sense to conclude that a motion to intervene, brought *promptly* after the intervenor discovered its interests were no longer adequately represented, is untimely just because the party waited until the appeal stage to abruptly change its litigation posture." *Id.*; *see also Humane Soc'y of the United States v. USDA*, 54 F.4th 733, 737 (D.C. Cir. 2022) (Rao, J., dissenting) (arguing that, under *Cameron*, appellate intervention should have been granted where non-party "moved quickly when it realized the Government might not seek rehearing en banc . . . within two weeks of our panel opinion"); *Day v. Apoliona*, 505 F.3d 963, 965–66 (9th Cir. 2007) (granting intervention on appeal where "none of the current parties will file a petition for rehearing or for rehearing en banc").

The arbitrariness of applying a different standard to appellate intervention is underscored by a recent decision by this Court, in a case that featured "three years of litigation . . . including two appeals to the Fifth Circuit." *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *1 (5th Cir. May 15, 2025). Despite the longstanding nature of that litigation, the Court found intervention by affected non-parties warranted when, following two prior remands, the Government declined to file a *third* appeal from the district court's entry of a preliminary injunction. *Id.* at *3. Consistent with *Cameron*, the Court held that the timeliness clock only began to run if "'the parties were complacent or non-adversarial as to not protect the interests of potential intervenors.'" *Id.* at *4 (citation omitted).

The *General Land Office* Court did not cite *Richardson* or apply any elevated standard to the motion. And, although the motion to intervene in that case was ultimately filed before a district court, this is mere happenstance; there is no rational basis for applying a more permissive standard to a case that has already been twice-reviewed by this Court, and a more exacting one to a case that is pending before the Court on an initial appeal. Instead, the simple rule set forth in *Cameron*—that

timeliness be assessed from the point that existing parties fail to adequately represent the interest of would-be intervenors—must logically apply to motions to intervene filed at any procedural posture.

## III. OPEIU's Motion to Intervene is Consistent with the Policies Underlying Fed. R. Civ. P. 24

Thus, applying the proper test, OPEIU should be allowed to intervene in this matter so long as its motion is consistent with "the 'policies underlying intervention' in the district courts." *Cameron,* 595 U.S. at 267 (citation omitted). These policies are set forth in Federal Rule of Civil Procedure 24(a), which requires the movant to meet the following factors: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)).

In Section I, *supra*, OPEIU has already addressed the factors of timeliness and inadequacy of representation in detail. *See supra* at 12–13; 17–18. The other factors referred to in Fed. R. Civ. P. 24(a)—that OPEIU have an interest relating to the property or transaction which is the subject of the action that would be impaired by an adverse disposition of the action—are also met here.

A.  <u>OPEIU Maintains a Legally Cognizable Interest in the Outcome of this Case</u>

OPEIU must first demonstrate that it has a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Houston,* 78 F.3d 983, 1004 (5th Cir. 1996) (en banc). It meets this test as a matter of law.

OPEIU does not write on a blank slate with regards to this issue. Over half a century ago, a unanimous Supreme Court in *UAW Local 283 v. Scofield*, 382 U.S. 205 (1965), explained that the interest of a charging party in NLRB proceedings differs from that of the Board such that intervention is warranted. There, the Court rejected the argument that the charging party was just "another member of the public whose interests the Board is designed to serve." *Id.* at 218. Instead, the Court

explained that the Board's duty to enforce "public rights" did not "exclude[] recognition of parochial private interests." *Id.* Because the NLRA "interblend[s]" "public" and "private interests," "the charging party may have vital private rights in the Board proceeding." *Id.* at 220 (cleaned up).

Accordingly, charging parties have different interests than the Board in NLRB proceedings, and this Court regularly allows charging parties to intervene in cases involving a petition for review of an NLRB order. *See, e.g., Concrete Materials of Ga., Inc., v. NLRB*, 440 F.2d 61, 67 (5th Cir. 1971) ("[E]ither the charged party or the charging party who is successful before the Board may intervene as of right in any review proceedings before the Court of Appeals."); *Lion Elastomers, L.L.C. v. NLRB*, 108 F.4th 252 (5th Cir. 2024) (noting union intervenor); *Indep. Elec. Contractors of Houston, Inc. v. NLRB*, 720 F.3d 543 (5th Cir. 2013) (same).

OPEIU has a vital private interest in the outcome of the NLRB proceedings that are currently enjoined as a result of Findhelp's litigation. OPEIU alleges that Findhelp engaged in a number of unfair labor practices, including discharges of union supporters. The case is live and

OPEIU supporters can only secure relief via the Board's now-enjoined processes.

Indeed, if Findhelp had raised its constitutional arguments through the normal NLRB process, and filed a petition for review if the Board ruled against it, OPEIU would be allowed to intervene under *Scofield*. The fact that Findhelp filed suit in district court to directly challenge the Board's authority does not change the analysis of the OPEIU's legal interest. *Scofield* makes clear that charging parties have interests in NLRB proceedings that differ from the Board's, and that interest has been recognized to allow charging parties to intervene throughout the NLRB proceeding and through any appeal in the circuit courts. This significant legal interest also adheres where an employer seeks to enjoin those same Board proceedings.

### B.    OPEIU's Interest Will Be Impaired if Intervention is Denied

Having demonstrated OPEIU's substantial legal interest in the matter, it requires little further analysis to demonstrate that this interest would be impaired—indeed, potentially extinguished—absent intervention.

The injunction at issue in this case leaves OPEIU and the employees it represents with statutory rights under the National Labor Relations Act but no available remedy to secure those rights—and no forum in which to pursue them. The Board has exclusive jurisdiction over unfair labor practice charges and the NLRA provides for no private right of action. Accordingly, OPEIU must rely on the Board's procedures to demonstrate that its supporters were discharged because of anti-union animus and secure an order requiring Findhelp to make those employees whole.

## CONCLUSION

For the reasons stated above, OPEIU respectfully asks this Court to grant its motion to intervene.

Dated: October 1, 2025

Respectfully submitted,

/s/ Andrew Lyubarsky
Andrew Lyubarsky
Maneesh Sharma
Darin Dalmat
AFL-CIO
815 Sixteenth Street N.W.
Washington, D.C. 20006

Tel: (202) 227-8969
alyubarsky@aflcio.org

Jane Lauer Barker
Pitta LLP
120 Broadway, 28th Floor
New York, NY 10271
(212) 652-3828
jbarker@pittalaw.com

*Counsel for Proposed Intervenor OPEIU*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion to Intervene contains 5,200 words, as counted by counsel's word processing system, and thus complies with the 5,200- word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word using size 14 Century Schoolbook font.

Dated: October 1, 2025

*/s/ Andrew Lyubarsky*

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: October 1, 2025

*/s/ Andrew Lyubarsky*

# CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, I certify that that on September 30, 2025, I contacted counsel for Plaintiffs-Appellees and Defendant-Appellants to ask for their positions on the OPEIU's motion to intervene.

Defendants-Appellants take no position on the relief requested. Plaintiffs-Appellees Space Exploration Technologies Corporation and Energy Transfer L.P. advised that they oppose OPEIU's motion to intervene. Plaintiff-Appellee Aunt Bertha d/b/a Findhelp did not provide a position as of the filing of this motion.

Dated: October 1, 2025

*/s/ Andrew Lyubarsky*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2025, I electronically filed the foregoing Motion to Intervene using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: October 1, 2025

*/s/Andrew Lyubarsky*